UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOSEPH F. FARIS, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>LONGTOP FINANCIAL TECHNOLOGIES LIMITED, HUI KUNG KA a/k/a XIAOGONG JIA, WAI CHAU LIN a/k/a WEIZHOU LIAN, and, DEREK PALASCHUK,<br><br>Defendants. | Case No: 1:11-cv-03658-SAS |
| BRADLEY D. KAIR, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>LONGTOP FINANCIAL TECHNOLOGIES LIMITED, WAI CHAU LIN (also known as LIN WAI CHAU and WEIZHOU LIAN), and DEREK PALASCHUK,<br><br>Defendants. | Case No: 1:11-cv-03661-DAB |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF RAMESH PATEL FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL <u>OF HIS SELECTION OF LEAD COUNSEL AND LIAISON COUNSEL</u>**

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Goplen v. 51job*, Inc.,
  No. 05 C 0769, 2005 U.S. Dist. LEXIS 15059 (S.D.N.Y. July 26, 2005)...............................10

*Lax v. First Merchs. Acceptance Corp.*,
  No. 97 C 2715, 1997 U.S. Dist. LEXIS 11866 (N.D. Ill. Aug 6, 1997).................................11

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co.*,
  229 F.R.D. 395, 402-04 (S.D.N.Y. 2004)...............................................................................9

*Priest v. Zayre Corp.*,
  118 F.R.D. 552, 555 (D. Mass. 1988).....................................................................................13

*In re Cedant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001).....................................................................................................15

*In re eSpeed, Inc. Sec. Litig.*,
  232 F.R.D. 95 (S.D.N.Y. 2005) ........................................................................................11, 13

*In re Initial Public Offering Sec. Litig.*,
  232 F.R.D. 95 (S.D.N.Y. 2005) ........................................................................................12, 14

*In re Oxford Health Plans Sec. Litig.*,
  182 F.R..D. 42 (S.D.N.Y. 1998) .............................................................................................14

*Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. LaBranche & Co.*,
  229 F.R.D. 395 (S.D.N.Y. 2004) ............................................................................................12

*Priest v. Zayre Corp.*,
  118 F.R.D. 552 (D. Mass. 1988).............................................................................................12

**STATUTES**

15 U.S.C. § 78u-4(a)(1) ...............................................................................………..8

15 U.S.C. § 78u-4(a)(2) ...................................................................……………….. 2, 10

15 U.S.C. § 78u-4(a)(3)(A)(i)………………………………………………………..3, 4, 8

15 U.S.C. § 78u-4(a)(3)(B).............................................................................……………1, 14

15 U.S.C. § 78u-4(a)(3)(B)(i) ...........................................................................…………….8

15 U.S.C. § 78u-4(a)(3)(B)(iii)……………………………………………………….2, 10, 15

15 U.S.C. § 78u-4(a)(3)(B)(v) ............................................................................……………3, 16

**RULES**

Federal Rule of Civil Procedure Rule 23(a)  ........................................………………….12

Federal Rule of Civil Procedure Rule 23(a)(3) ........................................………………….12

Federal Rule of Civil Procedure Rule 23(a)(4).............................................................................13

**LEGISLATIVE MATERIALS**

H.R. Conf. Rep. No. 104-369 (1995)..........................................................................................15

Plaintiff Ramesh Patel ("Plaintiff") respectfully submits this memorandum in support of his motion for consolidation, for appointment as Lead Plaintiff pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), and for approval of his selection of the law firm of Saxena White P.A. to serve as Lead Counsel for the Class and The Law Offices of Curtis V. Trinko, LLP ("Trinko") to serve as Liaison Counsel for the Class.

## PRELIMINARY STATEMENT

Presently pending in this District are two related class action lawsuits (the "Actions") on behalf of purchasers of the ADRs of Longtop Financial Technologies Limited ("Longtop" or the "Company") on behalf of all persons who purchased or otherwise acquired the ADRs of Longtop between October 25, 2007 and May 17, 2011, inclusive (the "Class Period"). These Actions are brought pursuant to §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a), and Securities and Exchange Commission ("SEC") Rule 10b-5, 17 C.F.R. §240.10b-5. Defendants named in these actions include Longtop and certain of Longtop's officers.

