UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X
                                                             )
                                                             )   Civil Action No. 11-cv-3658-SAS
                                                             )
IN RE LONGTOP FINANCIAL TECHNOLOGIES            )
LIMITED SECURITIES LITIGATION                            )   ECF CASE
                                                             )   Electronically Filed
                                                             )
                                                             )
                                                             )
-------------------------------------------------------------X


**DEFENDANT DELOITTE TOUCHE TOHMATSU CPA LTD.'s
MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS
<u>THE CONSOLIDATED CLASS ACTION COMPLAINT</u>**


**ORAL ARGUMENT REQUESTED**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...........................................................................................1

BACKGROUND ..............................................................................................................3

ARGUMENT ..................................................................................................................5

I.     THE COMPLAINT DOES NOT ALLEGE FACTS THAT GIVE RISE TO A STRONG
       INFERENCE THAT DTTC ACTED WITH SCIENTER...................................................6

       A.     The Most Compelling Inference To Be Drawn From The Complaint Is That
              DTTC Did Not Act Recklessly ...............................................................................8

       B.     Plaintiffs' Allegations Regarding GAAS Violations And Purported Red Flags Do
              Not Support A Compelling And Cogent Inference That DTTC Acted With
              Scienter ............................................................................................................10

              1.     The Complaint's allegations against DTTC relating to cash and bank loan
                     balances are based solely on alleged violations of auditing standards,
                     which is insufficient to demonstrate scienter.............................................11

              2.     The Complaint's allegations of GAAS violations and purported red flags
                     relating to XLHRS are insufficient to demonstrate scienter......................14

II.    THE COMPLAINT DOES NOT PLEAD WITH PARTICULARITY THAT DTTC
       MADE A MATERIAL MISREPRESENTATION ...........................................................22

CONCLUSION...............................................................................................................23

# TABLE OF AUTHORITIES

CASES                                                                                            PAGES

*Anwar v. Fairfield Greenwich Ltd.*,
    728 F. Supp. 2d 372 (S.D.N.Y. 2010)......................................................2, 13, 18

*Bond Opportunity Fund v. Unilab Corp.*,
    2003 WL 21058251 (S.D.N.Y. May 9, 2003).........................................................23

*Buttonwood Tree Value Partners, LP v. Sweeney*,
    2012 WL 2086607 (C.D. Cal. June 7, 2012) ........................................................22

*Citadel Equity Fund Ltd. v. Aquila, Inc.*,
    168 Fed. Appx. 474 (2d Cir. 2006)..................................................................4

*City of Omaha, Neb. Civilian Employees' Retire. Sys. v. CBS Corp.*,
    679 F.3d 64 (2d Cir. 2012) ........................................................................23

*DiLeo v. Ernst & Young*,
    901 F.2d. 624 (7th Cir. 1990) .....................................................................7

*Ernst & Ernst v. Hochfelder*,
    425 U.S. 185 (1976)................................................................................6

*In re Doral Fin. Corp. Sec. Litig.*,
    563 F. Supp. 2d 461 (S.D.N.Y. 2008)...........................................................14, 21

*In re Fannie Mae 2008 Sec. Litig.*,
    742 F. Supp. 2d 382 (S.D.N.Y. 2010)...........................................................12, 23

*In re Lehman Bros. Sec. & ERISA Litig.*,
    799 F. Supp. 2d 258 (S.D.N.Y. 2011).......................................................3, 11, 22, 23

*In re Livent, Inc. Sec. Litig.*,
    78 F. Supp. 2d 194 (S.D.N.Y. 1999)...............................................................20

*In re Longtop Fin. Tech. Ltd. Secs. Litig.*,
    11-cv-03685-SAS, slip op. (S.D.N.Y. June 29, 2012)...................................3, 6, 7, 8, 9, 15, 16

*In re Marsh & Mclennan Cos., Inc. Sec. Litig.*,
    501 F. Supp. 2d 452 (S.D.N.Y. 2006).........................................................7, 17, 18

*In re Merkin*,
    817 F. Supp. 2d 346 (S.D.N.Y. 2011)...........................................................13, 20

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*,
    273 F. Supp. 2d 351 (S.D.N.Y. 2003)..............................................................23

*In re MRU Holdings Sec. Litig.*,
769 F. Supp. 2d 500 (S.D.N.Y. 2011)..................................................................13

*In re Scottish Re Group Sec. Litig.*,
524 F. Supp. 2d 370 (S.D.N.Y. 2007).............................................2, 7, 8, 13, 16, 20

*In re Tremont Sec. Law, State Law, & Ins. Litig.*,
703 F. Supp. 2d 362 (S.D.N.Y. 2010)....................................................................8

*Lewis v. Straka*,
2007 WL 2332421 (E.D. Wis. Aug. 13, 2007) ...............................................12, 23

*Meridian Horizon Fund, LP v. KPMG (Cayman)*,
2012 WL 2754933 (2d Cir. July 10, 2012)..............................................11, 14, 18

*Novak v. Kasaks*,
216 F.3d 300 (2d Cir. 2000) .................................................................8, 16, 20

*Pub. Emps.' Ret. Ass'n of Colo. v. Deloitte & Touche LLP*,
551 F.3d 305 (4th Cir. 2009) .................................................................9, 10

*Puskala v. Koss Corp.*,
799 F. Supp. 2d 941 (E.D. Wis. 2011)..................................................................12

*Reiger v. PricewaterhouseCoopers LLP*,
117 F. Supp. 2d 1003 (S.D. Cal. 2000)..................................................................7

*Rombach v. Chang*,
355 F.3d 164 (2d Cir. 2004) ...............................................................................6

*Saltz v. First Frontier, LP*,
782 F. Supp. 2d 61 (S.D.N.Y. 2010)....................................................................18

*Sloane Overseas Fund, Ltd. v. Sapiens Int'l Corp. N.V.*,
941 F. Supp. 1369 (S.D.N.Y. 1996)....................................................................20

*South Cherry Street, LLC v. Hennessee Group LLC*,
573 F.3d 98 (2d Cir. 2009)..................................................................................20

*Stephenson v. PricewaterhouseCoopers, LLP*,
768 F. Supp. 2d 562 (S.D.N.Y. 2011)..................................................................13

*Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*,
552 U.S. 148 (2008) ...........................................................................................6

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007) ..............................................................................2, 6, 7, 8

*Zucker v. Sasaki*,
 963 F. Supp. 301 (S.D.N.Y. 1997)..........................................................................................7

