UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------ X

IN RE LONGTOP FINANCIAL
TECHNOLOGIES LIMITED
SECURITIES LITIGATION

OPINION AND ORDER

11 Civ. 3658

------------------------------------------------ X

SHIRA A. SCHEINDLIN, U.S.D.J.:

I.     INTRODUCTION

           Lead plaintiffs Danske Invest Management A/S and Pension Funds of

Local No. One (collectively, "Lead Plaintiffs") bring this action on behalf of

themselves and others similarly situated against Longtop Financial Technologies,

Ltd. ("Longtop"), several of its officers, its auditor Deloitte Touche Tohmatsu CPA

Ltd. ("DTTC"), and its auditor's parent company Deloitte Touche Tohmatsu

Limited.  The Class consists of all persons and entities who purchased American

Depositary Shares ("ADSs") of Longtop Financial Technologies, Ltd. on the New

York Stock Exchange ("NYSE") during the period June 29, 2009 through and

including May 17, 2011 (the "Class Period") and who were allegedly damaged

thereby.  Lead Plaintiffs assert four causes of action for: violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder against Longtop and the Individual Defendants (Count One); violation of Exchange Act Section 20(a) against the Individual Defendants (Count Two); violations of Rule 10b-5 against DTTC (Count Three); and violation of Section 20(a) against Deloitte Limited (Count Four).  Pursuant to Federal Rule of Civil Procedure 12(b)(6), DTTC now moves to dismiss Count Three.  For the following reasons, DTTC's motion is granted.

## II.   BACKGROUND[1]

Longtop is a Cayman Islands corporation with principal offices in Hong Kong and Xiamen, China,[2] which has described itself as a "leading provider" of information technology services to China's financial sector.[3]  Throughout the Class Period, Longtop reported strong financial growth: from fiscal year 2008 to

---

[1]    The facts set forth below are drawn from the Consolidated Class Action Complaint ("Compl."), and are presumed to be correct for the purposes of this motion unless otherwise designated.  This Court has previously described the allegations in this case.  *See In re Longtop Fin. Tech. Ltd. Secs. Litig.*, No. 11 Civ. 3658, 2012 WL 2512280, at *1 (S.D.N.Y. June 29, 2012).  To avoid needless duplication, only the facts necessary to resolve DTTC's motion to dismiss are described below.

[2]    *See* Compl. ¶ 2.

[3]    *Id*. ¶ 3.

fiscal year 2010,[4] Longtop's total revenues grew from $65.9 million to $161.9 million, and its net income grew from $2.9 million to $59 million.[5]  Longtop attributed this success to its extremely high gross and operating margins.[6]  For example, in fiscal year 2010, Longtop's reported gross and operating margins were 62.5% and 35.8%, respectively, while its peer companies' gross and operating margins were, respectively, between 15-50% and 10-25%.[7]  On the strength of these figures, Longtop availed itself of the United States capital markets through an initial public offering ("IPO") on October 25, 2007 and a secondary offering on November 23, 2009.[8]

Longtop's access to the capital markets was aided by DTTC.[9]  DTTC served as Longtop's outside auditor, in which capacity it issued unqualified audit opinions on Longtop's Class Period financial statements, and consented to the use of its audit reports in Longtop's registration statements filed with the United States

---

[4]    Longtop's fiscal year ends on March 31.  *See id.* ¶ 4.

[5]    *See id.*

[6]    *See id.* ¶ 38.

[7]    *See id.*

[8]    *See id.* ¶ 6.

[9]    *See id.* ¶ 8.

Securities and Exchange Commission ("SEC") in connection with the IPO and the Secondary Offering.[10]  Specifically, DTTC permitted Longtop to reproduce its audit report in the 2009 20-F it filed with the SEC.[11]  DTTC also permitted Longtop, in connection with its Secondary Offering, to incorporate this audit report on a Form F-3 and in a prospectus filed with the SEC.[12]  DTTC also allowed Longtop to attach its unqualified audit report to Longtop to its 2010 20-F.[13]  The audit reports state that DTTC's audits were performed in "accordance with the standards of the Public Company Accounting Oversight Board [("PCAOB")]," that Longtop's internal controls were adequate, and that DTTC "expressed an unqualified opinion" that Longtop's audited financial statements "present[ed] fairly, in all material respects, the financial position of Longtop . . . ."[14]

        The Complaint alleges that Longtop's above-market operating and gross margins were the result of various fraudulent actions taken by Longtop, including disguising its true cost of revenue and employee-related expenses

---

[10]     *See id.*

[11]     *See id.* ¶ 77.

[12]     *See id.* ¶¶ 77-78.

[13]     *See id.* ¶ 89.

[14]     *Id.* ¶ 181.

through a series of off-balance sheet transfers to a wholly owned entity, Xiamen Longtop Human Resources ("XLHRS"); falsifying its cash position and bank loan balances by manipulating and lying about its bank records; and interfering with DTTC's audits.[15]  Longtop's alleged fraud began to unravel on April 26, 2011, when Citron Research issued a report questioning Longtop's high margins and whether XHLRS was properly deemed an unrelated entity.[16]  The next day, Bronte Capital issued a report questioning Longtop's need for the Secondary Offering, given that, relative to expenses, Longtop then had six times more cash than Microsoft.[17]

In the wake of these reports, Longtop's share price declined by approximately 26.4%.[18]  To staunch the bleeding, Longtop held a conference call with investors on April 28, 2011, during which Longtop's Chief Financial Officer Derek Palaschuk denied any wrongdoing, and emphasized his close working

---

[15]     *See id.* ¶ 59.

[16]     *See id.* ¶¶ 44-45.

[17]     *See id.* ¶ 48.

[18]     *See id.* ¶¶ 47, 49.

relationship with DTTC.[19]  The price of Longtop's ADSs rose nearly 11% by market's close that day.[20]

This rally was short-lived, as market analysts continued to publish reports (collectively with the Citron and Bronte reports, the "Short Seller Reports") speculating that Longtop was using the purportedly unrelated XLHRS to hide its losses and inflate its gross margins.[21]  On May 27, 2011, the NYSE halted trading in Longtop's ADSs, citing "undisclosed material corporate developments . . . ."[22]  In the face of these developments, and a continued decline in Longtop's ADSs, Palaschuk resigned on May 19, 2011.[23]  On May 23, 2011, Longtop announced that DTTC had resigned as its outside auditor.[24]  That same day, DTTC released to the public a letter (the "Resignation Letter") detailing the circumstances leading to its resignation.[25]

---

[19]    *See id.* ¶¶ 50-52.

