UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X
                                                                  )
                                                                  )   Civil Action No. 11-cv-3658-SAS
IN RE LONGTOP FINANCIAL TECHNOLOGIES            )
LIMITED SECURITIES LITIGATION                           )   ECF CASE
                                                                  )   Electronically Filed
                                                                  )
                                                                  )
                                                                  )
-----------------------------------------------------------------X

**DEFENDANT DELOITTE TOUCHE TOHMATSU CPA LTD.'s
MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS
<u>THE AMENDED CONSOLIDATED CLASS ACTION COMPLAINT</u>**

<u>**ORAL ARGUMENT REQUESTED**</u>

# TABLE OF CONTENTS

TABLE OF CONTENTS .................................................................................................. ii

PRELIMINARY STATEMENT ...................................................................................... 1

ARGUMENT .................................................................................................................. 4

    I.    THE AMENDED COMPLAINT DOES NOT ALLEGE FACTS THAT GIVE
    RISE TO A STRONG INFERENCE THAT DTTC ACTED WITH
    SCIENTER. ....................................................................................................... 4

        1.    Allegations regarding internal control deficiencies and
            risk factors ...................................................................................... 5

        2.    ███████████████████████████████████ ..... 14

        3.    Allegations regarding information from third parties ................... 17

        4.    Allegations regarding XLHRS and Longtop's social welfare
            payments ......................................................................................... 20

    II.    THE AMENDED COMPLAINT DOES NOT PLEAD WITH PARTICULARITY
    THAT DTTC MADE A MATERIAL MISREPRESENTATION. ....................... 23

    III.    ANY CLAIM BASED ON MISSTATEMENTS PRIOR TO DECEMBER 14,
    2007 IS BARRED BY THE STATUTE OF REPOSE ........................................ 24

CONCLUSION ............................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Boudinot v. Shrader*,
2012 WL 489215 (S.D.N.Y. Feb. 15, 2012)..........................................................24

*Citadel Equity Fund Ltd. v. Aquila*,
168 Fed. Appx. 474 (2d Cir. 2006).........................................................................8

*In re Exxon Mobil Corp. Sec. Litig.*,
500 F.3d 189 (3d Cir. 2007)..................................................................................24

*In re IndyMac Mortgage-Backed Sec. Litig.*,
793 F. Supp. 2d 637 (S.D.N.Y. 2011)..................................................................24

*In re Lehman Bros. Sec. & ERISA Litig.*,
799 F. Supp. 2d 258 (S.D.N.Y. 2011)..................................................................23

*Iowa Public Employee's Retire. Sys. v. Deloitte & Touche LLP*,
No. 12-cv-02136-JPO (S.D.N.Y. Jan. 23, 2013) ...................................................4

*McCann v. Hy-Vee, Inc.*,
663 F.3d 926 (7th Cir. 2011) ...............................................................................24

*Stephenson v. PricewaterhouseCoopers, LLP*,
2012 WL 1764191 (2d Cir. May 18, 2012) ..........................................................19

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007) ...............................................................................................3

STATUTES

15 U.S.C. § 7213(a)(2)(A)(iii)(III) ............................................................................9

28 U.S.C. § 1658(b) ...................................................................................................24

OTHER AUTHORITIES

17 C.F.R. § 229.308 ....................................................................................................9

Interim PCAOB Standard AU 316 ...............................................................11, 13, 16

72 Fed. Reg. 32340 ...................................................................................................11

Interim PCAOB Standard AU 326 .............................................................................15

Interim PCAOB Standard AU 330 .............................................................................15

Defendant Deloitte Touche Tohmatsu CPA Ltd. ("DTTC"), by its attorneys, respectfully submits this memorandum in support of its motion to dismiss Plaintiffs' Amended Consolidated Class Action Complaint (the "Amended Complaint" or "AC") as to DTTC.[1]

## PRELIMINARY STATEMENT

The Court should dismiss the Amended Complaint for the same reason it dismissed the prior one: the immutable facts demonstrate that "the strongest inference is that DTTC was duped by Longtop, not that it recklessly enabled them." 11/14/12 Opinion and Order ("Order"), Dkt. 115, at 33. Plaintiffs have had three months to review more than four million pages of discovery from Defendant Derek Palaschuk and a month to analyze this Court's Order and repackage their allegations. Yet the inescapable conclusion remains "that DTTC had performed its prior audits with diligence." *Id.* at 29. The Amended Complaint, just like the prior one, is flatly inconsistent with any inference that DTTC acted with scienter "approximat[ing] an actual intent to aid in the fraud being perpetrated by the audited company." *Id.* at 21.

