UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| IN RE LONGTOP FINANCIAL TECHNOLOGIES LIMITED SECURITIES LITIGATION | Civil Action No. 11-cv-3658-SAS<br><br>**JURY TRIAL DEMANDED**<br><br>**ECF CASE** |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS REPRESENTATIVES AND CLASS COUNSEL**

## TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT ........................................................... 1

II.   FACTUAL BACKGROUND ............................................................. 2

III.  PROCEDURAL HISTORY .............................................................. 5

IV.   LEGAL ARGUMENT ................................................................... 6

   A.    Plaintiffs Satisfy the Prerequisites of Rule 23(a) .............................. 7

      1.    Numerosity is Established........................................................ 7

      2.    Commonality is Established ..................................................... 7

      3.    Typicality is Established ......................................................... 9

      4.    Adequacy is Established ........................................................ 10

   B.    The Requirements of Rule 23(b) are Satisfied ............................... 11

      1.    Common Issues Predominate as to Plaintiffs' Exchange Act Claims ......... 12

      2.    Superiority is Established ...................................................... 14

V.    CONCLUSION ....................................................................... 15

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*In re Alstom SA Sec. Litig.,*
  253 F.R.D. 266 (S.D.N.Y. 2008) ........................................................................13

*Amchem Prods. v. Windsor,*
  521 U.S. 591 (1997)..................................................................................10, 12

*Amgen Inc. v. Conn. Ret. Plans and Trust Funds,*
  133 S. Ct. 1184 (2013)..............................................................................2, 7, 13

*In re Bank of Am. Corp. Sec., Deriv. & ERISA Litig.,*
  281 F.R.D. 134 (S.D.N.Y. 2012) ................................................................. *passim*

*Basic Inc. v. Levinson,*
  485 U.S. 224 (1988)..............................................................................2, 4, 13, 14

*In re Beacon Assocs. Litig.,*
  282 F.R.D. 315 (S.D.N.Y. 2012) ........................................................................14

*Consol. Rail Corp. v. Hyde Park,*
  47 F.3d 473 (2d Cir. 1995)..................................................................................7

*Damassia v. Duane Reade, Inc.,*
  250 F.R.D. 152 (S.D.N.Y. 2008) ........................................................................8

*DeMarco v. Robertson Stephens Inc.,*
  228 F.R.D. 468 (S.D.N.Y. 2005) ........................................................................6

*In re Deutsche Telekom AG Sec. Litig.,*
  229 F. Supp. 2d 277 (S.D.N.Y. 2002)..................................................................6

*Erica P. John Fund, Inc. v. Halliburton Co.,*
  131 S. Ct. 2179 (2011)........................................................................................13

*Espinoza v. 953 Assoc. LLC,*
  280 F.R.D. 113 (S.D.N.Y. 2011) ........................................................................7

*In re EVCI Career Coll. Holding Corp. Sec. Litig.,*
  Master File No. 05 Civ. 10240 (CM), 2007 WL 2230177 (S.D.N.Y. July 27, 2007) ..............9

*Faris v. Longtop Fin. Techs. Ltd.,*
  No. 11 CIV. 3658 SAS, 2011 WL 4597553 (S.D.N.Y. Oct. 4, 2011)....................................15

*Fogarazzo v. Lehman Bros., Inc.*,
    232 F.R.D. 176 (S.D.N.Y. 2005) ..................................................................................8, 9, 13

*In re Indep. Energy Holdings PLC Sec. Litig.*,
    210 F.R.D. 476 (S.D.N.Y. 2002) ..................................................................................9

*In re Initial Pub. Offering Sec. Litig. ("IPO")*,
    243 F.R.D. 79 (S.D.N.Y. 2007) ..................................................................................7, 8

*Int'l Controls Corp. v. Vesco*,
    556 F.2d 665 (2d Cir. 1977)..................................................................................6

*In re IPO Sec. Litig.*,
    471 F.3d 24 (2d Cir. 2006)..................................................................................7

*Lapin v. Goldman Sachs & Co.*,
    254 F.R.D. 168 (S.D.N.Y. 2008) ..................................................................................14

*In re Longtop Fin. Techs. Ltd. Sec. Litig.*,
    No. 11 CIV. 3658, 2013 WL 1410147 (S.D.N.Y. Apr. 8, 2013)..............................................6

*Marisol A. by Forbes v. Giuliani*,
    126 F.3d 372 (2d Cir. 1997)..................................................................................7

