UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE LONGTOP FINANCIAL
TECHNOLOGIES LIMITED SECURITIES
LITIGATION

Civil Action No. 11-cv-3658-SAS

**JURY TRIAL DEMANDED**

**ECF CASE**

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO
ENTER DEFAULT JUDGMENT AGAINST DEFENDANTS
LONGTOP FINANCIAL TECHNOLOGIES LIMITED AND WAI CHAU LIN**

## TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT ....................................................................................... 1

II.   STATEMENT OF FACTS .............................................................................................. 3

    A.    THE UNDISPUTED FRAUD ............................................................................. 3

    B.    THE DEFAULT.................................................................................................... 7

III.  ARGUMENT ................................................................................................................... 8

    A.    LEAD PLAINTIFFS AND THE CLASS ARE ENTITLED TO A DEFAULT JUDGMENT AGAINST LONGTOP AND LIN .................................................. 8

        1.    Defendants' Default Is Willful.................................................................. 9

        2.    Defendants Have No Meritorious Defense to Lead Plaintiffs' Claims....... 9

        3.    Absent Default Judgment, the Class Would Suffer Prejudice ................. 11

    B.    DEFAULT JUDGMENT ON THE COMPLAINT IS APPROPRIATE ............. 11

    C.    THE CLASS IS ENTITLED TO $882.3 MILLION IN COMPENSATORY DAMAGES.................................................................................................... 13

IV.   CONCLUSION............................................................................................................... 16

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Citigroup Global Mkts., Inc. v. JWS 1999 Holding B.V.*,
No. 08 Civ. 5362 (RJS), 2009 WL 2981912 (Sept. 11, 2009)................................................11

*Credit Lyonnais Sec. (USA), Inc. v. Alcantara*,
183 F.3d 151 (2d Cir. 1999).....................................................................................................13

*F.T.C. v. 1263523 Ontario Inc.*,
205 F. Supp. 2d 218 (S.D.N.Y. 2002)........................................................................................9

*Finkel v. Hall-Mark Elec. Supplies Corp.*,
No. 07-cv-2376, 2009 WL 3401747 (E.D.N.Y. Oct. 20, 2009) .............................................13

*Fogarazzo v. Lehman Bros., Inc.*,
263 F.R.D. 90 (S.D.N.Y. 2009) ...............................................................................................14

*Gucci Am., Inc. v. Tyrrell-Miller*,
678 F. Supp. 2d 117 (S.D.N.Y. 2008)..................................................................................9, 10

*Guggenheim Capital, LLC v. Birnbaum*,
No. 11-3276-CV, 2013 WL 3491280 (2d Cir. July 15, 2013)..................................................8

*HICA Educ. Loan Corp. v. Bolte*,
No.11 CIV. 6404, 2012 WL 423361 (S.D.N.Y. Feb. 10, 2012).....................................8, 9, 11

*House of Diamonds, Inc. v. Borgioni LLC*,
No. 08 Civ. 6760 (RJS)(RLE), 2009 WL 2633144 (S.D.N.Y. Aug. 26, 2009).......................11

*In re Cendant Corp. Sec. Litig.*,
109 F. Supp. 2d 235 (D.N.J. 2000) .....................................................................................15, 16

*In re Crazy Eddie Sec. Litig.*,
948 F. Supp. 1154 (E.D.N.Y. 1996) ..................................................................................13, 14

*In re Equisure, Inc. Sec. Litig.*,
slip op., No. 97 Civ. 2056 .......................................................................................................15

*In re Oxford Health Plans, Inc. Sec. Litig.*,
244 F. Supp. 2d 247 (S.D.N.Y. 2003)......................................................................................15

*In re Vivendi Universal, S.A. Sec. Litig.*,
634 F. Supp. 2d 352 (S.D.N.Y. 2009)......................................................................................14

*In re WorldCom Inc. Sec. Litig.*,
    Master File 02 Civ. 3288 (DIC), 2005 U.S. Dist. LEXIS 3143
    (S.D.N.Y. Mar. 3, 2005) ...................................................................................15

*Rosado v. China N. E. Petroleum Holdings, Ltd.*,
    692 F.3d 34 (2d Cir. 2012)...............................................................................14

*Union of Orthodox Jewish Congregations of Am. v. Royal Food Distribs. LLC*,
    665 F. Supp. 2d 434 (S.D.N.Y. 2009)................................................................9

**STATUTES**

15 U.S.C. §78(j)(b) .................................................................................................2

15 U.S.C. § 78t(a) ...................................................................................................1

15 U.S.C. § 78j(b) .............................................................................................1, 10

17 C.F.R. 240.10b-5 ...............................................................................................2

17 C.F.R. § 240.10b-5 ............................................................................................1

17 C.F.R. § 240.10b–5 ..........................................................................................10

**RULES**

Fed. R. Civ. P. 4(f)(3) .........................................................................................7, 8

