UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| IN RE LONGTOP FINANCIAL TECHNOLOGIES LIMITED SECURITIES LITIGATION | Civil Action No. 11-cv-3658-SAS **JURY TRIAL DEMANDED** **ECF CASE** |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO EXCLUDE REPORT AND TESTIMONY OF ALAN D. BELL

*Filed Under Seal Pursuant to Stipulated Discovery Confidentiality Order
Entered on December 12, 2012*

## TABLE OF CONTENTS

Page

I.      PRELIMINARY STATEMENT ................................................................................. 1

II.     BACKGROUND ..................................................................................................... 3

        A.      Factual Background ................................................................................... 3

        B.      The Bell Report .......................................................................................... 6

III.    ARGUMENT ......................................................................................................... 10

        A.      Legal Standard ......................................................................................... 10

        B.      The Bell Report Is Not Properly Before The Court ............................... 11

        C.      Bell's Opinions Should Be Excluded Pursuant To Rule 702 ............... 13

                1.      Bell Is Not Qualified To Opine On The Matters Addressed

                        In His Report .................................................................................. 13

                2.      Bell's Opinions Are Not The Product Of Expert Analysis ......... 15

                3.      Bell's Purported Analyses Do Not Support His Conclusions ...... 17

                4.      Bell's Opinions Are Contradicted By Record Evidence ............. 19

                5.      Bell's Testimony Will Not Help The Jury ................................... 22

        D.      Bell's Opinions Should Be Excluded Pursuant To Rule 403 ............... 23

        E.      Several of Bell's Opinions Should Be Excluded Pursuant to Rule 401 ............... 24

IV.     CONCLUSION ..................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Amorgianos v. Nat'l R.R. Passenger Corp.*,
   303 F.3d 256 (2d Cir. 2002).............................................................................................11, 17

*Arista Records LLC v. Usenet.com, Inc.*,
   608 F. Supp. 2d 409 (S.D.N.Y. 2009)...........................................................................13, 15

*Daubert v. Merrill Dow Pharm., Inc.*,
   509 U.S. 579 (1993)............................................................................................... passim

*Dollman v. Mast Indus.*,
   2011 WL 3911035 (S.D.N.Y. Sept. 6, 2011)........................................................................14

*Ebbert v. Nassau Cnty.*,
   2008 WL 4443238 (E.D.N.Y. Sept. 26, 2008) ....................................................................12

*Floyd v. City of N.Y.*,
   910 F. Supp. 2d 506 (S.D.N.Y. 2012)..................................................................................11

*GE v. Joiner*,
   522 U.S. 136 (1997).............................................................................................................21

*Heller v. Shaw Indus., Inc.*,
   167 F.3d 146 (3d Cir. 1999).................................................................................................17

*Highland Capital Mgmt., L.P. v. Schneider*,
   379 F. Supp. 2d 461 (S.D.N.Y. 2005).................................................................................16

*IBEW Local 90 Pension Fund v. Deutsche Bank AG*,
   2013 WL 5815472 (S.D.N.Y. Oct. 29, 2013) ......................................................................10

*In re Iridium Operating LLC*,
   373 B.R. 283 (S.D.N.Y. Bankr. 2007)....................................................................19, 20, 21

*In re Longtop Fin. Techns. Ltd.*,
   2012 WL 2512280 (S.D.N.Y. June 29, 2012) .................................................................6, 20

*In re Rezulin Prods. Liab. Litig.*,
   309 F. Supp. 2d 531 (S.D.N.Y. 2004)........................................................................ passim

*Jorgenson Forge Corp. v. Consarc Corp.*,
   2002 WL 34363668 (W.D. Wash. Jan. 9, 2002)..................................................................12

*Kidder, Peabody & Co., Inc. v. IAG Int'l Acceptance Grp., N.V.,*
    14 F. Supp. 2d 391 (S.D.N.Y. 1998)...................................................................................22

*Kumho Tire Co. v. Carmichael,*
    526 U.S. 137 (1999).........................................................................................10, 11, 17, 18

*LaSalle Bank Nat'l Ass'n v. CIBC Inc.,*
    2012 WL 466785 (S.D.N.Y. Feb. 14, 2012)........................................................................15

*Liberty Media Corp. v. Vivendi Universal,*
    874 F. Supp. 2d 169 (S.D.N.Y. 2012)....................................................................17, 22, 23

*LinkCo, Inc. v. Fujitsu Ltd.,*
    2002 WL 1585551 (S.D.N.Y. July 16, 2002) ....................................................................23

*Louis Vuitton Malletier v. Dooney & Bourke, Inc.,*
    525 F. Supp. 2d 558 (S.D.N.Y. 2007).......................................................................14, 24

*Nimely v. City of New York,*
    414 F.3d 381 (2d Cir. 2005)....................................................................17, 18, 22, 23

*P&G v. McNeil–PPC, Inc.,*
    615 F. Supp. 2d 832 (W.D. Wis. 2009) ............................................................................12

*Plumley v. Mockett,*
    836 F. Supp. 2d 1053 (C.D. Cal. 2010) ............................................................................12

*United States v. Amuso,*
    21 F.3d 1251 (2d. Cir. 1995)...........................................................................15, 17, 23

*United States v. Duncan,*
    42 F.3d 97 (2d Cir. 1994)................................................................................................23

*United States v. Mejia,*
    545 F.3d 179 (2d Cir. 2008)............................................................................................23

*United States v. Tin Yat Chin,*
    371 F.3d 31 (2d Cir. 2004)..............................................................................................13

*United States v. Williams,*
    506 F.3d 151 (2d Cir. 2007)............................................................................................10

*Vaskas v. Kenworth Truck Co.,*
    2013 WL 1207963 (M.D. Pa. Mar. 25, 2013)................................................................13

## OTHER AUTHORITIES

Fed. R. Civ. P. 26 .......................................................................................................................1, 11

Fed. R. Evid. 401 ..................................................................................................................1, 3, 24, 25

Fed. R. Evid. 403 ..............................................................................................................1, 2, 11, 23

Fed. R. Evid. 702 .............................................................................................................. passim

The Amended Consolidated Class Action Complaint (the "Complaint") asserts claims against Derek Palaschuk ("Palaschuk"), Longtop Financial Technologies Limited's ("Longtop" or the "Company") Chief Financial Officer ("CFO"), among others, for violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and 15 U.S.C. § 78t(a), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, on behalf of those persons and entities who purchased Longtop American Depositary Shares ("ADSs") and who were damaged thereby.[1]  Pursuant to the Federal Rules of Evidence, including Rules 702, 403 and 401, and the United States Supreme Court's decision in *Daubert v. Merrill Dow Pharm., Inc.*, 509 U.S. 579 (1993), Lead Plaintiffs Danske Invest Management A/S and Pension Funds of Local No. One, I.A.S.T.E. ("Plaintiffs"), respectfully submit this memorandum of law in support of their motion to exclude the report and testimony of Alan D. Bell ("Bell") from the trial in this Action.

## I.    PRELIMINARY STATEMENT

As a proponent of expert testimony, Defendant Palaschuk bears the burden to establish that the testimony is admissible.  Because Palaschuk cannot satisfy that burden with respect to the proffered testimony of Bell, such testimony and report should be excluded in whole, as discussed herein.

