UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE LONGTOP FINANCIAL TECHNOLOGIES LIMITED SECURITIES LITIGATION | Civil Action No. 11-cv-3658-SAS **JURY TRIAL DEMANDED** |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO EXCLUDE REPORT AND TESTIMONY OF ROGER D. SIEFERT**

## **<u>TABLE OF CONTENTS</u>**

**Page**

I.  PRELIMINARY STATEMENT ............................................................................. 1

II.  BACKGROUND ............................................................................................... 2

    A.  The Siefert Report ................................................................................... 2

III.  ARGUMENT ...................................................................................................... 6

    A.  Legal Standard ......................................................................................... 6

    B.  Siefert's Opinions Should Be Excluded Pursuant To Rule 702 ............... 7

        1.  Siefert's Opinions Are Not The Product Of Expert Analysis .................... 8

        2.  Siefert's Opinions Are Contradicted By Record Evidence ....................... 10

        3.  Siefert's Testimony Will Not Help The Jury ............................................ 12

        4.  Siefert Is Not Qualified To Opine On The Matters Addressed In His
            Report ...................................................................................................... 14

    C.  Several Of Siefert's Opinions Should Be Excluded Pursuant To Rules
        401 And 403 ............................................................................................. 15

IV.  CONCLUSION ................................................................................................. 16

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Amorgianos v. Nat'l R.R. Passenger Corp.*,
    303 F.3d 256 (2d Cir. 2002)...............................................................................7

*Arista Records LLC v. Usenet.com, Inc.*,
    608 F. Supp. 2d 409 (S.D.N.Y. 2009)...........................................................8, 14

*Daubert v. Merrill Dow Pharm., Inc.*,
    509 U.S. 579 (1993)............................................................................... passim

*Floyd v. City of N.Y.*,
    910 F. Supp. 2d 506 (S.D.N.Y. 2012)..................................................................7

*Highland Capital Management, L.P. v. Schneider*,
    551 F. Supp. 2d 173 (S.D.N.Y. 2008)......................................................8, 10, 13

*Highland Capital Mgmt., L.P. v. Schneider*,
    379 F. Supp. 2d 461 (S.D.N.Y. 2005)......................................................8, 10, 13

*IBEW Local 90 Pension Fund v. Deutsche Bank AG*,
    No. 11-cv-4209, 2013 WL 5815472 (S.D.N.Y. Oct. 29, 2013)................................6

*In re Iridium Operating LLC*,
    373 B.R. 283 (S.D.N.Y. Bankr. 2007).....................................................10, 11, 12

*In re Rezulin Prods. Liab. Litig.*,
    309 F. Supp. 2d 531 (S.D.N.Y. 2004).......................................................8, 9, 16

*Kumho Tire Co. v. Carmichael*,
    526 U.S. 137 (1999)...........................................................................................6, 7

*LaSalle Bank Nat. Ass'n v. CIBC Inc.*,
    No. 08-cv-8426, 2012 WL 466785 (S.D.N.Y. Feb. 14, 2012) ................................10

*Liberty Media Corp. v. Vivendi Universal, S.A.*,
    874 F. Supp. 2d 169 (S.D.N.Y. 2012).......................................................13, 14

*LinkCo v. Fujitsu Ltd.*,
    No. 00-cv-7242, 2002 WL 1585551 (S.D.N.Y. July 16, 2002)..........................9, 15

*Louis Vuitton Malletier v. Dooney & Bourke, Inc.*,
    525 F. Supp. 2d 558 (S.D.N.Y. 2007).................................................14, 15, 16

*Nimely v. City of New York,*
    414 F.3d 381 (2d Cir. 2005)..........................................................................................9

*S.E.C. v. Tourre,*
    950 F. Supp. 2d 666 (S.D.N.Y. 2013).................................................................8, 9

*Snyder v. Wells Fargo Bank, N.A.,*
    No. 12-cv-4496, 2012 WL 4876938 (S.D.N.Y. Oct. 15, 2012).........................13, 15

*Taylor v. Evans,*
    No. 94-cv-8425, 1997 WL 154010 (S.D.N.Y. April 1, 1997)................................10

*United States v. Amuso,*
    21 F.3d 1251 (2d Cir. 1995)...........................................................................9, 13

*United States v. Duncan,*
    42 F.3d 97 (2d Cir. 1994)................................................................................9

*United States v. Mejia,*
    545 F.3d 179 (2d Cir. 2008)............................................................................14

*United States v. Tin Yat Chin,*
    371 F.3d 31 (2d Cir. 2004)..............................................................................14

