UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE LONGTOP FINANCIAL TECHNOLOGIES LIMITED SECURITIES LITIGATION | Civil Action No. 11-cv-3658-SAS |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION
FOR APPROVAL OF PROPOSED NOTICE AND CLAIMS ADMINISTRATION AND
<u>THE ALLOCATION OF THE COSTS THEREOF</u>**

i

# **TABLE OF CONTENTS**

**Page**

I. PLAINTIFFS' PROPOSED PLAN FOR NOTICE AND CLAIMS ADMINISTRATION WARRANTS THIS COURT'S APPROVAL ................................................................. 1

    A. The Court Should Appoint the Garden City Group, Inc. to Provide Notice and Claims Administration Services in This Matter ....................................................... 1

    B. The Court Should Approve Plaintiffs' Proposed Plan for Post-Verdict and Post-Default Judgment Notice ................................................................................ 2

    C. The Court Should Approve Plaintiffs' Proposed Claim Form ............................... 4

    D. The Court Should Approved Plaintiffs' Proposed Procedures for Claims Administration and Methodologies for Calculating Damages ............................... 5

        1. Procedures for Claims Administration ....................................................... 5

        2. Methodologies for Calculating Damages ................................................... 6

II. DEFENDANT PALASCHUK SHOULD BE ORDERED TO PAY FOR (I) NOTICE COSTS AND (II) ADMINISTRATION COSTS INCURRED IN CONNECTION WITH CLAIMS SUBMITTED BY TRIAL CLASS MEMBERS ............................................. 10

III. CONCLUSION ........................................................................................................... 12

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Bank of Am. Corp. Sec., Derivative, and Emp. Ret. Income Sec. Act (ERISA) Litig.*,
   Master File No. 09 MDL 2058 (PKC) (S.D.N.Y.) ...................................................................2

*Bickel v. Whitley Cnty. Sheriff*,
   No. 1:08-CV-102, 2010 WL 5564634 (N.D. Ind. Dec. 27, 2010) *report and recommendation adopted sub nom. Bickel v. Sheriff of Whitley Cnty.*, No. 1:08-CV-102, 2011 WL 91032 (N.D. Ind. Jan. 11, 2011) ...............................................................................................11

*Catlett v. Mo. Highway & Transp. Comm'n*,
   589 F. Supp. 949 (W.D. Mo. 1984) ........................................................................................11

*In re eSpeed, Inc. Sec. Litig.*,
   232 F.R.D. 95 (S.D.N.Y. 2005) ................................................................................................9

*Hunt v. Enzo Biochem, Inc.*,
   530 F. Supp. 2d 580 (S.D.N.Y. 2008) ......................................................................................8

*In re Initial Pub. Offering Sec. Litig.*,
   No. 21 MC 92 (SAS) (S.D.N.Y.) .........................................................................................2, 9

*Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*,
   756 F. Supp. 2d 928 (N.D. Ill. 2010) ........................................................................................9

*In re Lehman Bros. Equity/Debt Sec. Litig.*,
   Case No. 08-CV-5523-LAK (S.D.N.Y.) ..................................................................................2

*In re Longtop Fin. Tech. Ltd. Sec. Litig.*,
   No. 11 Civ. 3658 (SAS) ...........................................................................................................3

*Macarz v. Transworld Sys., Inc.*,
   201 F.R.D. 54 (D. Conn. 2001) ..............................................................................................11

*Monk v. Johnson & Johnson, et al.*,
   Civil Action No. 10-4841 (FLW) (DEA) (D.N.J.) ...................................................................9

*In re Nassau Cnty. Strip Search Cases*,
   No. 99-CV-4238 (DRH), 2009 U.S. Dist. LEXIS 21215 (E.D.N.Y. Mar. 16, 2009) .............11

*In re Nortel Networks Corp. Sec. Litig.*,
   Civil Action No. 01-CV-1855(RMB) (S.D.N.Y) .....................................................................2