Pursuant to the PSLRA, prior to selecting a lead plaintiff, the Court must decide whether to consolidate related actions. *See* 15 U.S.C. 78u-4(a)(3)(B)(ii). The Actions should be consolidated because they each involve substantially similar issues of law and fact. *See* Fed. R. Civ. P. 42(a) (consolidation is appropriate where there is a common issue of law or fact). Each action names Longtop as a Defendant, and alleges essentially the same wrongdoing, namely, that Longtop issued materially false and misleading statements during the Class Period, thereby causing the price of its securities to be artificially inflated.

After consolidating related actions, the PSLRA directs the Court to appoint as Lead Plaintiff the movant that has demonstrated the "largest financial interest in the litigation" and also meet the typicality and adequacy prongs of Fed. R. Civ. P. 23.  *See* 15 U.S.C. 78u-4(a)(3)(B)(iii).  As demonstrated herein, Movant has sustained losses totaling $274,159.82.[1]  Movant's losses are believed to be the largest among purported class members seeking appointment as Lead Plaintiff.[2]  Movant is unaware of any other class member that has filed an action or an application for appointment as Lead Plaintiff that sustained greater financial losses.[3]  Furthermore, Movant understands the commitments of a Lead Plaintiff and, as demonstrated herein, satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.  In addition, Movant has retained competent and experienced counsel to prosecute this securities litigation and seeks the Court's approval of his selection of Counsel.  Accordingly, under the PSLRA Mr. Patel is presumptively the most adequate plaintiff and entitled to appointment as the lead plaintiff for the class.

Pursuant to the PSLRA, the Lead Plaintiff—subject to Court approval—is entitled to select lead counsel for the class.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(v).  Here, Movant has selected the law firm of Saxena White to serve as Lead Counsel and Trinko as Liaison Counsel.  Saxena White has extensive experience successfully litigating securities class actions and possesses the resources necessary to vigorously pursue this litigation on behalf of the class.  For the reasons

---

[1] The losses suffered by Movant are not the same as his legally compensable damages, the measure of which is often a complex legal question that cannot be determined at this stage of litigation.  The approximate losses can, however, be determined from the certification required under Section 21D of the Exchange Act, 15 U.S.C. § 78u-4(a)(2)(B) and based upon reference to information concerning the current market for the Company's ADRs.

[2] The transactions of Mr. Patel in Longtop's ADRs during the Class Period are set forth in the certification attached to the Declaration of Christopher S. Jones ("Jones Decl.") as Exhibit B.

[3] A chart setting forth Mr. Patel's losses is attached as Exhibit C to the Declaration of Christopher S. Jones.

summarized herein and discussed more fully below, Movant's motion should be approved in its entirety.

## PROCEDURAL HISTORY

On May 27, 2011, two similar class actions were filed on behalf of all other persons who purchased or otherwise acquired Longtop securities during the Class Period: *Faris, et al. v. Longtop Financial Technologies Limited, et al.*, Case No. 1:11-cv-03658 (S.D.N.Y. May 27, 2011) and *Kair v. Longtop Financial Technologies Limited, et al.*, Case No. 1:11-cv-03661 (S.D.N.Y. May 27, 2011).[4] The complaints alleged that Longtop and certain officers and directors of the Company (collectively, the "Defendants") violated §§10(b) and 20(a) of the Exchange Act, as amended by the PSLRA, and Rule 10b-5 promulgated thereunder. On May 23, 2011, following the filing of the first-filed action in the Central District of California and pursuant to 15 U.S.C. § 78u-4(a)(3)(A)(i), the first notice that a class action had been initiated against the Defendants was published on *Business Wire*, a widely circulated national business-oriented wire service advising members of the proposed class of their right to move the Court to serve. Mr. Patel timely filed this motion within the 60-day period following publication of the May 23, 2011 notice.