**STATUTES**

15 U.S.C. § 78u-4 ...................................................................................................................6

**OTHER AUTHORITIES**

Interim PCAOB Auditing Standard AU 230 ................................................................12, 13, 22

Interim PCAOB Auditing Standard AU 316 ....................................................................12, 13

Interim PCAOB Auditing Standard AU 334 ...........................................................................16

Defendant Deloitte Touche Tohmatsu CPA Ltd. ("DTTC"), by its attorneys, respectfully submits this memorandum in support of its motion to dismiss Plaintiffs' Consolidated Class Action Complaint (the "Complaint" or "CAC") as to DTTC.[1]

## PRELIMINARY STATEMENT

Plaintiffs seek to hold DTTC liable for federal securities fraud on the premise that DTTC recklessly performed its 2009 and 2010 audits of Longtop Financial Technologies, Ltd. ("Longtop" or the "Company") and turned a blind eye to the Company's alleged fraud. But the most compelling – indeed, the only cogent – inference to be drawn from the Complaint's allegations is *not* that DTTC acted recklessly, but rather that Longtop went to extraordinary lengths to conceal its fraud from DTTC and interfere with DTTC's audit process.

As Longtop's alleged conduct during DTTC's 2011 audit demonstrates, there can be no question as to the extent of Longtop's efforts to impede DTTC's audit and prevent the alleged fraud from coming to light. Within hours of discovering that DTTC was conducting a second round of bank confirmation procedures during its 2011 audit, Longtop officials – including its Chief Operating Officer – did everything they could to prevent DTTC from completing those audit procedures. Company officials called the banks and claimed that DTTC was not Longtop's auditor; dispatched employees to seize documents from the banks' premises; threatened to hold hostage DTTC auditors who were onsite at Longtop's premises unless they allowed Longtop to steal DTTC's audit files; and took those files. Longtop's Chairman then confessed to DTTC that there was "fake revenue in the past" and "fake cash recorded on the books," and that Longtop

---

[1] The parties have complied with this Court's Individual Rules of Practice and have exchanged letters prior to the filing of this motion. Declaration of Gary Bendinger ("Bendinger Decl."), filed concurrently herewith, at ¶ 2.

"senior management" was involved – all information that Longtop previously had hidden from DTTC.

DTTC promptly blew the whistle, publicly resigning as Longtop's auditor.  DTTC did not complete its audit and refused to issue an audit report on Longtop's 2011 financial statements.  In its resignation letter, DTTC described in detail the "very serious defects" it had found and management's efforts to impede DTTC's audit; made note of the Company's obligations under Section 10A of the Securities Exchange Act of 1934 (the "Exchange Act") with respect to illegal acts; and requested that the Company take immediate steps to prevent continued reliance on DTTC's prior audit reports.

Notwithstanding DTTC's efforts to expose and blow the whistle on potential fraud at Longtop, Plaintiffs now allege that DTTC should be held liable for violation of Section 10(b) of the Exchange Act and Rule 10b-5 based on its audit reports on Longtop's 2009 and 2010 year-end financial statements.  As explained below, the Complaint itself demonstrates that Plaintiffs' claim against DTTC should be dismissed with prejudice.

*First*, Plaintiffs have not – and cannot – satisfy the "especially stringent" standards for pleading scienter against outside auditors, such as DTTC.  *See Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp 372, 450 (S.D.N.Y. 2010).  As this Court and others have consistently recognized, "[t]he standard for pleading auditor scienter is demanding.  For an accountant to be found to have acted recklessly during an audit, its alleged misconduct must approximate an actual intent to aid in the fraud being perpetrated by the audited company."  *In re Scottish Re Group Sec. Litig.*, 524 F. Supp. 2d 370, 385 (S.D.N.Y. 2007) (internal quotation marks and footnotes omitted).  When comparing the competing inferences to be drawn from the Complaint, as required by the Private Securities Litigation Reform Act ("PSLRA") and *Tellabs, Inc. v.*

2

*Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007), the most compelling and cogent inference is that DTTC did not intend to aid in the alleged fraud at Longtop during its 2009 and 2010 audits. As the Complaint itself alleges, Longtop went to great lengths to conceal the fraud from DTTC, and DTTC acted promptly and appropriately in response to information it uncovered that was suggestive of potential fraud at Longtop.

*Second*, Plaintiffs have not pled with the requisite particularity that DTTC made a false statement.  The only statements alleged to have been made by DTTC during the Class Period are its audit reports on Longtop's 2009 and 2010 financial statements.  But those audit reports are the result of professional judgments and subjective assessments, and are properly analyzed as opinions under the securities laws.  *In re Lehman Bros. Sec. & ERISA Litig.*, 799 F. Supp. 2d 258, 299-304 (S.D.N.Y. 2011).  There are no allegations that DTTC did not believe the statements in its audit reports when they were issued.  To the extent the Complaint alleges that DTTC acted recklessly in issuing its audit reports, the Complaint's allegations are wholly conclusory and without factual support.

## BACKGROUND[2]

Defendant Longtop was a "'leading provider of software and information technology, or IT, services targeting the financial services industry in China.'"  CAC ¶ 3.  Longtop and its predecessor entities had been in operation since at least 2000.  *See* 6/29/2009 Form 20-F of Longtop ("2009 Form 20-F") (attached as Ex. A to the Bendinger Decl.) at F-9.  On October 24, 2007, Longtop conducted an initial public offering ("IPO") of its American Depositary Shares

---

[2] This Court has previously described the allegations in this case, including in its opinion and order denying Defendant Derek Palaschuk's motion to dismiss.  *In re Longtop Fin. Tech. Ltd. Secs. Litig.*, 11-cv-03685-SAS, slip op. (S.D.N.Y. June 29, 2012) (Dkt. 80, "Palaschuk Op.").  To avoid unnecessary duplication, this memorandum focuses only on the allegations relevant to DTTC and its motion to dismiss.

("ADSs") on the New York Stock Exchange ("NYSE").  CAC ¶¶ 21, 39.  Longtop's IPO was

underwritten by, among others, Goldman Sachs (Asia) LLC and Deutsche Bank Securities, Inc.,

and Longtop was represented by Latham & Watkins LLP in connection with the IPO.  10/24/07

Form 424(b)(4) of Longtop ("Prospectus") (attached as Ex. B to Bendinger Decl.) at 156, 159.[3]

During the Class Period (*i.e.*, June 29, 2009 to May 17, 2011), Defendant DTTC served

as Longtop's independent auditor and issued audit reports on Longtop's financial statements and

internal controls over financial reporting for the fiscal years ending March 31, 2009 and March

31, 2010.  Longtop included these audit reports in its 2009 and 2010 Annual Reports on Form

20-F filed with the SEC on June 29, 2009 and July 16, 2010, respectively.  CAC ¶¶ 29, 66, 89.