[20]    *See id.* ¶ 53.

[21]    *See id.* ¶ 54.

[22]    *Id.* ¶ 61.

[23]    *See id.* ¶¶ 55-56.

[24]    *See id.* ¶ 57.

[25]    *See id.* ¶ 58.

The Resignation Letter relates the following narrative. DTTC determined that follow-up visits to certain Longtop banks were warranted in order to complete Longtop's 2011 audit.[26] When DTTC followed up with the banks it identified serious defects with Longtop's financials, including falsified bank confirmation replies, statements by bank officials that they had no record of certain transactions, significant discrepancies between bank balances and bank confirmations previously received by DTTC (and memorialized in the books and records of Longtop), and significant bank borrowing not identified in previously received confirmations.[27] In light of these defects, DTTC initiated a "formal second round of bank confirmation[s]" on May 17, 2011.[28] This inquiry was soon halted by Longtop's obstructionist behavior, including calls to banks by Longtop asserting that DTTC was not their auditor, the seizure of documents on bank premises by Longtop agents, and refusals by Longtop to allow DTTC's staff to leave Longtop's premises unless they relinquished audit files.[29] On May 20, Longtop's Chairman, Ka Xiao Gong ("Ka"), called DTTC's Eastern Region

---

[26]     *See id.*

[27]     *See id.*

[28]     *Id.*

[29]     *See id.*

Managing Partner, Paul Sin, and informed him that Longtop had recorded fake revenues in the past, which they had offset with false cash.[30]  Ka also stated that "senior management" was involved.[31]  The letter further states that DTTC resigned as Longtop's auditor due to the falsity of Longtop's financial records, the deliberate interference by Longtop with the audit process, and the unlawful detention of DTTC's audit files.[32]  The letter concludes by urging Longtop to make its required 8-K filing informing the public not to place reliance on DTTC's earlier audit reports, and by reminding Longtop of its obligations under the Securities Exchange Act of 1934.[33]

The NYSE began delisting proceedings against Longtop on July 22, 2011, and delisted Longtop on August 29, 2011.[34]  On November 10, 2011, the SEC charged Longtop with failing to comply with SEC reporting requirements, based on Longtop's failure to file an annual report in fiscal year 2011, and based on DTTC's statement that the financial statements contained in Longtop's annual

---

[30]     *See id.*

[31]     *Id.*

[32]     *See id.*

[33]     *See id.*

[34]     *See id.* ¶¶ 61-62.

reports in 2008, 2009 and 2010 were no longer reliable.[35]  The complaint in that

action alleges that DTTC has thus far failed to comply with the SEC's

investigation, "including producing documents in response to a subpoena. . . ."[36]

However, it appears that DTTC's failure to produce documents is the result of

inconsistencies between the regulatory regimes of the United States and China,

pending the resolution of which the SEC has moved for, and been granted, a stay

of its enforcement action against Longtop.[37]

### A.   Alleged Violations of Generally Accepted Auditing Standards ("GAAS")

The Complaint alleges that DTTC violated a variety of accounting

rules and principles found in the interpretive Statements on Auditing Standards

---

[35]    *See id.* ¶ 63.

[36]    *Id.* ¶ 64.

[37]    *See* Civil Docket for Case #: 1:11-mc-00512-GK-DAR ("SEC Docket"), Ex. F to Declaration of Gary Bendinger in Support of Defendant Deloitte Touche Tohmatsu CPA Ltd.'s Motion to Dismiss ("Bendinger Decl."), at 6 (revealing that the SEC made an unopposed motion for a stay, which was granted); Respondent DTTC's Statement of Points and Authorities Opposing the SEC's Application for Order to Show Cause and Order Requiring Compliance with a Subpoena ("DTTC Subpoena Mem."), Ex. G to Bendinger Decl., at 21-22 (describing DTTC's efforts to comply with the SEC's subpoena and alleging that DTTC needed Chinese regulatory permission to produce documents to the SEC); Unopposed Motion for Stay of this Action ("SEC Stay Mot."), Ex. H to Bendinger Decl., at 3 (describing the SEC's efforts to negotiate with Chinese regulators and seeking a six month stay of the enforcement action).

("AU") that are alleged to form a part of the GAAS.[38]  The Complaint further

alleges that Longtop's Class Period financial statements violated provisions of the

Generally Accepted Accounting Principles ("GAAP") mandating the disclosure of

certain material related-party transactions and requiring that financial statements

fairly and completely represent an enterprise's economic resources and financial

performance in a way that is useful to the investing public.[39]  Consequently, DTTC

statements that its audits were conducted in accordance with PCAOB standards

and that Longtop's financial statements were GAAP compliant are alleged to be

materially false.[40]

The Complaint alleges that DTTC failed to exercise the "[d]ue

professional care" and "professional skepticism" required by the GAAS.[41]

Specifically, the Complaint alleges that DTTC was reckless and fell short of GAAS

standards because it failed to undertake any meaningful investigation of Longtop's

---

[38]     *See* Compl. ¶¶ 123-126; 130-136.

[39]     *See id*. ¶¶ 107-110 (citing Federal Accounting Standards Board ("FASB")
Statement of Concepts No. 1 ¶¶ 34, 40, 42; FASB No. 2 ¶¶ 58-59, 79; Statement of
Financial Concepts No. 57).

[40]     *See id*. ¶ 107.

[41]     *See id*. ¶ 123 (citing AU §§ 230, 230.02, 230.07, 230.09).

bank and loan balances over the Class Period.[42]  Similarly, the Complaint alleges that DTTC was reckless and violated GAAS standards because it failed to detect that Longtop was covertly transferring costs to XLHRS, despite the warning provided by Longtop's above market margins.[43]

### B.    Red Flags

The Complaint additionally alleges that even a "perfunctory" review by DTTC of the relationship between Longtop and XLHRS would have revealed the following six "red flags": (1) that XLHRS was formed shortly before Longtop's IPO;[44] (2) that although XLHRS was Longtop's largest line-item expenditure, it was not mentioned in Longtop filings until its 2009 Form 20-F;[45] (3) that XLHRS shared the same building with Longtop;[46] (4) that "Longtop" appears in XLHRS's name;[47] (5) that XLHRS lacked a website and had no

---

[42]     *See id.* ¶¶ 124-129 (citing AU §§ 230.10, 311.03, 311.06, 312.16, 312.17, 329.01, 329.02, 329.03).