The central facts underlying this case, as the Amended Complaint continues to allege, show that "Longtop went to great lengths to conceal its fraud from DTTC," and that DTTC promptly and noisily resigned when it uncovered that fraud. Order at 24; AC ¶¶ 56-57. Longtop Financial Technologies Limited's ("Longtop" or the "Company") management falsified bank confirmations provided to DTTC and "deliberate[ly] interfere[d]" with DTTC's audit process. *See* AC ¶ 57. DTTC tried to "follow[] up" on discrepancies identified during its audit work, only to be "halted by Longtop's obstructionist behavior," Order at 7, which included seizing DTTC's workpapers and detaining DTTC audit personnel. *See* AC ¶ 57. As before, the "most compelling inference to be drawn from the Resignation Letter … is that Longtop had been hiding

---

[1] The parties have complied with this Court's Individual Rules of Practice and have exchanged letters prior to the filing of this motion. Declaration of Elizabeth L. Howe ("Howe Decl.") at ¶ 2.

its fraud from DTTC, but was forced to reveal it under enhanced scrutiny."  Order at 31-32.

None of that has changed in the Amended Complaint, nor could it.

As it turns out, even with the benefit of four million pages of discovery, Plaintiffs have added only four sets of new *factual* allegations about DTTC, asserting that:  (1) Longtop's internal control deficiencies and risk factors should have put DTTC on notice that the Company was engaged in fraud, (2) ████████████████████████████████████████ ██████████████████, (3)  DTTC ignored allegations raised by third parties (most of which were raised after DTTC issued its final audit opinion), and (4) in addition to the "red flags" alleged in the prior complaint (which this Court rejected), there were other "red flags" that should have put DTTC on notice that Longtop was using XLHRS, a staffing company, to underpay its social welfare payments.  But far from undermining the narrative told by Plaintiffs' prior complaint, these new allegations only confirm the inference that DTTC conducted its audits diligently and, most critically here, do not allege facts that support a compelling inference that DTTC acted recklessly.[2]

As just one example, Plaintiffs' new allegations concerning internal controls defy common sense.  ████████████████████████████████████████████████

████████████████████████████████████████████████████████

---

[2] For the Court's convenience, DTTC has attached as Exhibit A a chart categorizing the allegations in the Amended Complaint that were not included in the prior complaint.  As the chart demonstrates, the vast majority of Plaintiffs' new allegations are not factual allegations concerning DTTC's conduct or state of mind.  Rather, many of those "new" allegations add nothing of substance and are instead simply long quotations from and summaries of auditing standards and conclusory allegations of violations of those standards.  Still other allegations have nothing to do with DTTC at all:  summaries of public statements made by Longtop, recitations of publicly available information, and allegations otherwise entirely unconnected to DTTC.  Because as the Court previously ruled, "general recitations of accounting standards, post-hoc reasoning, and conclusory allegations" do not satisfy the heightened pleading standards of Rule 9(b) and the Private Securities Litigation Reform Act ("PSLRA"), Order at 37, DTTC focuses here on the allegations based on new "facts."

██████████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████ This inference is nonsensical and far from the "compelling inference" required by the PSLRA and *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007). As further demonstrated below, the most compelling inference to be drawn from the conduct alleged in the Amended Complaint is that DTTC did its job, not that it acted recklessly.

At bottom, Plaintiffs' new allegations are nothing more than an attempt to rehash their prior discredited theory: "[h]ad DTT conducted its audits in accordance with GAAS, it would have reacted to the numerous, obvious 'red flags' set forth above and, in so doing, *would have discovered* the truth about Longtop's operations." AC ¶ 271 (emphasis added). This is exactly the theory this Court already has rejected—"that, had DTTC performed a better audit, it would have uncovered Longtop's fraud." Order at 23.