*In re Marsh & McLennan Cos. Sec. Litig.*,
    No. 04 Civ. 8144 (CM), 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009)...................................8

*Matrixx Initiatives, Inc. v. Siracusano*,
    131 S. Ct. 1309 (2011)..................................................................................12

*In re Merrill Lynch Tyco Research Sec. Litig.*,
    249 F.R.D. 124 (S.D.N.Y. 2008) ..................................................................................14

*Moore v. PaineWebber, Inc.*,
    306 F.3d 1247 (2d Cir. 2002)..................................................................................12

*In re NYSE Specialists Sec. Litig.*,
    260 F.R.D. 55 (S.D.N.Y. 2009) ..................................................................................10, 11, 12

*In re Oxford Health Plans, Inc. Sec. Litig.*,
    191 F.R.D. 369 (S.D.N.Y. 2000) ..................................................................................8

*Pa. Ave. Funds v. Inyx, Inc.*,
    No. 08 Civ. 6867 (PKC) 2011 WL 2732544 (S.D.N.Y. July 5, 2011)......................11, 13, 14

*Pub. Emps Ret. Sys. of Miss. v. Merrill Lynch & Co., Inc.*,
    277 F.R.D. 97 (S.D.N.Y. 2011) ..................................................................................8, 12

*In re Sadia, S.A. Sec. Litig.*,
   269 F.R.D. 298 (S.D.N.Y. 2010) ...............................................................10, 12, 13

*In re Veeco Instruments, Inc. Sec. Litig.*,
   235 F.R.D. 220 (S.D.N.Y. 2006) ........................................................................6, 9

*In re Vivendi Universal S.A. Sec. Litig.*,
   242 F.R.D. 76 (S.D.N.Y. 2007) .....................................................................7, 9, 10

*Wagner v. Barrick Gold Corp.*,
   251 F.R.D. 112 (S.D.N.Y. 2008) .........................................................................14

*In re WorldCom, Inc. Sec. Litig.*,
   219 F.R.D. 267 (S.D.N.Y. 2003) ...................................................................10, 13

## STATUTES

15 U.S.C. §78j(b) .....................................................................................................2

15 U.S.C. §78t(a) .....................................................................................................2

17 C.F.R. § 240.10b-5................................................................................................2

## OTHER AUTHORITIES

Fed. R. Civ. P. 23 .................................................................................................2, 7

Fed. R. Civ. P. 23(a) ...........................................................................................1, 6

Fed. R. Civ. P. 23(a)(2)...........................................................................................9

Fed. R. Civ. P. 23(a)(4)...................................................................................10, 12

Fed. R. Civ. P. 23(b) .....................................................................................2, 6, 11

Fed. R. Civ. P. 23(b)(3)......................................................................1, 6, 12, 14

Fed. R. Civ. P. 23(g) ...............................................................................................1

H.R. Rep. No. 104-369 (1995)...............................................................................11

Court-appointed Lead Plaintiffs, Danske Invest Management A/S ("Danske") and Pension Funds of Local No. One, I.A.T.S.E. ("Local No. One") (together, "Plaintiffs") respectfully submit this memorandum in support of their unopposed motion, pursuant to Fed. R. Civ. P. 23(a), (b)(3) and (g), seeking: (1) certification of a class of Longtop Financial Technologies Limited ("Longtop") investors, as defined below; (2) the appointment of Plaintiffs as Class Representatives; and (3) appointment of Lead Counsel[1] as Class Counsel (the "Motion").

Prior to filing the Motion, Plaintiffs and Defendant Derek Palaschuk ("Palaschuk") (together, the "Parties") conferred regarding class certification. Defendant Palaschuk has agreed not to oppose the Motion on the express condition that such agreement: (1) be in no way construed as an agreement with the contents of this memorandum of law; and (2) without prejudice to his right to challenge subsequently any assertion of fact or law contained herein.

## I.      PRELIMINARY STATEMENT

This securities class action arises out of Plaintiffs' allegation that Defendants[2] issued material misrepresentations and omissions between February 21, 2008 and May 17, 2011, inclusive (the "Class Period"), concerning Longtop's financial wellbeing and its ability to continue as a going concern. Plaintiffs have asserted claims under Sections 10(b) and 20(a) of

---

[1]      Lead Counsel are Kessler Topaz Meltzer & Check, LLP ("Kessler Topaz") and Grant & Eisenhofer ("G&E") serves as local counsel on behalf of Lead Counsel and the Class.