Fed. R. Civ. P. 5(a) ..........................................................................................12, 13

Fed. R. Civ. P. 54(c) .............................................................................................16

Fed. R. Civ. P. 55(b) ...............................................................................1, 2, 4, 5

Local Rule 55.2 .......................................................................................................3

Local Rule 55.2(c) ..................................................................................................3

Local Rule 55(b) .....................................................................................................3

N.Y. C.P.L.R. 5001 ...............................................................................................16

N.Y. C.P.L.R. 5004 ...............................................................................................16

## I.    PRELIMINARY STATEMENT

Lead Plaintiffs Danske Invest Management A/S and Pension Funds of Local No. One, I.A.T.S.E., by and through their attorneys, submit this memorandum of law in support of their application, pursuant to Federal Rule of Civil Procedure Rule 55(b)(2) and Rule 55.2(b) of the Local Rules for the United States District Courts for the Southern and Eastern Districts of New York (the "Local Rules"), for a default judgment against Defendant Longtop Financial Technologies Limited ("Longtop" or the "Company") and Defendant Wai Chau Lin a/k/a Lian Weizhou ("Lin," and together with Longtop, "Defendants"), the Company's Chief Executive Officer ("CEO").

On November 18, 2011, Lead Plaintiffs filed the Consolidated Class Action Complaint (the "Complaint")[1] against defendants Longtop, Lin, Derek Palaschuk ("Palaschuk"), the Company's Chief Financial Officer, Thomas Gurnee, Hui Kung Ka a/k/a Xiaogong Ka ("Ka"), Deloitte Touche Tohmatsu Limited and Deloitte Touche Tohmatsu CPA Ltd. ("DTT"), the Company's outside auditor.  ECF No. 45.  The Complaint asserts claims for violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b) and 15 U.S.C. § 78t(a), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, on behalf those persons and entities who purchased Longtop American Depositary Shares ("ADSs") and who were damaged thereby.  ¶¶ 1, 164-77.[2]

---

[1]    References to "¶ __" are to paragraphs in the Complaint.  ECF No. 45.  Unless otherwise indicated, all "ECF No. __" references are to docket entries for the consolidated action, *In re Longtop Financial Technologies Limited Securities Litigation*, No. 1:11-cv-03658(SAS) (S.D.N.Y.) (the "Action").

[2]    On July 10, 2013, the Court certified a class (the "Class") consisting of all persons and entities who purchased or otherwise acquired Longtop ADSs during the period from February 21, 2008 through May 17, 2011 (the "Class Period"), inclusive, and were damaged thereby.  ECF No. 157.

Defendants are both residents of the People's Republic of China.   The Summons and Complaint were duly served on Longtop as of December 12, 2011.   Specifically, Lead Plaintiffs successfully served Longtop, through its U.S. registered agent Law Debenture Corporate Services, Inc., on December 12, 2011.   ECF No. 46.   Longtop was required to timely answer the Complaint by February 10, 2012, but failed to do so.   ECF No. 46.   The Summons and Complaint likewise were duly served on Lin as of July 19, 2012.   Specifically, Lead Plaintiffs served Lin via email pursuant to the Court's July 19, 2012 Order.   ECF No. 89.   Lin was similarly required to timely answer the Complaint by August 9, 2012, but failed to do so.   ECF No. 88.   To date, each has failed even to appear in this Action, let alone respond to the Complaint, *see generally* ECF Nos. 46, 87-89, and the Clerk of Court has issued a Certificate noting the default of each Defendant.   ECF Nos. 84, 160.

Accordingly, entry of default is appropriate and Lead Plaintiffs respectfully request that judgment be entered on behalf of themselves and the Class forthwith in the amount of $882.3 million in compensatory damages pursuant to Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder without the expenditure of further judicial resources through continued delay in these proceedings.   As described in more detail below, Lead Plaintiffs' damages calculation is based on the expert analysis of Gang Hu, Ph.D., CFA.   The aggregate damages requested by Lead Plaintiffs on behalf of the Class are based on Dr. Hu's conclusion that the amount of artificial inflation present in Longtop's ADSs ranged between $7.42 and $22.88 per share throughout the Class Period.