As an initial matter, Palaschuk purportedly offers Bell as a rebuttal expert pursuant to Fed. R. Civ. P. 26(a)(2)(D)(ii).  Yet, Bell's report fails to rebut a single opinion of Plaintiffs' expert on damages.  Bell's proffered expert report is, therefore, outside the scope of Plaintiffs'

---

[1]  On July 10, 2013, the Court certified a class (the "Class") consisting of all persons and entities who purchased or otherwise acquired Longtop ADSs during the period from February 21, 2008 through May 17, 2011, inclusive, (the "Class Period) and were damaged thereby. ECF No. 157. Unless otherwise indicated, all "ECF No. __" references are to docket entries for the consolidated action, *In re Longtop Financial Technologies Limited Securities Litigation*, No. 1:11-cv-03658(SAS) (S.D.N.Y.) (the "Action").

opening expert report and should be excluded.  Even if Bell's report was properly before the Court, Palaschuk cannot demonstrate that the proposed expert testimony from Bell comports with the requirements of Federal Rule of Evidence 702 as articulated by the Supreme Court in *Daubert*.  *First*, Bell is not qualified to offer the opinions he is proffering.  Specifically, Bell seeks to opine, *inter alia*, on the reasonableness of Palaschuk's conduct as CFO.  Bell has **never** occupied the role of CFO, nor is it apparent that Bell has had any experience auditing or advising companies in the information technology, or IT, field.  Accordingly, Bell has no superior knowledge, education or experience as to the duties of any CFO, let alone a CFO of a public company in the IT field.

*Second*, none of Bell's proposed opinions are based upon reliable data and methodology. In fact, Bell's conclusions are wholly unsupported by proper, rigorous expert analysis.  Rather, Bell merely seeks, improperly, to regurgitate and interpret from Palaschuk's perspective certain record evidence while completely ignoring contradictory record evidence.  *Third*, because Bell's opinions are not based on any sort of reliable analysis, none of the proffered expert testimony would be helpful to the jury.  Putting aside that the reasonableness of a party's conduct (or lack thereof) is a determination strictly within the province of the jury, Bell's testimony serves no purpose but to tell the jury what result to reach and therefore, should be excluded.

Even assuming that Palaschuk could meet his burden under *Daubert*, which he cannot, each of Bell's opinions likewise should be excluded under Federal Rule of Evidence 403 because their probative value is substantially outweighed by the risk that Bell's opinions will confuse or mislead the jury.  Finally, Bell's opinions as to certain actions of the Company's outside auditor, Deloitte Touche Tohmatsu CPA Ltd. ("DTT"), Longtop's relationship with and accounting for Xiamen Longtop Human Resources Services Co. ("XLHRS"), and Longtop's payment of social

welfare costs should be excluded under Federal Rule of Evidence 401 because these opinions are irrelevant to any issue that will be presented at trial.

Thus, as described more fully below, each of Bell's opinions should be excluded.

## II.     BACKGROUND

### A.     Factual Background

Throughout the Class Period, Longtop held itself out as a "leading provider of software and information technology, or IT, services targeting the financial services industry in China." Complaint ¶¶ 3, 34.[2]  On October 24, 2007, the Company conducted an initial public offering of ADSs, raising $143 million from the U.S. capital markets.  *Id.* ¶¶ 6, 39.  Between 2008 and 2010, Longtop reported ballooning revenues and net income and industry-leading profit margins.  *Id.* ¶¶ 4-5, 37-38, 210, 213.  For example, in its 2008 Form 20-F filed with the SEC on July 1, 2008, Longtop reported total revenues of $66.7 million, net income of $2.9 million and a gross margin of 60.4%.  *Id.* ¶ 172.   Just two years later, when Longtop filed its 2010 Form 20-F on July 16, 2010, the Company reported total revenues of *$169.1 million*, net income of *$59.1 million* and a gross margin of *62.5%*.  *Id.* ¶ 213.  On November 17, 2009, Longtop capitalized on its reportedly dramatic growth and profits through a secondary offering of 4.25 million ADSs priced at $31.25 per share, raising $127 million in U.S. capital.  Complaint ¶ 41.

In February 2011, however, the market began questioning the legitimacy of Longtop's financial statements, causing the value of Longtop ADSs to decline.  *Id.* ¶¶ 43-54, 58; *see also* Justice Decl. Ex. A (PALASCHUK_SEC1566370) (February 25, 2011 e-mail to Palaschuk forwarding internet commentary that Longtop ███████████████████████████████

████████████████████████████████████████████████████████████████

---

[2]   References to "Complaint ¶ __" are to paragraphs in Complaint.  ECF No. 119.

████████████████ Citron Research ("Citron") issued a report on April 26, 2011 expressing skepticism about the Company's "high margins"—Longtop's reported gross margins were 69% percent compared to peer companies' reported gross margins of 15-50%, and Longtop's reported operating margins were 49% compared to peer companies' operating margins of 10-25% or lower. *Id.* ¶ 44. On April 27, 2011, on the heels of the Citron report, Bronte Capital ("Bronte") similarly challenged the accuracy of Longtop's financial statements and also questioned the Company's need to conduct the 2009 secondary offering. *Id.* ¶ 47. Following these reports, Longtop held a conference call during which Palaschuk vehemently denied any wrongdoing by the Company and sought to reassure investors about the accuracy of Longtop's financial statements. *Id.* ¶ 50. Citron, Bronte and other analysts, however, were not convinced by Palaschuk's assurances and issued additional reports raising concerns about the Company's representations and financial statements over the subsequent weeks. *Id.* ¶ 53.

On May 17, 2011, the New York Stock Exchange ("NYSE") halted trading in Longtop ADSs, citing its inability to assess Longtop's status in light of "undisclosed material corporate developments." Complaint ¶ 60. After publicly defending the Company, Palaschuk suddenly resigned on May 19, 2011. *Id.* ¶ 55. Around this same time, Longtop's CEO, Wai Chau Lin a/k/a Weizhou Lian ("Lian"), acknowledged to Palaschuk that Longtop "never really made a profit" and that "the Company has been a fraud since 2004." *Id.* ¶ 69. Lian also confessed to the fraud during a May 2011 board meeting. *Id.* ¶ 71.

On May 23, 2011, Longtop stunned investors when it announced that Deloitte Touche Tohmatsu CPA Ltd. ("DTT") had abruptly resigned as Longtop's outside auditor, describing in its resignation letter various fraudulent activities that Longtop had undertaken. *Id.* ¶¶ 56-57. DTT's resignation letter explained, *inter alia*, that after inquiring with a number of the

Company's banks, DTT identified significant differences in the deposit balances and loan balances reported by the banks compared to the amounts recorded in Longtop's books. *Id.* ¶ 57. DTT's letter also attributed its resignation to the deliberate interference by certain members of Longtop management with DTT's audit process and the unlawful detention of DTT's audit files. *Id.* Finally, the letter stated that on May 20, 2011, Longtop's Chairman Hui Kung Ka a/k/a Xiaogong Ka ("Ka") told DTT that "there were fake revenue in the past so there were fake cash recorded on the books" and that "senior management" was involved. *Id.* Consistent with Ka's representation to DTT, Lian informed Palaschuk that Longtop's cash balance was only $131 million, compared to $421 million recorded on the Company's balance sheet as of March 31, 2011, and outstanding bank loans were $85.5 million, compared to $0 of bank debt shown on the same balance sheet. *Id.* ¶¶ 69-70. In other words, the balance sheet overstated Longtop's net assets by at least $375.5 million. *Id.* ¶ 70.