*United States v. Williams,*
    506 F.3d 151 (2d Cir. 2007).............................................................................6

**OTHER AUTHORITIES**

Fed. R. Evid. 401 .....................................................................................1, 2, 15

Fed. R. Evid. 403 ..................................................................................1, 2, 7, 15

Fed. R. Evid. 702 ......................................................................................... passim

Pursuant to the Federal Rules of Evidence, including Rules 401, 403 and 702 and the United States Supreme Court's decision in *Daubert v. Merrill Dow Pharm., Inc.*, 509 U.S. 579 (1993), Lead Plaintiffs Danske Invest Management A/S and Pension Funds of Local No. One, I.A.S.T.E. ("Plaintiffs"), respectfully submit this memorandum of law in support of their motion to exclude the report and testimony of Roger D. Siefert ("Siefert") from this Action.[1]

## I.   PRELIMINARY STATEMENT

As the proponent of expert testimony, Defendant Palaschuk bears the burden to establish that the testimony is admissible. Because Palaschuk cannot satisfy that burden with respect to the proffered testimony of Siefert, such testimony and report should be excluded in whole, as discussed herein.

Palaschuk cannot demonstrate that Siefert's proposed expert testimony comports with the requirements of Federal Rule of Evidence 702, as articulated by the Supreme Court in *Daubert*. *First*, none of Siefert's proposed opinions are based upon reliable data. Instead, Siefert merely seeks, improperly, to regurgitate and interpret Palaschuk's version of certain facts, and completely ignores contradictory record evidence. Siefert also seeks to offer impermissible speculative testimony regarding a party's state of mind. *Second*, each of Siefert's proffered opinions addresses lay matters which the jury is capable of determining without expert testimony, and therefore, none of his purported expert opinions would be helpful to the jury. *Lastly*, Siefert is not qualified to offer the opinions he is proffering. Specifically, Siefert has *never* occupied the role of CFO, nor is it apparent that Siefert's auditing and accounting experience has provided him with any specialized knowledge regarding the timeliness and appropriateness of a CFO's response to allegations or indications of fraud.

---

[1]   Given that expert discovery in the Action is closed, should the Court decline to exclude Siefert's report and testimony, Plaintiffs reserve the right to seek leave to depose Siefert prior to trial.

Even if Palaschuk could meet his burden under *Daubert*, which he cannot, several of Siefert's opinions are not only irrelevant to the issues that will be presented at trial, but also risk confusing or misleading the jury, and therefore are excludable under Federal Rules of Evidence 401 and 403.

Thus, as described more fully below, each of Siefert's opinions should be excluded.

## II.   BACKGROUND

### A.   The Siefert Report[2]

On February 6, 2014, the Court issued an order (the "Order") permitting Palaschuk to submit a short supplemental expert report limited to the following topics: "1) whether Palaschuk confirmed Longtop's cash and loan balances in a timely manner, 2) whether Palaschuk properly investigated the 2010 Needham email, and 3) whether Palaschuk properly investigated the February 2011 email from an investor" (the "Report Topics"). *See* Order, ECF No. 193 at 1. On February 14, 2014, Palaschuk submitted the Expert Report of Roger D. Siefert in Response to the Order, dated February 6, 2014 (the "Siefert Report").

The Siefert Report begins with a discussion of Siefert's purported qualifications. Siefert Report at 1-2. Siefert, a Certified Public Accountant ("CPA"), served as an auditor for 10 years and also has worked in the practice of litigation consulting and forensic accounting. *Id.* at 1. According to Siefert, he was involved with investigations into "financial statement fraud and employee fraud" through his consulting and accounting work. *Id.* Though Siefert asserts that this experience has "informed [him] as to how CFOs confirm that the cash on the company

---

[2]  In the interest of brevity, Plaintiffs have omitted a recitation of the pertinent background facts. Plaintiffs refer the Court to the Memorandum of Law in Support of Plaintiffs' Motion to Exclude Report and Testimony of Alan D. Bell, ECF No. 167, for a fulsome narration of the facts relevant to the instant motion. Unless otherwise indicated, all "ECF No. __" references are to docket entries for the consolidated action, *In re Longtop Financial Technologies Limited Securities Litigation*, No. 1:11-cv-03658(SAS) (S.D.N.Y.) (the "Action").

books and records agrees with that reported by banks and when and how CFOs should respond in investigative situations," *id.*, he has ***never*** served as a CFO of a public company. Instead, Siefert asserts that his "experience as an auditor and as a forensic accountant has afforded [him] the opportunity to work closely with, and understand and evaluate the work of, internal accounting personnel, including CFOs." *Id.*