*In re Nortel Networks Corp. Sec. Litig.*,
   Master File No. 05-MD-1659(LAP) (S.D.N.Y.) ................................................................2

*In re Royal Ahold N.V. Sec. & ERISA Litig.*,
   Civil No. 1:03-MD-01539-CCB (D. Md.) .................................................................2

*Six (6) Mexican Workers v. Ariz. Citrus Growers*,
   641 F. Supp. 259 (D. Ariz. 1986) .......................................................................11

*Sullivan v. Kelly Servs., Inc.*,
   No. C 08-3893, 2011 WL 31534 (N.D. Cal. Jan. 5, 2011) .......................................11

*In re Vivendi Universal, S.A. Sec. Litig.*,
   284 F.R.D. 144 (S.D.N.Y. 2012) ...............................................................8, 11, 12

*In re Vivendi Universal, S.A. Sec. Litig.*,
   Civil Action No. 02 Civ. 5571 (S.D.N.Y.) ..........................................................2, 8

*In re Worldcom, Inc. Sec. Litig.*,
   Master File 02 Civ. 3288 (DLC) (S.D.N.Y.) ...........................................................2

**Statutes**

15 U.S.C. § 78u-4(e)(1) ................................................................................................8

**Rules**

Fed. R. Civ. P. 23(h) ....................................................................................................3

Lead Plaintiffs Danske Invest Management A/S and Pension Fund of Local No. One, I.A.T.S.E ("Plaintiffs") respectfully submit this memorandum of law in support of their Motion for Approval of Proposed Notice and Claims Administration and the Allocation of the Costs Thereof. This motion follows the jury's verdict against Defendant Derek Palaschuk ("Palaschuk") rendered on November 21 and 24, 2014 (ECF No. 272) (the "Jury Verdict") and the Court's Order Entering Default Judgment against Defendants Longtop Financial Technologies, Ltd. ("Longtop") and Wai Chau Lin a/k/a Lian Weizhou ("Lin") filed on November 14, 2013 (ECF No. 164) (the "Default Judgment").

I. **PLAINTIFFS' PROPOSED PLAN FOR NOTICE AND CLAIMS ADMINISTRATION WARRANTS THIS COURT'S APPROVAL**

   A. **The Court Should Appoint the Garden City Group, Inc. to Provide Notice and Claims Administration Services in This Matter**

Plaintiffs respectfully request that the Court approve their retention of The Garden City Group, Inc. ("GCG") and appoint GCG as the administrator to provide notice and claims administration services for the above-captioned action ("Action"). In support of GCG's appointment, Plaintiffs submit the Declaration of Stephen J. Cirami in Connection with Notice Program and Claims Processing (the "Cirami Declaration" or "Cirami Decl.").[1]

Class Counsel engaged GCG for this matter following a formal bidding process involving several different administrators. As one of the country's premier claims administrators, GCG has extensive experience in every aspect of class action notice and claims administration and has handled numerous complex administrations, including matters involving foreign companies and

---

[1] The Cirami Declaration is attached as Exhibit A to the Declaration of Kimberly A. Justice in Support of Plaintiffs' Motion for Approval of Proposed Notice and Claims Administration and the Allocation of the Costs Thereof which is being submitted to the Court contemporaneously herewith (the "Justice Declaration").

1

purchasers of American Depositary Shares ("ADSs").[2]  In addition, and of particular relevance here, GCG is one of the few claims administrators that has experience in post-verdict claims administration in a securities class action.  GCG is currently handling the post-verdict administration for *In re Vivendi Universal, S.A. Sec. Litig.*, Civil Action No. 02 Civ. 5571 (S.D.N.Y.), before this Court.

Given the novelty of this post-verdict and post-default judgment administration, Class Counsel believe that GCG has the requisite experience and capabilities to handle this matter in both an efficient and cost-effective manner and request this Court's approval of GCG's appointment as administrator.