---

[4] Three similar actions, including the first-filed action, are pending in the United States District Court for the Central District of California: *Mikus v. Longtop Financial Technologies Limited, et al.*, Case No. 2:11-cv-04402 (C.D.Ca. May 23, 2011); *Washtenaw County Employees Retirement System v. Longtop Financial Technologies Limited v. Longtop Financial Technologies Limited, et al.*, Case No. 2:11-cv-04714 (C.D.Ca. June 2, 2011); and *Sanjay Maadan v. Longtop Financial Technologies Limited, et al.*, Case No. 2:11-cv-05182 (C.D.Ca. June 21, 2011).

## STATEMENT OF FACTS[5]

Longtop is a corporation incorporated under the laws of the Cayman Islands with principal executive offices located at Flat A, 10/F., Block 8, City Garden, 233 Electric Road, North Point, Hong Kong. ¶11. Longtop is a provider of software and information technology with services targeting the financial services industry in China. ¶2. The Mikus complaint alleges that Defendants' statements and filings during the Class Period were materially false and misleading pursuant to the Securities Exchange Act of 1934, because they failed to disclose and misrepresented: (1) that Xiamen Longtop Human Resources Services Co ("XLHRS"), was a company that was actually owned and legally controlled by Longtop and was not an independent entity; (2) that the Company was using XLHRS to transfer its cost structure and write its liabilities off of its balance sheet; (3) that XLHRS was an entity created to hide Longtop's expenses, and/or underpay employee social welfare benefits; (4) that the Company's high gross margins, as compared to industry peers, were not justified by its unconventional staffing model and were fictitious; (5) that as a result of the Company's gross margins being inaccurate, there were multiple instances of accounting fraud and irregularities present in the Company's financial statements and SEC filings; (6) that the Company's service fees purportedly paid to XLHRS as reported in XLHR's SAIC filings were completely different from what was reported to the SEC in Longtop's Form 20-F filings; (7) that the Company's financial statements were not prepared in accordance with Generally Accepted Accounting Principles ("GAAP"); (8) that the Company lacked adequate internal and financial controls; and, (9) as a result of the foregoing, the Company's financial statements were false and misleading at all relevant times. ¶72.

---

[5] These facts were derived from the allegations contained in the class action styled as *Faris, et al. v. Longtop Financial Technologies Limited, et al.*, Case No. 1:11-cv-03658 (S.D.N.Y. May 27, 2011).

Due to Defendants' course of conduct, the New York Stock Exchange has halted trading in Longtop ADR's; the Company's registered independent accounting firm, Deloitte Touche Tohmatsu CPA Ltd., has resigned; the Company's Chief Financial Officer, Derek Palaschuk, also resigned as of May 19, 2011; and the SEC has started an official inquiry into the Company. ¶4. Defendants' wrongful acts, and false and misleading statements and omissions, have caused a precipitous decline in the market value of the Company's ADRs, resulting in Plaintiff and other Class members suffering significant losses and damages. ¶5.

## ARGUMENT

### I.     THE ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES

The Actions involve class action claims on behalf of the purchasers of Longtop securities and assert essentially identical and overlapping class claims. Consolidation is appropriate where there is "a common question of law or fact pending before the Court." Fed. R. Civ. P. 42(a); *see Johnson v. Celotex Corp.,* 899 F.2d 1281, 1284 (2d Cir.). The test is met here and the Actions should be consolidated.

The Actions present substantially identical factual and legal issues, including: (a) whether the Defendants violated the federal securities laws; (b) whether the Company's public statements during the Class Period omitted and/or misrepresented material facts; (c) whether Defendants participated in and pursued the fraudulent scheme or course of business complained of in the Actions; (d) whether Defendants acted willfully, knowingly or recklessly, in omitting and/or misrepresenting material facts; (e) whether the market prices of Longtop ADRs during the Class Period were artificially inflated due to the alleged material nondisclosures and/or misrepresentations; and (f) whether the members of the proposed class have sustained damages

when corrective disclosures removed the inflation caused by the Defendants' fraud, and, if so, what is the appropriate measure of damages.