DTTC's 2009 and 2010 audit reports stated, among other things, that DTTC "conducted [its]

audits in accordance with the standards of the Public Company Accounting Oversight Board

(United States),"[4] that DTTC "believe[d] that [its] audits provide a reasonable basis for [its]

opinion," and that, "[i]n [DTTC's] opinion," Longtop's "consolidated financial statements

present fairly, in all material respects, the financial position of Longtop Financial Technologies

Limited and subsidiaries."  2009 Form 20-F at F-2; 7/16/2010 Form 20-F of Longtop ("2010

Form 20-F") (attached as Ex. C to the Bendinger Decl.) at F-2.  DTTC also expressed

unqualified opinions on Longtop's internal control over financial reporting.  2009 Form 20-F at

99; 2010 Form 20-F at 96-97.

Although Longtop also engaged DTTC to audit Longtop's financial statements for the

fiscal year ending March 31, 2011, as explained above, DTTC was unable to complete that audit

---

[3] The Court may consider SEC filings in determining this motion to dismiss.  *See Citadel Equity Fund Ltd. v. Aquila, Inc.*, 168 Fed. Appx. 474, 476 (2d Cir. 2006).

[4] Following the Sarbanes-Oxley Act, the standards promulgated by the Public Company Accounting Oversight Board (United States) ("PCAOB") are the generally accepted auditing standards of U.S. public companies.

after Longtop officials held DTTC's auditors hostage, stole DTTC's audit files, and engaged in other efforts to prevent DTTC from carrying out its audit procedures. CAC ¶ 58. Citing "undisclosed material corporate developments regarding the Company," the NYSE halted trading of Longtop's ADSs on May 17, 2011. *Id*. ¶ 55. Two days later, on May 19, 2011, Longtop's CFO, Defendant Palaschuk, resigned. *Id*. ¶ 56. The following day, Longtop's Chairman, Defendant Ka Xiao Gong, called DTTC and stated "there were fake revenue in the past so there were fake cash recorded on the books," and admitted that "senior management" was involved. *Id*. ¶ 58.

DTTC noisily resigned as Longtop's auditor on May 22, 2011, without issuing an audit opinion on Longtop's 2011 financial statements. CAC ¶ 57. Through its resignation letter addressed to Longtop's Audit Committee (which Longtop was required to file with the SEC), DTTC made public the "very serious defects" found through DTTC's bank confirmation procedures, the steps Longtop management had taken to impede DTTC's audit, and Mr. Ka's confession. *Id*. ¶ 58. DTTC also noted that, "without providing any legal conclusion, the circumstances mentioned above could constitute illegal acts for purposes of Section 10A of the Securities Exchange Act of 1934" and "remind[ed] the Board of its obligations under Section 10A…." *Id*. Unable to undertake further investigation of Mr. Ka's statement and the other issues identified during its audit (given its resignation and Longtop's obvious efforts to impede its audit procedures), DTTC further requested that Longtop "take immediate steps to make the necessary 8-K filing [with the SEC] to state that continuing reliance should no longer be placed on our audit reports on the previous financial statements." *Id*.

## ARGUMENT

Plaintiffs assert a single claim against DTTC, *i.e.*, an alleged violation of Section 10(b) of the Exchange Act and Rule 10b-5. CAC ¶ 178. To state such a claim against DTTC, Plaintiffs

5

must allege "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 157 (2008); *accord* Palaschuk Op. at 20-21.

　　　To survive a motion to dismiss, Plaintiffs' Complaint must satisfy the PSLRA's "[e]xacting pleading requirements" for federal securities fraud cases. *Tellabs*, 551 U.S. at 313. Under the PSLRA, the Complaint must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1)(B). The Complaint also must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2)(A). In addition, because Plaintiffs' claim is one for fraud, the Complaint must comply with Rule 9(b) and "state with particularity the circumstances constituting fraud." *See Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004). As explained below, the Complaint fails to meet these standards and must be dismissed.

## I.　　THE COMPLAINT DOES NOT ALLEGE FACTS THAT GIVE RISE TO A STRONG INFERENCE THAT DTTC ACTED WITH SCIENTER.

　　　Plaintiffs' Complaint must be dismissed as to DTTC because it fails to plead sufficiently that DTTC acted with scienter, a "mental state embracing intent to deceive, manipulate or defraud." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n.12 (1976). Allegations of negligence or even gross negligence are not enough. *See id*. Under the PSLRA, a Rule 10b-5 claim must be dismissed unless the facts alleged support an inference of scienter that is "more than merely 'reasonable' or 'permissible' – it must be cogent and compelling…. A complaint

will survive … only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs*, 551 U.S. at 324.

A plaintiff may plead scienter by "alleging facts (1) showing that the defendants had both motive and opportunity to commit the fraud or (2) constituting strong circumstantial evidence of conscious misbehavior or recklessness."  Palaschuk Op. at 22 (quoting *ATSI Comm., Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007)).  "[W]here motive is not alleged and plaintiff relies entirely on allegations of recklessness in asserting scienter, the evidence presented must be proportionally greater." *Zucker v. Sasaki*, 963 F. Supp. 301, 309 (S.D.N.Y. 1997) (citing *Beck v. Mfrs. Hanover Trust Co.*, 820 F.2d 46, 50 (2d Cir. 1987)).

As this Court and others have recognized, the standard for pleading scienter with respect to independent auditors, such as DTTC, is "demanding."  *Scottish Re Group*, 524 F. Supp. 2d at 385; *In re Marsh & Mclennan Cos., Inc. Sec. Litig.*, 501 F. Supp. 2d 452, 488 (S.D.N.Y. 2006). This is because of a "lack of rational economic incentive for an independent accountant to participate in fraud, the client's central role in providing information to the accountant, and the complex professional judgment required to perform an audit."  *Reiger v. PricewaterhouseCoopers LLP*, 117 F. Supp. 2d 1003, 1008 (S.D. Cal. 2000).