[43]     *See id.* ¶¶ 130-135 (citations omitted)

[44]     *See id.* ¶ 135.

[45]     *See id.*

[46]     *See id.*

[47]     *See id.*

customers other than Longtop;[48] and (6) that XLHRS had placed job postings with a reply-to email address at longtop.com, raising questions about whether it shared an email server with Longtop.[49]

## III.   STANDARD OF REVIEW AND PLEADING STANDARD

### A.   Rule 12(b)(6) Motion to Dismiss

A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[50]  "Such a statement must [] 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'"[51]  In deciding a motion to dismiss pursuant to Rule 12(b)(6), the court "must accept all non-conclusory factual allegations as true and draw all reasonable inferences in the plaintiff's favor."[52]  For the purposes of such motion, ". . . a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the

---

[48]     *See id.*

[49]     *See id.*

[50]     Fed. R. Civ. P. 8(a)(2).

[51]     *See Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512 (2002) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957), overruled in part on other grounds by *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561-563 (2007)).

[52]     *Simms v. City of New York*, No. 11 Civ. 4568, 2012 WL 1701356, at *1 (2d Cir. May 16, 2012) (citing *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008)).

complaint."[53]  However, the court may also consider a document that is not

incorporated by reference, "where the complaint 'relies heavily upon its terms and

effect,' thereby rendering the document 'integral' to the complaint."[54]

The court evaluates the sufficiency of the complaint under the "two-

pronged approach" suggested by the Supreme Court in *Ashcroft v. Iqbal*.[55]  Under

the first prong, a court "'can . . . identify[] pleadings that, because they are no more

than conclusions, are not entitled to the assumption of truth.'"[56]  Thus,

"[t]hreadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice" to withstand a motion to dismiss.[57]  Under

the second prong of *Iqbal*, "[w]hen there are well-pleaded factual allegations, a

court should assume their veracity and then determine whether they plausibly give

---

[53]      *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (citing
*Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)).

[54]      *Id.* (quoting *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006)).
*Accord Global Network Commc'ns, Inc. v. City of N.Y.*, 458 F.3d 150, 156 (2d Cir.
2006).

[55]      556 U.S. 662, 678-679 (2009).

[56]      *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010) (quoting *Iqbal*, 556
U.S. at 679).  *Accord Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 59
(2d Cir. 2010).

[57]      *Iqbal*, 556 U.S. at 663 (citing *Twombly*, 550 U.S. at 555).

rise to an entitlement for relief."[58]  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[59]  Plausibility "is not akin to a probability requirement;" rather, plausibility requires "more than a sheer possibility that a defendant has acted unlawfully."[60]

## B.    Heightened Pleading Standard under Rule 9(b) and the PSLRA

Private securities fraud claims are subject to a heightened pleading standard.[61]  *First*, Rule 9(b) requires that the circumstances constituting fraud be alleged with particularity, although "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally."

*Second*, the Private Securities Litigation Reform Act of 1995 ("PSLRA") further heightens the pleading standard for the plaintiff in a private securities fraud case.  The PSLRA provides that:

> [i]n any private action arising under this chapter in which the plaintiff may recover money damages only on proof

---

[58]    *Id.* at 679.  *Accord Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir. 2010).

[59]    *Iqbal*, 556 U.S. at 678 (quotation marks omitted).

[60]    *Id.* (quotation marks omitted).

[61]    *See Meridian Horizon Fund, LP v. KPMG (Cayman)*, Nos. 11–3311–cv, 11–3725–cv, 2012 WL 2754933, at *2 (2d Cir. July 10, 2012).

> that the defendant acted with a particular state of mind, the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.[62]

A plaintiff has alleged facts giving rise to a "strong inference" of scienter "only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged."[63]  In deciding whether the plaintiff has alleged facts showing a strong inference of scienter, "a court must consider plausible, nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff."[64]  The inquiry is holistic, *i.e.* the allegations going to scienter are to be evaluated collectively.[65]  The PSLRA further provides that the complaint in a private securities fraud case must:

> specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, . . . state with particularity all facts on which that belief is formed.[66]

### C.   Leave to Amend

---

[62]   15 U.S.C. § 74u-4(b)(2).

[63]   *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007).

[64]   *Meridian Horizon Fund, LP*, 2012 WL 2754933, at *2 (quoting *Tellabs*, 551 U.S. at 323-24).

[65]   *See Tellabs*, 551 U.S. at 326.

[66]   15 U.S.C. § 78u-4(b)(1)(B).

Whether to permit a plaintiff to amend its complaint is a matter committed to a court's "sound discretion."[67] Rule 15(a) provides that leave to amend a complaint "shall be freely given when justice so requires." "When a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint."[68] In particular, it is the usual practice to grant at least one chance to plead fraud with greater specificity when a complaint is dismissed under Rule 9(b).[69] Leave to amend should be denied, however, where the proposed amendment would be futile.[70]

## IV.   APPLICABLE LAW

### A.   Section 10(b) and Rule 10b-5 of the Securities Exchange Act

Section 10(b) of the Securities Exchange Act of 1934 makes it illegal to "use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and

---

[67]   *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).

[68]   *Hayden v. County of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999).

[69]   *See ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 108 (2d Cir. 2007).

[70]   *See Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 87 (2d Cir. 2002).

16

regulations as the Commission may prescribe . . . ."[71]  Under Rule 10b-5 one may

not "make any untrue statement of a material fact or [] omit to state a material fact

necessary in order to make the statements made, in the light of the circumstances

under which they were made, not misleading . . . in connection with the purchase

or sale of any security."[72]  "To sustain a private claim for securities fraud under

Section 10(b), 'a plaintiff must prove (1) a material misrepresentation or omission

by the defendant; (2) scienter; (3) a connection between the misrepresentation or

omission and the purchase or sale of a security; (4) reliance upon the

misrepresentation or omission; (5) economic loss; and (6) loss causation.'"[73]  There

is no secondary liability under Section 10(b),[74] but "secondary actors like

accountants may be held liable as primary violators if all the requirements for

primary liability are met . . . ."[75]

---

[71]    15 U.S.C. § 78j(b).

[72]    17 C.F.R. § 240.10b-5.