Separately, Plaintiffs have all but ignored the second, equally critical holding of this Court's Order dismissing the prior complaint. This Court held that an auditor's opinion is, in fact, an *opinion*, and therefore a complaint must allege both that it is "grounded on a specific factual premise that is false, and that the speaker did not 'genuinely or reasonably believe' it." Order at 35. The prior complaint asserted that DTTC's audit opinions on Longtop's financial statements for the fiscal years ending March 31, 2009 and 2010 were misstated. The Amended Complaint appears to add allegations concerning additional opinions: DTTC's opinions on Longtop's financial statements for the fiscal years ending December 31, 2005 and 2006, the three months ending March 31, 2007 (all included in its IPO filings), and the fiscal year ending March 31, 2008, and its opinions, pursuant to Section 404(b) of the Sarbanes-Oxley Act, on the

effectiveness of Longtop's internal controls over financial reporting as of March 31, 2009 and 2010.  *See, e.g.,* AC ¶ 33.  But as with the prior complaint, there are no allegations that DTTC believed *any* of these opinions to be untrue.  This pleading failure independently dooms all of Plaintiffs' claims.

Plaintiffs twice have taken their best shot at stating a claim against DTTC—first with the Consolidated Class Action Complaint (filed five months after the original complaint) and again with the Amended Complaint (filed a year later with the benefit of more than four million pages of discovery and the Court's dismissal Order).  Twice Plaintiffs have failed.  The Amended Complaint should be dismissed with prejudice.  *See* Transcript of 1/8/2013 Hearing at 32-33, attached as Ex. A to the Declaration of Gazeena K. Soni ("Soni Decl.").

## ARGUMENT

I.   **THE AMENDED COMPLAINT DOES NOT ALLEGE FACTS THAT GIVE RISE TO A STRONG INFERENCE THAT DTTC ACTED WITH SCIENTER.**

The Amended Complaint should be dismissed as to DTTC for failure to allege scienter. Like the prior complaint, and critically different from Plaintiffs' allegations concerning other defendants, the Amended Complaint does not even try to assert that DTTC acted with a motive to commit fraud.  This is consistent with this Court's observation that "[a]n outside auditor will typically not have an apparent motive to commit fraud."  Order at 21.  Accordingly, to state a claim against DTTC, the Amended Complaint, taken as a whole, must allege recklessness, *i.e.*, "an extreme departure from the standards of ordinary care"  "approximating an actual intent to aid Longtop's deception."  *Id.* at 21, 23 (citing cases); *see also* Memorandum and Order in *Iowa Public Employee's Retire. Sys. v. Deloitte & Touche LLP*, No. 12-cv-02136-JPO, at *11, 14-15 (S.D.N.Y. Jan. 23, 2013) (attached as Ex. B).  As discussed at length in the Court's prior dismissal Order, the facts alleged in the prior complaint, when "viewed holistically," were not

sufficient to raise a compelling inference that DTTC was "on notice that Longtop was engaged in fraud."  Order at 23.  Indeed, the facts alleged suggested the exact opposite inference:  that DTTC performed its audits with diligence, only to be duped by Longtop.  As explained below, Plaintiffs' new allegations confirm the narrative told by the prior complaint and reinforce that Plaintiffs' claim against DTTC again should be dismissed.[3]

### 1.    Allegations regarding internal control deficiencies and risk factors

As the Court explained in its dismissal Order, the facts alleged in the prior complaint set forth a narrative involving an auditor that performed its audits "with diligence" and that took

---

[3] The Amended Complaint alleges (at ¶¶ 18-20, 161) that DTTC is now a party to *two* SEC proceedings related to the production of audit workpapers (but not the quality of its audit work). As the Court previously explained with respect to the first of those proceedings, "Lead Plaintiffs' argument that DTTC's failure to comply with the SEC's subpoena provides proof of scienter is also baseless."  Order at 33 n.128.  The fact that the SEC has filed a second proceeding against DTTC and four other accounting firms (including each of the China Big Four)—confirms that restrictions on the production of audit workpapers is a profession-wide issue "caused by conflicting demands from Chinese regulators" and the SEC, and not any reason to think that DTTC itself has acted with scienter. *Id.*