[2]      "Defendants" include: Longtop, Palaschuk, who served as Longtop's Chief Financial Officer ("CFO") during the Class Period and Lian Weizhou ("Lian") who served as the Company's Chief Executive Officer ("CEO") during the Class Period. Defendant Palaschuk is the only Defendant that has appeared in this case. *See infra* Section III.

the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a), and

Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5.

Plaintiffs now request certification of the following class (the "Class"):

All persons and entities who purchased or otherwise acquired Longtop ADSs during the period from February 21, 2008 through May 17, 2011, inclusive, and were damaged thereby. Excluded from the Class are Defendants, present or former executive officers of Longtop, present or former members of Longtop's Board of Directors, and their immediate family members (as defined in 17 C.F.R. § 229.404, Instructions).

This action is ideally suited for class treatment under Fed. R. Civ. P. 23 ("Rule 23"). The

elements of Plaintiffs' Section 10(b) and Section 20(a) claims raise common questions including,

*inter alia*, whether Defendants misstated and/or omitted material facts, whether Defendants acted

with scienter, and whether the Class can establish reliance and causation. With respect to the

element of reliance, a presumption of reliance applies to Plaintiffs' Section 10(b) claims pursuant

to the fraud-on-the-market theory, as the Parties have stipulated that the market for Longtop

ADSs was efficient during the Class Period. Moreover, while the allegedly misstated and

omitted information was clearly material, the Supreme Court recently held that "materiality need

not be proved prior to Rule 23(b)(3) class certification." *Amgen Inc. v. Conn. Ret. Plans and*

*Trust Funds*, 133 S. Ct. 1184, 1199 (2013). Accordingly, the fraud-on-the market presumption

of reliance applies to Plaintiffs' Section 10(b) claims. *See Basic Inc. v. Levinson*, 485 U.S. 224,

246 (1988).

For the reasons set forth more fully herein, Plaintiffs' unopposed motion should be

granted.

## II.   FACTUAL BACKGROUND

The facts alleged by Plaintiffs in this case, which Defendant Palaschuk dispute, are set

out more fully in Plaintiffs' Memorandum of Law in Opposition to Defendant Deloitte Touche

Tohmatsu CPA Limited's ("DTT") Motion to Dismiss the Amended Consolidated Class Action Complaint. *See* Dkt. No. 133.  Briefly, throughout the Class Period, Longtop held itself out as a "leading provider of software and information technology, or IT, services targeting the financial services industry in China."  ¶¶ 3, 34.[3]  Analysts found Longtop to be well-matched to address the urgent need for technology solutions for Chinese banks, citing the Company's industry leading margins, strong customer list, which included eight of China's top thirteen banks and China's top two insurance companies, as well as room for rapid growth. ¶ 36.

Longtop reported immense growth and profitability during the Class Period. ¶ 37.  For example, for the fiscal year that ended March 31, 2008, Longtop reported total revenues of $66.7 million and a gross profit margin of 60.4%. ¶ 172.  On June 29, 2009, for the fiscal year ended March 31, 2009, Longtop reported an increase in total revenues to $106.2 million and 65.7% respectively as well as a net income of $43.5 million. ¶ 189.  For the fiscal year ended March 31, 2010, Longtop's reported revenues and net income had again increased to $169.1 million and $59.1 million, respectively.  Longtop also reported gross and operating margins of 62.5% and 35.8%, respectively, which far exceeded the gross margins (15-50%) and operating margins (10-25%) reported by Longtop's peer companies. ¶¶ 37, 38.

Plaintiffs have alleged that, unbeknownst to investors, Longtop had been engaged in fraudulent conduct since 2004 and had never earned a profit. ¶ 69.  Plaintiffs contend that the falsity of Longtop's financial statements throughout the Class Period was confirmed by, *inter alia*, (1) Defendant Lian during a telephonic conversation with Defendant Palaschuk, ¶ 69, and (2) Hui Kung Ka ("Ka"), who served as Longtop's Chairman through the Class Period, who

---

[3]     All citations to "¶ __" are to the Amended Consolidated Class Action Complaint (the "Complaint").

similarly told Longtop's outside auditors that "there were fake revenue in the past so there were fake cash recorded on [Longtop's] books." ¶ 57.