The Court has discretion under 15 U.S.C. §78(j)(b) and 17 C.F.R. 240.10b-5 to determine the amount of damages to award for Defendants' violation of the securities laws.   Lead Plaintiffs respectfully request that the Court exercise this authority pursuant to Fed. R. Civ. P. 55(b) and,

for the reasons set forth herein, enter a default judgment against Defendants and award damages

in the amount of $882.3 million, plus 9% interest on such amount from February 21, 2008 to the

date of payment.[3]

## II.      STATEMENT OF FACTS

### A.      THE UNDISPUTED FRAUD

Throughout the Class Period, Longtop touted itself as a growing and profitable provider

of software and information technology services in China.  ¶¶ 3, 34.  Longtop reported enormous

earnings growth, with net income ballooning from $2.9 million in fiscal 2008 to $59.1 million in

fiscal 2010.  ¶¶ 34-37.  Longtop's purported financial successes allowed the Company to avail

itself of U.S. capital markets.  In addition to raising $200 million through an initial public

offering of ADSs on October 24, 2007 (the "IPO"), the Company also raised $132 million in a

secondary offering on November 17, 2009.  ¶¶ 39-42.

As Longtop's CEO, Defendant Lin signed each of Longtop's annual reports, which were

filed with the SEC on Form 20-F, during the Class Period.  For example, Defendant Lin signed

the Company's 2009 20-F,[4] which was filed with the SEC on June 29, 2009 and reported total

---

[3]      Local Rule 55.2(c) requires that all papers submitted to the Court in connection with a
motion for default judgment be mailed to the party against whom default judgment is sought.
*See* Local Rule 55.2 Committee Note.  In accordance with this Rule, Lead Plaintiffs will send,
via U.S. Mail, a copy of all papers submitted to the Court pursuant to Local Rule 55(b) to
Defendant Longtop at its last known business address and to Defendant Lin at his last known
business and residential addresses.  Lead Plaintiffs have reason to believe, however, that service
on Defendants via U.S. Mail will be unsuccessful.  *See* Justice Decl. ¶ 10 (Summons and
Complaint mailed to Lin in the People's Republic of China were returned) and ¶ 17(Longtop no
longer has registered agent in U.S.).  As such, Lead Plaintiffs also intend to serve Defendant Lin
with all default judgment papers via email at the address to which the Complaint and Summons
were delivered, *see* ECF Nos. 87 and 88, and Defendant Longtop via U.S. Mail to Codan Trust
Company (Cayman) Limited, the registered office for Defendant Longtop's parent company,
Longtop Financial Technologies Limited, which is incorporated in the Cayman Islands.
[4]      In connection with the 2009 20-F, Defendants Lin also signed a certifications pursuant to
the Sarbanes-Oxley Act of 2002 that affirmed the accuracy of Longtop's reported financial
results and the effectiveness of its internal controls over reporting.  ¶ 68.

revenues of $106.2 million, operating expenses of $25.5 million, net income of $43.5 million and a gross profit margin of 65.7% for the period. ¶ 65. The 2009 20-F further reported cash and cash equivalents of $238.3 million and $486,000 in short term borrowings. *Id*. Defendant Lin also signed Longtop's 2010 Form 20-F, which was filed with the SEC on July 16, 2010 and reported dramatic increases in Longtop's financial results, including total revenues of $169.1 million, operating expenses of $45.2 million, net income of $59.1 million and a gross margin of 62.5%. ¶ 87. The 2010 20-F reported cash and cash equivalents of $331.9 million. *Id*.

In addition to signing Longtop's Forms 20-F, Defendant Lin routinely touted Longtop's financial performance in press releases that the Company filed with the SEC. For instance, in an August 18, 2009 press release, which Longtop filed with the SEC on Form 6-K, Lian attributed the Company's financial results to a "healthy demand from Longtop's customers" and "strong demand across all customer and product segments." ¶ 198. Likewise, in a January 31, 2011 press release, which was filed with the SEC on Form 6-K, Defendant Lin stated that "Longtop's growth prospects remain bright for fiscal 2012," and that he "believe[d] Longtop's competitive position is stronger than ever." ¶ 229. Lin attributed Longtop's results to a 40% "organic growth rate" and "strong demand from our customers." *Id*.

In reality, Longtop's financial statements were fabricated during the entire Class Period. On April 26, 2011, Citron Research ("Citron") issued a report calling into question the legitimacy of Longtop's financial statements dating back to the Company's IPO, and questioning whether Longtop had improperly transferred the majority of its expenses off-balance sheet to Xiamen Longtop Human Resources Services ("XLHRS"), a human resources company that

employed a fair majority of Longtop's personnel.  ¶¶ 44-46.[5]  On this news, Longtop's ADS price dropped from $25.54 per share at the close of April 25, 2011 to $22.24 per share at the close of April 26, 2011, a decline of approximately 8%.  ¶ 47.  On the heels of the Citron report, other analysts such as OLP Global and Bronte Capital began questioning the legitimacy of Longtop's accounting practices and Longtop's ADS price decline continued.  ¶¶ 48-49, 54-55.