On August 29, 2011, the NYSE delisted Longtop after finding its shares no longer suitable for listing. *Id.* ¶ 61. On November 10, 2011, the Securities and Exchange Commission ("SEC") charged Longtop with failing to comply with SEC reporting requirements because the Company failed to file a 2011 annual report, and because DTT stated in its May 2011 resignation that Longtop's 2008, 2009 and 2010 financial statements were no longer reliable. Complaint ¶ 62. Longtop ADSs, which reached a Class Period high of $42.86 per ADS, are now entirely worthless. *Id.* ¶¶ 7, 15.

As Longtop's CFO from September 2006 until his May 19, 2011 resignation, Palaschuk was directly responsible for Longtop's financial statements, risk management, internal controls, and the Company's accounting. *See, e.g.*, Complaint ¶¶ 31, 76, 257; *see also* Declaration of Kimberly A. Justice ("Justice Decl.") Ex. B (Excerpts from Transcript of Deposition of Derek

Palaschuk dated August 2, 2013 ("Palaschuk Dep. Trans.")) 38:10-12 ("I was the chief financial officer, so I was responsible for the finance function at the company."); *id.* at 39:15-16 ("So was I responsible for the accuracy of the financial statements? Yes."). In fact, throughout the Class Period, Palaschuk signed Sarbanes-Oxley Act of 2002 ("SOX") certifications annually, attesting to his responsibility for and knowledge of the accuracy of Longtop's financial statements. Complaint ¶ 76. In the CFO role, Palaschuk enjoyed regular access to DTT and Lian. Complaint ¶ 50. Palaschuk also was in the unique position to know the Company's actual revenues, cash balances at Longtop's banks and the amount of outstanding loans, and he had unrestricted access to the bank confirmations concerning cash and loan balances. *Id.* ¶¶ 64-67.

On June 29, 2012, the Court denied Palaschuk's motion to dismiss the Consolidated Class Action Complaint.[3] *In re Longtop Fin. Techns. Ltd.*, No. 1:11-cv-3658, 2012 WL 2512280, at *1 (S.D.N.Y. June 29, 2012). The Court found Plaintiffs had adequately alleged that, *inter alia*: (1) Palaschuk made material false and misleading statements in signed press releases and on conference calls and also signed false financial statements; (2) Longtop's financial statements failed to comply with GAAP; (3) the artificial inflation of gross margins was material; and (4) Palaschuk acted with scienter, due to his stock sales and his recklessness in failing to check information that he had a duty to monitor. *Id.* at *9-12.

### B.    The Bell Report

On September 4, 2013, Palaschuk submitted to Plaintiffs the Expert Report of Alan D. Bell. *See* Justice Decl. at Ex. C (the "Bell Report"). At the beginning of his report, Bell sets forth the scope of his assignment, stating that he was retained "to analyze and express my

---

[3]    Plaintiffs filed the Consolidated Class Action Complaint on November 18, 2011. ECF No. 45. Plaintiffs subsequently filed the Complaint to include additional allegations related primarily to DTT's role in the fraud. On April 8, 2013, the Court granted DTT's motion to dismiss the claims asserted against it in the Complaint. ECF No. 150.

professional opinion concerning some of the Plaintiffs' allegations." Bell Report ¶ 1. Bell is a Certified Public Accountant ("CPA") licensed in Texas who has spent the majority of his career working in the oil and gas industry. *See* Bell Report ¶¶ 2-3, Appendix A. After spending three years at Chevron Oil Company, Bell joined Ernst & Young LLP ("E&Y") in 1973. *Id*. During his time with E&Y, Bell assisted with the audits of oil and gas companies and served as the Director of E&Y's Southwest Area Energy Practice from 1998 to June 2006. Bell Report ¶¶ 2-3, Appendix A. Bell's other areas of significant experience relate to bankruptcy and restructuring, as he worked as an advisor for restructuring assignments and served as the Chief Restructuring Officer for an oil and gas company based in Louisiana. *Id*. Bell also has served or serves as a member of the board of directors or audit committee of several oil and gas or energy companies. *Id*. According to his listing of qualifications and his Executive Profile, Bell has *never* occupied the role of CFO, nor is it apparent that Bell has had any experience auditing or advising companies in the information technology field, public or private. *Id*.

Bell advances several opinions in his report which are summarized in the "Summary of Opinions" section and specifically listed in paragraph 7 of the Bell Report. Bell Report ¶ 7. In his first opinion, Bell opines that "[i]t was reasonable for Palaschuk as CFO to place reliance" on DTT's clean audit opinions on Longtop's financial statements for the years ended March 31, 2008, 2009 and 2010 and on DTT's reviews of Longtop's quarterly financial statements from September 30, 2007 to December 31, 2010. *Id.* ¶ 7(a). In support of this opinion, Bell provides background information on DTT's Class Period reports, review procedures and other required communications, which he asserts did not identify any material errors or indications of fraud in the Company's financial statements. *Id*. Bell then baldly asserts that Palaschuk's reliance on such information was reasonable without disclosing any underlying rationale or explaining the

context in which such reliance was reasonable. *See, e.g.*, Bell Report ¶¶ 15-20, 24.[4]

Although absent from his Summary of Opinions, Bell also opines that Palaschuk's reliance on Longtop's (1) audit committee review process with respect to financial statements and related controls, and (2) internal audit team, was reasonable. *Id.* ¶¶ 22-23. As with his opinion regarding the reasonableness of Palaschuk's reliance on DTT's reviews and reports, Bell fails to explain the basis for this conclusion and his apparent support consists only of general information on the role and function of an audit committee and internal audit team. *See id.*

In his second enumerated opinion, Bell asserts that: (1) neither Longtop management nor DTT identified material weaknesses in internal controls over financial reporting during the Class Period; (2) DTT provided Longtop with a clean audit opinion regarding the Company's internal controls over reporting for the years ended March 31, 2009 and 2010; and (3) it was reasonable for Palaschuk to rely on these audits. Bell Report ¶ 7(b). As apparent support for this opinion, Bell first provides an overview of SOX, internal controls over financial reporting generally and the various standards applicable to such internal controls, including the different levels of weaknesses in internal controls. *See id.* ¶¶ 27-33. Bell next describes DTT's internal control findings before and after March 31, 2008—a description based largely upon a recitation of facts and information contained in documents produced by Palaschuk in this Action. *See id.* ¶¶ 35-39. Bell then concludes, without support, that it would be reasonable for Palaschuk, as CFO, to place reliance on DTT's work. *See generally id.* ¶¶ 27-39.