Next, Siefert purports to address Palaschuk's actions with respect to the Report Topics. *Id.* at 2-9. Siefert discusses the roles and responsibilities of a CFO generally, a CFO's reliance on internal and external personnel and the company's internal control over financial reporting. Siefert Report at 2-4. Siefert also makes several assertions regarding the finance function at Longtop specifically, including, *inter alia*, that: management at Longtop considered the employees of the finance function to be competent; Deloitte Touche & Tohmatsu CPA Ltd.'s ("DTT") required communications provided comfort to Palaschuk because the communications did not present any significant issues; and Longtop had a "dedicated internal audit department that spent over 10,000 hours each year during the Class Period performing various procedures and tests." *Id.* at 3-4. Notably, however, Siefert fails to provide a single citation to the factual record despite the fact-specific nature of his assertions. *Id.* Siefert also contends that because there are no written rules or standards for CFOs to follow with respect to fulfilling their responsibilities and addressing the items set forth in the Order, CFOs must use their judgment when they become aware of allegations of wrongdoing. *Id.* at 4. From there, Siefert concludes that Palaschuk "evaluated each [of the Report Topics] and responded appropriately to them." *Id.*

With respect to Palaschuk's confirmation of cash and loan balances, Siefert distinguishes between confirmations and reconciliations, and opines solely on Palaschuk's actions with respect

to Longtop's reconciliation process. *Id.* at 5-6.[3]   Notwithstanding the admitted differences between confirmations and reconciliations, Siefert purports to conclude that Longtop's "monthly reconciliation served as timely confirmation of Longtop's cash and loan balances." Siefert Report at 6.  This section, like the preceding section, is largely devoid of citations to the factual record in the Action.  *Id.* at 5-6.

Purporting to discuss Palaschuk's investigation of the October 14, 2010 Needham Email (the "Needham Email"), Siefert summarizes the allegations in the "Needham Communications," and lists several facts which he opines served as the basis for Palaschuk's position that the allegations were "absolutely untrue." *Id.* at 6-8.  Siefert then provides a factual narrative of the steps that Palaschuk purportedly took in response to the Needham Communications. *Id.* at 7. Finally, Siefert asserts that analyst reports can be both positive and negative and that claims in analyst reports "do not automatically result in an investigation." *Id.*  Siefert states that Palaschuk undertook additional investigation following the Needham Communications but that these procedures "did not result in any findings that supported the validity of the allegations." *Id.*  On the basis of this supposed expert analysis, Siefert opines that Palaschuk's actions were appropriate and "antithetical to those of someone attempting to cover up wrongdoing." *Id.* at 8. Notably, while Siefert attempts to explain away the implications of the October 15, 2010 Needham Report (the "Needham Report"), he largely ignores the more serious allegations contained in the Needham Email regarding Longtop's inflation of China Construction Bank

---

[3]  Siefert explains that confirmations require "third-party confirmation of information rather than accept[ing] the representations of company management or rely[ing] solely on records in the company's possession," whereas reconciliations "entail a comparison of the month end cash amounts shown in the bank statements to the month end amounts shown in the [company's internal] general ledger." Siefert Report at 5.

("CCB") revenues.   Siefert Report at 6-8.[4]  Siefert also once again fails to cite to the factual record for almost all of the facts on which he relies.  *Id.*

After setting out the factual allegations of a February 2011 anonymous report that Palaschuk received from an investor (the "Anonymous Report") and asserting that many of the allegations were disclosed by or addressed in Longtop's SEC filings, Siefert recounts the actions that Palaschuk purportedly took in response to the Anonymous Report.  *Id.* at 8-9.  Siefert contends that with respect to the cash due diligence performed by DTT Beijing, "[t]here is no evidence that Palaschuk did anything to impede or misdirect the confirmation process." *Id.* at 9. Siefert opines that "Palaschuk took appropriate and timely action with respect to the [Anonymous Report]." *Id.* at 9.  As with prior sections, this section of the report contains minimal references to the factual record. *Id.* at 8-9.