### B. The Court Should Approve Plaintiffs' Proposed Plan for Post-Verdict and Post-Default Judgment Notice

Following a trial in November 2014, a jury found Defendant Palaschuk liable for violating Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") between February 10, 2010 and May 17, 2011 (the "Trial Class Period").  As a result of this Jury Verdict, persons and entities who purchased or otherwise acquired Longtop ADSs during the period from February 10, 2010 through May 17, 2011, inclusive, and were damaged thereby ("Trial Class Members"), are entitled to share in the recovery Plaintiffs achieved against Defendant Palaschuk at trial.[3]  In addition, on November 14, 2013, the Court entered default judgment against

---

[2] *See, e.g.*, *In re Initial Pub. Offering Sec. Litig.*, No. 21 MC 92 (SAS) (S.D.N.Y.); *In re Royal Ahold N.V. Sec. & ERISA Litig.*, Civil No. 1:03-MD-01539-CCB (D. Md.); *In re Worldcom, Inc. Sec. Litig.*, Master File 02 Civ. 3288 (DLC) (S.D.N.Y.); *In re Bank of Am. Corp. Sec., Derivative, and Emp. Ret. Income Sec. Act (ERISA) Litig.*, Master File No. 09 MDL 2058 (PKC) (S.D.N.Y.); *In re Lehman Bros. Equity/Debt Sec. Litig.*, Case No. 08-CV-5523-LAK (S.D.N.Y.); *In re Nortel Networks Corp. Sec. Litig.*, Civil Action No. 01-CV-1855(RMB) (S.D.N.Y) and *In re Nortel Networks Corp. Sec. Litig.*, Master File No. 05-MD-1659(LAP) (S.D.N.Y.).  *See also* GCG's Corporate Resume attached as Exhibit D to the Cirami Declaration.

[3] As discussed in § I(D)(2)(a) below, the jury identified daily inflation amounts (in dollars per share) that had been caused by Defendant Palaschuk's Section 10(b) violations and, as required under the Exchange Act, apportioned liability for total damages determined at trial amongst the three named Defendants in the Action as follows:  Longtop (49%), Lin (50%) and Palaschuk

Defendants Longtop and Lin for violating Sections 10(b) and 20(a) of the Exchange Act between February 21, 2008 and May 17, 2011 (i.e., the entire Class Period certified by the Court in July 2013).[4]  Pursuant to the Default Judgment, Longtop and Lin are jointly and severally liable to Plaintiffs and the Class for damages totaling $882,300,000 plus 9% interest on such amount from February 21, 2008 through the date of payment.  Although the likelihood of collecting on this judgment is uncertain, collection efforts continue.  Accordingly, persons and entities who purchased or otherwise acquired Longtop ADSs during the period from February 21, 2008 through May 17, 2011, inclusive (the "Default Judgment Class Period"), and were damaged thereby ("Default Judgment Class Members"), may be entitled to share in any recovery Plaintiffs ultimately collect under the Default Judgment.

There is significant overlap between the Trial Class Period and the Default Judgment Class Period.  As such, for reasons of judicial economy and in order to reduce the costs that would be associated with conducting two separate notice campaigns, Plaintiffs propose to notify the entire Class–at this time–of both the Jury Verdict and the Default Judgment, and Class Members' rights in connection therewith.  At this time, Class Counsel also will notify the Class of its intent to apply for an award of attorneys' fees and reimbursement of nontaxable costs and litigation expenses in accordance with Fed. R. Civ. P. Rule 23(h), following the conclusion of the claims process and/or the entry of judgment.

Class Counsel has worked closely with GCG in preparing proposed forms of notice to Class Members (attached as Exhibits A and C to the Cirami Declaration).  Both the proposed Notice to Class Members and the proposed Summary Notice to Class Members (the "Notice" and "Summary Notice," respectively) provide recipients with information about the Jury Verdict,

---

(1%).