Class action shareholder suits are ideally suited for consolidation because their unification expedites pretrial proceedings, reduces case duplication, avoids the harassment of parties and witnesses being interrogated in multiple proceedings, and minimizes the expenditure of time and money by all persons concerned. *See Primavera, Familienstiftung v. Askin,* 173 F.R.D. 115, 130 (S.D.N.Y. 1997); *Newman v. Eagle Building Techs.*, 209 F.R.D. 499, 501-02 (S.D. Fla. 2002). Movant respectfully urges the Court to consolidate the Actions under the low-numbered *Faris* action.

## II.     MR. PATEL SHOULD BE APPOINTED LEAD PLAINTIFF

### A.     The Procedural Requirements Pursuant To The PSLRA

The PSLRA sets forth a detailed procedure that governs the appointment of a lead Plaintiff in each private action arising under the Exchange Act that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure. *See* 15 U.S.C. §78u-4(a)(1) and (a)(3)(B)(i). Specifically, the PSLRA provides that, within 20 days after the date on which a class action is filed, the plaintiff or plaintiffs who filed the initial complaint shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class:

> (I)     of the pendency of the action, the claims asserted therein, and the purported class period; and
>
> (II)    that not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as Lead Plaintiff of the purported class.

15 U.S.C. §78u-4(a)(3)(A)(i).

Furthermore, the PSLRA directs the Court to consider any motions by plaintiffs or purported class members to serve as Lead Plaintiff in response to any such notice within 60 days after the date of publication of the notice, or as soon as practicable after the Court decides any pending motions to consolidate any actions asserting substantially the same claim or claims. Under this section, the court "shall" appoint the "most adequate plaintiff," and is to presume that such plaintiff is the person, or group of persons, which:

> (aa)   has either filed the complaint or made a motion in response to a notice…
>
> (bb)   in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc)   otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

Section 21D(a)(3)(B)(iii)(I). *See generally Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co.*, 229 F.R.D. 395, 402-04 (S.D.N.Y. 2004) (Sweet, J.).

As discussed below, Mr. Patel has complied with the procedural prerequisites of the PSLRA. Moreover, Mr. Patel believes that it has the largest financial interest in the litigation, and otherwise meets the relevant requirements of Rule 23 of the Federal Rules of Civil Procedure.

### B. Mr. Patel is "The Most Adequate Plaintiff"

#### 1. Mr. Patel Has Timely Submitted a Motion for His Appointment As Lead Plaintiff

Under the deadlines established by the PSLRA, any class members interested in moving for the appointment as Lead Plaintiff in this matter must do so within 60 days of the date of publication of the notice of the first filed action, or January 5, 2009. 15 U.S.C. §78u-4(a)(3)(A) and (B). Because this motion is filed within the requisite time frame after publication of the notice, the motion of Mr. Patel is timely.

## 2. Movant has the Largest Financial Interest Sought by the Class

According to 15 U.S.C. § 78u-4(a)(3)(B)(iii), the court shall presume that the most adequate plaintiff is the "person or group of persons" that represent(s) the largest financial interest in the relief sought by the action and who also meets the requirements of Rule 23.

During the Class Period, Mr. Patel purchased 20,200 shares of Longtop ADRs at prices artificially inflated by the materially false and misleading statements issued by Defendants. *See* Jones Decl., Exhibit C. In addition, Movant incurred a substantial loss of approximately $274,159.82 on his transactions in Longtop ADRs when corrective disclosures removed the inflation caused by the Defendants' fraud. *Id*.

In evaluating financial interest, courts generally analyze four factors—referred to as the "*Lax* Factors"[6]—to determine financial interest. The *Lax* Factors include: (i) the number of gross shares purchased during the class period; (ii) the number of net shares purchased during the class period; (iii) the total net funds expended during the class period; and (iv) the approximate loss suffered. *See, e.g., In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 100 (S.D.N.Y. 2005). In light of each of these factors, Mr. Patel's financial interest is as follows:

| Total Shares Purchased During Class Period | Net Shares Purchased During Class Period | Net Funds Expended During Class Period | Approximate Loss |
|---|---|---|---|
| 20,200 | 12,500 | $498,333.32 | $274,159.82 |

As demonstrated herein, Mr. Patel believes that it has the largest financial interest in this case.