Thus, auditors are positioned differently than corporate insiders.  There is no obvious motive for an auditor to risk its reputation for a single client.  *DiLeo v. Ernst & Young*, 901 F.2d 624, 629 (7th Cir. 1990).  And Plaintiffs do not allege here any such motive for DTTC.  This is unlike Plaintiffs' allegations regarding Palaschuk, whose motive (*i.e.*, "a large [$4 million] stock sale during the Class Period") and opportunity, the Court concluded, are "[a]pparent" from the Complaint.  Palaschuk Op. at 36-37.

Likewise, as the Second Circuit has recognized, the scope of the duty to monitor for independent auditors (such as DTTC) is different than the duty that applies to company directors and officers (such as Palaschuk).  When pleading that a corporate insider was reckless, "plaintiffs may either specifically allege defendants' knowledge of facts or access to information contradicting defendants' public statements, or allege that defendants failed to check information they had a duty to monitor."  Palaschuk Op. at 23-24 (quoting *In re Gildan Activewear, Inc. Sec. Litig.*, 636 F. Supp. 2d 261, 272 (S.D.N.Y. 2009)).  For independent auditors, however, "there are limits to the scope of liability for failure adequately to monitor the allegedly fraudulent behavior of others." *Novak v. Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000).  "[M]erely alleging that the auditor had access to the information by which it could have discovered the fraud is not sufficient."  *In re Tremont Sec. Law, State Law, & Ins. Litig.*, 703 F. Supp. 2d 362, 371-72 (S.D.N.Y. 2010).  Indeed, recklessness, in the context of an outside auditor, is a high bar – "[f]or an accountant to be found to have acted recklessly during an audit, its alleged misconduct must 'approximate an actual intent to aid in the fraud being perpetrated by the audited company.'"  *Scottish Re Group*, 524 F. Supp. 2d at 385 (quoting *In re Refco, Inc. Sec. Litig.*, 503 F. Supp. 2d 611, 657 (S.D.N.Y. 2007)).  Here, Plaintiffs have failed to plead facts demonstrating that DTTC's conduct met this standard.

### A.    The Most Compelling Inference To Be Drawn From the Complaint Is That DTTC Did Not Act Recklessly.

The most compelling and cogent inference to be drawn from the Complaint's allegations is that DTTC's mental state during its 2009 and 2010 audits did not approximate an actual intent to aid in the Longtop fraud, as required to plead scienter based on recklessness.  *See Tellabs*, 551 U.S. at 314; *Scottish Re Group*, 524 F. Supp. 2d at 385; Palaschuk Op. at 23.  Plaintiffs' own allegations demonstrate that:  (1) Longtop management went to great lengths to conceal its fraud from DTTC, and (2) when DTTC identified potential fraud at Longtop, DTTC undertook to

investigate Longtop's potential fraud and noisily blew the whistle when Longtop impeded

DTTC's investigation.  Simply put, if DTTC had been actively or tacitly complicit in Longtop's

fraud, both DTTC's *and* Longtop's conduct here would have been much different.

First, the Complaint makes clear that Longtop's management went to great lengths to

conceal its fraud from DTTC.  The Complaint alleges that Longtop deliberately interfered with

DTTC's audit process, CAC ¶¶ 58-59; "Longtop … falsified its cash positions and bank loan

balances by manipulating and lying about bank records and confirmations," *id*. ¶ 59; Longtop

"interfere[ed] with DTT's contacts" with banks, *id*.; Longtop forged false audit confirmation

replies from banks, *id*. ¶ 58; Longtop created false books and records misstating Longtop's

deposit balances and inventing transactions, *id*.; and Longtop concealed "significant bank

borrowings" from DTTC, *id*.  Indeed, the Complaint alleges that Longtop was so determined to

prevent DTTC from learning the details of the alleged fraud that Longtop held DTTC auditors

(and later, their audit files) hostage and stole third-party confirmation documents from banks.  *Id*.

Thus, the "stronger and more plausible inference" is that DTTC was the "victim[] of [Longtop's]

fraud rather than its enabler[]."  *Pub. Emps.' Ret. Ass'n of Colo. v. Deloitte & Touche LLP*, 551

F.3d 305, 316 (4th Cir. 2009).

Second, the Complaint's allegations show that when DTTC learned of potential fraud at

Longtop during its 2011 audit, DTTC did not recklessly turn a blind eye to or acquiesce in that

potential fraud.  When information obtained during DTTC's 2011 bank confirmation procedures

suggested that Longtop may have falsified records relating to its bank deposits and borrowings

and had potentially interfered with DTTC's bank confirmation process, DTTC did not sweep that

information under the rug.  Instead, DTTC attempted to investigate further.  CAC ¶ 58.  And

when Longtop prevented DTTC from carrying out that further investigation, DTTC refused to

allow its name to be associated with Longtop's financial statements (past or current) and resigned in such a fashion so as to ensure that the SEC and the investing public would be aware of the circumstances leading up to its resignation.  *Id.*  The most compelling and logical inference to be drawn is not that DTTC turned a blind eye in its 2009 and 2010 audits to what caused it to resign during its 2011 audit; it is that DTTC acted with the same level of due care and professionalism in its 2009 and 2010 audits as it demonstrated during its 2011 audit.

> **B.    Plaintiffs' Allegations Regarding GAAS Violations And Purported Red Flags Do Not Support A Compelling And Cogent Inference That DTTC Acted With Scienter.**

Plaintiffs view Longtop's lies to DTTC through the looking glass, asserting that DTTC's discovery of the Longtop fraud during its 2011 audit means that DTTC "must have" performed its 2009 and 2010 audits recklessly.  As explained below, Plaintiffs' allegations amount to impermissible attempts to plead fraud by hindsight and through allegations of negligence.  Neither is enough.  Although Plaintiffs attempt to bolster these allegations by claiming the existence of various "red flags," Plaintiffs' purported "red flags" merely consist of short seller hyperbole characterizing *facts* long known to the market and that did not indicate that Longtop was engaged in fraud.

Plaintiffs attempt to allege that DTTC acted recklessly in two general respects: (1) Plaintiffs allege that DTTC "fail[ed] to undertake any meaningful investigation with respect to Longtop's cash and bank loan balances," CAC ¶ 129, and (2) Plaintiffs allege that DTTC "fail[ed] to undertake any meaningful investigation" with respect to alleged related party transactions with Xiamen Longtop Human Resources Services ("XLHRS") and "the impact of these transactions on Longtop's financial results[,] particularly on reported and [sic] gross margins and net income,"  *id.* ¶ 137.  Both arguments, however, are unsupported by *factual*

allegations and do not establish the strong inference of scienter essential to Plaintiffs' claim against DTTC.