[73]    *Ashland Inc. v. Morgan Stanley & Co., Inc.*, 652 F.3d 333, 337 (2d Cir. 2011) (quoting *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 157 (2008)).  *Accord Erica P. John Fund, Inc. v. Halliburton Co.*, — U.S. — , 131 S.Ct. 2179, 2184 (2011).

[74]    *See Central Bank of Denver N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 191 (1994).

[75]    *Wright v. Ernst & Young LLP*, 152 F.3d 169, 175 (2d Cir. 1998) (quoting *Central Bank*, 511 U.S. at 191).

## 1. Misstatements or Omissions of Material Fact

In order to satisfactorily allege misstatements or omissions of material fact, a complaint must "state with particularity the specific facts in support of [plaintiffs'] belief that [defendants'] statements were false when made."[76] "For the purposes of Rule 10b-5, the maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it."[77]

"'[A] fact is to be considered material if there is a substantial likelihood that a reasonable person would consider it important in deciding whether to buy or sell shares [of stock].'"[78] In situations "'[w]here plaintiffs contend defendants had access to contrary facts, they must specifically identify the reports or statements containing this information.'"[79] Mere "allegations that

---

[76]     *Rombach v. Chang*, 355 F.3d 164, 172 (2d Cir. 2004) (quotation marks omitted).

[77]     *Janus Capital Grp., Inc. v. First Derivative Traders*, 131 S.Ct. 2296, 2302 (2011).

[78]     *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 92–93 (2d Cir. 2010) (quoting *Azrielli v. Cohen Law Offices*, 21 F.3d 512, 518 (2d Cir. 1994)).

[79]     *Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.*, 531 F.3d 190, 197 (2d Cir. 2008) (quoting *Novak v. Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000)).

defendants should have anticipated future events and made certain disclosures earlier than they actually did[,] do not suffice to make out a claim of securities fraud."[80]  "[A]n omission is actionable when the failure to disclose renders a statement misleading."[81]

### 2.    Scienter

A plaintiff may plead scienter by "alleging facts (1) showing that the defendants had both motive and opportunity to commit the fraud or (2) constituting strong circumstantial evidence of conscious misbehavior or recklessness."[82] "'Sufficient motive allegations entail concrete benefits that could be realized by one or more of the false statements and wrongful nondisclosures alleged.'"[83] "Motives that are generally possessed by most corporate directors and officers do

---

[80]    *Id.  Accord Rothman v. Gregor*, 220 F.3d 81, 90 (2d Cir. 2000).

[81]    *In re Alstom SA*, 406 F. Supp. 2d 433, 453 (S.D.N.Y. 2005) (citing *In re Time Warner Inc. Secs. Litig.*, 9 F.3d 259, 268 (2d Cir. 1993)).

[82]    *ATSI*, 493 F.3d at 99 (citing *Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 168–69 (2d Cir. 2000)).  *Accord Dandong v. Pinnacle Performance Ltd.*, No. 10 Civ. 8086, 2011 WL 5170293, at *11 (S.D.N.Y. Oct. 31, 2011) (quoting *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290-91 (2d Cir. 2006)).

[83]    *Campo v. Sears Holdings Corp.*, 371 Fed. App'x 212, 215 (2d Cir. 2010) (quoting *Kalnit v. Eichler*, 264 F.3d 131, 139 (2d Cir. 2001)).

not suffice; instead, plaintiffs must assert a concrete and personal benefit to the individual defendants resulting from the fraud."[84]

However, "'[w]here motive is not apparent, it is still possible to plead scienter by identifying circumstances indicating conscious behavior by the defendant, though the strength of the circumstantial allegations must be correspondingly greater.'"[85]  Under this theory of scienter, a plaintiff must show that the defendant's conduct is "at the least . . . highly unreasonable and [] represents an extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it."[86]  "To state a claim based on recklessness, plaintiffs may either specifically allege defendants' knowledge of facts or access to

---

[84]     *Kalnit,* 264 F.3d at 139.  *Accord ECA & Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009).

[85]     *Kalnit*, 264 F.3d at 142 (quoting *Beck v. Manufacturers Hanover Trust Co.*, 820 F.2d 46, 50 (2d Cir. 1987)).  *Accord South Cherry St., LLC v. Hennessee Grp. LLC*, 573 F.3d 98, 109 (2d Cir. 2009); *In re Novagold Res. Inc. Secs. Litig.*, 629 F. Supp. 2d 272, 297 (S.D.N.Y. 2009) (quoting *ECA*, 553 F.3d at 198–99).

[86]     *South Cherry St.*, 573 F.3d at 109 (quotation marks and emphasis omitted).  *Accord ECA*, 553 F.3d at 203.

information contradicting defendants' public statements, or allege that defendants failed to check information they had a duty to monitor."[87]

An outside auditor will typically not have an apparent motive to commit fraud. Consequently, "'[f]or recklessness on the part of a non-fiduciary accountant to satisfy securities fraud scienter, such recklessness must be conduct that is highly unreasonable, representing an extreme departure from the standards of ordinary care.'"[88] In a common formulation, such recklessness must "'approximate an actual intent to aid in the fraud being perpetrated by the audited company.'"[89] Recklessness has been adequately alleged if it appears from the complaint that "[t]he accounting practices were so deficient that the audit amounted to no audit at all, or an egregious refusal to see the obvious, or investigate the doubtful, or that the accounting judgments which were made were such that no reasonable accountant would have made the same decisions if confronted with the same facts."[90] "A complaint might reach [the] 'no audit at all'

---

[87]   *In re Gildan Activewear, Inc. Secs. Litig.*, 636 F. Supp. 2d 261, 272 (S.D.N.Y. 2009) (quotation marks and citation omitted).

[88]   *Meridian Horizon Fund, LP*, 2012 WL 2754933, at *3 (quoting *Rothman*, 220 F.3d at 98).

[89]   *Id.*

[90]   *In re Scottish Re Group Sec. Litig.*, 524 F. Supp. 2d 370, 385 (S.D.N.Y. 2007) (quoting *In re Refco, Inc. Sec. Litig.*, 503 F. Supp. 2d 611, 657 (S.D.N.Y.

threshold by alleging that the auditor disregarded specific 'red flags' that 'would place a reasonable auditor on notice that the audited company was engaged in wrongdoing to the detriment of its investors.'"[91]  "However, . . . merely alleging that the auditor had access to the information by which it could have discovered the fraud is not sufficient."[92]

### 3.  Causation

Causation (i.e. reliance and loss causation) is not at issue in this motion.  Therefore, I will not address it here.