In a section concerning "Longtop and the Individual Defendants," and *not DTTC*, AC § V.A., Plaintiffs also point ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  But these allegations are nothing new.  DTTC's own resignation letter, discussed at length in this Court's Order, not only quotes the admission of Longtop's CEO that there was "fake cash recorded on the books," but specifically states that one reason for DTTC's resignation is "the recently identified falsity of [Longtop's] financial records in relation to *cash at bank and loan balances* (and also now seemingly in the sales revenue)."  AC ¶ 57 (emphasis added). ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  Likewise, as the Court has already noted, and as also noted in DTTC's resignation letter, DTTC itself was a target of Longtop's cash fraud.  *See* Order at 24 (Plaintiffs have "amply allege[d] that Longtop went to great lengths to conceal its fraud from DTTC, e.g., by falsifying bank confirmations").  Given this fraud upon DTTC, any back-of-the-envelope calculation of the quantity of that fraud is insufficient to show scienter, as "a fraud's large size, standing alone, is insufficient to show recklessness." *Id.* at 31.

action when it learned of potential issues, "despite the obvious temptation to discount them."
Order at 29.  In the Amended Complaint, Plaintiffs again attempt to wish away this narrative,
disregarding the undisputed facts and common sense in the process.  This time, Plaintiffs claim
that DTTC was aware of, but acted recklessly in response to, known "internal control
deficiencies" and "fraud risk factors" at Longtop.  *See* AC ¶¶ 91-106, 109-12.  But, as in the
prior complaint, the *facts* tell the opposite story:  that DTTC was alert to potential internal
control issues and risk factors and took those issues into account in planning and performing its
audits.

**Internal Controls.**  First, Plaintiffs ask this Court to put aside the facts—and common
sense—in alleging that DTTC failed to respond appropriately to internal control deficiencies at
Longtop. ██████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████  Not surprisingly, the facts alleged tell a very different story—and the only
inference to be drawn from those facts is that DTTC did its job.

████████████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████

---

[4] Although the Amended Complaint uses the term "material internal control deficiencies," there
is no such phrase in accounting and auditing literature, and it wrongly suggests that all internal
control deficiencies are somehow "material." ██████████████████████████████



Each of the documents from Mr. Palaschuk's production cited in this memorandum were obtained from Plaintiffs, as they are quoted or specifically referenced in the Amended Complaint and therefore are integral to that document.  Accordingly, the Court may consider the documents cited in this memorandum in connection with DTTC's motion to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and without converting DTTC's motion to dismiss into a motion for summary judgment.  Order at 12-13.



███████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████ ; *see, e.g.*, 10/24/2007 Longtop Form 424(b)(4) ("Prospectus") at 22, attached as Ex. B to Soni Decl.[7] Longtop also undertook other related efforts, including establishing a U.S. GAAP-based accounting system, Prospectus at 22,  implementing procedures to more quickly convert its accounts from Chinese GAAP to U.S. GAAP, *id.*, ██████████████████████████████ ████████████████████████████████████████████████[8] And, contrary to Plaintiffs' conclusory allegation, Longtop disclosed to the SEC and the investing public the material weakness and significant deficiency that DTTC had identified, as well as its ongoing remediation efforts.  *See* 10/2/2007 Longtop Form F-1 ("Registration Statement") at 21, attached as Ex. C to Soni Decl.; Prospectus at 22; *compare* AC ¶ 102 (alleging that "nothing was done to alert the investing public of these deficiencies").

███████████████████████████████████████████████████████████████

_____



[6] ████████████████████████████████████████████████████████

[7] The Court may consider SEC filings in determining this motion to dismiss.  *See Citadel Equity Fund Ltd. v. Aquila*, 168 Fed. Appx. 474, 476 (2d Cir. 2006).



[8] ████████████████████████████████████████████████████████



Longtop issued its first management report on internal controls on June 29, 2009, and DTTC issued its first opinion on Longtop's internal controls.[9]  No material weaknesses were identified.[10]  *See* 6/29/2009 Longtop Form 20-F ("2009 Form 20-F") at 98-99, attached as Ex. D to Soni Decl.;

Put into context, Plaintiffs' internal control allegations do not create a compelling inference of scienter on behalf of DTTC.  The Amended Complaint does not allege any *facts* showing that DTTC ignored and did not disclose any material weaknesses in Longtop's internal controls.

---

[9] Because implementing SOX 404's internal control requirements requires "substantial time and resources" and would "impose[] an additional burden on newly public companies," newly public companies have a transition period of approximately one year after becoming public to establish a SOX 404 framework and to conduct their first internal controls assessment.  SEC Release Nos. 33-8760, 34-54942, *Internal Control Over Financial Reporting in Exchange Act Periodic Reports of Non-Accelerated Filers and Newly Public Companies*, at 6, 23-28; *see* Instructions to Item 308, SEC Regulation S-K, 17 C.F.R. § 229.308.