Plaintiffs contend that the truth about Longtop's fraudulent financial results started to emerge in early 2011, when several analysts questioned Longtop's operations and financial statements. ¶¶ 43-48, 53. For instance, on April 26, 2011, Citron Research ("Citron") issued a report questioning the legitimacy of Longtop's Class Period financial statements and asserting that Longtop's reported margins were the result of questionable dealings with Xiamen Longtop Human Resources Services Co. ("XLHRS"), which Longtop billed as a third party human resources staffing company but Citron claimed was wholly-owned and controlled by Longtop. ¶¶ 43-45. Following the publication of the Citron report, Longtop's ADSs fell by approximately 13% to $22.24 per share. ¶ 46.

Ultimately, on May 17, 2011, trading in Longtop stock was halted. ¶54. By letter dated May 22, 2011, DTT resigned as Longtop's auditor and withdrew its prior audit reports on Longtop's financial statements for fiscal years 2008, 2009 and 2010. ¶ 57, 4. DTT's letter cited several reasons for its resignation, including: the falsity of Longtop's financial reports in relation to cash at bank and loan balances (and seemingly sales revenue); deliberate interference by management with DTT's audit process; and the unlawful detention of DTT's audit files. ¶ 57.

On July 22, 2011, the New York Stock Exchange ("NYSE") began formal delisting proceedings against Longtop. ¶ 60. The price of Longtop's ADSs dropped from a Class Period high of $42.73 on November 10, 2010 to $.58 per share on August 18, 2011, the first day of trading following the May 17, 2011 delisting of Longtop's ADSs). The NYSE ultimately

---

[4]     DTT's resignation letter was subsequently filed with the U.S. Securities and Exchange Commission ("SEC"). *Id.*

delisted Longtop on August 29, 2011, after finding its shares no longer suitable for listing and trading. ¶ 61.

## III.   PROCEDURAL HISTORY

On November 18, 2011, Plaintiffs filed the Consolidated Class Action Complaint, which asserted claims against Defendants Longtop, Lian and Palaschuk, along with (i) Ka, Longtop's Chairman; (ii) Thomas Gurnee ("Gurnee"), the Chairman of Longtop's audit committee; (iii) DTT; and (iv) Deloitte Touche Tohmatsu Limited ("Deloitte Limited"), spanning the period from June 29, 2009 through May 17, 2011. Dkt. No. 45. Plaintiffs served Longtop, through its registered agent, with a copy of the Consolidated Class Action Complaint on December 15, 2011. *See* Dkt. No. 46. On February 28, 2012, Plaintiffs voluntarily dismissed their claims against Gurnee and Deloitte Limited. Dkt No. 62.

Defendant Palaschuk moved to dismiss the Consolidated Class Action Complaint on April 23, 2012. Dkt. No. 68. On June 29, 2012, after a full round of briefing, the Court largely denied Defendant Palaschuk's motion to dismiss. Dkt. No. 80.

DTT moved to dismiss on September 10, 2012. Dkt. No. 101. On November 14, 2012, the Court granted DTT's motion to dismiss but granted Plaintiffs' request for leave to amend. Dkt. No. 115. Thereafter, on December 14, 2012, Plaintiffs filed the Amended Consolidated Class Action Complaint (the "Consolidated Complaint"). The Consolidated Complaint dismissed Plaintiffs' claims against Ka, provided additional specificity regarding Plaintiffs' claims against the remaining defendants, and alleged a class period spanning from October 24, 2007 to May 17, 2011, inclusive.

Defendant Palaschuk answered the Consolidated Complaint on January 22, 2013. Dkt. No. 127. On April 8, 2013, the Court dismissed with prejudice the claims against DTT asserted

in the Consolidated Complaint, finding, *inter alia*, that Plaintiffs had failed adequately to plead DTT's scienter.  Dkt. No. 150; *see also In re Longtop Fin. Techs. Ltd. Sec. Litig.*, No. 11 CIV. 3658, 2013 WL 1410147 (S.D.N.Y. Apr. 8, 2013).  The Court also dismissed the Consolidated Complaint's pre-December 14, 2007 claims as untimely.  *Id.*[5]

## IV.   LEGAL ARGUMENT

The class action mechanism is well-suited for actions arising under the federal securities laws.  *In re Deutsche Telekom AG Sec. Litig.*, 229 F. Supp. 2d 277, 282 (S.D.N.Y. 2002); *In re Veeco Instruments, Inc. Sec. Litig.*, 235 F.R.D. 220, 237 (S.D.N.Y. 2006).  To be certified as a class, plaintiffs must satisfy the Rule 23(a) requirements of "numerosity," "commonality," "typicality" and "adequacy."  *See* Fed. R. Civ. P. 23(a).  Plaintiffs must also satisfy one of the requirements of Rule 23(b), in this case by demonstrating under Rule 23(b)(3) that: (1) "questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