Furthermore, as DTT, the Company's outside auditor, described in its publicly disclosed May 2011 resignation letter, Longtop falsified its financial records, which DTT found "could constitute illegal acts for purposes of Section 10A [sic] of the Securities Exchange Act of 1934." ¶ 58.  DTT's resignation letter set forth "a number of very serious defects" in Longtop's books and records, including falsified bank confirmations and "significant differences" between Longtop's actual bank balances and outstanding bank loans and the bank balances and outstanding bank loans that Longtop had recorded on its books and reported to DTT.  *Id.*.  DTT's resignation letter also described how, when it began investigating the differences, Ka, the Company's founder and Chairman, told DTT: "there were fake revenue in the past so there were fake cash recorded on the books." *Id.*  Further, DTT's resignation letter places the misconduct directly at the feet of Longtop's "senior management," and describes how Longtop management "deliberately interfered" with DTT's investigation into the misconduct and then "unlawfully detained" DTT's audit files.  *Id.*  Citing that DTT was no longer able to rely on the representations of Longtop management, DTT stated, "continuing reliance should no longer be placed on our audit reports on the previous financial statements . . . ." *Id.*

---

[5] Since its IPO, Longtop continually represented that it was unrelated to XLHRS.  ¶¶ 52, 67, 88. In reality, XLHRS was a related entity and was controlled by Longtop.  ¶ 116.  In fact, when the outsourcing agency relationship was challenged by analysts, Longtop easily terminated its relationship with XLHRS and took all the employees in-house without any contractual violations, legal action or apparent fees paid to XLHRS.  *Id.*

In fact, discovery in this Action has confirmed that Longtop's financial statements were fabricated during the entire Class Period.  Beginning on May 19, 2011, Defendant Lin confessed to Palaschuk that the "Company has been a fraud since 2004." *See generally* Amended Consolidated Class Action Complaint ("Amended Complaint") filed under seal on December 14, 2012; ECF No. 119.[6]  Specifically, Lin indicated that the Company never really made a profit despite reporting significant profits in its public financial statements, and further stated that there were bank loans absent from the Company's financial statements in the amount of $85.5 million, which contrasted starkly with the $0 of bank debt shown on Longtop's March 31, 2011 financial statements.  *See id.*  Lin also stated that Longtop's cash balance was actually just $131 million, not the $421 million recorded on the Company's balance sheet as of March 31, 2011, thereby indicating that $290 million in cash was fabricated.  *See id.*  Thus, in total, the Company's net assets were $375.5 million less than what appeared on Longtop's March 31, 2011 balance sheet. *See id.*

On May 17, 2011 (the last day of the Class Period), the New York Stock Exchange ("NYSE") halted trading in Longtop ADSs, citing its inability to assess Longtop's status in light of "undisclosed material corporate developments," and the NYSE began delisting proceedings. ¶¶ 61-62.  On May 19, 2011, Palaschuk abruptly resigned from his position as CFO.  ¶ 56.

On May 23, 2011, Longtop disclosed that DTT had resigned as the Company's auditor, that the SEC had initiated an inquiry and that the Company would not be announcing its financial results for the fourth quarter of 2011 or filing its Form 20-F for the fiscal year ended March 31, 2011 on time.  ¶ 57.

---

[6]   Lead Plaintiffs' Amended Complaint incorporates discovery produced by Defendant Palaschuk after the Court denied his motion to dismiss the Complaint on June 28, 2012.  ECF No. 80.  Pursuant to the Court's directive, Lead Plaintiffs filed a minimally redacted version of the Amended Complaint on March 22, 2013.  ECF No. 144.

On August 29, 2011, the NYSE delisted Longtop after determining that its shares were no longer suitable for listing. ¶ 62. On November 10, 2011, the SEC charged Longtop with failing to comply with SEC reporting requirements because the Company failed to file a 2011 annual report, and because DTT stated in May 2011 that Longtop's 2008, 2009 and 2010 financial statements were no longer reliable. ¶ 63. Longtop's ADSs, which traded as high as $42.73 per ADS during the Class Period, are now entirely worthless. ¶¶ 7, 11.

### B.   THE DEFAULT

Lead Plaintiffs filed their Complaint on November 18, 2011. ECF No. 45. Lead Plaintiffs subsequently served Longtop with a copy of the Complaint and Summons, together with a certified translation of each document in Simplified Chinese, through its U.S. registered agent for service of process, on December 12, 2011. ECF No. 46. The deadline for Longtop to answer the Complaint was February 10, 2012. *See id.* As of the filing of this application, Longtop has not answered or otherwise moved in response to the Complaint. Declaration of Kimberly A. Justice in Support of Motion to Enter Default Judgment Against Defendants Longtop Financial Technologies Limited and Wai Chau Lin ("Justice Decl.") ¶ 14. Lead Plaintiffs have not agreed to, nor has Longtop requested, any extension of time for this deadline. Indeed, despite almost two years elapsing since Lead Plaintiffs filed and served the Complaint, Defendant Longtop has failed to appear in this Action. *Id.* ¶ 15.