Lastly, Bell opines that DTT's May 2011 resignation letter did not indicate errors in

---

[4] As discussed herein, Bell's opinion defies common sense. It is not and cannot be the law that a CFO can abdicate his or her responsibilities and duties by simply relying on an outside auditor.

Longtop's previously reported annual or quarterly statements. *Id.* ¶ 7(c).[5] In support of his conclusion, Bell cites extensively to DTT's *ex post facto* analysis of its resignation, as set forth in DTT's reply memorandum of law in further support of its motion to dismiss Plaintiffs' claims in this litigation. *Id.* ¶ 61. Apart from his citation to pleadings, Bell supports this conclusion merely by providing his own interpretation of DTT's resignation letter. *Id.* ¶¶ 61-63. Bell also offers several "factors" which he contends support the credibility of Longtop's prior period financial statements. *Id.* at ¶ 65. These factors consist of: (a) DTT "did not have problems" with its 2005 to 2010 audits; (b) DTT performed quarterly reviews "with no unresolved problems noted"; and (c) Longtop's financials "were included in an IPO Prospectus and a secondary offering" and were reviewed by DTT executives, the SEC and investment bankers. *Id.*[6]

Bell devotes several paragraphs at the end of his report to a discussion of Longtop's "Cash and Loan Balances." Bell Report ¶¶ 104-110. Although not referenced in his "Summary of Opinions," Bell appears to be expressing an opinion that because the financial figures contained in Longtop's "monthly reporting package" "agree to the financial statements that were released publicly," it would have been reasonable for Palaschuk to rely on the "monthly reporting package" figures to support Longtop's cash and loan balances. *Id.* ¶ 105. He further

---

[5] Bell also advances several opinions regarding Longtop's accounting for XLHRS and payment of social welfare costs. *See* ¶¶ 7(d), 7(e), 66-103. As discussed *infra* Section III.E, these opinions are not relevant to claims Plaintiffs will present at trial and are therefore, inadmissible.

[6] While not referenced in his summary of opinions, Bell also appears to opine as to whether: (1) DTT's identification of certain fraud risk factors would constitute a red flag to Palaschuk; (2) Longtop's internal controls over revenues were "working as required for a US public company"; and (3) there were disagreements between DTT and Longtop's management. *See id.* ¶¶ 35, 47-48, 52-54, 55-58. Each of these opinions suffers from the same deficiencies set forth above, i.e., there is no apparent connection between Bell's ultimate conclusion and what appears to be the support he proffers for these conclusions. *See id.* Bell also asserts, based only on his interpretation of certain documents produced in the action and the historical purpose of such reconciliations, that there were no issues with bank reconciliations or controls over cash during the Class Period. Bell Report ¶¶ 49-51.

opines that the preparation of such monthly reporting packages on a timely basis is "a good accounting practice." *See, e.g., id.* Again, however, Bell fails to provide any support for these opinions. *Id.* Bell advances several similar opinions regarding Longtop's schedules listing cash term deposits and interest accruals, reports prepared by Longtop with information about bank loans and a due diligence project performed on Longtop's cash balances. *Id.* ¶¶ 106-109.

## III.   ARGUMENT

### A.   Legal Standard

Federal Rule of Evidence 702 requires courts to ensure that expert testimony "both rests on a reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. at 597; *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999) ("Federal Rule of Evidence 702 imposes a special obligation upon a trial judge to 'ensure that any and all [expert] testimony . . . is not only relevant, but reliable.") (quoting *Daubert*, 509 U.S. at 589). *Daubert* requires courts to conduct three separate inquiries into: "(1) whether the proposed expert is in fact qualified to offer the opinions he or she is proffering; (2) whether each proposed opinion is based upon reliable data and methodology; and (3) whether the proposed testimony would be helpful to the trier of fact or to answer the factual question presented." *IBEW Local 90 Pension Fund v. Deutsche Bank AG*, No. 11 CIV. 4209, 2013 WL 5815472, at *13 (S.D.N.Y. Oct. 29, 2013) (citing *Nimely v. City of New York*, 414 F.3d 381, 396-97 (2d Cir. 2005)). The proponent of expert testimony has the burden of establishing the admissibility of that testimony by a preponderance of the evidence. *United States v. Williams*, 506 F.3d 151, 160 (2d Cir. 2007).

"Whether a proposed expert has the requisite qualifications depends on his or her educational background, training, and experience in the field(s) relevant to the opinions he or she seeks to express." *IBEW Local 90 Pension Fund*, 2013 WL 5815472, at * 13. In assessing whether a proffered expert opinion is based upon reliable data and methodology, the trial court's

"gatekeeping" function requires it "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire,* 526 U.S. at 152. Further, expert testimony is relevant if it "has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Amorgianos v. Nat'l R.R. Passenger Corp.,* 303 F.3d 256, 265 (2d Cir. 2002) (citation omitted).

Even if a qualified expert's opinion is relevant and reliable, it may be excluded under Federal Rule of Evidence 403 "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." *Floyd v. City of N.Y.,* 910 F. Supp. 2d 506, 512 (S.D.N.Y. 2012). Since "[e]xpert evidence can be both powerful and quite misleading because of the difficulty in evaluating it . . . the judge in weighing possible prejudice against probative force under Rule 403 of the present rules exercises more control over experts than over lay witnesses." *Daubert,* 509 U.S. at 595 (citation omitted).

### B.   The Bell Report Is Not Properly Before The Court

Putting aside the substantive defects in the Bell Report, the Court should exclude the report as procedurally improper. The Bell Report was submitted too late to be considered anything other than a rebuttal report pursuant to Fed. R. Civ. P. 26(a)(2)(D)(ii). Nevertheless, the Bell Report opines on matters that are outside of the scope of Plaintiffs' expert's opening report. As a result, it should be excluded.

Pursuant to the April 17, 2013 Amended Discovery Plan and Order, the parties were required to serve opening expert reports on or before August 30, 2013, and rebuttal reports "on the same subject matter identified by the other party" on or before September 16, 2013. ECF No. 151 at 2. In accordance with the Amended Discovery Plan and Order, Plaintiffs served

Palaschuk with the Expert Report on Damages of Gang Hu, Ph.D., CFA (the "Hu Report") on August 30, 2013. Palaschuk did not serve an expert report on or before that date.