In the final section of his report, Siefert opines that "(1) Longtop's normal reconciliation process provided Palaschuk with confirmation of company cash and loan balances in a timely manner (2) Palaschuk's response to the Needham Email was appropriate based on his prior actions and discussions with counsel, and (3) Palaschuk's response to the Anonymous Report

---

[4]  Siefert defines the "Needham Communications" as the October 15, 2010 Needham Report and the Needham Email. *See* Siefert Report at 1 n.2. Plaintiffs note that the Order refers to the "October 2010 Needham email," *not* the Needham Report. *See* Order at 1. The allegations in the Needham Email are different from and more specific than those contained in the Needham Report. Importantly, in the Needham Email, a Needham representative informed Palaschuk that ███████████████████████████████████████████████. *See* Declaration of Kimberly A. Justice in Support of Plaintiffs' Memorandum of Law in Opposition to Defendant Derek Palaschuk's Motion for Summary Judgment, ECF No. 175 ("Justice Decl."), Ex. R at PALASCHUK_SEC1389001. By contrast, the Needham Report states merely that █████████ ████████████████████████. *See* Affidavit of Derek Palaschuk in Support of Motion for Summary Judgment, ECF No. 172, Ex. 22 at PALSCHUK_SEC0232599. Despite these significant differences, Siefert lumps the email and the report together under the term "Needham Communications" for purposes of his analysis. *See* Siefert Report at 6-8.

was proper and the investigation that followed resulted in no material differences being identified." *Id.* at 10.

## III.   ARGUMENT

### A.   <u>Legal Standard</u>

Pursuant to Federal Rule of Evidence 702, courts must ensure that expert testimony "both rests on a reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. at 597; *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999) ("Federal Rule of Evidence 702 imposes a special obligation upon a trial judge to 'ensure that any and all [expert] testimony . . . is not only relevant, but reliable." (quoting *Daubert*, 509 U.S. at 589)).[5] *Daubert* requires courts to conduct three separate inquiries into: "(1) whether the proposed expert is in fact qualified to offer the opinions he or she is proffering; (2) whether each proposed opinion is based upon reliable data and methodology; and (3) whether the proposed testimony would be helpful to the trier of fact or to answer the factual question presented." *IBEW Local 90 Pension Fund v. Deutsche Bank AG*, No. 11-cv-4209, 2013 WL 5815472, at *13 (S.D.N.Y. Oct. 29, 2013) (citing *Nimely v. City of New York*, 414 F.3d 381, 396-97 (2d Cir. 2005)). The proponent of expert testimony has the burden of establishing the admissibility of that testimony by a preponderance of the evidence. *United States v. Williams*, 506 F.3d 151, 160 (2d Cir. 2007).

"Whether a proposed expert has the requisite qualifications depends on his or her educational background, training, and experience in the field(s) relevant to the opinions he or she seeks to express." *IBEW Local 90 Pension Fund*, 2013 WL 5815472, at *13. In assessing whether a proffered expert opinion is based upon reliable data and methodology, the trial court's "gatekeeping" function requires it "to make certain that an expert, whether basing testimony

---

[5]   Unless otherwise indicated, all internal citations and quotation marks are omitted and all emphasis is added.

upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire,* 526 U.S. at 152. Further, expert testimony is relevant if it "has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 265 (2d Cir. 2002).

Even if a qualified expert's opinion is relevant and reliable, it may be excluded under Federal Rule of Evidence 403 "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." *Floyd v. City of N.Y.*, 910 F. Supp. 2d 506, 512 (S.D.N.Y. 2012). Since "[e]xpert evidence can be both powerful and quite misleading because of the difficulty in evaluating it . . . . the judge in weighing possible prejudice against probative force under Rule 403 of the present rules exercises more control over experts than over lay witnesses." *Daubert*, 509 U.S. at 595.

**B.    Siefert's Opinions Should Be Excluded Pursuant To Rule 702**

The opinions expressed in the Siefert Report should be excluded pursuant to Federal Rule of Evidence 702 because: (i) Siefert conducts no expert analysis in reaching his opinions, and instead simply constructs a disputed factual narrative presumably based upon Palaschuk's interpretation of limited record evidence and offers impermissible speculative testimony; (ii) Siefert's opinions are contradicted by the factual record; (iii) Siefert's opinions will not help the jury to understand the issues implicated by the Action; and (iv) Siefert is not qualified to opine on the subjects addressed in his report, including the appropriateness or timeliness of Palaschuk's actions.

### 1.     Siefert's Opinions Are Not The Product Of Expert Analysis

The Siefert Report should be excluded because Siefert's purported expert opinions are not based on any sort of expert analysis or application of specialized knowledge. Indeed, many of these opinions are based on pure speculation. Expert witnesses are precluded from offering testimony that "merely repeat[s] facts or opinions stated by other potential witnesses or in documents produced in discovery." *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 546 (S.D.N.Y. 2004); *see also Arista Records LLC v. Usenet.com, Inc.*, 608 F. Supp. 2d 409, 424 (S.D.N.Y. 2009) ("An expert who simply regurgitates what a party has told him provides no assistance to the trier of fact through the application of specialized knowledge."). Likewise, experts cannot be used solely "for the purpose of constructing a factual narrative based on record evidence." *Highland Capital Mgmt., L.P. v. Schneider*, 379 F. Supp. 2d 461, 469 (S.D.N.Y. 2005); *see also Highland Capital Management, L.P. v. Schneider*, 551 F. Supp. 2d 173, 180-81 (S.D.N.Y. 2008) (expert's factual narrative inadmissible); *S.E.C. v. Tourre*, 950 F. Supp. 2d 666, 681 (S.D.N.Y. 2013) (expert "cannot be a conduit for a factual narrative").