[4]  *See In re Longtop Fin. Tech. Ltd. Sec. Litig.*, No. 11 Civ. 3658 (SAS), Memorandum Opinion and Order dated July 10, 2013 (ECF No. 157).

3

the Default Judgment, the procedure for submitting a claim and the claims process, and Class Counsel's application for an award of attorneys' fees, costs and expenses. The Notice also provides the methodology developed by Class Counsel in collaboration with Plaintiffs' expert, Professor Steven P. Feinstein, Ph.D., CFA, for calculating recoverable damages for those Trial Class Members and Default Judgment Class Members who submit valid claims.

GCG also has proposed a plan for disseminating notice to the Class. As set forth in the Cirami Declaration, GCG will mail the Notice to those potential Class Members and nominee purchasers ("Nominees") identified through the Notice of Pendency of Class Action mailing that took place beginning in August 2014 (the "Notice of Pendency Mailing")[5] as well as to the Nominees contained in GCG's proprietary Nominee database, among others. Cirami Decl. at ¶¶ 4, 7-11. In order to supplement the mailed notice, GCG will publish the Summary Notice in *Investor's Business Daily* and *The Wall Street Journal* and over PRNewswire and publish banner ads on targeted industry websites. *Id.* at ¶¶ 12-13.

Plaintiffs submit that the notice program outlined above (and which is set forth in detail in the accompanying Cirami Declaration at ¶¶ 4-18) is reasonable and appropriate under the circumstances of this case and warrants approval by the Court.

### C. The Court Should Approve Plaintiffs' Proposed Claim Form

Class Counsel also has worked with GCG in preparing a proposed Proof of Claim Form ("Claim Form") (attached as Exhibit B to the Cirami Declaration) for Claimants to submit in order to be eligible to recover damages pursuant to the Jury Verdict and/or under the Default

---

[5] The Notice of Pendency Mailing is described in the Declaration of Josephine Bravata Concerning (A) Mailing of the Notice; (B) Publication of the Summary Notice; and (C) Requests for Exclusion Received to Date previously filed with the Court (ECF No. 215).

4

Judgment in the event that Plaintiffs collect funds pursuant to this judgment.[6]  The Claim Form will be mailed to potential Class Members and Nominees along with the Notice.

The Claim Form provides clear instructions for completing and submitting the form. Class Members will have the ability to submit claims in one of two ways:  (a) completing a Claim Form in hardcopy and mailing it to the designated mailing address; or (b) providing, particularly in the case of institutional investors with numerous claims or transactions, transactional data to GCG through its website GCG ICE® (Institutional Claim E-Filing) via CD-ROM or email.  Cirami Decl. at ¶¶ 21-23.

### D. The Court Should Approved Plaintiffs' Proposed Procedures for Claims Administration and Methodologies for Calculating Damages

#### 1. Procedures for Claims Administration

The proposed procedures for claims administration are set forth in the Cirami Declaration.  Cirami Decl. at ¶¶ 19-35.  As with the proposed notice program detailed above, Plaintiffs propose to streamline the claims process for this matter by requesting all Claimants to submit their transactions in Longtop ADS for the *entire* Class Period (not just the Trial Class Period) so that, in the event that Plaintiffs recover additional proceeds pursuant to the Default Judgment, GCG will already have the necessary information in order to calculate the recovery for eligible Default Judgment Class Members and these Claimants will not be subjected to additional burden by having to supplement any prior submissions.  *Id*. at ¶ 20.

In general, GCG shall review and process all Claim Forms submitted, including all supporting documentation, and determine, in accordance with the methodology for calculating damages approved by the Court, whether the claim qualifies for damages, and if so, the amount

---

[6] As addressed in § I(D)(1) below, the Claim Form requests Class Members to provide their transactions in Longtop ADS for the **entire** certified Class Period (i.e., February 21, 2008 through May 17, 2011, inclusive) as well as for the 90-days following the Class Period for purposes of calculating claims.

of such damages. Cirami Decl. at ¶¶ 24-27; 32. If required, GCG may request additional information and documentation from Claimants in order to process their claims properly. *Id*. at ¶ 26.