---

[6] *See Lax v. First Merch. Acceptance Corp*., No. 97-Civ-2715, 1997 WL461036, at *5(N.D. Ill. Aug 11, 1997).

### 3. Mr. Patel is Otherwise Qualified Under Rule 23

In addition to possessing the largest financial interest in the outcome of the litigation, the Lead Plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure" in order to be the presumptively most adequate plaintiff. 15 U.S.C. §78u-4(a)(3)(B). To this end, Rule 23(a) provides that a party may serve as a class representative only if the following four requirements are satisfied: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Of the four prerequisites to class certification, only two—typicality and adequacy—are relevant in the lead plaintiff analysis. Consequently, in deciding the motion to serve as Lead Plaintiff, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until the Lead Plaintiff moves for class certification. *See Pirelli Armstrong Tire Corp.*, 229 F.R.D. at 412. As detailed below, Mr. Patel satisfies both the typicality and adequacy requirements of Rule 23, thereby justifying his appointment as Lead Plaintiff.

#### a. The Claims of Mr. Patel are Typical of the Claims of the Class

Under Rule 23(a)(3), the claims or defenses of the representative parties must be typical of those of the class. "Typicality is satisfied where the claims arise from the same conduct from which the other class members' claims and injuries arise." *In re Initial Public Offering Sec. Litig.*, 214 F.R.D. 117, 121 (S.D.N.Y. 2002). Typicality does not require that there be no factual differences between the class representatives and the class members because it is the generalized nature of the claims asserted that determines whether the class representatives are typical. *See*

*Priest v. Zayre Corp.*, 118 F.R.D. 552, 555 (D. Mass. 1988); *See, e.g., In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. at 102 (finding a Lead Plaintiff movant's claim to by typical where "[m]embers of the class claim to have been injured by a fraudulent inflation of eSpeed's stock price" and the movant "makes the same claim."). However, the requirement that the proposed class representatives' claims be typical of the claims does not mean that the claims be identical. *See Pirelli Armstrong Tire Corp.*, 229 F.R.D. at 412.

Mr. Patel seeks to represent a class of purchasers of Longtop ADRs that have identical, non-competing and non-conflicting interests. Mr. Patel satisfies the typicality requirement because, just like all class members, he: (1) purchased or acquired Longtop ADRs during the Class Period; (2) at prices artificially inflated by the Company's materially false and misleading statements and/or omissions; and (3) suffered damages when corrective disclosures removed the inflation caused by the Defendants' fraud. Thus, Movant's claims are typical of those of other class members since his claims arise out of the same course of events.

### b. Mr. Patel Fulfills the Adequacy Requirement

Under Rule 23(a)(4), the representative parties must "fairly and adequately protect the interests of the class." The PSLRA directs the Court to limit its inquiry regarding the adequacy of the movant to: (1) whether there are any conflicts between the interests of the movant and the members of the Class; (2) whether the movant is an adequate representative of the Class; (3) whether the interests of the movant are clearly aligned with the members of the putative Class; and (4) whether there is evidence of any antagonism between their respective interests. *See* 15 U.S.C. §78u-4(a)(3)(B); *see also In re Initial Public Offering Sec. Litig.*, 214 F.R.D. at 121.

Here, Mr. Patel will more than adequately represent the interests of the class. First, Mr. Patel's interests are clearly aligned with the interests of the members of the proposed class and

there is no antagonism or conflict whatsoever between his interests and the interests of the class members.  Second, Mr. Patel shares common questions of law and fact with the members of the Class and his claims are typical of the other class members.   As evidenced by the injury suffered by Mr. Patel, who acquired 20,200 shares of Longtop ADRs at prices artificially inflated by the Company's materially false and misleading statements, Movant's interests are clearly aligned with the interests of the other members of the Class.