> 1. **The Complaint's allegations against DTTC relating to cash and bank loan balances are based solely on alleged violations of auditing standards, which is insufficient to demonstrate scienter.**

Plaintiffs' fundamental theory with respect to Longtop's cash and bank loan balances is that "[h]ad DTT exercised even the most cursory of audit procedures" during its 2009 and 2010 audits, "it would have discovered serious defects in Longtop's financial records," *i.e.*, the defects identified by DTTC during its 2011 audit.  CAC ¶ 128.  Plaintiffs' theory is flawed in numerous respects and cannot support a strong inference of scienter.

At its core, Plaintiffs' theory is "an archetypical example of impermissible 'allegations of fraud by hindsight.'"  *Meridian Horizon Fund, LP v. KPMG (Cayman)*, 2012 WL 2754933, at *3 (2d Cir. July 10, 2012) (quoting *Novak*, 216 F.3d at 309).  Plaintiffs ask this Court to find that whenever an auditor identifies a possible fraud during an audit, the auditor was "consciously reckless" in not identifying that fraud in prior audit years.  That is not the law, and would lead to an absurd result.  Under Plaintiffs' theory, whenever an auditor blows the whistle on its client, scienter would be established *as to the auditor*.  Auditors thus would have a perverse incentive *not* to do what DTTC did here – uncover and publicize fraud.

Although Plaintiffs speculate that DTTC must have failed to exercise due care, to "adequately plan its audit[s], and to "use appropriate analytical procedures," CAC ¶¶ 123-27, Plaintiffs' boilerplate allegations contain no specific facts supporting an inference that DTTC did not follow these professional standards in conducting its 2009 and 2010 audits.  Such conclusory allegations of auditing standards violations are inadequate to create an inference of scienter under the PSLRA.  *See, e.g., Lehman Bros.*, 799 F. Supp. 2d at 300-01 & n.291 (finding allegation that auditor violated auditing standards requirement to "adequately plan" did not

11

support allegation that audit report was false when the complaint did not "identify any planning deficiencies or, for that matter, what planning [the auditor] did that allegedly was insufficient"); *In re Fannie Mae 2008 Sec. Litig.*, 742 F. Supp. 2d 382, 412-13 (S.D.N.Y. 2010) (granting auditor's motion to dismiss securities claim when the Plaintiff "fail[ed] to plead facts supporting a conclusion that Deloitte fraudulently violated GAAS"); *Lewis v. Straka*, 2007 WL 2332421, at *2 (E.D. Wis. Aug. 13, 2007) (rejecting allegations that auditor "should have exercised greater professional skepticism and should have scrutinized [the corporation's] assertions more assiduously" because "plaintiffs allege no supporting facts").

Moreover, Plaintiffs' basic premise – that DTTC "must have" failed to comply with professional standards in its 2009 and 2010 audits because potential fraud was detected during the 2011 audit – is simply wrong. PCAOB standards expressly recognize that "even a properly planned and performed audit may not detect a material misstatement resulting from fraud." *See, e.g.*, Interim PCAOB Auditing Standard AU 316 ("AU 316"), *Consideration of Fraud in a Financial Statement Audit*, at ¶ 316.12;[5] *see also Puskala v. Koss Corp.*, 799 F. Supp. 2d 941, 953 (E.D. Wis. 2011) ("The occurrence of the fraud is also consistent with [the auditor] having performed an adequate audit and [the fraudster] succeeding in thwarting [the auditor's] investigation."). Indeed, "the subsequent discovery that either a material misstatement, whether from error or fraud, exists in the financial statements … does not, in and of itself, evidence (a) failure to obtain reasonable assurance, (b) inadequate planning, performance, or judgment, (c) the absence of due professional care, or (d) a failure to comply with the standards of the Public Company Accounting Oversight Board (United States)." Interim PCAOB Auditing Standard AU 230 ("AU 230"), *Due Professional Care in the Performance of Work*, at ¶ 230.13.

---

[5] PCAOB standards cited herein are attached as Ex. D to the Bendinger Declaration.

PCAOB standards further recognize that the very types of fraud the Complaint alleges against Longtop – such as falsifying books and records, falsifying bank confirmations, and lying to DTTC (CAC ¶¶ 58-59) – can make it even more difficult for a properly planned and performed audit to detect a material misstatement in a company's financial statements:

> For example, auditing procedures may be ineffective for detecting an intentional misstatement that is concealed through collusion among personnel within the entity and third parties or among management or employees of the entity.  Collusion may cause the auditor who has properly performed the audit to conclude that evidence provided is persuasive when it is, in fact, false.  In addition, an audit conducted in accordance with generally accepted auditing standards rarely involves authentication of documentation, nor are auditors trained as or expected to be experts in such authentication.

AU ¶ 230.12; *accord* AU ¶ 316.09-12.  That, of course, is exactly what transpired here.  The Complaint suggests that there was collusion among Longtop's management and between management and third-party bank personnel to conceal Longtop's fraud from DTTC.  *See* CAC ¶¶ 58-59.

Plaintiffs' *only* support for its claim that DTTC acted recklessly with respect to auditing Longtop's cash and bank loan balances is a list of auditing standards with which DTTC allegedly failed to comply.  CAC ¶¶ 123-27.  As this Court and others in this Circuit have made clear, "allegations of GAAP or GAAS violations, standing alone, are insufficient to state a claim for relief against an accountant under the federal securities laws."  *In re Merkin*, 817 F. Supp. 2d 346, 358 (S.D.N.Y. 2011); *see also In re MRU Holdings Sec. Litig.*, 769 F. Supp. 2d 500, 518 (S.D.N.Y. 2011) ("a 'shoddy audit' does not establish an intent to defraud"); *Anwar*, 728 F. Supp. 2d at 450 ("Violations of professional auditing standards, without more, do not constitute strong circumstantial evidence of conscious recklessness."); *Scottish Re Group*, 524 F. Supp. 2d at 385, 398; *see also Stephenson v. PricewaterhouseCoopers, LLP*, 768 F. Supp. 2d 562, 568

(S.D.N.Y. 2011) (noting that it is "the well-settled law of this Circuit" that "alleged GAAP or GAAS violations do not establish scienter of their own force").