## V.  DISCUSSION

The gravamen of the claim against DTTC is that DTTC's audit opinions were material misstatements that, in light of Longtop's high gross margins and the alleged red flags, DTTC issued recklessly.  The instant motion contends that the Complaint fails to adequately allege scienter, and that DTTC did not make a material misrepresentation because DTTC's auditor statements were opinions, which DTTC reasonably believed at the time they were made.

### A.  Scienter

2007)).

[91]    *In re IMAX Sec. Litig.*,  587 F. Supp. 2d 471, 483 (S.D.N.Y. 2008) (quoting *In re Scottish Re Group Sec. Litig.*, 524 F. Supp. 2d at 385).

[92]    *Id.*

For the purposes of this motion, the appropriate standard for evaluating the allegations of scienter is whether, viewed holistically, the facts alleged give rise to a strong inference that DTTC was reckless to a point approximating an actual intent to aid Longtop's deception. Such inference must be at least as compelling as any competing inference.[93] The Complaint does not meet this standard. The Complaint's deficiency is that it insufficiently alleges facts that would have put DTTC on notice that Longtop was engaged in fraud during the Class Period. At its core the Complaint alleges that, had DTTC performed a better audit, it would have uncovered Longtop's fraud.[94] At most this describes negligence by DTTC, not the recklessness approaching actual intent required by the PSLRA.

### 1.    The Alleged Accounting Standards Violations

The alleged GAAS violations are mostly pitched at such a high level of generality that, even if credited, they could not support a compelling inference of scienter.[95] The strongest inference from even the most specifically alleged

---

[93]    *Tellabs*, 551 U.S. at 324.

[94]    *See* Compl. ¶¶ 129, 134-137, 183.

[95]    *See, e.g.*, *id*. ¶¶ 124 ("In conducting the audit, the auditor must obtain 'reasonable assurance that the financial statements are free from material misstatements, whether caused by error or fraud.") (citing AU § 230.10); 125 ("In considering audit risk, "the auditor should specifically assess the risk of material

"violations" is that DTTC was duped by Longtop, not that DTTC conducted no audit.[96]  The GAAS cautions that even a well-planned audit may be ineffective in the face of fraud.[97]  And the Complaint amply alleges that Longtop went to great lengths to conceal its fraud from DTTC, e.g. by falsifying bank confirmations.[98]  In the end, the Complaint's laundry list of auditing standards boils down to the assertion that "[h]ad DTT[C] exercised even the most cursory of audit procedures" during its audits, "it would have discovered [the] serious defects in Longtop's

_____

misstatement of the financial statements due to fraud.") (citing AU § 312.16); 126-127 (stating that DTTC "failed to adequately plan its audit of Longtop and use appropriate analytical procedures[,]" because it did not discover Longtop's fraud prior to the Short Seller Reports) (citing AU §§ 329.01-329.03).

[96]     *Compare id.* ¶¶ 133-134 (citing AU §§ 334.07-334.09) (describing an auditor's obligation under PCAOB standards to "apply the procedures he considers necessary to obtain satisfaction concerning the purpose" of large or unusual transactions in order to ascertain the relationship between the parties, and charging DTTC with failing to implement these procedures, as evidenced by their failure to ascertain that DTTC had "transferred the majority of its cost structure off-balance sheet to XLHRS"); *with id.* ¶ 58 (describing, *inter alia*, the lengths to which Longtop went to conceal its fraud as it began to unravel).

[97]     *See* AU § 230 ("[b]ecause of the characteristics of fraud, a properly planned and performed audit may not detect a material misstatement"); *id.* § 316.12 ("absolute assurance [that financial statements are free of material misstatement due to fraud or error] is not attainable and thus even a properly planned and performed audit may not detect a material misstatement resulting from fraud . . .").

[98]     *See* Compl. ¶ 58.

financial records" detailed in the Resignation Letter.[99]  Without supporting

allegations suggesting that DTTC failed to perform even a "cursory" audit, this

generalized assertion fails to adequately allege scienter under the PSLRA.

### 2.   Red Flags

Bare allegations of disregarded auditing standards are insufficient to

plead scienter against an outside auditor for the purposes of Section 10(b).[100]

"Only where such allegations are coupled with evidence of 'corresponding

fraudulent intent,' might they be sufficient."[101]  A complaint may show this

"corresponding fraudulent intent" through allegations that the auditor disregarded

red flags.[102]  The Complaint alleges that DTTC was reckless in failing to pay heed

---

[99]     *Id.* ¶ 128.

[100]    *See In re Merkin*, 817 F. Supp. 2d 346, 358 (S.D.N.Y. 2011) (stating that "allegations of GAAP or GAAS violations, standing alone, are insufficient to state a claim for relief against an accountant under the federal securities laws.").

[101]    *Novak*, 216 F.3d at 309.

[102]    *See In re AOL Time Warner*, 381 F. Supp. 2d 192, 240 (S.D.N.Y. 2004) ("Allegations of 'red flags,' when coupled with allegations of GAAP and GAAS violations, are sufficient to support a strong inference of scienter.") (holding, *inter alia*, allegation that auditor ignored the fact that large amounts of advertising revenue regularly came in at the end of quarter, fortuitously allowing the audited company to hit their earnings targets, was a red flag supporting a pleading of scienter for the purposes of a motion to dismiss).

to the six red flags enumerated above.[103]  However, the Complaint does not allege

that DTTC was actually aware of the putative red flags.[104]  Instead, the argument is

that had DTTC conducted a better audit, it would have become aware of the red

flags, and the red flags would have pointed the way to Longtop's wrongdoing.  The

problem with this argument is that it does not appear that the alleged circumstances

would have put a reasonable auditor on inquiry notice of fraud.[105]

In order for a complaint founded on the theory that an auditor should

have uncovered red flags to survive a motion to dismiss, the red flags must be "so

obvious that knowledge of them by the auditor can be presumed."[106]  Of the six

alleged red flags, only three are obvious enough to warrant the presumption that

---

[103]    *See* Compl. ¶ 183 ("Had DTT[C] conducted its audit in accordance with the PCAOB, it would have reacted to the numerous, obvious 'red flags' set forth above and, in so doing, would have discovered the truth about Longtop's operations.")