[10] Consistent with the Sarbanes-Oxley Act, DTTC's audit opinion did *not* provide any assurance that there were *no* internal control deficiencies at Longtop.  Rather, DTTC's audit opinion properly focused on whether there were any *material weaknesses* in Longtop's internal controls. *See* 15 U.S.C. § 7213(a)(2)(A)(iii)(III) (audit report to include "a description, at a minimum, of material weaknesses in such internal controls"); *see also* Item 308, SEC Regulation S-K, 17 C.F.R. § 229.308 (management report "must include disclosure of any material weakness in the registrant's internal control over financial reporting identified by management").

███████████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████ is not the sort of

information that "would place a reasonable auditor on notice that the audited company was

engaged in wrongdoing to the detriment of its investors."  Order at 27 (defining "red flag")

(citation omitted).  Rather, Plaintiffs' allegation is simply fraud by hindsight—"a claim that is

accorded the same respect in this Circuit today as it was when Judge Friendly gave it a name."

*Id.* at 32.  Moreover, Plaintiffs' claim that the internal control deficiencies identified by DTTC

were "red flags" of fraud is refuted by the fact that these internal control deficiencies *were*

*disclosed* in the Company's SEC filings, and "neither the SEC nor the investing public

recognized Longtop's alleged fraud."  *Id.* at 28.  ██████████████████████████████

███████████████████████████████████████████████████

---

[11] Plaintiffs are incorrect in their repeated assertion that DTTC was aware of multiple "material internal control deficiencies" at Longtop.  *E.g.*, AC ¶ 98.  ██████████████████████
██████████████████████████████████████████████████████
██████████████████████████████████████████
███████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████████████

**Risk Factors.**  ██████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████  Again, Plaintiffs

ask this Court to suspend common sense and confuse diligence with recklessness.

*First*, an auditor's identification of risk factors is the antithesis of recklessness under

applicable standards.  Indeed, doing so is a *required* element of a *well-planned* audit.  PCAOB

auditing standards require auditors to identify "the potential for material misstatement due to

fraud" and to plan an audit.  AU 316, *Consideration of Fraud in a Financial Statement Audit*

("AU 316"), at § 316.14, attached as Ex. E to Soni Decl.[12]  When promulgating Auditing

Standard No. 5 (on internal controls), the PCAOB made this crystal clear:  "Incorporating the

auditor's fraud risk assessment—required in the financial statement audit—into the auditor's

planning process for the audit of internal control should *promote audit quality* as well as better

integration."  *Notice of Filing of Proposed Rule on Auditing Standard No. 5*, 72 Fed. Reg. 32340,

32361 (June 12, 2007) (emphasis added).

*Second*, ███████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████

---

[12] DTTC quotes here the text of interim PCAOB auditing standard AU 316 as it existed at the time of DTTC's audits.  In August 2010, the PCAOB adopted eight new PCAOB Auditing Standards (A.S.), including A.S. No. 8, *Audit Risk*, which supersede portions of AU 316 for audits after December 15, 2010.



████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████

*Third*, this Court should reject Plaintiffs' attempt to conflate the identification of *fraud risks* with notice of *actual fraud*. In fact, PCAOB auditing standards themselves expressly refute the conclusion that Plaintiffs suggest here, *i.e.*, that because DTTC considered potential risks of fraud as part of its audits, DTTC must have been aware that Longtop was, in fact engaged in fraud. *See* AU 316.31 ("Fraud risk factors do not necessarily indicate the existence of fraud …."). ████████████████████████████

████████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████

██████████████████████ *see, e.g.*, 6/26/2012 Form 10-K of Oracle Corporation, at 79 (████████████████████████), attached as Ex. G to Soni Decl.; 3/15/12 Form 10-K of Build-A-Bear Workshop, Inc. at 40 (same), attached as Ex. H to Soni Decl. ████████████████████████████████