Class certification "'is emphatically not an opportunity for a second round of review, at a higher standard no less, of the substantive merits of plaintiffs' underlying claims.'"  *In re Bank of Am. Corp. Sec., Deriv. & ERISA Litig.*, 281 F.R.D. 134, 140 (S.D.N.Y. 2012) (quoting *DeMarco v. Robertson Stephens Inc.*, 228 F.R.D. 468, 476 (S.D.N.Y. 2005)).  Thus, when reviewing the Rule 23 criteria, the Court should not resolve factual issues that are not relevant to a particular

---

[5] While Plaintiffs have not served Defendants Longtop or Lian with a copy of the Amended Consolidated Class Action Complaint, Plaintiffs do not believe this will preclude them from seeking and obtaining a default judgment against Longtop and Lian as to the Consolidated Class Action Complaint which was properly served.  *See Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977) (rejecting argument that default judgment based on original complaint was void because complaint was "superseded and rendered functus officio" by an amended complaint).

Rule 23 requirement. *See Amgen*, 133 S. Ct. at 1194-95 ("Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied."); *In re Vivendi Universal S.A. Sec. Litig.*, 242 F.R.D. 76, 83 (S.D.N.Y. 2007) (same) (citing *In re IPO Sec. Litig.*, 471 F.3d 24, 41 (2d Cir. 2006)). The Court must "assure that a class certification motion does not become a pretext for a partial trial of the merits." *In re Bank of Am.*, 281 F.R.D. at 139.

### A.   Plaintiffs Satisfy the Prerequisites of Rule 23(a)

#### 1.   Numerosity is Established

In the Second Circuit, "numerosity is presumed at a level of 40 [class] members." *Consol. Rail Corp. v. Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995); *see also Espinoza v. 953 Assoc. LLC*, 280 F.R.D. 113, 124 (S.D.N.Y. 2011). In a federal securities class action, numerosity "may be satisfied by a showing that a large number of shares were outstanding and traded during the relevant period." *In re Bank of Am.*, 281 F.R.D. at 138 (citation and quotation marks omitted). Courts have certified classes based on the volume of outstanding shares alone. *Id.* (collecting cases); *see also In re Initial Pub. Offering Sec. Litig. ("IPO")*, 243 F.R.D. 79, 90 (S.D.N.Y. 2007) ("Although plaintiffs have not estimated the actual number of class members, there is little doubt based on the amount of outstanding and traded shares that the number runs into the hundreds if not thousands."). Here, Longtop's ADSs traded regularly and actively during the Class Period, with an average daily trading volume of over 500,000 ADSs on the NYSE. Numerosity is thus indisputable.

#### 2.   Commonality is Established

"The commonality requirement is met if plaintiffs' grievances share a common question of law or fact." *Marisol A. by Forbes v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997).

"Commonality 'does not mean that all issues must be identical as to each member.'" *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 156 (S.D.N.Y. 2008) (citation omitted). "A single common question may be sufficient to satisfy the commonality requirement." *In re IPO*, 243 F.R.D. at 84-85. In class actions arising under the federal securities laws, commonality "is generally considered a low hurdle easily surmounted." *In re Marsh & McLennan Cos. Sec. Litig.*, No. 04 Civ. 8144 (CM), 2009 WL 5178546, at *9 (S.D.N.Y. Dec. 23, 2009). Commonality is typically satisfied "where putative class members have been injured by similar material misrepresentations and omissions." *In re Bank of Am.*, 281 F.R.D. at 139 (quoting *Fogarazzo v. Lehman Bros., Inc.*, 232 F.R.D. 176, 180 (S.D.N.Y. 2005)); *see also In re Oxford Health Plans, Inc. Sec. Litig.*, 191 F.R.D. 369, 374 (S.D.N.Y. 2000).