Lead Plaintiffs likewise duly served the Summons and Complaint on Lin as of July 19, 2012. Specifically, on July 18, 2012, the Court granted Lead Plaintiffs' request for leave to serve Lin by alternate means pursuant to Fed. R. Civ. P. 4(f)(3). ECF No. 87.[7] On July 19, 2012, Lead

---

[7] In mid-December 2011, Lead Plaintiffs initiated service of the Complaint on Lin pursuant to the Hague Convention on Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (the "Hague Convention"). *See* ECF No. 87. The Request for Service Abroad of Judicial or Extrajudicial Documents was returned unserved on or around March 4,

Plaintiffs served Lin, via electronic mail and United States Postal Service Express Mail, with a copy of the Complaint and Summons, together with a certified translation of each document in Simplified Chinese. ECF No. 88.[8]   The deadline for Lin to answer the Complaint was August 9, 2012. *See id.* As of the filing of this application, Lin has not answered or otherwise moved in response to the Complaint. Justice Decl. ¶ 14. Lead Plaintiffs have not agreed to, nor has Lin requested, any extension of time for this deadline. *Id.* ¶ 15. To date, Defendant Lin has not entered an appearance in this Action. *Id.* ¶ 14. Clerk's Certificates noting the default of Longtop and Lin were issued on July 12, 2012 and October 9, 2013, respectively. *See* ECF Nos. 84, 160; Justice Decl. Exs. E and G.

## III.   ARGUMENT

### A.   LEAD PLAINTIFFS AND THE CLASS ARE ENTITLED TO A DEFAULT JUDGMENT AGAINST LONGTOP AND LIN

"Under Rule 55, a party defaults when he 'has failed to plead or otherwise defend' the case at hand." *Guggenheim Capital, LLC v. Birnbaum*, No. 11-3276-CV, 2013 WL 3491280, at *8 (2d Cir. July 15, 2013) (quoting Fed. R. Civ. P. 55(a)). A court must consider the following three factors in deciding a motion for default: (1) "whether the defendant's default was willful; (2) whether defendant has a meritorious defense to plaintiff's claims; and (3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." *HICA Educ. Loan Corp. v. Bolte*, No.11 CIV. 6404, 2012 WL 423361, at *2 (S.D.N.Y. Feb. 10, 2012) (quoting *Mason Tenders Dist. Council v. Duce Constr. Corp.*, No. 02

---

2013 after the Bureau of International Judicial Assistance, Ministry of Justice of the People's Republic of China failed to find the "charged person and nobody came to the court to take the documents." *See* Justice Decl. ¶ 10.

[8]   Attempted service via U.S. Mail in accordance with the Court's July 19, 2012 Order was returned undelivered for "Unknown" reasons on or around September 8, 2012. *See* Justice Decl. ¶ 13.

Civ. 9044, 2003 WL 1960584, at *2 (S.D.N.Y. Apr. 25, 2003)).  Here, each factor is met and weighs in favor of the entry of default judgment against Defendants.

### 1.      Defendants' Default Is Willful

With respect to the first factor, Defendants were both properly served with notice of the Action, yet each has failed to appear and has failed to answer the Complaint.  Such a failure to appear and defend is indicative of willful conduct and thereby satisfies the first consideration in granting a default judgment. *See HICA*, 2012 WL 423361, at *2 ("Defendant's non-appearance in the action and failure to respond to the Complaint and the instant motion practice indicates willful conduct.").

### 2.      Defendants Have No Meritorious Defense to Lead Plaintiffs' Claims

The second factor is similarly satisfied as Defendants' failure to answer the Complaint also precludes them from raising any "meritorious defense" to the claims asserted against them. *See HICA*, 2012 WL 423361, at *2 ("[T]he Court is unable to determine whether Defendant has a meritorious defense to Plaintiff's allegations because he has presented no such defense to the Court.").  Accordingly, Lead Plaintiffs' allegations are deemed to be admitted.  *See F.T.C. v. 1263523 Ontario Inc.*, 205 F. Supp. 2d 218, 221 (S.D.N.Y. 2002) ("Entry of a default constitutes an admission of all well-pleaded allegations of the complaint by the defaulted third party."); *see also Union of Orthodox Jewish Congregations of Am. v. Royal Food Distribs. LLC*, 665 F. Supp. 2d 434, 436 (S.D.N.Y. 2009) ("When the Court enters a default judgment, as regards liability it must 'accept [] as true all of the factual allegations of the complaint . . . .'") (quoting *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981)); *Gucci Am., Inc. v. Tyrrell-Miller*, 678 F. Supp. 2d 117, 119 (S.D.N.Y. 2008) ("A plaintiff's factual allegations, except those relating to damages, must be accepted as true where, as here, the defendant defaults.").