On September 4, 2013, five days after the deadline for exchanging opening reports expired, Palaschuk served Plaintiffs with a copy of the Bell Report. In his cover e-mail to counsel, Palaschuk stated that the Bell Report was due on September 16, 2013, the deadline for rebuttal reports under the Amended Discovery Plan and Order. ECF No. 151 at 2. The Bell Report, however, fails to even address, let alone rebut, any of the opinions expressed in the Hu Report. To the contrary, Bell acknowledges that Plaintiffs did *not* submit an opening expert report covering the subject matter addressed in the Bell Report. *See* Bell Report ¶ 6(f) ("It is my understanding that the Plaintiffs have not provided an expert report [on accounting issues]."). Because the Bell Report does not respond to the Hu Report, it is inadmissible as a rebuttal report. *See, e.g., Plumley v. Mockett*, 836 F. Supp. 2d 1053, 1065 (C.D. Cal. 2010) ("Those portions of an expert's rebuttal that opine on subjects that were not addressed in the expert report purportedly being rebutted should be excluded."); *P&G v. McNeil–PPC, Inc.,* 615 F. Supp. 2d 832, 838 (W.D. Wis. 2009) (select paragraphs from plaintiff's expert rebuttal report not a proper rebuttal of defendant's expert reports and should be excluded because they "are [an] improper supplementation and fail to comply" with Rule 26(a)); *Jorgenson Forge Corp. v. Consarc Corp.*, No. 00-cv-1879, 2002 WL 34363668, at *1 (W.D. Wash. Jan. 9, 2002) (excluding defendant's proposed rebuttal expert testimony that went beyond scope of plaintiff's expert reports); *cf. Ebbert v. Nassau Cnty.*, No. 05-cv-5445, 2008 WL 4443238, at *13 (E.D.N.Y. Sept. 26, 2008)

("A rebuttal expert report is not the proper 'place for presenting new arguments, unless presenting those arguments is substantially justified and causes no prejudice.'").[7]

### C. Bell's Opinions Should Be Excluded Pursuant To Rule 702

Should the Court determine that the Bell Report is properly before the Court, the opinions expressed therein still should be excluded pursuant to Federal Rule of Evidence 702 because: (i) Bell is not qualified to opine on the subjects addressed in his report, including the reasonableness of Palaschuk's conduct; (ii) Bell conducts no expert analysis in reaching his opinions, and instead impermissibly constructs a factual narrative based upon his own interpretation of limited record evidence, (iii) Bell's purported expert analyses do not support his conclusions, (iv) Bell's opinions are contradicted by the factual record in this matter, and (v) Bell's opinions will not help the jury to understand the issues implicated by the Action.

#### 1. Bell Is Not Qualified To Opine On The Matters Addressed In His Report

In fulfilling its "gatekeeping" function under *Daubert*, "a court must ensure that an expert will be proffering opinions on issues or subject matter that are within his area of expertise." *Arista Records LLC v. Usenet.com, Inc.*, 608 F. Supp. 2d 409, 422 (S.D.N.Y. 2009). Accordingly, courts must "compare the area in which the witness has superior knowledge, education, experience, or skill with the subject matter of the proffered testimony." *United States v. Tin Yat Chin*, 371 F.3d 31, 40 (2d Cir. 2004). "Testimony on subject matters unrelated to the

---

[7]     Alternatively, to the extent Palaschuk intended the Bell Report to constitute an opening expert report concerning issues on which he has the burden of proof (notwithstanding his contrary representation to Plaintiffs' counsel), Palaschuk failed to serve the Bell Report on or before August 30, 2013 as required by the Amended Discovery Plan and Order. Thus, on this alternative basis, the Bell Report is untimely and inadmissible. *See, e.g., Vaskas v. Kenworth Truck Co.*, No. 3:10-CV-1024, 2013 WL 1207963, at *3-4 (M.D. Pa. Mar. 25, 2013) (exclusion of expert report is potential sanction for untimely submission).

witness's area of expertise is prohibited by Rule 702." *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558, 642 (S.D.N.Y. 2007).

Here, in opinions (a) and (b) to the Bell Report, *see* Bell Report ¶ 7(a), (b), Bell asserts that it was "reasonable" for Palaschuk, as Longtop's CFO, "to place reliance on" the audits and quarterly reviews conducted by Longtop's outside auditor, DTT.   In addition to these two opinions, Bell concludes throughout his report that Palaschuk's reliance upon a variety of information was "reasonable."  *See, e.g., id.* ¶ 22 (Palaschuk's reliance on audit committee review process reasonable);  ¶ 23 (Palaschuk's reliance on work of internal audit team reasonable); *see also id.* ¶¶ 105-07, 109-10 (Palaschuk's reliance on monthly reporting package, internal schedules and reports, due diligence project, and miscellaneous documentation).

However, Bell is a CPA and former auditor at E&Y, who has served on the boards and audit committees of public companies and spent six months as the Chief Restructuring Officer of Energy Partners, Ltd.  Bell Report ¶ 2.  Bell has never served as the CFO of a public company. Bell is not an expert on the legal and regulatory obligations of public company CFOs, nor does the Bell Report indicate that he conducted any empirical research into the types of information upon which public company CFOs reasonably rely in discharging their obligations.   Bell, therefore, has failed to establish that his "experience as an audit partner, an audit committee chair and the chief restructuring officer of a company," Bell Report ¶ 110, has endowed him with any specialized knowledge that would qualify him to opine on whether it was reasonable for Palaschuk, as CFO, to rely upon any of the information set forth in the Bell Report. Accordingly, his opinions must be excluded.  *See Louis Vuitton*, 525 F. Supp. 2d at 642 ("An expert qualified in one subject matter does not thereby become an expert for all purposes."); *cf. Dollman v. Mast Indus.*, No. 08-cv-10184, 2011 WL 3911035, at *4 (S.D.N.Y. Sept. 6, 2011)

14

(expert precluded from opining on "reasonableness" of plaintiff's job search where "there is simply nothing in [his] experience, training or education that endows him with specialized knowledge of job search techniques").[8]

### 2. Bell's Opinions Are Not The Product Of Expert Analysis

Apart from Bell's lack of expertise necessary to proffer the opinions set forth in his report, the Bell Report also should be excluded because Bell's purported expert opinions are not based on any sort of expert analysis or application of specialized knowledge. Expert witnesses are precluded from offering testimony that "merely repeat[s] facts or opinions stated by other potential witnesses or in documents produced in discovery." *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 546 (S.D.N.Y. 2004); *see also United States v. Amuso*, 21 F.3d 1251, 1263 (2d. Cir. 1995) ("A district court may commit manifest error by admitting expert testimony where the evidence impermissibly mirrors the testimony offered by fact witnesses, or the subject matter of the expert's testimony is not beyond the ken of the average juror."); *Arista Records*, 608 F. Supp. 2d at 424 ("An expert who simply regurgitates what a party has told him provides no assistance to the trier of fact through the application of specialized knowledge."); *LaSalle Bank Nat'l Ass'n*, 2012 WL 466785, at *7 (experts precluded from "offer[ing] testimony which merely rehashes the testimony of percipient witnesses"). Likewise, experts cannot be used solely

---

[8]  Elsewhere in the Bell Report, Bell opines that internal controls are "an important part of a CFO's responsibility, and DTT's audit of Longtop's [internal controls] would be an indication that Palaschuk had met that responsibility." Bell Report ¶ 39. Bell also suggests that DTT's identification of fraud risk factors "would not be a red flag to Palaschuk as a CFO." Bell Report ¶ 48. As set forth herein, Bell is not qualified to opine on the responsibilities of CFOs, and thus lacks any basis for making such representations. Moreover, whether Palaschuk met his responsibility in improving Longtop's internal controls is not relevant to any issue in this case, and Bell cannot express an expert opinion as to what Palaschuk would – or would not – have viewed as a red flag. *See LaSalle Bank Nat'l Ass'n v. CIBC Inc.*, No. 08-cv-8426, 2012 WL 466785, at *7 (S.D.N.Y. Feb. 14, 2012) (experts "may not opine as to a party's state of mind").