Here, Siefert does not perform any discernible expert analysis or apply any "scientific, technical or other specialized knowledge" to support his conclusions. *See* FED. R. EVID. 702. Instead, Siefert simply regurgitates facts taken directly from the record, creates a factual narrative based largely on Palaschuk's interpretation of certain record evidence, and then contends, without any analysis or application of specialized knowledge, that this disputed factual narrative establishes the appropriateness and timeliness of Palaschuk's conduct. *See, e.g.*, Siefert Report at 5 (providing recitation of facts regarding Longtop's reconciliation process and opining that this process provided Palaschuk with timely confirmation of Longtop's cash and loan balances); *Id.* at 6-7 (setting out five facts and asserting, without explanation, that these facts provided the basis for Palaschuk's position in response to the Needham Communications);

*Id.* at 8-9 (proffering factual narration of actions Palaschuk supposedly took in response to the Anonymous Report without providing any analysis of these actions and concluding that Palaschuk acted appropriately and timely).[6] It is not clear that the purported "facts" upon which Siefert bases his opinions are even true or supported by the record.

Putting aside his improper recitation of disputed facts, Siefert provides no explanation of the standards that purportedly should be used to analyze whether a public company CFO's conduct is "timely" or "appropriate," nor does he explain his rationale for concluding that Palaschuk's conduct was timely and appropriate in this matter. *Id.* at 5-10. Improperly assuming the role of "advocate[] for [Palaschuk's] case," *see Rezulin*, 309 F. Supp. 2d at 531, 546, Siefert merely seeks to present, without examination or scrutiny, Palaschuk's version of events to the jury. Such "analyses" usurp the role of the jury by "attempt[ing] to substitute [his] judgment for the jury's," *United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994), and as such, should be excluded. *United States v. Amuso*, 21 F.3d 1251, 1263 (2d Cir. 1995); *see also Nimely*, 414 F.3d at 397 (expert testimony inadmissible where it merely "undertakes to tell the jury what result to reach"); *Tourre*, 590 F. Supp. 2d at 681 (expert "may not invade the province of the jury by 'finding facts' that are in contention"); *LinkCo v. Fujitsu Ltd.*, No. 00-cv-7242, 2002 WL 1585551, at *2 (S.D.N.Y. July 16, 2002) (precluding expert testimony that "'does no more than counsel for plaintiff will do in argument, i.e., propound a particular interpretation of defendant's conduct'"); *Rezulin*, 309 F. Supp. 2d at 544 (allowing "'experts' to tender purely subjective views in the guise of expert opinions . . . . would border on the absurd").

---

[6] As noted *supra* Section II.A, Siefert provides only a handful of citations to the record in the entirety of his report. Thus, Plaintiffs are left to assume that the remaining facts Siefert cites are based on Palaschuk's disputed version of the relevant facts. *See generally* Plaintiffs' Memorandum of Law in Opposition to Defendant Derek Palaschuk's Motion for Summary Judgment, ECF No. 173 ("Plaintiffs' Summary Judgment Opposition").

The Siefert Report also proffers several speculative and improper opinions regarding the state of mind of Palaschuk and others.  Despite the fact that "[o]pining about a party's state of mind . . . is impermissible," *Highland Capital Management, L.P.*, 551 F. Supp. 2d at 182, Siefert seeks to opine, *inter alia*, that (i) "management considered the employees of the finance function to be competent," Siefert Report at 3; (ii) DTT's communications to Longtop "provided further comfort to Palaschuk," *id.*; (iii) "[t]he basis for [Palaschuk's] position arose from several facts," *id.* at 6; (iv) Palaschuk had a "degree of comfort with recorded revenue," *id.* at 7; and (v) Palaschuk "obtained satisfaction from DTT Beijing," *id.* at 9.  Siefert's conclusions in this regard are plainly improper and should be excluded.  *See LaSalle Bank Nat. Ass'n v. CIBC Inc.*, No. 08-cv-8426, 2012 WL 466785, at *7 (S.D.N.Y. Feb. 14, 2012) ("an expert . . . may not opine as to a party's state of mind [or] whether a party acted in bad faith"); *see also Taylor v. Evans*, No. 94-cv-8425, 1997 WL 154010, at *2 (S.D.N.Y. April 1, 1997) (expert's "musings as to defendants' motivations would not be admissible if given by any witness—lay or expert"); *Highland Capital Management, L.P.*, 379 F. Supp. 2d at 469 (opinions that individuals were "likely aware" and "likely concerned" were inadmissible speculation).