The Cirami Declaration sets forth specific procedures for reviewing and processing claims submitted by Trial Class Members and Default Judgment Class Members. Cirami Decl. at ¶¶ 24-35. With respect to claims submitted by Trial Class Members, GCG will, at the request of counsel for the parties or the Court, make the claims of Trial Class Members to whom Defendant Palaschuk is liable available for the parties' review, and will work with the parties to develop a procedure for such review. *Id*. at ¶ 29.

GCG will notify Claimants as to the disposition of their claims when such disposition is finally determined in accordance with the procedures outlined in the Cirami Declaration. Cirami Decl. at ¶¶ 30, 33. GCG also will disburse approved damage payments to eligible claimants upon final determination of their claims, as approved by the Court. *Id*. at ¶¶ 31, 35.

### 2. Methodologies for Calculating Damages

The proposed methodologies for calculating recoverable damages are set forth in the Declaration of Professor Steven P. Feinstein, Ph.D., CFA (the "Feinstein Declaration" or "Feinstein Decl.") submitted herewith.[7] A brief description of these methodologies is set forth below.

#### a. Calculating Recoverable Damages for Trial Class Members

According to the out-of-pocket measure of damages applied to securities fraud claims, a defrauded purchaser is entitled to recover the difference between the price paid for the security and the "true value" of the security (the value of the security absent the fraud or misrepresentation). Feinstein Decl., at ¶ 13. In this case, that measure is reflected in the

---

[7] The Feinstein Declaration is attached as Exhibit B to the Justice Declaration which is being submitted to the Court contemporaneously herewith.

"Amount of Inflation Per Share" found by the jury for each day of the Trial Class Period, as set forth in the Special Verdict Form 2 dated November 24, 2014 (ECF No. 272).  Defendant Palaschuk did not challenge post-trial the jury's findings regarding the amount of daily inflation in the price of Longtop ADSs caused by his misstatements during the Trial Class Period.

Recoverable damages, however, are not the entire amount by which an investor overpaid for a security on account of fraud, but how much of that artificial inflation was actually lost by the investor during the investor's holding period, on account of the investor's purchases, acquisitions and sales of Longtop ADS during the Trial Class Period, and the corrective disclosures that the jury found removed inflation from the price of Longtop ADS.  Feinstein Decl. at ¶ 14.  Under well-established legal rules for damages, the calculation of a Trial Class Member's recoverable damages with respect to a purchase/acquisition of Longtop ADS during the Trial Class Period begins with the amount of inflation in the ADS price on the date the Trial Class Member purchased or otherwise acquired the ADS.  *Id*. at ¶ 23.  In order for a Trial Class Member to have recoverable damages, he, she or it will need to have purchased/acquired Longtop ADSs during the Trial Class Period and held such Longtop ADSs through at least one of the corrective disclosures.  Feinstein Decl. at ¶ 24.  Accordingly, pursuant to the formula set forth in the Feinstein Declaration, Longtop ADSs that were purchased/acquired and sold within the same period of inflation (and before a corrective disclosure) will result in no recoverable damages.  *Id*.  For Longtop ADSs that were purchased/acquired in one period of inflation and sold in a subsequent period of inflation, recoverable damages will be the lesser of (i) the decline in inflation per ADS (as set forth in the Feinstein Declaration); and (ii) the purchase/acquisition price per ADS less the sale price per ADS.  *Id.*  For Longtop ADSs purchased/acquired during the Trial Class Period and held through the end of the Trial Class Period (i.e., May 17, 2011), recoverable damages will be the lesser of (i) the decline in inflation per ADS (as set forth in the