Furthermore, Mr. Patel has already taken significant steps demonstrating his willingness to protect the interests of the Class: (a) Movant has executed a sworn certification detailing his Class Period transactions (*See* Jones Decl., Exhibit B); (b) Movant has expressed his willingness to serve as Lead Plaintiff in this action (*See* Jones Decl., Exhibit B); (c) Mr. Patel timely moved the Court to be appointed as Lead Plaintiff; and (d) Movant has retained competent and experienced counsel who, as shown below, will be able to conduct this complex litigation in a professional manner in order to secure the best result for the class.  *See In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. N.J. 2001).

Thus, Mr. Patel, in addition to having the largest financial interest, also satisfies the typicality and adequacy requirements of Rule 23 of the Federal Rules of Civil Procedure.  Therefore, Movant satisfies all elements of the Exchange Act's prerequisites for appointment as Lead Plaintiff in this action pursuant to 15 U.S.C. §78u-4(a)(3)(B)(iii).

### III. THE COURT SHOULD APPROVE MR. PATEL'S SELECTION OF LEAD COUNSEL AND LIAISON COUNSEL

Pursuant to the PSLRA, the Lead Plaintiff shall, subject to Court approval, select and retain counsel to represent the class.  15 U.S.C. §78u-4(a)(3)(B)(v).  Moreover, the Court should not disturb the Lead Plaintiff's choice of counsel unless "necessary to protect the interests of the plaintiff class."  *See* Statement of Managers—The "Private Securities Litigation Reform Act of

1995," 141 Cong. Rec. H14691-08, at H13700 (daily ed. Nov. 28, 1995); *see also In re Cavanaugh*, 306 F.3d 726, 732-733 (9th Cir. Cal. 2002) (The court should honor the lead plaintiff's selection of counsel except in extreme circumstances, where the selection of counsel appears "irrational" or is otherwise clearly against the interests of the class members).

In that regard, Movant has selected the law firm of Saxena White to serve as Lead Counsel to pursue this litigation on his behalf and on behalf of the class, and he has selected Trinko to serve as Liaison Counsel. As mentioned above, Saxena White possesses extensive experience litigating securities class actions and has successfully prosecuted numerous securities fraud class actions on behalf of injured investors. As demonstrated by its firm resume, Saxena White has been appointed as Lead or Lead Counsel in landmark, precedent-setting class actions. See Jones Decl., Exhibit D.

Saxena White is a well-established, nationwide firm with an extensive and impressive track record of prosecuting complex litigation. With offices in Florida, Massachusetts, and Montana, and with attorneys that are members of the California Bar and this Court, Saxena White is well-positioned to handle complex shareholder litigation across the country. In litigating securities class actions, shareholder derivative actions, breach of fiduciary duty class actions, merger & acquisition challenges and consumer class actions, Saxena White has repeatedly demonstrated an ability to provide plaintiffs with superior representation as Lead Counsel. The firm's considerable efforts have led to groundbreaking settlements and judgments resulting in a collective recovery in the hundreds of millions of dollars. Courts throughout the country have recognized that Saxena White has the experience and resources to successfully and efficiently prosecute complex class and derivative actions as Lead Counsel.

For instance, acting as sole Class Counsel in a securities fraud action against SIRVA, Inc., Saxena White gained final approval from the Northern District of Illinois of a $53.3 million settlement for shareholders. *See Central Laborers' Pension Fund v. SIRVA, Inc., et. al.*, No. 04 CV-07644 (N.D. Ill. November 2, 2007). In addition to the monetary component of the settlement, SIRVA made significant reforms to its internal controls policies, including discarding the SIRVA Board of Directors plurality standard for director elections, and strengthening requirements regarding director attendance at shareholder meetings. The development and implementation of these reforms (which the company recognized was a main result of the litigation) was truly a testament to the negotiating and litigation acumen that Saxena White demonstrated during the course of this complex action.