None of these allegations gives rise to an inference of scienter, let alone one that is at least as compelling and cogent as the inference of non-scienter.  The most compelling inference to be drawn is that DTTC did not discover potential fraud at Longtop during its 2009 and 2010 audits, "not because of recklessness, but because [Longtop's] management hid the fraud from [DTTC] just as it did from the public at large."  *In re Doral Fin. Corp. Sec. Litig.*, 563 F. Supp. 2d 461, 465 (S.D.N.Y. 2008), *aff'd by*, *W. Va. Inv. Mgmt. Bd. v. Doral Fin. Corp.*, 344 Fed. Appx. 717, 720 (2d Cir. 2009) ("Again, the more compelling inference arising from this constellation of facts is that Doral deceived Pricewaterhouse with its manipulated 'independent' valuations, rather than that Pricewaterhouse was reckless in its audits."); *see also Meridian Horizon Fund*, 2012 WL 2754933, at *3 ("[W]e agree with the district court that 'the more compelling inference as to why Madoff's fraud went undetected for two decades was his proficiency in covering up his scheme and deceiving the SEC and other financial professionals.'").

## 2.    The Complaint's allegations of GAAS violations and purported red flags relating to XLHRS are insufficient to demonstrate scienter.

Plaintiffs also allege that DTTC failed to undertake certain "audit procedures to ensure there were no undisclosed related-party transactions," and that "[e]ven the most cursory of audit procedures would have alerted DTT to the fact that Longtop had transferred the majority of its cost structure off-balance sheet to XLHRS, thereby creating the opportunity for a massive fraud...." CAC ¶ 134.  Plaintiffs' logic, however, is the equivalent of saying 1 + 1 = 3.

As Longtop disclosed in each of its Forms 20-F (including before the Class Period), Longtop contracted much of its workforce through third-party human resources companies, of

which XLHRS was one.  2010 Form 20-F at 79-80.  Pursuant to a contract executed by Longtop

and XLHRS on May 18, 2007, XLHRS supplied Longtop with employees in return for a

monthly service fee.  7/1/2008 Form 20-F of Longtop ("2008 Form 20-F") (attached as Ex. E to

Bendinger Decl.) at 93.  Although Longtop considered the contracted workforce to be Longtop

employees, XLHRS was responsible for managing payrolls, social insurance contributions, and

local residency permits. 2010 Form 20-F at 20, 79-80.

Plaintiffs' Complaint alleges no facts from which it can reasonably be inferred that

Longtop, in fact, "transferred the majority of its cost structure off-balance sheet to XLHRS."

Rather, Plaintiffs' theory is founded entirely on the speculations of two self-interested short

sellers who had a substantial financial motive to drive down the price of Longtop's ADSs,

including by creating rumors of potential accounting improprieties.  *See* Palaschuk Op. at 32

(noting the limited persuasiveness of short seller reports).  This Court determined that such

allegations were sufficient to plead with particularity that Palaschuk misstated the basis for

Longtop's growth.  *Id.*  But these short seller claims simply cannot carry the burden of satisfying

the "demanding" standard for pleading auditor recklessness – particularly where no motive has

been pled or can be ascribed to that auditor.  *See id.* at 23 ("[T]he strength of the circumstantial

allegations must be correspondingly greater" "[w]here motive is not apparent" and scienter is

pleaded by "identifying circumstances indicating conscious behavior by the defendant[.]").

Moreover, Plaintiffs' allegation that Longtop violated Statement on Financial Accounting

Standards 57 ("FAS 57") in failing to identify XLHRS as a "related party" is a red herring.  As

Interim PCAOB Auditing Standard 334 ("AU 334") indicates, the most reasonable inference is

that Longtop's gross margin *would have remained the same* even if it had identified XLHRS as a

related party:  "FASB Statement No. 57, *Related Party Disclosures* [AC section R36], gives the

15

requirements for related party disclosures. Certain accounting pronouncements prescribe the accounting treatment when related parties are involved; however, established accounting principles ordinarily do not require transactions with related parties to be accounted for on a basis different from that which would be appropriate if the parties were not related."  AU ¶ 334.02.

In addition, Plaintiffs' allegations of purported "red flags" are insufficient to transform their allegations of GAAP and GAAS violations into a compelling inference of recklessness.  *See Novak*, 216 F.3d at 309 (failure to identify problems with accounting practices "does not constitute reckless conduct sufficient for § 10(b) liability"); *Scottish Re Group*, 524 F. Supp. 2d at 385 (the standard for pleading auditor scienter "requires more than a failure to follow GAAP").

To the extent that Plaintiffs assert that Longtop's high gross margins should have been a "red flag" of fraud (*see* CAC ¶¶ 4-5, 45), such an assertion must be rejected.  As an initial matter, as the Court has noted, these gross margins were  publicly disclosed on the face of Longtop's 2009 and 2010 Form 20-Fs and financial statements.  *See* Palaschuk Op. at 6-8; CAC ¶¶ 65, 87. And it is well-settled in this circuit that the "failure … to interpret extraordinarily positive performance" by a company "as a sign of problems and thus to investigate further does not amount to recklessness under the securities laws."  *Novak*, 216 F.3d at 309.  As Plaintiffs themselves allege, analysts following the Company contemporaneously viewed Longtop as being in a "niche market poised for rapid growth, and Longtop seemed the perfect company to fill the market void and profit greatly in the process."  CAC ¶ 34.  Plaintiffs cannot now plausibly suggest that Longtop's apparent success should have put DTTC on notice that Longtop was engaged in fraud.

Plaintiffs also allege six other purported "red flags" which, in their view, "would have exposed" that XLHRS was "a related party" and that Longtop's relationship with XLHRS was used to "transfer[] the majority of [Longtop's] cost structure off-balance sheet to XLHRS":

- "XLHRS was formed in May 2007, just months before Longtop's IPO";

- "Although XLHRS is Longtop's largest line item expenditure by far, it is never mentioned in Longtop filing until the 2009 [sic] 20-F";

- "As Citron reported, XLHRS had for months been located in the same building as Longtop";

- "XLHRS (Xiamen Longtop Human Resources Services) shares a name with its only customer:  Longtop";

- "XLHRS has no website and does not appear to have any other customers"; and

- "XLHRS used the same email server as its only client—as evidenced by help wanted advertisements placed by XLHRS asking perspective employees to contact XLHRS at 'longtop.com.'"