[104]    *See, e.g. id.* ¶ 135 ("Indeed, a perfunctory review of the relationship [between XLHRS and Longtop] *would have* exposed the following [red flags]") (emphasis added).  *Cf. Stephenson v. PricewaterhouseCoopers*, *LLP*, Civ No. 11–1204–cv, 2012 WL 1764191, at *3 (2d Cir. May 18, 2012) ("[P]leading the existence of red flags does not establish that a defendant was aware of those warning signals.") (affirming dismissal of 10(b) claim when the complaint did not sufficiently allege that the auditor defendant was aware of the red flags alleged).

[105]    *See South Cherry St.,* 573 F.3d at 112-15 (affirming dismissal of section 10(b) claim grounded on allegations that investment advisor would have uncovered fraud if it had conducted due diligence).

[106]    *Stephenson v. Citco Group Ltd.*, 700 F. Supp. 2d 599, 623 (S.D.N.Y. 2010).

DTTC was aware of them: (1) the allegation that XLHRS was formed shortly before Longtop's IPO; (2) the allegation that XLHRS was not mentioned in Longtop's audited financials until its 2009 Form 20-F;[107] and (3) the allegation that XLHRS has "Longtop" in its name.

DTTC's failure to uncover Longtop's fraud on the basis of these facts does not suggest that its performance amounted to "no audit" of Longtop.[108]  In fact, the three facts listed above are not "red flags" at all.  "A 'red flag' is a sign consciously disregarded by the auditor that 'would place a reasonable auditor on notice that the audited company was engaged in wrongdoing to the detriment of its investors.'"[109]  The fact that XLHRS was formed shortly before Longtop's IPO, and that it had "Longtop" in its name, would not lead a reasonable auditor to suspect wrongdoing, given that this sort of staffing arrangement is common. Moreover, Longtop disclosed in its 2008 Form 20-F that it entered into a staffing

---

[107]  The Complaint states that "[a]lthough XLHRS is Longtop's largest line item expenditure by far, it is never mentioned in Longtop filings until the 2009 20-F. . . ."  Compl. ¶ 135.  This assertion is mistaken.  Longtop's 2008 20-F discloses that Longtop entered into a staffing arrangement with XLHRS on May 18, 2007.  *See* 2008 20-F, Ex. E to Bendinger Decl., at 93, Ex. 4.29.

[108]  *In re Refco, Inc. Sec. Litig.*, 503 F. Supp. 2d at 657.

[109]  *Advanced Battery Tech.*, No. 11 Civ. 2279, 2012 WL 3758085, at *16 (S.D.N.Y. Aug. 29, 2012) (quoting *In re IMAX Sec. Litig.*, 587 F. Supp. 2d at 483-84).

contract with XLHRS in May 2007.[110]  This disclosure included, *inter alia*, an

account of the relationship that Longtop had with XLHRS, the number of

employees provided by XLHRS, and a copy of XLHR's contract with Longtop.[111]

Despite this disclosure, which included XLHRS's full name, neither the SEC nor

the investing public recognized Longtop's alleged fraud.  This raises the inference

that these purported red flags are in fact red herrings.[112]  Like the SEC and the

investing public, DTTC could have reasonably concluded that XLHRS was

precisely what Longtop presented it as: a fully-disclosed independent staffing

agency.

### 3.    The Short Seller Reports

The allegations relating to the Short Seller Reports do not provide the

basis for an adequate pleading of scienter.  As an initial observation, short sellers

operate by speculating that the price of a security will decrease.  They can perform

a useful function by bringing information that securities are overvalued to the

---

[110]    *See* 2008 20-F, Ex. E to Bendinger Decl., at 93, Ex. 4.29.

[111]    *See* Compl. ¶ 67.

[112]    *See Meridian Horizon Fund, LP*, 2012 WL 2754933, at *3 (affirming dismissal of 10(b) claim against independent auditor, and holding that alleged red flags that were disclosed to the investing public could not support an inference of scienter).

market.  However, they have an obvious motive to exaggerate the infirmities of the securities in which they speculate.

The Complaint argues that the Short Seller reports provide proof of scienter because "[i]t was not until after [the Short Seller Reports] questioned the legitimacy of Longtop's financial results that DTT[C] began to specifically assess the risk of material misstatement of Longtop's financial statements due to fraud."[113]  The narrative told by the Resignation Letter, though, shows that DTTC had performed its prior audits with diligence, and further was diligent enough to go back and check its work in the face of the Short Seller Reports, despite the obvious temptation to discount them.[114]  And when, less than a month after the first short-seller's report, DTTC had verified that there were problems at Longtop, it noisily resigned.[115]

To the extent that the argument is that DTTC must have acted recklessly because Longtop's fraud was uncovered by short-sellers, not DTTC, such argument also fails.  If an auditor were liable every time a short seller issued a report prior to a fraud being uncovered, then the scope of auditor liability would

---

[113]   Compl. ¶ 127.

[114]   *See id.* ¶ 58 (describing the "second round of bank confirmations" performed by DTTC).

[115]   *See id.*

extend well beyond that contemplated by the PSLRA.  Once more, the most compelling inference is that DTTC performed its duties with reasonable diligence, not that it conducted "no audit."

### 4.     Additional Scienter Theories

In their opposition brief, Lead Plaintiffs put forward two additional theories of scienter.[116]  The first is that the size of Longtop's fraud indicates that DTTC was reckless.[117]  The second is that the rapidity with which DTTC uncovered the fraud once it began to unravel indicates that DTTC was reckless.[118]  These theories, too, fail the *Tellabs* pleading standard.

Naturally, failing to detect a fraud of large magnitude provides some circumstantial evidence of scienter, just as failing to detect a large boulder in front of your face qualifies as circumstantial evidence of blindness.[119]  As DTTC rightly points out, though, the size of Longtop's fraud was never quantified, due to

---

[116]     *See* Lead Plaintiffs' Amended Memorandum of Law in Opposition to Deloitte Touche Tohmatsu CPA Limited's Motion to Dismiss Plaintiffs' Consolidated Class Action Complaint ("Opp. Mem.") at 17-18.

[117]     *Id*. at 17.

[118]     *Id*. at 17-18.