████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████

█████████████████████████████████████

█████

*Finally*, █████████████████████████████████

█████████████████████████████████████

██████████████████████████████████████

█████████████████████████████████████

███████████████████████████████████

████████████████████████████████████

██████████████████████████████████

█████████████████████████████████████

██████████████████████████

**2.** ███████████████████████████████

Plaintiffs' allegations concerning DTTC's alleged failure to obtain confirmations are also misguided, and not for the first time.  *See* Order at 37 n.138 (rejecting Plaintiffs' allegation that DTTC had failed to obtain confirmation of bank balances).  ████████████████████

█████████████████████████████████

██████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████

████████████████████████████████████████

██████████████████████

Audit evidence can be obtained in any number of ways, such as obtaining written confirmations from third parties, inspecting company documents, observing company processes, and obtaining representations from management.  *See* AU 326, *Evidential Matter* ("AU 326") at § 326.17, attached as Ex. J to Soni Decl.  As a general matter, the decision as to what procedures should be used on an audit engagement is a matter of judgment for the auditor based on the specific circumstances of that engagement.  *See* AU 326.13 ("The nature, timing, and extent of the procedures to be applied on a particular engagement are a matter of professional judgment to be determined by the auditor, based on the specific circumstances.").

In some limited circumstances, PCAOB auditing standards provide that certain audit procedures are presumptively required.  For example, PCAOB auditing standards provide that confirmation of a company's accounts receivable is a presumptively-required audit procedure. *See* AU 330, *The Confirmation Process* ("AU 330") at § 330.34, attached as Ex. K to Soni Decl. But the Amended Complaint does not allege any facts suggesting that DTTC failed to perform accounts receivable confirmations;





At bottom, Plaintiffs' allegations are the very sort of fraud-by-hindsight allegations that this Court already has held do not establish auditor scienter.  *See* Order at 32-33.  ███████

█████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

████████████████████████████████ ████████████████████

██████████████████████████████████████████████████████████████

█████████████████████████████████████████████ And, "merely alleging that the auditor had access to the information by which it could have discovered the fraud is not sufficient."  Order at 22; *see id.* at 32-33 ("it is not reckless to lack clairvoyance").  Far from correcting the deficiencies in the prior complaint, the Amended Complaint simply repeats them.

### 3.      Allegations regarding information from third parties

The Amended Complaint alleges that DTTC disregarded information from third parties who expressed concerns regarding Longtop's financial performance.  ██████████████████

██████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

██████████████████████████████████████████████ ████████████

███ Far from suggesting scienter, however, the more compelling inference from these allegations again is that DTTC was diligent.

████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████ ████████████

██████████████████ This Court defined "red flags" as "sign[s] consciously disregarded by the auditor

that would place a reasonable auditor on notice that the audited company was engaged in wrongdoing to the detriment of its investors." Order at 27 (quotation marks and citation omitted). 

██████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████   Then, on March 31, 2010

(█████████████████), "Longtop convened a conference call for analysts and investors to

address 'various questions' that Longtop received regarding its relationship with XLHRS,

including some of the [alleged 'red flags']."  AC ¶ 73.  During the conference call, members of

Longtop management, as well as the CEO of XLHRS, *id.*, exhaustively answered questions

posed by analysts from (among others) Goldman Sachs, Deutsche Bank, and Oppenheimer.

████████████████████████████████████████████████████████

████████   Plaintiffs have pointed to no reason why DTTC should have been aware, let alone

consciously disregarded, that XLHRS was anything more than "what Longtop presented it as:  a

fully-disclosed independent staffing agency."  Order at 28.  ██████████████████████████

██████████████████████████████████████████████████████

██████████████████

      The other two allegations regarding third party information suffer from a different, yet no

less fatal, flaw:  they post-date DTTC's final audit opinion, dated July 16, 2010.  AC ¶¶ 128-30.

Because DTTC cannot have been aware of these facts before issuing its opinions, they therefore

cannot be red flags.  Order at 26; *see also Stephenson v. PricewaterhouseCoopers, LLP*, 2012

WL 1764191, at *3 (2d Cir. May 18, 2012) ("[P]leading the existence of red flags does not

establish that a defendant was aware of those warning signals.").

      Moreover, these allegations are consistent with an inference that DTTC was diligently

doing its job.  ███████████████████████████████████████████

 As a result of DTTC's

"enhanced scrutiny," Longtop ultimately was "forced to reveal" the fraud it "had been hiding …

from DTTC."  Order at 32.