Here, Plaintiffs' claims concern Defendants' alleged common material misstatements and/or omissions about, *inter alia*, Longtop's financial condition and its use of XLHRS to under-contribute to state social welfare benefit funds. Thus, common questions include: "(1) whether defendants violated the federal securities laws; (2) whether defendants' [SEC filings, press releases and other public statements] contained material misstatements and omissions; (3) whether defendants otherwise made false and misleading statements during the Class Period; (4) the materiality of such misstatements and omissions and the degree of scienter of defendants with respect to each; and (5) whether the members of the Class have sustained damages and, if so, the proper measure of damages." *In re IPO*, 243 F.R.D. at 90; *see also In re Bank of Am.*, 281 F.R.D. at 139 (commonality established where class members' claims "are based on the same alleged misstatements and omissions"); *Pub. Emps Ret. Sys. of Miss. v. Merrill Lynch & Co., Inc.*, 277 F.R.D. 97, 105 (S.D.N.Y. 2011) ("[C]ourts in this Circuit have held that the . . . commonality requirement is 'plainly satisfied [where] the alleged misrepresentations . . . relate to

8

all the investors, [as the] existence and materiality of such misrepresentations obviously present important common issues.'") (citation omitted); *Fogarazzo*, 232 F.R.D. at 180; *In re Veeco*, 235 F.R.D. at 238.  Accordingly, Rule 23(a)(2)'s commonality requirement is plainly satisfied.

### 3.    <u>Typicality is Established</u>

Courts in this District "have emphasized that the typicality requirement is not demanding." *In re EVCI Career Coll. Holding Corp. Sec. Litig.*, Master File No. 05 Civ. 10240 (CM), 2007 WL 2230177, at *13 (S.D.N.Y. July 27, 2007).  "[T]he typicality inquiry focuses on whether the claims of the putative class representative[] are typical of the class sharing common questions." *Vivendi*, 242 F.R.D. at 84-85.  Typicality is established where: "the claims of the representative Plaintiffs arise from the same course of conduct that gives rise to the claims of the other Class members, where the claims are based on the same legal theory, and where the class members have allegedly been injured by the same course of conduct as that which allegedly injured the proposed representatives." *In re Indep. Energy Holdings PLC Sec. Litig.*, 210 F.R.D. 476, 480 (S.D.N.Y. 2002) (citations omitted); *In re Bank of Am.*, 281 F.R.D. at 139 (typicality established when class members' claims arise from the same course of conduct and each class member makes similar legal arguments to prove defendants' liability).  However, "[t]ypicality 'does not require that the factual background of each named plaintiffs' claims be identical to that of all class members.'" *In re EVCI*, 2007 WL 2230177, at *13 (citations omitted).

Here, Plaintiffs' claims are typical of the Class.  Like other members of the Class, Plaintiffs purchased Longtop ADSs during the Class Period at prices allegedly inflated by Defendants' misrepresentations, and their claims are based on Defendants' material misrepresentations and omissions concerning, *inter alia*, Longtop's financial condition.  The arguments that Plaintiffs advance with respect to Defendants' liability are the same as those that

9

other Class members would advance in support of their claims. Therefore, the typicality requirement is satisfied. *See, e.g.*, *In re Vivendi*, 242 F.R.D. at 85 ("[P]laintiffs will necessarily seek to develop facts relating to . . . the dissemination of allegedly false or misleading statements . . . Such allegations . . . generally . . . satisfy the typicality requirement."); *In re Bank of Am.*, 281 F.R.D. at 139 (typicality established where class representatives acquired BoA shares "at prices allegedly inflated by defendants' misstatements and/or omissions, and have an interest in maximizing their recovery").

### 4.   Adequacy is Established

Pursuant to Rule 23(a), Plaintiffs must establish that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Generally, adequacy of representation entails inquiry as to whether a plaintiff's: 1) interests are antagonistic to the interest of other members of the class and 2) attorneys are qualified, experienced and able to conduct the litigation." *In re Sadia, S.A. Sec. Litig.*, 269 F.R.D. 298, 305 (S.D.N.Y. 2010) (citations omitted); *In re Bank of Am.*, 281 F.R.D. at 140. "The analysis focuses on whether the proposed class representatives possess 'the same interest and suffer the same injury as the class members.'" *In re NYSE Specialists Sec. Litig.*, 260 F.R.D. 55, 73 (S.D.N.Y. 2009) (citing *Amchem Prods. v. Windsor,* 521 U.S. 591, 625–26 (1997)).

Here, based on Plaintiffs' purchases of Longtop ADSs during the Class Period, their interests are directly aligned with the interests of the Class, which was injured by the same materially untrue statements and omissions. *In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 282 (S.D.N.Y. 2003) ("[N]amed plaintiffs' interests are directly aligned with those of the absent class members; they are purchasers of [the company's] equity and debt securities who suffered significant losses as a result of the investments"). When Plaintiffs prove their claims, they will

also prove the Class's claims, thereby satisfying the adequacy requirement. *See, e.g.*, *In re NYSE*, 260 F.R.D. at 73 (adequacy requirement satisfied when claims based on identical legal and remedial theories); *see also Pa. Ave. Funds v. Inyx, Inc.*, No. 08 Civ. 6867 (PKC) 2011 WL 2732544, at *5 (S.D.N.Y. July 5, 2011).