Moreover, even had Defendants appeared and contested the Action, there would be no dispute that Lead Plaintiffs and the Class are entitled to the relief sought. The Complaint alleges, *inter alia*, that Defendants artificially inflated Longtop's financial results to create the false appearance of growth and prosperity. ¶ 9. Specifically, the Complaint alleges that Longtop falsified its financial results by (1) exaggerating its cash and cash equivalents and revenue while underreporting its bank loan balances, and (2) transferring its employee expenses to an off-balance sheet related entity, thereby enabling Longtop to materially understate expenses and materially overstate its reported gross margins and net income. *Id.* Incredibly, Defendants have admitted outright fraud to DTT and to Defendant Palaschuk.

Section 10(b) of the Exchange Act prohibits both sellers and buyers of securities, using the mails or an instrumentality of interstate commerce or the facility of a national securities exchange, from employing "any manipulative or deceptive device or contrivance in contravention of [SEC] rules and regulations." 15 U.S.C. § 78j(b). Rule 10b–5, promulgated thereunder, makes it unlawful to: (a) employ any device, scheme, or artifice to defraud, (b) make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, or (c) engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security. 17 C.F.R. § 240.10b–5. Here, there can be no dispute that Lead Plaintiffs have adequately alleged that: Defendants made untrue statements of material fact with respect to the actual financial condition of Longtop; Defendants acted with scienter; a presumption of reliance applies to Lead Plaintiffs' and the Class' claims; and Lead Plaintiffs and the Class suffered hundreds of millions of dollars in damages as a result of this fraudulent misconduct. *See, e.g.,* ¶¶

9, 13, 59-60, 111-22, 154-55; *see also* ECF No. 80 (sustaining Lead Plaintiffs' claims against Palaschuk).

### 3.      Absent Default Judgment, the Class Would Suffer Prejudice

The third factor is readily satisfied because absent the entry of default judgment Lead Plaintiffs and the Class would be prejudiced.   Indeed, absent default judgment, "there are no additional steps available to secure relief in this Court" against Defendants Longtop and Lin. *House of Diamonds, Inc. v. Borgioni LLC*, No. 08 Civ. 6760 (RJS)(RLE), 2009 WL 2633144, at *6 (S.D.N.Y. Aug. 26, 2009) ; *see also HICA*, 2012 WL 423361, at *2 ("[D]enying the motion would be unfairly prejudicial to Plaintiff, because Defendant has failed to respond or appear."). This is particularly true here given the scope and magnitude of the fraud, as Lin has admitted to his involvement in a fraudulent scheme at Longtop that spanned over seven years, causing the Class over $880 million in damages.

Lead Plaintiffs and the Class are thus entitled to default judgment under Fed. R. Civ. P. 55 because, although Defendants were both properly served with notice of the Action, they each have failed to appear and have failed to answer the Complaint. *See Citigroup Global Mkts., Inc. v. JWS 1999 Holding B.V.*, No. 08 Civ. 5362 (RJS), 2009 WL 2981912, at *1 (Sept. 11, 2009) ("Entry of a default judgment is appropriate when the adversary process has been halted because of an essentially unresponsive party.") (quotations and citation omitted).

### B.      DEFAULT JUDGMENT ON THE COMPLAINT IS APPROPRIATE

Subsequent to effectuating service of the Complaint on Longtop and Lin, and subsequent to each Defendant's default, Lead Plaintiffs filed the Amended Complaint on December 14, 2012.  *See* ECF No. 119.  Lead Plaintiffs duly served Defendants Palaschuk and DTT  with copies of the Amended Complaint, but continued to pursue the claims asserted in the earlier

pleading against Defendants Longtop and Lin.[9]   While an amended complaint ordinarily

supersedes the original pleading and renders it of no legal effect, such an amended complaint,

especially one that must be personally served pursuant to Fed. R. Civ. P. 5(a), remains

inoperative until served.   As such, the Complaint is the operative pleading against Lin and

Longtop and Lead Plaintiffs are entitled to default judgment thereunder.

Indeed, the Court of Appeals for the Second Circuit stated in *Int'l Controls Corp. v.