"for the purpose of constructing a factual narrative based on record evidence." *Highland Capital Mgmt., L.P. v. Schneider*, 379 F. Supp. 2d 461, 469 (S.D.N.Y. 2005).

Here, Bell does not perform any discernible expert analysis or apply any "scientific, technical or other specialized knowledge" to support his conclusions. Instead, Bell simply regurgitates facts taken directly from the record and creates his own factual narrative based on his interpretation of certain record evidence which he then uses to offer unsubstantiated and impermissible opinions concerning the viability of the Complaint's allegations. *See* Bell Report ¶¶ 41-43, 59 (opining that certain allegations in the Complaint are "incorrect"); *see also id.* ¶ 53 ("I do not understand how the Plaintiffs construe these comments as a problem with revenue controls."), ¶ 86 (opining that "Longtop did not try to conceal the XLHRS relationship"), ¶ 93 (opining that Complaint's allegations "are false for the following reasons").[9]

For instance, Bell notes that Plaintiffs allege, based on a series of November 2008 e-mails from Palaschuk to Lian, that Longtop's internal controls related to revenues were inadequate. *See* Bell Report ¶ 52 (quoting Complaint ¶ 123). Improperly assuming the role of "advocate[] for [Palaschuk's] case," *see Rezulin*, 309 F. Supp. 2d at 531, 546, Bell attempts to refute this allegation by offering his own unsupported interpretation of certain e-mails contained in the record, stating that "Mr. Palaschuk's comments actually related to booking vendor invoices not to booking revenues as plaintiffs have alleged." Bell Report ¶ 53. Thereafter, while citing *no* evidence to support his assertions, Bell provides his own factual context for these e-mails, positing that Palaschuk's statements were made "because Longtop lost a Value Added Tax refund of Rmb 1.1 million" and that "Mr. Palaschuk did set up a purchase log for vendor

---

[9]   Bell offers a similarly flawed "analysis" in discussing Longtop's "Cash and Loan Balances." *See generally* Bell Report ¶¶ 104-10 (providing simple comparison of the financial data contained in certain internal Longtop reports to the financial data contained in its public financial statements). This is an exercise that the jury easily can perform at trial without Bell's assistance.

contracts in November 2008 to improve financial reporting internal controls over purchases."
Bell Report ¶ 53; *see also id.* ¶¶ 42-43 (providing Bell's own interpretation of minutes from a
February 20, 2008 audit committee meeting based on Palaschuk's deposition testimony); ¶ 61
(interpreting DTT's resignation letter); ¶¶ 49-51 (providing Bell's own factual narrative
regarding bank reconciliations).  Such "analyses" do not constitute admissible expert testimony.
*Amuso*, 21 F.3d at 1263; *Rezulin*, 309 F. Supp. 2d at 546; *see also Nimely*, 414 F.3d at 397
(expert testimony inadmissible where it merely "undertakes to tell the jury what result to reach")
(quotation omitted) ); *Liberty Media Corp. v. Vivendi Universal*, 874 F. Supp. 2d 169, 172
(S.D.N.Y. 2012) ("Although an expert 'may opine on an issue of fact,' the expert 'may not give
testimony stating ultimate legal conclusions based on those facts.'") (quoting *United States v.
Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991)).

### 3.    Bell's Purported Analyses Do Not Support His Conclusions

A court's reliability analysis under *Daubert* "applies to all aspects of an expert's
testimony: the methodology, the facts underlying the expert's opinion, the link between the facts
and the conclusion . . . ." *Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 155 (3d Cir. 1999) (cited
with approval in *Amorgianos*, 303 F.3d at 267).  "[T]he Supreme Court has also stated that
reliability within the meaning of Rule 702 requires a sufficiently rigorous analytical connection
between [an expert's] methodology and the expert's conclusions." *Nimely*, 414 F.3d at 396.
Thus, an expert's opinions are inadmissible if they do not follow from the facts or methodology
upon which the expert relies. *Id.*; *see also Kumho Tire*, 526 U.S. at 157 ("[N]othing in either
*Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that
is connected to existing data only by the *ipse dixit* of the expert.") (citation omitted).

Here, there is no "rigorous analytical connection" between Bell's "analysis" and his
opinions concerning the reasonableness of Palaschuk's reliance.  For instance, in the section of

the Bell Report titled "DTT Quarterly Financial Statement Reviews and Required Communications," Bell summarizes, without analysis, the quarterly review procedures conducted by DTT, and interprets certain required communications that DTT provided to Longtop in connection with these reviews. *See* Bell Report ¶¶ 16-23.[10] After determining that DTT's quarterly reviews and communications did not indicate that Longtop was engaged in fraud – a determination based solely upon his interpretation of certain record evidence – Bell opines, without providing any basis for this empirical leap, that it was reasonable for Palaschuk, as Longtop's CFO, to rely upon DTT's reviews and communications.[11]

Bell's conclusion that DTT's audits and reviews did not reveal the risk of fraud says nothing about Palaschuk or the reasonableness of his reliance upon clean audit and quarterly review opinions. Indeed, an analysis of **DTT's** conduct cannot be used to support a conclusion related to Palaschuk or the reasonableness of his actions. Absent *any* connection, let alone a "rigorous analytical" one, between Bell's purported analysis and his conclusions, his opinions are inadmissible. *Kumho Tire*, 526 U.S. at 157; *Nimely*, 414 F.3d at 396.

---

[10]   As noted below, any opinions concerning the sufficiency of DTT's audits and reviews are irrelevant to any of the remaining claims against Palaschuk. *See supra* Section III.E.

[11]   *See, e.g.,* Bell Report ¶ 17 ("I reviewed these Required Communications and noted that there were no indications of fraud or problems while performing the audits or reviews. It would be reasonable for Palaschuk as the CFO to place reliance on these Required Communications"), ¶ 20 ("These Required Communications indicate that DTT did not encounter any problems in performing their audits, that there were no disagreements between DTT and management and that they were not aware of any Fraud or illegal acts. It was reasonable for Palaschuk, as CFO, to place reliance on these Required Communications."). Indeed, the Bell Report is replete with conclusions that do not follow from Bell's purported analysis. *See, e.g.,* Bell Report ¶ 22 ("I did not see any indication that there were any unresolved problems or issues with any of the review or audits. It was reasonable for Palaschuk, as CFO, to place reliance on the audit committee review process of discussing and reviewing financial statements and related controls."), ¶ 23 ("I reviewed [the internal audit team presentations and reports] and did not observe any indications of Fraud, financial statement errors or material weaknesses in internal controls. It would be reasonable for Mr. Palaschuk as the CFO to place reliance on the work of the internal audit team."); *see also* ¶¶ 37-39, 110 (providing similarly unsupported conclusions regarding Palaschuk's reliance).

### 4.    Bell's Opinions Are Contradicted By Record Evidence

Expert opinions that are unsupported by record evidence are inadmissible.  *See In re Iridium Operating LLC*, 373 B.R. 283, 350 (S.D.N.Y. Bankr. 2007) ("A court should reject an expert's conclusions when there is an analytical gap between the data and the opinion proffered.") (citations omitted).  Similarly, an expert's failure to address contradictory evidence renders his opinions unreliable.  *Id.* ("Expert opinion is unreliable and not based on sufficient facts and data when the expert made no attempt to reconcile his view with a number of real world events and fails to acknowledge and account for these events.").