### 2.    Siefert's Opinions Are Contradicted By Record Evidence

Siefert's opinions are also contradicted by the record in this Action.  Expert opinions that are unsupported by record evidence are inadmissible.  *See In re Iridium Operating LLC*, 373 B.R. 283, 350 (S.D.N.Y. Bankr. 2007) ("A court should reject an expert's conclusions when there is an analytical gap between the data and the opinion proffered.").  Similarly, an expert's failure to address contradictory evidence renders his opinions unreliable.  *Id.* ("Expert opinion is unreliable and not based on sufficient facts and data when the expert made no attempt to reconcile his view with a number of real world events and fails to acknowledge and account for these events.").

Here, Siefert opines that "[s]ince Longtop was performing timely reconciliations during the Class Period, Palaschuk had no reason to personally confirm Longtop's cash and loan balances." *Id.* at 6. In addition to ignoring the admitted distinction between reconciliations and confirmations, Siefert fails to address the record evidence indicating that Palaschuk: (i) knew that Longtop ███████ ████ █ ████ ████ *see* Justice Decl., Ex. J at PALASCHUK_SEC00046168; and (ii) recognized that ██████████████████████ ████████████████████████████████████████████████████ *see* Justice Decl., Ex. Z at PALASCHUK_SEC0087144. Nor does Siefert address Palaschuk's acknowledgement that ████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████ *Id.* at PALASCHUK_SEC0087149. Rather than attempt to reconcile his opinions with this evidence, which cast significant doubt upon the appropriateness of Palaschuk's reliance on Longtop's internal reconciliations, Siefert simply ignores it. His failure to consider such evidence renders certain opinions expressed in the Siefert Report inherently unreliable. *See In re Iridium*, 373 B.R. at 350 (expert's failure to reconcile opinion with facts and events renders opinion unreliable).

In addition, while Siefert opines that Palaschuk took appropriate action in response to the Needham Email and the Anonymous Report, he analyzes these red flags in isolation and fails to assess the appropriateness of Palaschuk's conduct in the larger context of the mounting allegations of fraud. For example, as early as February 2010, analysts were reporting on ████ ████████████████████████████████████████ including ████████ ████████████████████████████ *See* Justice Decl., Ex. Q at

11

PALASCHUK_SEC0039814.  On October 14, 2010, Palaschuk received the Needham Email alleging that Longtop's ███ █████ ███ █████.  *See* Justice Decl., Ex. R at PALASCHUK_SEC1389001.  On October 15, 2010, Needham published the Needham Report which suggested that Longtop's ████████████████████.  *See* Affidavit of Derek Palaschuk in Support of Motion for Summary Judgment, Ex. 22 at PALSCHUK_SEC0232599. Then, in February 2011, Palaschuk was made aware of yet another third-party source indicating that Longtop might be a fraud when he received the Anonymous Report, which alleged that ████████████████████████████████████████ ████████████████████████████████████████ ████████████ that ███████████████████████ and specifically suggested that ████████████████ existed with Longtop's major customers, and that Longtop's █████ ██ █████████ █████ Justice Decl., Ex. S at PALASCHUK_SEC1566370-71.  Thus, by the time Palaschuk received the Anonymous Report, he was aware of at least *three* red flags indicating that a fraud was occurring at Longtop. Siefert's failure to consider these mounting allegations of fraud casts doubt upon Siefert's conclusions that Palaschuk's response to the Needham Email and the Anonymous Report were appropriate, thereby rendering his conclusions unreliable.  *See In re Iridium*, 373 B.R. at 350 ("'Failure to look' at facts, 'even for a reality check' means that an expert lacks sufficient facts and renders his opinion unreliable." (quoting *Zenith Elecs. Corp. v. WH–TV Broadcasting Corp.*, 395 F.3d 416, 418 (7th Cir. 2005))).