7

Feinstein Declaration); and (ii) the purchase/acquisition price per ADS less $0.89 (i.e., the average closing price for Longtop ADS during the 90-day period following the last corrective disclosure). Feinstein Decl. at ¶ 24. As explained in the Feinstein Declaration, recoverable damages are subject to the limitation imposed by the PSLRA's 90-day bounce-back period[8] and also will be offset by any gains resulting from a Trial Claim Member's transactions in Longtop ADS during the Trial Class Period. *Id*. at ¶¶ 19-22; 26-29.[9]

In instances where a Trial Class Member held Longtop ADS at the beginning of the Trial Class Period or made multiple purchases, acquisitions or sales of Longtop ADS during or after the Trial Class Period, Plaintiffs propose utilizing the last-in-first-out ("LIFO") methodology to match the Trial Class Member's holdings, purchases and acquisitions to their sales. Feinstein Decl. at ¶ 17. LIFO matching will be applied at the outset of the calculation of each claim. Various courts, including this Court, have approved LIFO as the appropriate methodology for matching purchases and sales when calculating damages in securities fraud litigation. *See, e.g., Vivendi*, 284 F.R.D. at 158-59 (applying LIFO method).[10]

---

[8]   15 U.S.C. § 78u-4(e)(1).

[9]   *See In re Vivendi Universal, S.A. Sec. Litig.*, 284 F.R.D. 144, 159 (S.D.N.Y. 2012) (in netting gains and losses, the Court employed "partial netting" whereby "only those gains resulting from transactions occurring between the first materialization date and the end of the Class Period will be used to offset losses incurred during that very same period"). The "partial netting" method employed by the Court in *Vivendi* is particularly applicable here as Professor Feinstein testified at trial, and the Jury found, that there was inflation present in Longtop ADS prior to the start of the Trial Class Period. *See* 11/24/14 Trial Transcript at 630:3-17 ($11.89 of artificial inflation in Longtop ADS prior to Trial Class Period); *see also* Feinstein Declaration at Table 1 ($11.89 of artificial inflation in Longtop ADS prior to Trial Class Period). Further, in his August 30, 2013 Expert Report on Damages that was accepted by the Court for purposes of the Default Judgment, Dr. Gang Hu, Ph.D, CFA opined that there was inflation present in Longtop ADS prior to the start of the Default Judgment Class Period. *See* August 30, 2013 Expert Report on Damages submitted by Dr. Gang Hu, Ph.D., CFA at ¶ 19 ($7.42 of artificial inflation in Longtop ADS prior to start of Default Judgment Class Period); *see also* Feinstein Declaration at Table 4 ($7.42 of artificial inflation in Longtop ADS prior to start of Default Judgment Class Period).

[10]   *See also Hunt v. Enzo Biochem, Inc.*, 530 F. Supp. 2d 580, 590 n.70 (S.D.N.Y. 2008) ("[c]ourts prefer the [LIFO] method of accounting and have generally rejected FIFO as an

### b. Calculating Recoverable Damages for Default Judgment Class Members

Plaintiffs propose that the methodology for calculating recoverable damages for Default Judgment Class Members be in accord with the perimeters applied with respect to calculating recoverable damages for Trial Class Members. As was the case with Trial Class Members, the calculation of recoverable damages for a Default Judgment Class Member will begin with his, her or its holdings, purchases, and acquisitions of Longtop ADSs during the Default Judgment Class Period being matched against such claimant's sales of Longtop ADSs during the Default Judgment Class Period, using the LIFO method. Then, recoverable damages will be computed using the decline in inflation, if any, during the Default Judgment Class Member's holding period.[11] Feinstein Decl. at ¶ 33. Finally, recoverable damages for this period, as with the Trial Class Period, will be subject to certain limitations and offsets. Feinstein Decl. at ¶¶ 34-37. In addition to the limitation imposed by the PSLRA's 90-day bounce-back period and the offset applied for any gains resulting from an increase in inflation, if any, during the Default Judgment Class Period, in the event that recoverable damages for the Trial Class Period overlap with those for the Default Judgment Class Period, the recoverable damages from the Trial Class Period will