Further, the Honorable William S. Duffey, Jr. of the Northern District of Georgia, also noted that Saxena White's lawyers act with "dignity and respect," produce "well-done pleadings," are "thorough [and] insightful," and "fight[] as hard but as honestly and professionally as they can for the interest of their clients." *In re Freidman's Sec. Litig.*, 1:03-CV-3475-WSD (N.D. Ga. Feb. 5, 2009). Similarly, the Honorable Judge Jed S. Rakoff, a noted Judge of the Southern District of New York, recognized that Saxena White had performed "excellent work" in this "important case" on behalf of Merrill Lynch and its shareholders worldwide. *In re Merrill Lynch & Co., Inc. Securities, Derivative and ERISA Litig.*, 4:07 Civ. 9633 (JSR) (S.D.N.Y. Jan. 20, 2009).

In approving the settlement in Klien v. FPL Group, Inc., United States District Court Judge Alan S. Gold recognized that the action presented "complex and novel legal issues…[where] the likelihood of success for Plaintiffs at the outset of the case was very low."

In approving the exceptional settlement that was eventually reached after years of hard fought litigation, Judge Gold stated:

> Plaintiffs' counsel, a highly experienced group of lawyers with national reputations in large securities class actions, recovered an unprecedented amount of money for shareholders as a result of this settlement - $22.25 million in addition to sweeping corporate governance changes which FPL Group has agreed to implement.

In terms of derivative litigation, Saxena White is also currently serving as Lead Counsel in several of the most significant derivative cases in the nation.  For instance, in *In re Bank of America Corp. Securities, Derivative and ERISA Litigation, No. 09-MD-2058 (S.D.N.Y.)*, the firm was appointed as Lead Counsel from amongst numerous firms, with Judge Chin expressly noting that Saxena White is "experienced and qualified to serve as lead counsel."  Similarly, in *In re Goldman Sachs Group, Inc. Derivative Litigation*, Master File No. 10 Civ. 3614-PAC (S.D.N.Y.), Judge Crotty appointed Saxena White as Lead Counsel, and specifically mentioned that "Saxena White is well qualified to play its role as lead counsel.  The pleadings it filed in this matter, including the motion papers, are competent and professional."  Saxena White also served as Lead Counsel in another noteworthy derivative action, *Lee P. Rosky v. Todd S. Farha, et al.*, No. 8:07-cv-1952-VMC-MAP (Consolidated) (M.D.Fla. Filed Nov. 7, 2007), involving claims against WellCare Health Care Plans, Inc.  Accordingly, the Court may be assured that, in the event the instant motion is granted, the members of the Class will receive the highest caliber legal representation available.

Additionally, Mr. Patel has selected Trinko to serve as Liaison Counsel.  Trinko has extensive experience prosecuting complex litigation, including securities fraud class actions, and will serve to facilitate the litigation on a local level.

Because there is nothing to suggest that Mr. Patel or his counsel will not fairly and adequately represent the Class, or that Mr. Patel is subject to unique defenses—which is the *only* evidence that can rebut the presumption of inadequacy under the PSLRA—this Court should appoint Mr. Patel as Lead Plaintiff and approve his selection of Saxena White as Lead Counsel and Trinko as Liaison Counsel for the Class.

## CONCLUSION

For all of the foregoing reasons, Mr. Patel respectfully request that this Court: (1) consolidate the Actions pursuant to Fed. R. Civ. P. 42(a); (2) appoint Mr. Patel as Lead Plaintiff pursuant to §21D(a)(3)(B); and (3) approve Movant's selection of Saxena White as Lead Counsel and Trinko as Liaison Counsel.

Dated: July 22, 2011

**LAW OFFICES OF CURTIS V. TRINKO, LLP**

By: /s/ Curtis V. Trinko
Curtis V. Trinko (CT-1838)
16 West 46th Street, 7th Floor
New York, New York 10036
Tel: 212 490-9550
Fax: 212 986-0158
Email: Ctrinko@trinko.com

**SAXENA WHITE P.A.**

Christopher S. Jones (CJ-4131)
Joseph E. White III
Lester R. Hooker
2424 N. Federal Highway
Suite 257
Boca Raton, FL 33431
Tel: 561 394-3399
Fax: 561 394-3082

*Counsel for Movant Ramesh Patel*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 22nd day of July, 2011, I presented the foregoing to the Clerk of the Court for filing and uploading to the CM/ECF system.

*/s/Curtis V. Trinko*
Curtis V. Trinko