CAC ¶¶ 134-36.  Merely labeling these allegations as red flags, however, is insufficient to make them so or to establish DTTC's scienter.  *Marsh & Mclennan Cos.*, 501 F. Supp. 2d at 487.  It is clear that three of these "red flags" – that XLHRS was formed in May 2007, that XLHRS was not mentioned in Longtop's filings until Longtop's 2008 Form 20-F, and that XLHRS and Longtop shared a name – as well as the nature of Longtop's relationship with XLHRS as a whole, had been publicly known and "promptly digested" by the market long before the short seller reports.  *See* CAC ¶ 155.  First, Longtop disclosed in its 2008 Form 20-F that it entered into a staffing contract with XLHRS in May 2007.  2008 Form 20-F at 93.  Second, Longtop's SEC filings were publicly available and, thus, when Longtop first disclosed its contract with XLHRS was also publicly known.[6]  Third, that XLHRS "shares a name with" Longtop was

---

[6] Although the Complaint alleges that Longtop first disclosed its relationship with XLHRS in Longtop's 2009 Form 20-F (CAC ¶ 135), we assume this is a typographical error on Plaintiffs' part.  Longtop disclosed its arrangement with XLHRS in its Form 20-F filed on July 1, 2008, the

readily apparent from the face of Longtop's Forms 20-F, all of which referred to XLHRS by its full name.  *See, e.g.,* 2008 Form 20-F at 86.

Plaintiffs allege that "numerous securities analysts employed by major brokerage firms" followed Longtop.  CAC ¶ 154.  Yet despite the fact that these alleged "red flags" were publicly available to those analysts, as well as to Plaintiffs, the Complaint alleges that it was not until almost three years after Longtop's contractual relationship with XLHRS was disclosed that a short seller asserted that the relationship could lead to fraud.  The fact that these purported "red flags" were publicly known for almost three years without anyone apparently claiming that Longtop was a fraud undermines any suggestion that they were in fact true red flags.  *See Meridian Horizon Fund*, 2012 WL 2754933, at *3 (affirming motion to dismiss when purported "red flags" were widely known); *Saltz v. First Frontier, LP*, 782 F. Supp. 2d 61, 72 (S.D.N.Y. 2010) ("inference of scienter based on publicly available red flags is simply not as cogent and compelling as the opposing inference of nonfraudulent intent").  As such, these purported "red flags" cannot rise to the level of true red flags – i.e., information that should have put DTTC on notice of fraud at Longtop.  *See Marsh & Mclennan Cos.* 501 F. Supp. 2d at 487; *see also Anwar*, 728 F. Supp.2d at 452 (rejecting purported "red flags" that did "not rise to the level sufficient to plead scienter on the part of the" auditors).

Indeed, the extensive nature of Longtop's public disclosures in its SEC filings and otherwise regarding its staffing arrangement with XLHRS – including the total number of XLHRS employees used by Longtop, Longtop's treatment of XLHRS staff as Longtop employees, and even the inclusion of its form contract with XLHRS as an exhibit to its Form 20-

---

first annual report filed by Longtop after it became a public company, and in fact attached as an exhibit to that filing the form of its contract with XLHRS.  2008 Form 20-F at 86, 93, & Ex. 4.29.

F filings (2008 Form 20-F at 86, 93, & Ex. 4.29) – supports the opposite inference from the one that Plaintiffs would draw, *i.e.*, that Longtop was open and transparent about its use of XLHRS and that Longtop's use of XLHRS staff was not a surreptitious attempt to hide its labor costs off-balance sheet.  Longtop's disclosures regarding XLHRS in its public filings is not suggestive of a company attempting to hide significant costs off-balance sheet.

With respect to the three other "red flags" that were not included in Longtop's SEC filings – *i.e.*, that (at least as of April 2011) Longtop and XLHRS were located in the same office building, that certain XLHRS job postings included a reply email address with a "longtop.com" extension, and that XLHRS did not have a website – these are not the sorts of facts that would make obvious to any reasonable auditor that potential fraud was occurring through off-balance sheet transactions.  Instead, two of these are simply off-shoots of the publicly-disclosed fact that XLHRS was created and served as a staffing company for Longtop.  For example, it is not an indicator of fraud that a company like XLHRS might move to an office location that is closer to its primary client and therefore allows it to better serve that client.  Likewise, to the extent that XLHRS advertised certain job postings specifically to fulfill staffing requests from Longtop, the establishment of a longtop.com email address to collect such job applications makes considerable sense.  As for the third "red flag," the absence of a company website does not make a company a fraud.

Separately, although these facts were not disclosed in Form 20-F filings, they would not have been secret either.  They would have been readily available to anyone searching for an XLHRS website, applying for a job with XLHRS, or visiting Longtop's office building – if any investor (or analyst covering Longtop) cared to do so.

The information Plaintiffs label as "red flags" at most suggests that Longtop misapplied FAS 57 in determining that XLHRS was not a related party and that it did not disclose XLHRS as such – although even this inference is highly questionable given the length of time the underlying information was in the public domain.  But even if Longtop's application of FAS 57 were incorrect, this cannot support a strong inference of DTTC's scienter.  The Second Circuit has made clear that "the failure of a non-fiduciary accounting firm to identify problems with the defendant-company's … accounting practices does not constitute reckless conduct sufficient for § 10(b) liability."  *Novak*, 216 F.3d at 309; *see also Sloane Overseas Fund, Ltd. v. Sapiens Int'l Corp. N.V.*, 941 F. Supp. 1369, 1381-82 (S.D.N.Y. 1996) (rejecting argument that a violation of GAAP in financial statements showed that the outside auditor "failed to follow proper audit procedures" because "the preparation of the financials … were [the corporation's] responsibility").

In the end, Plaintiffs' claim is simply that, in Plaintiffs' view, DTTC should have done more as part of its audit.  Such allegations "are nothing more than an effort to recast negligence allegations as allegations of fraud" and are insufficient to state a Rule 10b-5 claim.  *Merkin*, 817 F. Supp. 2d at 358; *see South Cherry Street, LLC v. Hennessee Group LLC*, 573 F.3d 98, 112 (2d Cir. 2009) (rejecting allegations that "if" defendant "had asked various questions earlier," it "would have" learned the truth); *Scottish Re Group*, 524 F. Supp. 2d at 398; *In re Livent, Inc. Sec. Litig.*, 78 F. Supp. 2d 194, 218 (S.D.N.Y. 1999) (allegations of "an auditor's failure to do more is 'legally insufficient'" to plead scienter) (quoting *The Limited, Inc. v. McCrory Corp.*,

683 F. Supp. 387, 394 (S.D.N.Y. 1988)).  Plaintiffs have failed to support a strong inference that

DTTC acted with scienter.[7]

*      *      *

In sum, the most compelling inference to be drawn from the Complaint is that DTTC did

not intend to aid in any fraud at Longtop.  Far from containing allegations demonstrating a

"conscious turning away from the true facts required for recklessness," *Doral Fin. Corp.*, 563 F.