[119]     *See Katz v. Image Innovations Holdings, Inc.*, 542 F. Supp. 2d 269, 273 (S.D.N.Y. 2008) (citing *In re Scottish Re Group Sec. Litig.*, 524 F. Supp. 2d at 394 & n. 174) ("[t]he magnitude of the alleged fraud provides some additional circumstantial evidence of scienter").

Longtop's interference with DTTC's audit.[120]  And there are no allegations that the

scale of the fraud was sufficiently great, as a percentage of Longtop's business,

that DTTC was reckless in not catching it earlier.[121]  Moreover, a fraud's large size,

standing alone, is insufficient to show recklessness.[122]

Nor does the rapidity with which Longtop's fraud unraveled give rise

to a strong inference of scienter.  The nub of this theory, which is factually

grounded in the Resignation Letter, is that because DTTC was driven to disavow

its previous opinions after performing follow-up confirmations with Longtop's

banks, it was reckless in not doing so earlier.[123]  The most compelling inference to

---

[120]    *See* Defendant Deloitte Touche Tohmatsu CPA Ltd.'s Reply Memorandum in Further Support of Its Motion to Dismiss the Consolidated Class Action Complaint at 5-6.

[121]    *See, e.g. In re Bear Stearns Cos., Inc. Secs, Derivative, and ERISA Litig.*, 763 F. Supp. 2d 423, 497, 517 (S.D.N.Y. 2011) (finding that an auditor's failure to catch a $1.3 billion writedown provided evidence of recklessness); *Katz*, 542 F. Supp. 2d at 273 (finding evidence of scienter when accountant booked six million dollars worth of largely non-existent sales).

[122]    *See Pennsylvania Public School Employees' Retirement System v. Bank of America Corp.*, No. 11 Civ. 733, 2012 WL 2847732, at *18 (S.D.N.Y. July 11, 2012) (dismissing 10(b) claim on the basis that magnitude of fraud is insufficient to state a claim unless coupled with other "convincing allegations").

[123]    *See* Opp. Mem. at 17-18 ("the speed and ease with which the fraud was 'identified' [after the follow up visits to Longtop's banks] further supports a finding of scienter").

be drawn from the Resignation Letter, though, is that Longtop had been hiding its fraud from DTTC, but was forced to reveal it under enhanced scrutiny.[124]

Finally, to the extent that the Complaint alleges that Longtop's above-market gross margins functioned as a red flag,[125] this allegation also fails to satisfy the pleading standard. If superior performance were a self-sufficient cause to suspect fraud, then the entire Fortune 500 is in dire need of a thorough forensic accounting. DTTC's failure – along with the SEC and the market – to suspect Longtop on the basis of its high gross margins is too thin a reed on which to hang a finding of recklessness.[126]

At bottom, the Complaint alleges fraud by hindsight, a claim that is accorded the same respect in this Circuit today as it was when Judge Friendly gave it a name.[127] Fraud is always obvious in retrospect, but it is not reckless to lack

---

[124]    *See* Compl. ¶ 58.

[125]    *See id*. ¶¶ 4-5, 45-46.

[126]    *See Chill v. General Elec. Co.*, 101 F.3d 263, 270 (2d Cir. 1996) ("The fact that GE did not automatically equate record profits with misconduct cannot be said to be reckless"). *See also Novak*, 216 F.3d at 309 ("the failure . . . to interpret extraordinarily positive performance . . . as a sign of problems and thus to investigate further does not amount to recklessness").

[127]    *See Denny v. Barber*, 576 F.2d 465, 470 (2d Cir. 1978) (giving the name "fraud by hindsight" to complaint where "plaintiff [] simply seized upon disclosures made in later annual reports and alleged that they should have been made in earlier ones").

clairvoyance.  Apart from its exhaustive recitation of auditing standards and purported red flags, the Complaint does little more than allege that, had DTTC performed a better audit, Longtop's fraud would have been uncovered sooner. Considering the allegations in the Complaint as a whole, the strongest inference is that DTTC was duped by Longtop, not that it recklessly enabled them. Accordingly, the Complaint fails to adequately plead scienter.[128]

## B. Material Misrepresentations

DTTC contends that an auditor's statement of GAAS compliance is a statement of opinion and therefore not a material misstatement unless subjectively false at the time it was made.[129]  Lead Plaintiffs counter that if the Complaint adequately alleged a violation of GAAP by Longtop, it must follow that DTTC made a material misrepresentation.[130]

---

[128]   Lead Plaintiffs' argument that DTTC's failure to comply with the SEC's subpoena provides proof of scienter is also baseless.  *See* Compl. ¶¶ 12, 64.  It appears that DTTC's delay was caused by conflicting demands from Chinese regulators, and that the SEC has moved for (and received) a stay pending the resolution of these issues.  *See* "SEC Docket", Ex. F to Bendinger Decl., at 6; DTTC Subpoena Mem., Ex. G to Bendinger Decl., at 21-22; SEC Stay Mot., Ex. H to Bendinger Decl., at 3.

[129]   *See* Defendant Deloitte Touche Tohmatsu CPA Ltd.'s Memorandum in Support of Its Motion to Dismiss the Consolidated Class Action Complaint at 22.

[130]   *See* Opp. Mem. at 12 (citing *In Re Longtop*, 2012 WL 2512280, at *10).

These contentions raise the issue of the boundary between fact and opinion.  In broad outline, this issue is not unfamiliar to the law.[131]  In the last case in this Circuit to examine this precise issue in detail, the court in *In re Lehman Bros. Securities and Erisa Litigation* held that auditor reports of GAAS compliance are "inherently . . . one[s] of opinion."[132]  Consequently, the *Lehman* court held, "[plaintiff must] allege facts that, if true, would permit a conclusion that [the auditor] either did not in fact hold that opinion or knew that it had no reasonable basis for it."[133]  I also adopt this sensible approach.  Under this standard,

----

[131]    *See, e.g. Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339-40 (1974) (discussing the fact-opinion distinction in the libel context)*; Vulcan Metals Co. v. Simmons Mfg. Co.*, 248 F. 853, 856 (2d Cir. 1918) (stating in the context of a dispute over allegedly fraudulent sales representations that "[a]n opinion is a fact, and it may be a very relevant fact; the expression of an opinion is the assertion of a belief, and any rule which condones the expression of a consciously false opinion condones a consciously false statement of fact.").

[132]    799 F. Supp. 2d 258, 302 (S.D.N.Y. 2011).