### 4.   Allegations regarding XLHRS and Longtop's social welfare payments

Plaintiffs further strain to rehabilitate their XLHRS allegations, but it is a story this Court has heard before and rejected.  Relying on the same conclusory allegations this Court previously rejected, Plaintiffs assert that DTTC should have been aware that XLHRS was a related-entity to Longtop.  *See, e.g.,* AC ¶ 137.  But Plaintiffs cannot change that "Longtop disclosed in its 2008 Form 20-F that it entered into a staffing contract with XLHRS in May 2007," including disclosing "an account of the relationship that Longtop had with XLHRS, the number of employees provided by XLHRS, and a copy of XLHR[S]'s contract with Longtop."  Order at 27-28.  As this Court concluded, "neither the SEC nor the investing public recognized Longtop's alleged fraud," raising "the inference that these purported red flags are in fact red herrings."  *Id.* at 28.

In addition to repeating the prior complaint's XLHRS allegations that this Court already has rejected, the Amended Complaint also alleges that Longtop was using XLHRS in some nebulous "scheme" to underpay its "government-mandated social welfare."  *See, e.g.,* AC ¶¶ 140, 160.  The facts are simply inconsistent with any such "scheme," much less one of which DTTC was aware.

As an initial matter, there is no allegation that the accounting for Longtop's welfare payments was incorrect.



Such allegations do not give rise to a compelling inference that DTTC acted recklessly.

II.     **THE AMENDED COMPLAINT DOES NOT PLEAD WITH PARTICULARITY THAT DTTC MADE A MATERIAL MISREPRESENTATION.**

Plaintiffs base their claim against DTTC on its audit opinions that were publicly filed in Longtop's SEC filings.  AC ¶¶ 163, 173, 190-91, 215-16.  Audit opinions are properly analyzed as opinions for purposes of determining whether they are misstatements under the federal securities laws.  Order at 34-35; *see also In re Lehman Bros. Sec. & ERISA Litig.*, 799 F. Supp. 2d 258, 299-304 (S.D.N.Y. 2011).  "[T]o allege that an auditor opinion is a misrepresentation, a complaint must show that the statement in question is grounded on a specific factual premise that is false, and that the speaker did not 'genuinely or reasonably believe' it."  Order at 34-35 (quoting *In re IBM Corp. Sec. Litig.*, 163 F.3d 102, 107 (2d Cir. 1998)).  Where "the underlying alleged auditing standard violations [are] inherently subjective," "strong circumstantial evidence of subjective falsehood" will be required to survive a motion to dismiss.  Order at 35.

Like the prior complaint, the Amended Complaint does not even attempt to suggest that DTTC had any subjective belief that the statements made in any of its opinions were untrue.  *See* Order at 34-36.  Nor have Plaintiffs alleged facts showing that DTTC "was aware, or should have been aware, of wrongdoing on Longtop's part at the time DTTC issued the audit reports." This alone is fatal to Plaintiffs' claim, yet they made no effort to correct it.  At bottom, the Amended Complaint does not – and cannot – allege that DTTC did not actually believe the opinions expressed in its audit opinions.  *Id.* at 36.

Moreover, Plaintiffs have alleged no facts demonstrating that DTTC's 2009 and 2010 audit opinions on the effectiveness of Longtop's internal controls were objectively false. Although Plaintiffs generally assert that internal control deficiencies existed throughout the Class Period, Plaintiffs do not allege facts supporting that claim or even identifying what those internal control deficiencies were.  Nor do Plaintiffs allege facts sufficient to show that any such internal

control deficiencies were of such magnitude and severity that DTTC was required to issue an adverse opinion on the effectiveness of Longtop's internal controls.

Thus, the Amended Complaint must be dismissed for the separate reason that it fails to allege any material misstatement by DTTC.