Plaintiffs also have demonstrated its commitment to monitoring and supervising the prosecution of this Action on behalf of the Class. Plaintiffs have retained counsel experienced in securities class action litigation, receives regular status updates, participates in strategic decisions, and is actively preparing for its upcoming deposition. Moreover, Plaintiffs are large public pension funds, overseeing billions of dollars in investments and are precisely the type of institutional investors Congress sought to empower when creating the Private Securities Litigation Reform Act of 1995 (the "PSLRA"). *See* H.R. Rep. No. 104-369, at 28 (1995) (Conf. Rep.). Thus, Plaintiffs, who have a considerable interest in obtaining a recovery for the Class, easily satisfy the adequacy requirement of Rule 23(a)(4). Lastly, proposed Class Counsel are highly qualified and capable of prosecuting this Action. *See* Firm Resumes, attached as Exhibits 1 and 2 to the Declaration of Kimberly A. Justice In Support Of Plaintiffs' Unopposed Motion For Class Certification And Appointment Of Class Representatives And Class Counsel, submitted herewith; *see In re Bank of Am.*, 281 F.R.D. at 140 (finding Kessler Topaz experienced and qualified).

In sum, the requirements of Rule 23(a) are satisfied.

**B.    The Requirements of Rule 23(b) are Satisfied**

Plaintiffs seek class certification under Rule 23(b)(3) because, as set forth below, "questions of law or fact common to the class members predominate over any questions affecting

only individual members" and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

        1.    <u>**Common Issues Predominate as to Plaintiffs' Exchange Act Claims**</u>

Certification under Rule 23(b)(3) is appropriate where the proposed class is "sufficiently cohesive to warrant adjudication by representation." *Amchem Prods.*, 521 U.S. at 623. "Class-wide issues predominate if resolution of some of the legal and factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002). "[P]redominance does not require a plaintiff to show that there are no individual issues." *In re NYSE*, 260 F.R.D. at 75. "Generally, the predominance requirement is met if the plaintiff can establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof." *In re Sadia,* 269 F.R.D. at 306 (citations and quotation marks omitted). Indeed, while individual issues, may arise "in all class action cases, . . . to allow various secondary issues of plaintiffs' claim[s] to preclude certification of a class would render the rule an impotent tool for private enforcement of the securities laws." *Merrill Lynch*, 277 F.R.D. at 111 (citations and quotation marks omitted). As the Supreme Court has noted, "[p]redominance is a test readily met in certain cases alleging consumer or securities fraud . . . ." *Amchem Prods.*, 521 U.S. at 625.

To prevail on a Section 10(b) claim a plaintiff must prove "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Matrixx Initiatives,*

*Inc. v. Siracusano*, 131 S. Ct. 1309, 1317 (2011).  Courts routinely find the elements of scienter, material misrepresentation or omission, and causation to be common issues in Section 10(b) cases.  *See, e.g.*, *In re Alstom SA Sec. Litig.*, 253 F.R.D. 266, 281 (S.D.N.Y. 2008) ("The critical issues for establishing liability . . . include whether Defendants engaged in a fraudulent scheme and made the false and misleading statements and omissions, whether those statements and omissions were material, whether Defendants acted with scienter, and whether Defendants' conduct injured those who purchased [the company's] shares during the Proposed Class Period. Plaintiffs will likely rely on similar evidence when establishing each of the foregoing issues of proof at trial, and thus, common issues predominate over individual issues.").  Thus, courts routinely certify classes asserting claims under Section 10(b) of the Exchange Act.  *See, e.g.*, *In re WorldCom*, 219 F.R.D. at 301; *Inyx*, 2011 WL 2732544; *Fogarazzo*, 263 F.R.D. at 110.

While reliance is an element of Plaintiffs' Section 10(b) claims, here reliance can be presumed under the "fraud-on-the-market" doctrine set forth in *Basic*, 485 U.S. at 246.  Pursuant to the fraud-on-the-market theory, a presumption of reliance applies where a defendant has made a material misrepresentation or omission and the company's stock traded in an efficient market. *In re Sadia*, 269 F.R.D. at 307.  The Supreme Court recently held in *Amgen* that a plaintiff need not prove materiality at the class certification stage in order to invoke the *Basic* presumption of reliance.  133 S. Ct. at 1196.[6]  Therefore, Plaintiffs may avail themselves of the fraud-on-the-market presumption at class certification if the market for Longtop ADSs was efficient during the Class Period.