Vesco*, that "[i]t is the rule in this circuit that, 'after the filing of [an initial] complaint, the action

remains pending in an inchoate state until service is completed . . . .'"   565 F.2d 665, 669 (2d

Cir. 1977) (quoting *Messenger v. United States*, 231 F.2d 328, 329 (2d Cir. 1956)).   The Second

Circuit continued, "[i]t would make little sense to hold . . . that a complaint in such a state

supersedes a properly served complaint . . . [s]uch a holding would also introduce a substantial

risk factor into a plaintiff's decision whether to amend his complaint" because "[a] plaintiff

considering amendment would have to evaluate the likelihood that the amended pleading could

actually be served on the defendant or defendants."   *Vesco*, 565 F.2d at 669.   Requiring a

plaintiff "in effect to gamble on the likelihood of obtaining service, would discourage

amendments and thus would be inconsistent with the amendment policy underlying the federal

procedural system."   *Id.*   In *Vesco*, as here, the plaintiff experienced great difficulty in serving

the defendant with original complaint.   *Id.*   After effecting valid service of the first complaint,

the *Vesco* plaintiff filed an amended complaint, but failed to serve the amended pleading on the

defendant company.   *Id.*   The plaintiff went on to obtain a default judgment against that

defendant based on the original pleading.   Thereafter, the company moved to vacate the default

---

[9]      The additional allegations in the Amended Complaint pertained primarily to DTT's role
in the fraud.   On April 8, 2013, the Court granted DTT's motion to dismiss the claims asserted
against it in the Amended Complaint. ECF No. 150.

judgment, arguing that the judgment was void because it had been entered on the original complaint. *Id.* at 667-69. The district court rejected this argument and the Second Circuit affirmed, concluding that "in the circumstances of this case, we cannot hold void the judgment entered on the original complaint." *Id.*[10]

Moreover, Lead Plaintiffs are permitted to proceed on claims asserted against different defendants in separate pleadings under these circumstances. As one district court explained:

> [H]aving different complaints operative against different defendants may appear unnecessarily complex. But the Second Circuit has found that there is nothing improper about holding one defendant in default of one complaint and other defendants liable on later complaints. Otherwise, a plaintiff might be unable to obtain judgment against a defendant who, although properly served with the original complaint, evades service of an amended complaint.

*Finkel v. Hall-Mark Elec. Supplies Corp.*, No. 07-cv-2376, 2009 WL 3401747, at *3 (E.D.N.Y. Oct. 20, 2009).

Lead Plaintiffs respectfully submit that default judgment against Longtop and Lin based on the Complaint is proper, as both Longtop and Lin were validly served with the Complaint and failed to appear and to answer well before the Amended Complaint was filed.

## C.   THE CLASS IS ENTITLED TO $882.3 MILLION IN COMPENSATORY DAMAGES

To approve Lead Plaintiffs' application, this Court must determine with reasonable certainty the amount of damages suffered by the Class. *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151 (2d Cir. 1999); *see also In re Crazy Eddie Sec. Litig.*, 948 F. Supp. 1154, 1171 (E.D.N.Y. 1996) ("[T]he determination of damages upon default does not require mathematical precision."). While, in some instances, this determination may require an

---

[10]   In *Robins v. Max Mara, U.S.A., Inc.*, this Court similarly recognized that because the defendant was properly served with the original complaint, the claims asserted in this complaint "still survive" despite the plaintiff's failure to serve on the defendant a subsequently filed amended complaint. 923 F. Supp. 460, 469 (S.D.N.Y. 1996).

evidentiary hearing, "[a]s long as there is a 'sufficient basis from which to evaluate the fairness' of the sum awarded, a court may rely upon detailed affidavits and documentary evidence to determine damages." *In re Crazy Eddie*, 948 F. Supp. at 1160.   Lead Plaintiffs respectfully submit that in this matter, the Court may determine, with reasonable certainty, the amount of damages on the basis of the Expert Report on Damages of Gang Hu, Ph.D., CFA, dated August 30, 2013 ("Hu Report").  *See* Justice Decl. Ex. H.

The traditional measure of damages for claims arising under Section 10(b) of the Exchange Act is out-of-pocket losses, measured by the difference between a class member's purchase price and the fair value of the security absent any fraudulent conduct.  *See Rosado v. China N. E. Petroleum Holdings, Ltd.*, 692 F.3d 34, 38 (2d Cir. 2012); Hu Report ¶ 89.  An event study is a commonly-accepted methodology for calculating out-of-pocket losses under Section 10(b).  *See Fogarazzo v. Lehman Bros., Inc.*, 263 F.R.D. 90, 109 n.159 (S.D.N.Y. 2009) ("I also note that the Event Study Approach has been frequently used to assess damages in securities litigation and may thus be utilized for that purpose in this case."); *see also In re Vivendi Universal, S.A. Sec. Litig.*, 634 F. Supp. 2d 352, 364 (S.D.N.Y. 2009) ("Sorting out which declines were caused by such extraneous factors and which were caused by a materialization of the concealed risk is generally the province of an expert . . . It is an expert that produces the almost obligatory 'event study' that begins by isolating stock declines associated with market-wide and industry-wide downturns from those specific to the company itself.").   Here, Lead Plaintiffs' $882.3 million out-of-pocket damages figure is the product of an event study conducted by Lead Plaintiffs' damages expert, Dr. Hu.   Through his event study, Dr. Hu determined, on a per share basis, the amount of artificial inflation that existed in Longtop's ADS price on each day of the Class Period by virtue of Defendants' fraudulent conduct.  *See* Hu