Here, Bell opines that it was reasonable for Palaschuk to rely upon DTT's clean audit opinions without reconciling that opinion with contradictory record evidence.  For example, Bell fails to acknowledge Palaschuk's deposition testimony that a clean audit opinion does ***not*** preclude the existence of fraud, or that ***Palaschuk***, as CFO, was responsible for the accuracy of Longtop's financial statements.[12]  Likewise, Bell fails to address any of the record evidence suggesting that Palaschuk was aware of red flags concerning potential improprieties at Longtop, including, *inter alia*, Palaschuk's (i) admission to Lian that ███████████████ ████████████████████████████████████████████ and (ii) awareness that Longtop's finance division was being staffed by individuals that ██████ ████████████████████████████████████  *See* Justice Decl. Ex.

---

[12]   *See* Palaschuk Dep. Trans. 169:5-11 ("Q. Is it your opinion that audited financial statements preclude any chance of fraud?  A. As a general comment, no.  As a comment from an auditor's point of view, I worked as an auditor with PriceWaterhouse, and the audit opinions provide that, you know, auditors are not verifying a hundred percent; they are testing."); *see also id.* 39:3-23; Bell Report ¶ 110 (recognizing that Palaschuk "was responsible for certifying the financial statements").

D (Exhibit Palaschuk-11 (PALASCHUK_SEC0046679-81)).[13]   Rather than attempt to reconcile his opinions with this evidence, which cast significant doubt upon the reasonableness of Palaschuk's purported blind reliance on DTT's clean audit opinions, Bell simply ignores them. His failure to consider such evidence renders the opinions expressed in the Bell Report inherently unreliable. *In re Iridium*, 373 B.R. at 350.

Bell's opinion regarding DTT's resignation letter is similarly flawed as he fails to consider the plain language of the letter and ignores contradictory record evidence. *First*, while Bell opines that "DTT's May 2011 resignation letter did not indicate errors in Longtop's previously reported annual or quarterly financial statements," Bell Report ¶ 7(c), DTT's resignation letter specifically states that Longtop's Chairman informed DTT "that 'there were [sic] fake revenue *in the past* so there were [sic] fake cash recorded on the books." *See* Complaint ¶ 57 (emphasis added).  This admission by Longtop's Chairman, which is reflected in DTT's resignation letter but appears *nowhere* in the Bell Report, suggests Longtop's prior publicly-reported financial statements contained artificially inflated revenue and cash figures and runs contrary to the opinion expressed by Bell.  This contrary conclusion is further supported by DTT's decision to withdraw *all* of its previously issued audit reports upon learning of the fraud at Longtop.   *Id.*[14]   That Bell's opinion directly contradicts the plain language of DTT's resignation letter casts significant doubt on the reliability of his opinion and warrants its

---

[13]   It appears that this document was never even considered by Bell. *See generally* Bell Report App. F.

[14]   In denying Palaschuk's motion to dismiss, the Court found that "the DTT letter plainly indicates that DTT rejected Longtop's documentation in 2010 and 2011 and felt that Longtop's financial statements were overstated *throughout* the Class Period." *In re Longtop*, 2012 WL 2512280, at *10 (emphasis added).  This finding further refutes Bell's assertion.

exclusion. *See GE v. Joiner*, 522 U.S. 136, 146 (1997) (expert testimony inadmissible where "there is simply too great an analytical gap between the data and the opinion offered").[15]

   *Second*, Bell fails to consider the wealth of record evidence establishing that Longtop's financial statements were fraudulent since the Company's inception, including, *inter alia*, (1) Lian's statements to Palaschuk that Longtop "has been a fraud since 2004," "never really made a profit" and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *see* Complaint ¶ 69; Justice Decl. Ex. E (PALASCHUK_SEC0174990-91 (Palaschuk's notes concerning his telephone discussion with Lian on May 19-20, 2011)), and (2) Palaschuk's acknowledgement to Lian during the same conversation that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* Justice Decl. Ex. F (PALASCHUK_SEC0703400-14 at SEC0703414 (Palaschuk transcript and translation of May 18 and 19, 2011 (China time) call between Palaschuk and Lian)).

   Indeed, none of the admissions by defendants in this litigation, which are contained in documents produced to Plaintiffs by Palaschuk himself, are referenced anywhere in Bell's report. Each of these facts further undermines Bell's statements regarding the accuracy of Longtop's Class Period financial statements and the purported reasonableness of Palaschuk's conduct. *In re Iridium*, 373 B.R. at 350 ("Expert opinion is unreliable and not based on sufficient facts and data when the expert made no attempt to reconcile his view with a number of real world events and fails to acknowledge and account for these events.").

---

[15] In support of his flawed interpretation of DTT's resignation letter, Bell improperly places heavy reliance on DTT's own pleadings in this matter. *See* Bell Report ¶¶ 60-61 (quoting "DTT's own [sic] representation made in its' [sic] October 9,2012 [sic] Reply Memorandum in the Support of its' [sic] Motion to Dismiss the CAC" to support contention that Complaint's allegations are incorrect). Plainly, Bell's reliance on such arguments is impermissible, given that (i) DTT's memorandum of law in support of its motion to dismiss is not evidence in this matter, and (ii) the facts supporting DTT's arguments will not be presented to the jury at trial because DTT is no longer a defendant to this Action.

### 5.   Bell's Testimony Will Not Help The Jury

"Expert testimony is also inadmissible when it addresses 'lay matters which [the trier of fact] is capable of understanding and deciding without the expert's help.'" *Liberty Media*, 874 F. Supp. 2d at 172 (quoting *Andrews v. Metro N. Commuter R.R. Co.*, 882 F.2d 705, 708 (2d Cir. 1989)); *see also Nimely*, 414 F.3d at 397 (expert testimony that "usurp[s]" the role of the jury by merely applying law to facts does not aid jury and is inadmissible).   Moreover, the reasonableness of Palaschuk's reliance is not the proper province of expert testimony.   *See Kidder, Peabody & Co., Inc. v. IAG Int'l Acceptance Grp., N.V.*, 14 F. Supp. 2d 391, 404 (S.D.N.Y. 1998) ("To the extent that [the expert] would seek to opine before the jury that [the plaintiff] acted reasonably and in good faith—as he argues at length in his written report—the overwhelming weight of Second Circuit authority precludes expert testimony about these issues. Whether a party acted with objective reasonableness is a quintessential common law jury question.   By the same token, juries traditionally decide whether an individual acted knowingly, or willfully, or maliciously, or with specific intent, or with any other relevant state of mind. Thus, this case will present to the jury no new or more demanding task than what juries have always done.").