### 3.    Siefert's Testimony Will Not Help The Jury

Siefert's report and testimony should be excluded for the additional reason that the subject matter on which Siefert opines can readily be understood by a lay person.  "Expert testimony is also inadmissible when it addresses 'lay matters which the trier of fact is capable of

understanding and deciding without the expert's help.'" *Liberty Media Corp. v. Vivendi Universal, S.A.*, 874 F. Supp. 2d 169, 172 (S.D.N.Y. 2012) (quoting *Andrews v. Metro N. Commuter R.R. Co.*, 882 F.2d 705, 708 (2d Cir. 1989)). Here, the timeliness and appropriateness of Palaschuk's conduct are quintessential jury issues, and can be resolved without the assistance of expert testimony. *See, e.g., Highland Capital Management, L.P.*, 551 F. Supp. 2d at 180-81 (facts at issue are "lay matters that the jury is capable of understanding and deciding without [the expert's] testimony"); *Highland Capital Management, L.P.*, 379 F. Supp. 2d at 469 ("Whatever expertise [an expert] may possess, no expert may supplant the role of counsel in making argument at trial and the role of the jury in interpreting the evidence."); *Liberty Media Corp.*, 874 F. Supp. 2d at 178 ("expert testimony [on pure question of fact] would not be helpful to the jury"); *cf. Snyder v. Wells Fargo Bank, N.A.*, No. 12-cv-4496, 2012 WL 4876938, at *5 (S.D.N.Y. Oct. 15, 2012) (expert impermissibly opined on ultimate issue in the action: "whether [defendant] failed to timely implement any kind of prudent investment strategy for [plaintiff].").

Indeed, the issues of whether Palaschuk timely confirmed Longtop's cash and loan balances and properly investigated both the Needham Email and Anonymous Report epitomize matters which the jury "is capable of understanding and deciding without [Siefert's] help." *Liberty Media*, 874 F. Supp. 2d at 172.[7]  Moreover, because Siefert's purported "analysis" consists solely of his recitation and interpretation of facts in the record, it requires no specialized knowledge or expertise and is not beyond the ken of the average juror.  As such, Siefert's opinion would not be helpful to members of the jury, who can independently determine the timeliness and appropriateness of Palaschuk's actions. *Amuso*, 21 F.3d at 1263; *Liberty Media*,

---

[7]  In fact, Siefert states that the CFO's response to allegations of fraud is a matter of "judgment[]," Siefert Report at 4, further evidencing that this is an inappropriate topic for expert testimony and a matter solely within the province of a jury. *Highland Capital Management, L.P.*, 379 F. Supp. 2d at 469.

874 F. Supp. 2d at 172; *see also United States v. Mejia*, 545 F.3d 179, 194 (2d Cir. 2008) ("Testimony is properly characterized as 'expert' only if it concerns matters that the average juror is not capable of understanding on his or her own.").

### 4. Siefert Is Not Qualified To Opine On The Matters Addressed In His Report

Notwithstanding the substantive deficiencies in Siefert's purported expert opinions discussed *supra*, Siefert's report and testimony should be excluded for the additional reason that he is not qualified to opine on the issues addressed in his report. In fulfilling its "gatekeeping" function under *Daubert*, "a court must ensure that an expert will be proffering opinions on issues or subject matter that are within his area of expertise." *Arista Records*, 608 F. Supp. 2d at 422. Accordingly, courts must "compare the area in which the witness has superior knowledge, education, experience, or skill with the subject matter of the proffered testimony." *United States v. Tin Yat Chin*, 371 F.3d 31, 40 (2d Cir. 2004). "Testimony on subject matters unrelated to the witness's area of expertise is prohibited by Rule 702." *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558, 642 (S.D.N.Y. 2007).

Here, Siefert concludes throughout his report that Palaschuk's actions in response to the Report Topics were "appropriate" and/or "timely." *See, e.g.,* Siefert Report at 4 ("I have concluded that Palaschuk evaluated each [Report Topic] and responded appropriately to them."); *Id.* at 6 (In my opinion, the monthly reconciliation served as timely confirmation of Longtop's cash and loan balances."); *Id.* at 8 ("Palaschuk took appropriate action to evaluate the validity of the information contained in the Needham Communications.").

However, Siefert is a CPA, an auditor, and a forensic accountant. Siefert Report at 1. Siefert has never served as the CFO of a public company. *Id.* Siefert is not an expert on the legal and regulatory obligations of public company CFOs, and by his own admission, his only

14

knowledge of "the work of [] internal accounting personnel, including CFOs" is tangential and based upon his experience as an auditor and forensic accountant. *Id.*[8] Siefert fails to explain how this auditing and accounting experience shaped his analysis and conclusions, or provided him with specialized knowledge that would qualify him to opine on whether a public company CFO's actions are "appropriate" and "timely."   Accordingly, Siefert's opinions must be excluded. *See Louis Vuitton*, 525 F. Supp. 2d at 642 ("An expert qualified in one subject matter does not thereby become an expert for all purposes."); *see also LinkCo*, 2002 WL 1585551, at *4 ("While it is permissible for an expert to base his opinion on his own experience, he must do more than aver conclusorily that his experience led him to his opinion."); *Snyder*, 2012 WL 4876938, at *3 ("Although an expert is permitted to support his opinions with reference to his experience, he must demonstrate that this 'experience is a sufficient basis for' these opinions." (quoting FED. R. EVID. 702 Advisory Committee Note)).