---

appropriate means of calculating losses in securities fraud cases"); *In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 101 (S.D.N.Y. 2005). *Accord Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*, 756 F. Supp. 2d 928, 937 (N.D. Ill. 2010) (stating that the major reason "why numerous courts have held that LIFO is the appropriate method for matching transactions in securities fraud cases is because it takes into account inflation related gains due to the fraud, and therefore, is a more accurate reflection of plaintiff's damages"). LIFO also has been applied in plans of allocation in securities fraud cases to calculate claimants' recovery rights. *See, e.g., In re Initial Public Offering Sec. Litig.*, No. 21 MC 92 (SAS) (S.D.N.Y.); *Monk v. Johnson & Johnson, et al.*, Civil Action No. 10-4841 (FLW) (DEA) (D.N.J.).

[11] The proposed formula for calculating recoverable damages (and gains) for the Default Judgment Class Period is identical to the proposed formula for calculating recoverable damages (and gains) for the Trial Class Period; however, daily inflation amounts for the Default Judgment Class Period will be based on Exhibit 7, Longtop ADS Price Inflation, to the August 30, 2013 Expert Report on Damages submitted by Gang Hu, Ph.D., CFA, and accepted by the Court for purposes of its November 14, 2013 Order Entering Default Judgment against Longtop and Lin. Feinstein Decl. at ¶ 32.

offset the amount of recoverable damages for the Default Judgment Class Period. *Id*. at ¶ 37. The calculation of Default Judgment Class Members' recoverable damages will then be used to determine each Default Judgment Class Member's pro rata share of the total default judgment recovery. *Id*. at ¶ 38.

Plaintiffs respectfully request that the Court review and approve the proposed methodologies for calculating recoverable damages as set forth above (and further detailed in the accompanying Feinstein Declaration).

## II. DEFENDANT PALASCHUK SHOULD BE ORDERED TO PAY FOR (I) NOTICE COSTS AND (II) ADMINISTRATION COSTS INCURRED IN CONNECTION WITH CLAIMS SUBMITTED BY TRIAL CLASS MEMBERS

Plaintiffs respectfully request that the Court order Defendant Palaschuk to pay the costs of the proposed notice program as well as the administration costs in connection with processing and calculating claims submitted by Trial Class Members. Although Defendant Palaschuk has declined to provide Plaintiffs with the amount of insurance proceeds remaining, Class Counsel believes there are sufficient insurance funds to cover these costs.

Courts have identified four circumstances in which a defendant may appropriately bear the cost of class notice: (1) "when costs would be substantially reduced if the defendant undertook the notice rather than the plaintiff"; (2) "when there is an existing fiduciary relationship between the parties (as in a shareholder derivative suit)"; (3) "when the defendant is the party requesting certification (this is not, of course, "cost-shifting" given that the cost is placed on the party moving for certification)"; and (4) "when there has been some preliminary finding of the defendant's liability (either via the granting of preliminary injunctive relief or by some other means)." Newberg on Class Actions § 8:33 (5th ed.), *Shifting class certification notice costs to the defendant*. This final circumstance is applicable here. Despite numerous opportunities to resolve this matter, Defendant Palaschuk took his chances and lost at trial with

10

the jury finding that he committed securities fraud. As such, because liability has been found, Defendant Palaschuk should bear the cost of class notice. Several courts agree. *See, e.g., Macarz v. Transworld Sys., Inc.*, 201 F.R.D. 54, 59 (D. Conn. 2001) (ordering defendant to pay cost of notice).[12]