Supp. 2d at 466, the Complaint demonstrates that DTTC actively worked to uncover a fraud that

had been concealed from it.  It is simply outside the realm of plausibility to suggest that DTTC

was at least tacitly complicit in Longtop's fraud one moment, and then actively working to

uncover it the next, even under physical threat from Longtop.  Plaintiffs' conclusory allegations

of GAAS and GAAP violations are wholly insufficient to support an inference that DTTC acted

recklessly, particularly in the absence of any allegations of "red flags" that should have put

DTTC on notice of Longtop's alleged fraud.  The Complaint therefore must be dismissed for

failure to adequately plead scienter.

---

[7] Plaintiffs' allegation that DTTC has refused "to produce documents or otherwise cooperate with the SEC in its investigation into Longtop's downfall" (CAC ¶ 138) is irrelevant as to whether DTTC acted with scienter at the time it issued its 2009 and 2010 audit reports.  Moreover, it grossly mischaracterizes the facts.  Although the SEC has instituted an action to compel DTTC to produce documents to the SEC, that action has not been litigated yet and, indeed, the SEC has requested that it be stayed pending further negotiations between the SEC and Chinese regulators.  *SEC v. Deloitte Touche Tohmatsu, CPA Ltd.*, No. 11 Misc. 512 (D.D.C.) (docket sheet attached as Ex. F to Bendinger Decl.).  Under Chinese law, DTTC cannot produce documents to the SEC without permission of the Chinese regulators, which, to this point, has not been forthcoming.  *Id.*, Dkt. 23, at 11-12 (attached as Ex. G to Bendinger Decl.).  The SEC has recognized that this is not an issue unique to DTTC or the SEC's investigation of Longtop.  Rather, it is currently in talks with the Chinese regulators "to develop a mechanism by which the SEC can obtain audit workpapers and other documents from audit firms based in China (including DTTC and other firms)." *Id.*, Dkt. 29, at 2 (attached as Ex. H to Bendinger Decl.).

## II.     THE COMPLAINT DOES NOT PLEAD WITH PARTICULARITY THAT DTTC MADE A MATERIAL MISREPRESENTATION.

The only statements DTTC is alleged to have made during the Class Period are its audit reports on Longtop's 2009 and 2010 financial statements.  CAC ¶¶ 29, 70, 93.  In both reports, DTTC stated that it "conducted [its] audit in accordance with the standards of the Public Company Accounting Oversight Board (United States)" and that DTTC "believe[d] that [its] audits provide a reasonable basis for [its] opinion."  2009 Form 20-F at F-2; 2010 Form 20-F at F-2.  DTTC stated that "[i]n [its] opinion" Longtop's financial statements "present fairly, in all material respects, the financial position of [Longtop] … in conformity with accounting principles generally accepted in the United States of America."  *Id*.  Plaintiffs allege that those audit reports were false because DTTC "failed to follow GAAS" in auditing Longtop's financial statements.  CAC ¶¶ 70, 93.

DTTC's audit reports are the end-product of its audit work, which involves the use of professional judgment and subjective assessments by its professionals.  *Lehman Bros.*, 799 F. Supp. 2d at 299-304; AU 230 at ¶ 230.11 (describing auditors' exercise of "judgment regarding [] the areas to be tested and the nature, timing, and extent of the tests to be performed," as well as "in interpreting the results of audit testing and evaluating audit evidence").  They are, therefore, properly analyzed as opinions for purposes of determining whether they are misstatements under the federal securities laws.  *Lehman Bros.*, 799 F. Supp. 2d at 299-304 (determining that audit reports were opinions); *Buttonwood Tree Value Partners, LP v. Sweeney*, 2012 WL 2086607, at *2 (C.D. Cal. June 7, 2012) ("An auditor's report is a statement of professional opinion, not fact.").

The Second Circuit recently reaffirmed that a fraud claim based on a misstatement in an opinion requires factual allegations that "plausibly allege that defendants did not believe the

statements … at the time they made them." *City of Omaha, Neb. Civilian Employees' Retire. Sys. v. CBS Corp.* 679 F.3d 64, 67 (2d Cir. 2012) (holding that management's estimates of goodwill were a matter of opinion) (quoting *Fait v. Regions Fin. Corp.*, 655 F.3d 105, 112 (2d Cir. 2011)); *see also In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 273 F. Supp. 2d 351, 372 (S.D.N.Y. 2003) ("the only challenge that may be made to a statement of opinion is that the speaker did not actually hold the opinion"); *Bond Opportunity Fund v. Unilab Corp.*, 2003 WL 21058251, at *5 (S.D.N.Y. May 9, 2003) ("Plaintiffs who charge that a statement of opinion, including a fairness opinion, is materially misleading, must allege 'with particularity' 'provable facts' to demonstrate that the statement of opinion is both objectively and subjectively false.") (quoting *Virginia Bankshares v. Sandberg*, 501 U.S. 1083, 1093-98 (1991)).  There are no allegations that DTTC did not actually believe the opinions expressed in its audit reports.  And to the extent that Plaintiffs rely on a theory that DTTC was reckless in expressing its opinions, that theory must also fail for the same reasons.

Moreover, the Complaint fails to plead with particularity how DTTC's opinions were incorrect.  As explained above, *see supra* at 10-14, all Plaintiffs have done is create a list of general auditing standards and then assert, without factual support, that DTTC's audits failed to comply with them.  This is insufficient.  *See Lehman Bros*, 799 F. Supp. 2d at 300-01 & n.291; *Fannie Mae*, 742 F. Supp. 2d at 412-13; *Lewis*, 2007 WL 2332421, at *2.  Plaintiffs therefore have failed to plead that DTTC made a material misrepresentation in connection with issuing its audit reports on Longtop's 2009 and 2010 financial statements.

## CONCLUSION

For the foregoing reasons, DTTC's motion to dismiss the Complaint should be granted.

Dated:  September 10, 2012                    Respectfully submitted,

                                              /s/ Gary F. Bendinger_____
                                             Gary F. Bendinger
                                             Gazeena K. Soni
                                             SIDLEY AUSTIN LLP
                                             787 Seventh Avenue
                                             New York, New York 10019
                                             Telephone:  (212) 839-5300
                                             gbendinger@sidley.com
                                             gsoni@sidley.com
                                             *Attorneys for Defendant Deloitte Touche Tohmatsu CPA Ltd.*