[133]    *Id*.  The Lehman court's approach is supported by *Virginia Bankshares, Inc. v. Sandberg*, in which the Supreme Court held that a director's fairness opinion in connection with a freeze out merger must be both objectively and subjectively false in order to qualify as a material misstatement under section 14(a) of the Exchange Act.  *See* 501 U.S. 1083, 1093-98 (1991).  *See also Bond Opportunity v. Unilab*, No. 99 Civ. 11074, 2003 WL 21058251, at *5 (S.D.N.Y. May 9, 2003) (applying *Virginia Bankshares*).  *Cf. Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc.*, No. 08 Civ. 7508, 2012 WL 3584278, at *11 (S.D.N.Y. 2012) (holding that a jury could find that Triple-A rating of securities constituted a material misstatement, despite the fact that such ratings are opinions, because there was ample evidence of subjective falsehood.)

to allege that an auditor opinion is a misrepresentation, a complaint must show that the statement in question is grounded on a specific factual premise that is false, and that the speaker did not "genuinely or reasonably believe" it.[134]

Naturally, the weight of the showing needed to plausibly allege a material misstatement varies with the underlying auditing defect. In some cases, the problems with the audit will be so egregious that issuing an unqualified opinion will qualify as a false statement without additional allegations of subjective falsehood. In other cases, the underlying alleged auditing standard violations will be inherently subjective, requiring strong circumstantial evidence of subjective falsehood in order to survive a motion to dismiss.[135]

---

[134]     *In re International Business Machines Corporate Secs. Litig.*, 163 F.3d 102, 107 (2d Cir. 1998). Analogously, a statement that is explicitly labeled an opinion may be actionable in defamation if it implies a false or unreasonable statement of fact. *See Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18-19 (1990) ("If a speaker says, 'In my opinion John Jones is a liar,' he implies a knowledge of facts which lead to the conclusion that Jones told an untruth. Even if the speaker states the facts upon which he bases his opinion, if those facts are either incorrect or incomplete, or if his assessment of them is erroneous, the statement may still imply a false assertion of fact.").

[135]     *See Fait v. Regions Fin. Corp.*, 655 F.3d 105, 110 (2d Cir. 2011) (stating that a statement concerning the impairment of goodwill is inherently subjective, because it depends on a series of assumptions about the "fair value" of an asset). *See also City of Omaha, Neb. Civilian Employees' Retirement Sys. v. CBS Corp.*, 679 F.3d 64, 68-69 (2d Cir. 2012) (affirming dismissal under *Fait* when securities fraud complaint lacked allegations that company did not believe its goodwill estimate at the time it was made). Presently there is no need to decide whether, in

Here, the alleged material misstatements are that DTTC stated that its audits had been performed in accordance with PCAOB standards and that Longtop's financials were fairly presented.[136]  The allegation that these opinions were misstatements fails for the same reason as the allegation that DTTC acted with scienter.  At base, Lead Plaintiffs' argument is that DTTC's audit reports contained material misstatements because they erroneously certified that Longtop's financials were prepared in accordance with GAAP.[137]  No facts alleged show that DTTC was aware, or should have been aware, of wrongdoing on Longtop's part at the time DTTC issued the audit reports.  Instead, the allegations in the Complaint lead to the compelling and stronger inference that DTTC performed a diligent

---

the 10(b) context, a statement of opinion could be "materially false" because it does not express the speaker's true opinion.  *Cf. Virginia Bankshares, Inc.*, 501 U.S. at 1096 (quoting *Stedman v. Storer*, 308 F. Supp. 881, 887 (S.D.N.Y. 1969)) ("to recognize liability on mere disbelief or undisclosed motive without any demonstration that the proxy statement was false or misleading about its subject would authorize § 14(a) litigation confined solely to what one skeptical court spoke of as the "impurities" of a director's "unclean heart.").

[136]     *See* Compl. ¶¶ 181-182.

[137]     *See* Opp. Mem. at 9-13.

36

audit, only to be duped by Longtop's fraud.[138]  Accordingly, Lead Plaintiffs have

failed to plead a material misstatement.

## C.     Leave to Amend

Lead Plaintiffs seek leave to amend the Complaint.  Although a court

"should freely give leave" to amend "when justice so requires,"[139] there is cause for

suspicion that amendment here would be futile.  Namely, Lead Plaintiffs have

fallen far short of showing that DTTC made a material misrepresentation with

scienter, instead relying on general recitations of accounting standards, post-hoc

reasoning, and conclusory allegations.  Nonetheless, I grant Lead Plaintiffs leave to

amend, but only if they can correct the deficiencies noted in this Opinion in

compliance with their obligations under Rule 11.  Any repleading must be made

within thirty days of the date of this Order.

## V.     CONCLUSION

---

[138]      *See* Compl. ¶ 58.  In their opposition brief, Lead Plaintiffs argue that the Resignation Letter indicates that DTTC did not "independently verify Longtop's bank balances and borrowing until May 2011 . . . ."  Opp. Mem. at 16.  This contention is contradicted by the text of the Resignation Letter, which refers to "confirmations" of replies "previously received," "follow up visits," etc.  Compl. ¶ 58.

[139]      Fed. R. Civ. P. 15(a)(2).

For the foregoing reasons, defendant Deloitte Touche Tohmatsu CPA Ltd.'s motion to dismiss is granted.  It is hereby Ordered that defendant Deloitte Touche Tohmatsu CPA Ltd. is to be dismissed from this action.  It is further Ordered that Lead Plaintiffs are granted leave to replead within thirty days of the date of this Order.  The Clerk of Court is directed to close this motion (Docket No. 101).

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            November 14, 2012

**-Appearances-**

**Counsel for Plaintiffs:**

Kimberly A. Justice, Esq.
John A. Kehoe, Esq.
John J. Gross, Esq.
Kessler Topaz Meltzer & Check, LLP (PA)
280 King of Prussia Road
Radnor, Pennsylvania 19087
(610) 667-7706

Daniel L. Berger, Esq.
Jeff A. Almeida, Esq.
Deborah A. Elman, Esq.
Reena S. Liebling, Esq.
Grant & Eisenhofer, P.A. (NY)
485 Lexington Avenue
29th Floor
New York, New York, 10017
(646) 722-8500

**Counsel for Defendants:**

Gary F. Bendinger, Esq.
Gazeena K. Soni, Esq.
Sidley Austin LLP
787 Seventh Avenue
New York, New York, 10019
(212) 839-5300