## III.   ANY CLAIM BASED ON MISSTATEMENTS PRIOR TO DECEMBER 14, 2007 IS BARRED BY THE STATUTE OF REPOSE.

The Amended Complaint's claims based on DTTC's October 24, 2007 audit opinion are time barred.  The statue of repose for federal securities fraud claims is five years.  28 U.S.C. § 1658(b).[16]  Until Plaintiffs' Amended Complaint, filed on December 14, 2012, Plaintiffs did not make any allegations concerning DTTC's statements included in Longtop's October 24, 2007 Prospectus.  Because the Amended Complaint was filed more than five years after DTTC's audit opinion was issued, any claim based on that audit report must be dismissed.[17]

\*       \*       \*

Finally, although (as explained above) the documents produced by Defendant Palaschuk only reinforce that Plaintiffs' claim against DTTC should be dismissed, DTTC notes its continuing objection to Plaintiffs' use of discovery materials in amending their complaint against DTTC.  As DTTC explained in a series of letter briefs to the Court, DTTC believes that the

---

[16] In addition to the five-year statute of repose, Section 804(a) of the Sarbanes-Oxley Act enacted a two-year statute of limitations for securities fraud claims.  Unlike statutes of limitations, which, for example, may not be triggered until inquiry notice, statutes of repose are absolute. Accordingly, neither judicial tolling doctrines nor relation back under Fed. R. Civ. P. 15 may be invoked to avoid the certainty imposed by its limits.  *See In re IndyMac Mortgage-Backed Sec. Litig.*, 793 F. Supp. 2d 637, 642-43 (S.D.N.Y. 2011).

[17] Courts in this district have "consistently stated that the five-year period begins to run from the time that the allegedly fraudulent representations were made," *Boudinot v. Shrader*, 2012 WL 489215, at \*4 (S.D.N.Y. Feb. 15, 2012), and the two circuit courts to authoritatively address this issue agree, s*ee McCann v. Hy-Vee, Inc.*, 663 F.3d 926, 932 (7th Cir. 2011); *In re Exxon Mobil Corp. Sec. Litig.*, 500 F.3d 189, 199-202 (3d Cir. 2007).

PSLRA's automatic stay of discovery barred Plaintiffs from conducting discovery after serving the Summons and Consolidated Class Action Complaint on DTTC in August 2012; that the production of the Palaschuk discovery materials in September 2012 after DTTC filed its motion to dismiss the Consolidated Class Action Complaint violated the PSLRA's automatic discovery stay; and that Plaintiffs are prohibited from using the Palaschuk discovery materials to amend their complaint against DTTC, particularly following the Court's dismissal of that complaint for failing to satisfy (among other things) the PSLRA's heightened pleading standards.

DTTC notes that the Court has considered DTTC's letter briefs on this issue, heard oral argument on this issue at the January 8, 2013 hearing, and held that Plaintiffs properly obtained the Palaschuk discovery materials and were permitted to use those materials in amending their claim against DTTC.  DTTC understands that the Court has ruled on this issue and accordingly does not seek to relitigate it here.  DTTC instead raises the issue to provide a written record, in this motion, of the issue having been previously raised and decided, and to preserve the issue for appeal (if any).  For that reason, it also incorporates the arguments it previously made by reference here.

## CONCLUSION

For the foregoing reasons, DTTC's motion to dismiss the Amended Complaint with prejudice should be granted.

Dated:  January 25, 2013

Respectfully submitted,

 /s/ Gazeena K. Soni
Gary F. Bendinger
Gazeena K. Soni
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY 10019
Telephone:  (212) 839-5300
gbendinger@sidley.com
gsoni@sidley.com

Michael D. Warden (admitted *pro hac vice*)
Elizabeth L. Howe (admitted *pro hac vice*)
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, DC 20005
Telephone:  (202) 736-8000
mwarden@sidley.com
ehowe@sidley.com

David A. Gordon (admitted *pro hac vice*)
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
Telephone:  (312) 853-7000
dgordon@sidley.com

*Attorneys for Defendant Deloitte Touche
Tohmatsu CPA Ltd.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 25, 2013, I electronically filed the foregoing

Defendant Deloitte Touche Tohmatsu CPA Ltd.'s Memorandum in Support of its Motion to

Dismiss the Amended Consolidated Class Action Complaint with the Clerk of Court using the

CM/ECF system. I also certify that the foregoing document is being served on all counsel of

record or pro se parties, either via transmission of Notice of Electronic Filing generated by

CM/ECF or in some other authorized manner for those counsel or parties who are not authorized

to receive electronically Notices of Electronic Filing.


  /s/ Gazeena K. Soni
Gary F. Bendinger
Gazeena K. Soni
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY 10019
Telephone:  (212) 839-5300
Facsimile:  (212) 839-5599
gbendinger@sidley.com
gsoni@sidley.com