---

[6]   Similarly, Section 10(b) Plaintiffs are not required to prove loss causation in order to obtain class certification.  *Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S. Ct. 2179, 2184 (2011).

Here, the Parties have stipulated that Longtop ADSs, which were listed on the NYSE, traded in an efficient market during the Class Period. *See Lapin v. Goldman Sachs & Co.*, 254 F.R.D. 168, 183 (S.D.N.Y. 2008) ("no argument could be made that the New York Stock Exchange is not an efficient market") (citing *Basic*, 485 U.S. at 249 n.29). Accordingly, at the class certification stage, Plaintiffs can avail themselves of the fraud-on-the-market presumption of reliance, and have satisfied the Rule 23(b)(3) predominance requirement.[7]

## 2.   **Superiority is Established**

Rule 23(b)(3) also requires that a class action be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). In general, "securities suits such as this easily satisfy the superiority requirement[.]" *Wagner v. Barrick Gold Corp.*, 251 F.R.D. 112, 120 (S.D.N.Y. 2008). As another court in this District stated:

> [m]ost violations of the federal securities laws . . . inflict economic injury on large numbers of geographically dispersed persons such that the cost of pursuing individual litigation to seek recovery is often not feasible. Multiple lawsuits would be costly and inefficient, and the exclusion of class members who cannot afford separate representation would be neither "fair" nor an adjudication of their claims. Moreover, although a large number of individuals may have been injured, no one person may have been damaged to a degree which would induce him to institute litigation solely on his own behalf.

*Lapin*, 254 F.R.D. at 187 (ellipses in original) (quoting *In re Merrill Lynch Tyco Research Sec. Litig.*, 249 F.R.D. 124, 132 (S.D.N.Y. 2008)).

Here, the putative Class consists of a large number of investors in Longtop's ADSs, many of whose individual damages are small enough to render litigation on an individual basis

---

[7]   For the reasons listed *supra*, Plaintiffs have also satisfied the predominance requirement with respect to their Section 20(a) claims. *See, e.g.*, *Inyx*, 2011 WL 2732544 at *6 ("There are also common issues with respect to the elements lead plaintiff must show to prevail on a section 20(a) claims."); *In re Beacon Assocs. Litig.*, 282 F.R.D. 315, 333 (S.D.N.Y. 2012) ("With respect to the § 20(a) . . . claims, common issues predominate as well. Questions of the individual control and culpability of the . . . Defendants will apply class-wide, given no evidence that any of the individual defendants occupied different roles with respect to different investors or clients.).

prohibitively expensive, and who would lack a meaningful method for obtaining reparation without the availability of a class action. *See In re Bank of Am.*, 281 F.R.D. at 146 (finding superiority where "[c]ertain of the class members' claims will be too small to pursue individually"). Moreover, concentrating Class members' claims in a single action and forum is the most efficient use of judicial resources, as shown by the Court's prior consolidation order in this Action. *Id.*; *see also Faris v. Longtop Fin. Techs. Ltd.*, No. 11 CIV. 3658 SAS, 2011 WL 4597553, at *4 (S.D.N.Y. Oct. 4, 2011). Finally, this Action presents no likely case management issues.

## V.   CONCLUSION

For the reasons stated herein, the Court should grant Plaintiffs' unopposed Motion in all respects.

Dated:  June 21, 2013

**KESSLER TOPAZ MELTZER
 & CHECK, LLP**

/s/ Gregory M. Castaldo
GREGORY M. CASTALDO
KIMBERLY A. JUSTICE
RICHARD A. RUSSO, JR.
MARGARET E. ONASCH
280 King of Prussia Road
Radnor, PA 19087
(610) 667-7706
(610) 667-7056 (Fax)

*Lead Counsel on Behalf of Lead
Plaintiffs and the Class*

**GRANT & EISENHOFER, P.A.**
DANIEL L. BERGER
DEBORAH A. ELMAN
485 Lexington Avenue, 29th Floor
New York, NY 10017
(646) 722-8500
(646) 722-8501 (Fax)

15

*Local Counsel on Behalf of Lead
Plaintiffs and the Class*