Report at Exhibit 7. These daily artificial inflation figures, which range between $7.42 and $22.88, *see* Hu Report ¶ 88, represent the difference between the market price of Longtop ADSs and the fair value of Longtop ADSs absent any fraudulent conduct on each day of the Class Period.[11]

Dr. Hu then undertook to estimate the aggregate damages suffered by the Class. *See In re Oxford Health Plans, Inc. Sec. Litig.*, 244 F. Supp. 2d 247, 249-52 (S.D.N.Y. 2003) (finding evidence of aggregate damages admissible and rejecting defendants' argument that PSLRA bars award of aggregate damages); *In re WorldCom Inc. Sec. Litig.*, Master File 02 Civ. 3288 (DIC), 2005 U.S. Dist. LEXIS 3143, at *8 (S.D.N.Y. Mar. 3, 2005) (denying motion by defendants to preclude plaintiff expert from testifying as to aggregate damages); *see also In re Equisure, Inc. Sec. Litig.*, slip op., No. 97 Civ. 2056 RHK/JMM (D. Minn. May 11, 1998) (entering default judgment against certain defendants in Section 10(b) class action and awarding aggregate damages of $45,309,176.51) (attached as Exhibits I and J to the Justice Decl.). To estimate the number of damaged shares traded on each day of the Class Period, Dr. Hu utilized a two-trader proportional trading model, *see* Hu Report ¶¶ 99-123, which courts have accepted as a means of calculating aggregate damages under Section 10(b). *See, e.g., In re Cendant Corp. Sec. Litig.*, 109 F. Supp. 2d 235, 272 (D.N.J. 2000) ("The use of trading models is accepted to create an estimate of aggregate damages."); Hu Report ¶¶ 104-10. For each day of the Class Period, Dr. Hu then multiplied the number of damaged shares by the amount of artificial inflation that

---

[11]     Dr. Hu's conservative estimate of per share damages does not include $7.42 in artificial inflation that Dr. Hu determined was present in the price of Longtop ADSs at the start of the Class Period, nor does it seek to capture any portion of the $18.29 price decline that occurred on August 18, 2011, the first trading day after the Class Period. *See* Hu Report ¶¶ 85-86.

existed in the price of Longtop's ADSs on that day.  Hu Report ¶ 123.  Adding those figures together, Dr. Hu arrived at aggregate damages of $882.3 million.  *Id.*

Lastly, while Rule 54(c) of the Federal Rules of Civil Procedure provides that a default judgment "must not differ in kind from . . . what is demanded in the pleadings," Fed. R. Civ. P. 54(c), here the Complaint requested compensatory damages.  *See* ¶ 55.  Therefore, Defendants have been on notice of the risk that a judgment would be entered against them in this case but have nonetheless chosen not to appear in this Action or respond to the Complaint.  Defendants likewise will have an opportunity to respond to this motion, which explicitly seeks entry of a judgment in the amount of $ 882.3 million based on the allegations set forth in the Complaint, plus 9% interest on such amount from February 21, 2008 to the date of payment pursuant to N.Y. C.P.L.R. 5001 and 5004 (McKinney 2013).[12]

## IV.    CONCLUSION

For the foregoing reasons, Lead Plaintiffs respectfully request an order: (a) entering a default judgment against Defendants Longtop and Lin; (b) holding Defendants Longtop and Lin jointly and severally liable for compensatory damages in the amount of $882.3 million, plus 9% interest on such amount from February 21, 2008 to the date of payment pursuant to N.Y. C.P.L.R. 5001 and 5004 (McKinney 2013); and (c) for such other relief as this Court may deem just and proper.

---

[12] At the time of distribution of any recovered funds, counsel for Lead Plaintiffs and the Class may seek and award of reasonable attorneys' fees and costs incurred in connection with this Action.

Date:  October 18, 2013

Respectfully submitted,

**KESSLER TOPAZ MELTZER
    & CHECK, LLP**


    _/s/ Kimberly A. Justice_ _____ ___
GREGORY M. CASTALDO
KIMBERLY A. JUSTICE
RICHARD A. RUSSO, JR.
MARGARET E. ONASCH
280 King of Prussia Road
Radnor, PA 19087
(610) 667-7706
(610) 667-7056 (Fax)
_Lead Counsel on Behalf of Lead Plaintiffs
and the Class_


**GRANT & EISENHOFER, P.A.**
DANIEL L. BERGER
DEBORAH A. ELMAN
485 Lexington Avenue
29th Floor
New York, NY 10017
(646) 722-8500
(646) 722-8501 (Fax)
_Local Counsel on Behalf of Lead Plaintiffs
and the Class_