Indeed, Bell's opinions simply address matters which the jury "is capable of understanding and deciding without [Bell's] help." *Liberty Media*, 874 F. Supp. 2d at 172. For example, in paragraphs 59 through 65 of his report, Bell analyzes DTT's May 22, 2011 resignation letter and opines that "[t]he Plaintiffs' allegations that DTT resigned and acknowledged publicly that Longtop's financial statements during the Class Period, including its reported cash and outstanding debt, were materially false are incorrect[.]" Bell Report ¶ 60; *see also* 7(c) ("DTT's May 2011 resignation letter did not indicate errors in Longtop's previously reported annual or quarterly financial statements.").   Apart from lacking any expert analysis,

Bell's opinion merely "undertakes to tell the jury what result to reach," *Nimely*, 414 F.3d at 397.

Bell's "analysis" consists solely of his interpretation of the text of Deloitte's resignation letter –

an analysis that requires no specialized knowledge or expertise and is not beyond the ken of the

average juror. As such, Bell's opinion would not be helpful to members of the jury, who are

capable of forming independently their own opinions concerning statements made in DTT's

resignation letter. *Amuso*, 21 F.3d at 1263; *Liberty Media*, 874 F. Supp. 2d at 172; *see also*

*United States v. Mejia*, 545 F.3d 179, 194 (2d Cir. 2008) ("Testimony is properly characterized

as 'expert' only if it concerns matters that the average juror is not capable of understanding on

his or her own.").

  If allowed to testify at trial, Bell will merely usurp the role of the jury by "attempt[ing] to

substitute [his] judgment for the jury's." *United States v. Duncan*, 42 F.3d 97, 101 (2d Cir.

1994). Therefore, Bell's opinions are inadmissible. *Id.*; *see also LinkCo, Inc. v. Fujitsu Ltd.*, No.

00-cv-1585551, 2002 WL 1585551, at *2 (S.D.N.Y. July 16, 2002) (precluding expert testimony

that "'does no more than counsel for [plaintiff] will do in argument, i.e., propound a particular

interpretation of defendant's conduct'") (quotation omitted); *Rezulin*, 309 F. Supp. 2d at 544

(allowing "'experts' to tender purely subjective views in the guise of expert opinions . . . would

border on the absurd").

### D. Bell's Opinions Should Be Excluded Pursuant To Rule 403

  Assuming, *arguendo*, that the Court finds the Bell Report to be proper under Rule 702,

Bell's opinions are inadmissible under Federal Rule of Evidence 403. "The court may exclude

relevant evidence if its probative value is substantially outweighed by a danger of one or more of

the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting

time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Because each of Bell's

proffered opinions is vague and conclusory and will serve no purpose but to mislead and confuse

the jury, such testimony should be excluded.  *See Louis Vuitton*, 525 F. Supp. 2d at 580 (evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.") (quotation omitted).

For example, while Bell concludes that it was reasonable for Palaschuk to rely on DTT and Longtop's audit committee, among others, he tellingly fails to state the ***purpose*** for which this reliance was allegedly reasonable.  *See, e.g.,* Bell Report ¶ 7(a) ("It was reasonable for Palaschuk as CFO to place reliance on these audits and quarterly reviews.").  It is altogether unclear whether Bell is opining that it was reasonable for Palaschuk to rely upon these entities for the purpose of, *inter alia*: (i) discharging his legal obligations under SOX; (ii) signing Longtop's financial statements; (iii) representing to shareholders that Longtop's financial statements accurately reflected its financial position; (iv) personally concluding that no fraud existed at Longtop; or (iv) some other unstated purpose.[16]  Thus, in addition to the deficiencies set forth above, because the limited probative value of Bell's proffered testimony is substantially outweighed by the danger that his vague and conclusory opinions will confuse and mislead the jury, such testimony is inadmissible.  *Rezulin*, 309 F. Supp. 2d at 543 (expert testimony inadmissible where it is "so vague as to be unhelpful to a fact-finder") (citation omitted).

### E.    Several of Bell's Opinions Should Be Excluded Pursuant to Rule 401

Expert testimony is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence."  Fed. R. Evid. 401.  Here, Bell's opinions as to (1) certain of DTT's

---

[16]  Bell advances similarly deficient opinions with respect to Palaschuk's reliance on other sources.  *See, e.g.,* Bell Report ¶ 22 ("It was reasonable for Palaschuk, as CFO, to place reliance on the audit committee review process of discussing and reviewing financial statements and related controls."), ¶ 23 ("It would be reasonable for Mr. Palaschuk as the CFO to place reliance on the work of the internal audit team."), ¶ 104-10 (Palaschuk's reliance on internal documents was reasonable).

actions, (2) Longtop's relationship with and accounting for XLHRS, and (3) Longtop's payment of social welfare costs are irrelevant and excludable under Federal Rule of Evidence 401.

*First*, much of Bell's analysis – and particularly his discussion regarding perceived weaknesses in the Complaint's allegations – relates not to claims asserted against Palaschuk, but to claims against **DTT** which this Court has dismissed with prejudice. *See, e.g.,* Bell Report ¶¶ 9-23 (analyzing sufficiency of DTT's annual audits and quarterly reviews); ¶¶ 40-41 (addressing Plaintiffs' allegations that DTT should have issued adverse opinion on internal controls and that DTT was aware of material weaknesses and internal control deficiencies). Accordingly these opinions are irrelevant to claims to be tried in this Action and should be excluded.

*Second*, Bell opines that Longtop's accounting for XLHRS and social welfare costs, respectively, were in accordance with U.S. GAAP, *see id.* ¶¶ 66-103. Plaintiffs will not pursue at trial claims against Palaschuk related to Longtop's accounting for XLHRS or the adequacy of its social welfare payments. Thus, these opinions have no relevance to any of Plaintiffs' remaining claims against Palaschuk, and are inadmissible. *Daubert*, 509 U.S. at 591-92.[17]

## IV.   CONCLUSION

For the reasons set forth herein, the expert report and testimony of Alan D. Bell should be excluded from the trial in this Action.

---

[17]   Bell's conclusions regarding Longtop's "Cash and Loan Balances" should similarly be excluded pursuant to Federal Rule of Evidence 401, *see* Bell Report ¶¶ 104-10, as these statements are neither relevant to any opinions expressed by Bell nor relevant to any claims Plaintiffs have asserted against Palaschuk. *Daubert*, 509 U.S. at 591-92. For example, Bell's opinions regarding whether Longtop employed "good accounting practice[s]," *see* Bell Report ¶¶ 105-07, do not have a tendency to make any "fact [] of consequence" "more or less probable" because these opinions relate to Longtop's conduct, not Palaschuk's. Fed. R. Evid. 401.

Dated: November 20, 2013          Respectfully submitted,

KESSLER TOPAZ MELTZER
   & CHECK, LLP

_____
GREGORY M. CASTALDO
KIMBERLY A. JUSTICE
RICHARD A. RUSSO, JR.
MARGARET E. ONASCH
280 King of Prussia Road
Radnor, PA 19087
(610) 667-7706
(610) 667-7056 (Fax)
*Lead Counsel on Behalf of Lead Plaintiffs*
*and the Class*


GRANT & EISENHOFER, P.A.
DANIEL L. BERGER
DEBORAH A. ELMAN
485 Lexington Avenue
29th Floor
New York, NY 10017
(646) 722-8500
(646) 722-8501 (Fax)
*Local Counsel on Behalf of Lead Plaintiffs*
*and the Class*