### C.   Several Of Siefert's Opinions Should Be Excluded Pursuant To Rules 401 And 403

Assuming, *arguendo*, that the Court finds the Siefert Report to be proper under Rule 702, several of Siefert's opinions should nevertheless still be excluded under Federal Rules of Evidence 401 and 403 because they are irrelevant and will tend to confuse and mislead the jury.[9]

---

[8]   While Siefert asserts that he has "been involved with numerous forensic investigations of financial statement fraud and employee fraud," he fails to indicate whether any of these investigations required him to analyze the timeliness and/or appropriateness of a CFO's response to allegations of fraud at the company. Siefert Report at 1. Similarly, while Siefert asserts that he "was often asked by audit committees or boards of directors for [his] assessment of the performance of CFOs," Siefert does not indicate how this experience is relevant to assessing a CFO's actions in the face of indications of fraud. *Id.* at 1-2.

[9]   *See* FED. R. EVID. 401 (Expert testimony is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence."); FED. R. EVID. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.").

The Siefert Report provides testimony regarding a theory of liability that Plaintiffs are not asserting; namely, that Palaschuk engaged in conscious misbehavior. Specifically, Siefert opines that Palaschuk's actions in response to the Needham Communications "were antithetical to those of someone attempting to cover up wrongdoing . . . ." Siefert Report at 8. Siefert also opines that "[t]here is no evidence that Palaschuk did anything to impede or misdirect the confirmation process." *Id.* at 9.

Plaintiffs, however, are proceeding only on a recklessness theory of scienter. *See generally* Plaintiffs' Summary Judgment Opposition. As such, Plaintiffs have not asserted that Palaschuk attempted to "cover up wrongdoing" or "impede or misdirect the confirmation process." Any expert testimony regarding these issues is both irrelevant and would risk confusing and misleading the jury as to the applicable theory of scienter. *See Daubert*, 509 U.S. at 591 ("Expert testimony which does not relate to any issue in the case is not relevant . . . ."); *Louis Vuitton*, 525 F. Supp. 2d at 580 (evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury" (quoting Fed. R. Evid. 403)); *Rezulin*, 309 F. Supp. 2d at 543 (expert testimony inadmissible where it is "so vague as to be unhelpful to a fact-finder"). Accordingly, these opinions are inadmissible.

## IV.   CONCLUSION

For the reasons set forth herein, the expert report and testimony of Roger D. Siefert should be excluded from this Action.

Dated: February 26, 2014        Respectfully submitted,

KESSLER TOPAZ MELTZER
  & CHECK, LLP

GREGORY M. CASTALDO
KIMBERLY A. JUSTICE
RICHARD A. RUSSO, JR.
MARGARET E. ONASCH
280 King of Prussia Road
Radnor, PA 19087
(610) 667-7706
(610) 667-7056 (Fax)
*Lead Counsel on Behalf of Lead Plaintiffs
and the Class*

GRANT & EISENHOFER, P.A.
DANIEL L. BERGER
DEBORAH A. ELMAN
485 Lexington Avenue
29th Floor
New York, NY 10017
(646) 722-8500
(646) 722-8501 (Fax)
*Local Counsel on Behalf of Lead Plaintiffs
and the Class*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE LONGTOP FINANCIAL TECHNOLOGIES LIMITED SECURITIES LITIGATION | C.A. No. 11-cv-03658-SAS<br><br>**JURY TRIAL DEMANDED** |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 26, 2014, I electronically filed the Notice Of Motion And Motion To Exclude Report And Testimony Of Roger D. Siefert and the Memorandum Of Law In Support Of Plaintiffs' Motion To Exclude Report And Testimony Of Roger D. Siefert with the Clerk of Court using the Court's CM/ECF system, which will send a notice of electronic filing to Derek M. Palaschuk, *Pro Se*. I further certify that an unredacted copy of the Memorandum Of Law (filed under seal on this same date) and a copy of the Notice Of Motion And Motion were served upon Derek M. Palaschuk via e-mail.

Kimberly A. Justice