Moreover, district courts have readily shifted the cost of notice, even where, as here, a defendant has not yet exhausted his appellate rights. *See, e.g.*, *Vivendi*, 284 F.R.D. at 161 (in allocating half of the cost of class notice to defendant, the Court explained "[a]lthough there is no final judgment, there is a final jury verdict, which has been upheld after a post-trial motion, conclusively establishing liability against Vivendi. Vivendi might indeed defeat some of the claims against it; however, there will eventually be a final judgment against Vivendi with respect to *some* of the class members."); *Bickel v. Whitley Cnty. Sheriff*, No. 1:08-CV-102, 2010 WL 5564634, at *3 (N.D. Ind. Dec. 27, 2010) *report and recommendation adopted sub nom. Bickel v. Sheriff of Whitley Cnty.*, No. 1:08-CV-102, 2011 WL 91032 (N.D. Ind. Jan. 11, 2011) (granting plaintiff's request to shift the cost of notice to the defendant and stating "[i]n any event, the fact that Defendant may appeal the summary judgment ruling does not preclude the shifting of fees to Defendant in this instance, because . . . there is 'no reason to suspend a district court's authority to shift notice costs based on a liability determination until after the time period for an

---

[12] *See also In re Nassau Cnty. Strip Search Cases*, No. 99-CV-4238 (DRH), 2009 U.S. Dist. LEXIS 21215 (E.D.N.Y. Mar. 16, 2009) (having admitted liability, defendants had to bear costs of class notice); *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 641 F. Supp. 259, 264 (D. Ariz. 1986) (ordering defendant to bear costs of notice and distribution to class due, in part, to "the fact that the liability of the defendants will have already been established"); *Sullivan v. Kelly Servs., Inc.*, No. C 08-3893, 2011 WL 31534, at *2 (N.D. Cal. Jan. 5, 2011) ("Because the Court has ruled on the merits of Defendant's liability, Defendant shall bear the costs of notice to the class."); *Catlett v. Mo. Highway & Transp. Comm'n*, 589 F. Supp. 949, 952 (W.D. Mo. 1984) ("the Court believes the Highway Commission should bear the expenses of notice because the liability of the Commission has been established . . ."); *see also* Manual for Complex Litigation, Fourth, § 21.311, 2004 WL 258805, at *3 (courts have required the defendant to bear notice costs "where notice follows a finding of liability").

appeal on liability has expired.'" (quoting *Hunt v. Imperial Merch. Servs., Inc.*, 560 F.3d 1137, 1143 (9th Cir. 2009)).[13]

In accordance with established precedent, Defendant Palaschuk should be ordered to pay the costs of (i) the proposed notice program and (ii) the administration costs in connection with processing and calculating claims submitted by Trial Class Members as they are incurred.

## III. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court: (i) appoint GCG as the administrator for notice and claims administration in this matter; (ii) approve the proposed plan for notice and claims administration; (iii) approve the proposed forms of notice and claim form, (iv) approve the proposed methodology for calculating damages; and (v) order Defendant Palaschuk to pay for the costs of the proposed notice program and the administration costs in connection with processing and calculating claims submitted for recovery pursuant to the Jury Verdict.

Dated: February 6, 2015

Respectfully submitted,

**KESSLER TOPAZ MELTZER & CHECK, LLP**

  */s/ Kimberly A. Justice*
GREGORY M. CASTALDO
KIMBERLY A. JUSTICE
MICHELLE M. NEWCOMER
MARGARET E. ONASCH
280 King of Prussia Road
Radnor, PA 19087
(610) 667-7706
(610) 667-7056 (Fax)

*Lead Counsel on Behalf of Lead Plaintiffs and the Class*

---

[13] In addition to allocating fifty percent of the costs to Vivendi up front, the Court made clear that plaintiffs could seek the remaining fifty percent from Vivendi later in the litigation. *Vivendi*, 284 F.R.D. at 161 ("the efficient and fair course to handle payment for notice is to divide the cost evenly between plaintiffs and Vivendi, and then plaintiffs would have the right to move to recover the fifty percent at a later time").

**GRANT & EISENHOFER, P.A.**
DANIEL L. BERGER
JEFF A. ALMEIDA
485 Lexington Avenue
29th Floor
New York, NY 10017
(646) 722-8500
(646) 722-8501 (Fax)

*Local Counsel on Behalf of Lead Plaintiffs and the Class*