## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE LONGTOP FINANCIAL TECHNOLOGIES LIMITED SECURITIES LITIGATION | Civil Action No. 11-cv-3658-SAS |

## STIPULATION AND AGREEMENT OF SETTLEMENT

This Stipulation and Agreement of Settlement (the "Stipulation") is submitted in the above-captioned securities class action (the "Action") pursuant to Rule 23 of the Federal Rules of Civil Procedure.  This Stipulation is entered into by plaintiffs Danske Invest Management A/S and Pension Fund of Local No. One, I.A.T.S.E (together, the "Class Representatives" or "Lead Plaintiffs"), on behalf of themselves and the Class (as defined herein) and defendant Derek Palaschuk ("Palaschuk" or the "Settling Defendant").[1]  The Class Representatives and Palaschuk shall be referred to herein collectively as the "Settling Parties."  This Stipulation is intended by the Settling Parties to fully, finally and forever resolve, discharge and settle the Settled Claims (as defined herein) against the Released Parties (as defined herein) on the terms and conditions set forth herein.

WHEREAS:

A.     On May 27, 2011, the following actions were filed in the Southern District of New York:  *Faris v. Longtop Financial Technologies Limited, et al.*, Civil Action No. 11-cv-03658-SAS ("*Faris*") and *Kair v. Longtop Financial Technologies Limited, et al.*, Civil Action No. 11-cv-03661-DAB ("*Kair*").

---

[1] All terms with initial capitalization not otherwise defined herein shall have the meanings ascribed to them in paragraph 1 herein.

B.      By Order dated September 21, 2011 (ECF No. 40), the Court consolidated the *Faris* and *Kair* actions under the caption *In re Longtop Financial Technologies Limited Securities Litigation*, No. 11-cv-3658-SAS.  By the same Order, the Court appointed: (i) Danske Invest Management A/S ("Danske") and Pension Fund of Local No. One, I.A.T.S.E. ("Local One") as Lead Plaintiffs; (ii) the law firm of Kessler Topaz Meltzer and Check, LLP ("Kessler Topaz") as Lead Counsel for the class; and (iii) the law firm of Grant & Eisenhofer P.A. ("G&E") as Liaison Counsel for the class.

C.      On November 18, 2011, Lead Plaintiffs filed their Consolidated Class Action Complaint (the "Consolidated Complaint") (ECF No. 45), asserting claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") against defendants Longtop Financial Technologies Limited ("Longtop"), Wai Chau Lin a/k/a Lian Weizhou ("Lin"), Palaschuk, Thomas Gurnee ("Gurnee"), Hui Kung Ka a/k/a Xiaogong Ka ("Ka"), Deloitte Touche Tohmatsu Limited ("Deloitte") and Deloitte Touche Tohmatsu CPA Ltd. ("DTT").

D.      On February 29, 2012, Lead Plaintiffs voluntarily dismissed without prejudice their claims against Gurnee and Deloitte pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i).  (ECF No. 62).

E.      On April 23, 2012, Palaschuk moved to dismiss the Consolidated Complaint. (ECF Nos. 68-72).  Following full briefing on Palaschuk's motion to dismiss, the Court denied Palaschuk's motion by Opinion and Order dated June 28, 2012.  (ECF No. 80).

F.      On July 12, 2012, upon Lead Plaintiffs' motion, the Clerk of the United States District Court for the Southern District of New York (the "Clerk") issued a certificate of default as to Longtop.  (ECF No. 83).

G.      On July 30, 2012, Palaschuk filed his Original Answer to Plaintiffs' Consolidated Complaint.  (ECF No. 91).

H.      On August 1, 2012, the Court granted Lead Plaintiffs' request for leave to serve DTT by alternate means after Lead Counsel was unable to effectuate service on DTT in China through the Hague Convention on Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters.  (ECF No. 92).  Lead Plaintiffs subsequently served DTT by direct mail in China and through its U.S.-based counsel, Sidley Austin LLP.  (ECF No. 93).

I.      On September 10, 2012, DTT moved to dismiss the Consolidated Complaint. (ECF Nos. 101-103).  On November 14, 2012, following full briefing on DTT's motion to dismiss, the Court granted DTT's motion.  (ECF No. 115).

J.      Thereafter, on December 14, 2012, Lead Plaintiffs and additional named plaintiff Pompano Beach General Retirement System ("Pompano") filed an Amended Consolidated Class Action Complaint against defendants DTT, Longtop, Palaschuk and Lin, asserting claims under Sections 10(b) and 20(a) of the Exchange Act (the "Amended Complaint") (ECF No. 119).

K.      On January 22, 2013, Palaschuk filed his Answer to the Amended Complaint. (ECF No. 127).

L.      DTT moved to dismiss the Amended Complaint on January 25, 2013.  (ECF Nos. 128-131).  Following full briefing on DTT's motion to dismiss, the Court granted DTT's motion by Opinion and Order dated April 8, 2013.  (ECF No. 150).

M.      On June 21, 2013, Lead Plaintiffs filed an unopposed motion to certify the Action as a class action and to appoint Danske and Local One as Class Representatives, Kessler Topaz as Class Counsel and G&E as Local Counsel for the class (the "Motion for Class Certification"). (ECF Nos. 153-155).

N.      On July 10, 2013, the Court granted Lead Plaintiffs' Motion for Class Certification, certifying a class (the "Class") consisting of "all persons and entities who purchased or otherwise acquired Longtop ADSs during the period from February 21, 2008 through May 17, 2011, inclusive, and were damaged thereby."  The Court also appointed Danske and Local One as Class Representatives and appointed Kessler Topaz as Class Counsel and G&E as Local Counsel for the Class.  (ECF No. 157).

O.      On October 9, 2013, upon Lead Plaintiffs' motion, the Clerk issued a certificate of default as to Lin.  (ECF No. 160).

P.      On November 14, 2013, upon Lead Plaintiffs' motion, the Court entered default judgment against Lin and Longtop in the amount of $882.3 million plus 9% interest on such amount from February 21, 2008 to the date of payment (the "Default Judgment").  (ECF No. 164).

Q.      On November 20, 2013, Palaschuk filed a motion for summary judgment.  (ECF No. 172).  On the same day, Lead Plaintiffs moved to exclude the report and testimony of Palaschuk's proffered expert, Alan D. Bell.  (ECF Nos. 166-168).  Thereafter, on February 26, 2014, Lead Plaintiffs moved to exclude the report and testimony of Palaschuk's proffered expert, Roger D. Siefert.  (ECF Nos. 198-199).

R.      Following full briefing on these motions, the Court, by Opinion and Order dated June 16, 2014 (ECF No. 203), denied Palaschuk's motion for summary judgment and, by Opinion and Order dated July 2, 2014 (ECF No. 204), granted in part and denied in part Lead Plaintiffs' motions to exclude the reports and testimony of Palaschuk's proffered experts, Roger D. Siefert and Alan D. Bell.

S.      On July 29, 2014, the Court approved Lead Plaintiffs' proposed notice and summary notice of pendency of class action. (ECF No. 207).  Notices were mailed to nominees and potential members of the Class beginning in August 2014 and a summary notice was published in *Investor's Business Daily* and the *Wall Street Journal* and transmitted over *PR Newswire* on August 27, 2014.  (ECF No. 215).  The notice advised members of the Class, *inter alia*, that the Default Judgment had been entered against Longtop and Lin and that the claims against Palaschuk would be tried to a jury on behalf of Class Members who purchased or otherwise acquired Longtop ADSs between February 10, 2010 and May 17, 2011 (the "Trial Class Period") (the "Trial Class").  The notice further provided members of the Class with the opportunity to request exclusion from the Class and set forth the procedure for doing so.  A total of three (3) requests for exclusion from the Class were received pursuant to this notice.  (ECF No. 235).

T.      The trial against Palaschuk was bifurcated into liability and damages phases.  The liability phase commenced on November 18, 2014 and lasted 4 court days through November 21, 2014.  During the liability phase of trial, the parties presented documentary and testimonial evidence and closing argument in support of their respective positions.  On November 21, 2014, the jury rendered a verdict on liability in favor of Lead Plaintiffs and the Trial Class with respect to all eight of the challenged misstatements or omissions of material fact (the "Liability Verdict").  (ECF No. 272).  Following the Liability Verdict, the damages phase of the trial commenced on November 24, 2014 wherein Lead Plaintiffs presented expert testimony in support of their position regarding damages and counsel for the parties delivered closing argument.  After a single day of testimony, on November 24, 2014, the jury rendered a verdict on damages, determining the artificial inflation in Longtop ADS on each day during the period from

February 10, 2010 to May 17, 2011 and apportioning responsibility of the total damage amount among defendants as follows:  50% to Lin, 49% to Longtop and 1% to Palaschuk (the "Damages Verdict").  (ECF No. 272).

U.      During trial, Palaschuk made an oral motion for judgment as a matter of law which he renewed after the jury rendered its Damages Verdict.  On December 9, 2014, Palaschuk withdrew that motion.  (ECF No. 270).

V.      Thereafter, Lead Plaintiffs and Palaschuk submitted to the Court a proposed schedule for post-trial briefing.  (ECF No. 271).  On February 6, 2015, Lead Plaintiffs filed their motions for entry of an award of prejudgment interest and approval of proposed notice and claims administration and the allocation of costs thereof ("Post-Trial Motions").  (ECF Nos. 273-278).  The Post-Trial Motions were fully briefed and *sub judice* when the Settling Parties reached their agreement-in-principle to settle the Action.

W.      In light of the Settling Parties' agreement-in-principle to resolve the Action, Lead Plaintiffs subsequently withdrew their Post-Trial Motions on April 30, 2015.  (ECF No. 288).

X.      Lead Plaintiffs and Lead Counsel have considered the arguments raised by Palaschuk in his opposition to the Post-Trial Motions, including his objections to certain of the proposed notice and claims procedures and damage calculation methodologies, as well as the potential for further litigation on issues of individual reliance for select Trial Class members.  Lead Plaintiffs and Lead Counsel also recognize the expense and time that would be required to conduct the post-verdict claims administration for this matter.  Lead Plaintiffs and Lead Counsel further acknowledge the potential for Palaschuk to appeal the jury verdict after a final judgment has been entered.  Based on a thorough evaluation of these issues, among others, Lead Plaintiffs and Lead Counsel have concluded that the proposed Settlement embodied in this Stipulation,

which will resolve all outstanding issues between the Settling Parties and provide payment of a certain aggregate sum for the benefit of the Class, reflects a fair, reasonable and adequate resolution of the Action against Palaschuk and is in the best interest of the Class.

Y.       Palaschuk has denied, and continues to deny, all allegations of fault, liability and/or wrongdoing made against him in the Action.  Nonetheless, Palaschuk is entering into this Settlement, among other reasons, to:  (i) eliminate the burden, expense and further litigation with respect to the various arguments raised in connection with the Post-Trial Motions regarding claims procedures and administration; (ii) eliminate the burden and expense of further litigation in connection with any appeal, and (iii) finally put to rest the claims asserted against him in the Action.

NOW THEREFORE, without any admission or concession on the part of Lead Plaintiffs of any lack of merit of the Action whatsoever, and without any admission or concession of any liability or wrongdoing whatsoever by Palaschuk, it is hereby STIPULATED AND AGREED, by and between the Settling Parties through their respective counsel, subject to approval of the Court pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, in consideration of the benefits flowing to the Settling Parties hereto from the Settlement herein set forth, that all Settled Claims (as defined herein), as against the Released Parties (as defined herein), and all Released Parties' Claims (as defined herein) shall be compromised, settled, released and dismissed with prejudice, upon and subject to the following terms and conditions:

## **DEFINITIONS**

1.       As used in this Stipulation, and any exhibits attached hereto and made a part hereof, the following terms shall have the following meanings:

(a)     "Action" means the above-captioned securities class action, *In re Longtop Financial Technologies Limited Securities Litigation*, No. 11-cv-3658-SAS, pending in the United States District Court for the Southern District of New York.

(b)     "Authorized Claimant" means a member of the Class who submits a valid Proof of Claim to the Claims Administrator that is approved for payment from the Net Settlement Fund, and who did not previously opt out of the Class by timely submitting a request for exclusion.

(c)     "Class" means the class certified by the Court pursuant to Memorandum Opinion and Order entered July 10, 2013 (ECF No. 157), consisting of all persons and entities who purchased or otherwise acquired Longtop ADSs during the period from February 21, 2008 through May 17, 2011, inclusive, and were damaged thereby.  Excluded from the Class are Defendants, present or former executive officers of Longtop, present or former members of Longtop's Board of Directors, and their immediate family members (as defined in 17 C.F.R. § 229.404, Instructions).  Also excluded from the Class are any Persons who previously submitted a request for exclusion as set forth on Appendix 1 hereto.

(d)     "Class Period" means the period from February 21, 2008 through May 17, 2011, inclusive.

(e)     "Claim" means a completed and signed Proof of Claim submitted to the Claims Administrator in accordance with the instructions provided in the form.

(f)     "Claimant" means a person or entity that submits a Proof of Claim to the Claims Administrator seeking to be eligible to share in the proceeds of the Net Settlement Fund.

(g)     "Claims Administrator" means Garden City Group, LLC, which shall administer the Settlement subject to approval and appointment by the Court.

(h)    "Complaints" mean the Consolidated Class Action Complaint dated November 18, 2011 (ECF No. 45) and the Amended Consolidated Class Action Complaint dated December 14, 2012 (ECF No. 119).

(i)    "Class Distribution Order" shall have the meaning set forth in ¶ 22 hereof.

(j)    "Court" means the United States District Court for the Southern District of New York.

(k)    "Damages Verdict" means the November 24, 2014 verdict rendered by the jury on damages, determining the artificial inflation on each day during the period from February 10, 2010 through May 17, 2011, and apportioning responsibility to Palaschuk for 1% of the total damages amount.

(l)    "Defendants" mean, collectively, Longtop Financial Technologies Limited, Wai Chau Lin a/k/a Lian Weizhou, Derek Palaschuk, Thomas Gurnee, Hui Kung Ka a/k/a Xiaogong Ka, Deloitte Touche Tohmatsu Limited and Deloitte Touche Tohmatsu CPA Ltd.

(m)    "Effective Date" means, as set forth in ¶ 36 herein, the date on which:  (i) all conditions to the Settlement have been satisfied; (ii) the Court grants final approval to the Settlement; and (iii) the expiration of the time allowed for appeal, motion or petition for reconsideration or review, or after all such appeals, motions or petitions have been exhausted and the Settlement has been affirmed.

(n)    "Escrow Agent" means Huntington National Bank.

(o)    "Final" or "Finality" means, with respect to any Judgment or Alternative Judgment (as defined herein at ¶ 1(p) and ¶ 36(d) respectively):  (i) if no appeal is filed, the expiration date of the time provided for under the corresponding rules of the applicable court or statute for filing or noticing any appeal from the Judgment; or (ii) if there is an appeal from the

Judgment, the date of:   (a) final dismissal of such appeal from the Judgment, or the final

dismissal of any proceeding on certiorari or otherwise to review the Judgment, or (b) the date of

final affirmance of an appeal of the Judgment, the expiration of the time to file a petition for a

writ of certiorari or other form of review, or the denial of a writ of certiorari or other form of

review of the Judgment, and, if certiorari or other form of review is granted, the date of final

affirmance of the Judgment following review pursuant to that grant.   Any proceeding or order, or

any appeal or petition for a writ of certiorari or other form of review pertaining solely to:   (i) any

application for attorneys' fees, costs or expenses; and/or (ii) the plan of allocation, shall not in

any way delay or preclude the judgment from becoming Final.

> (p)   "Judgment" or "Order and Final Judgment" means the final judgment

approving the Settlement and order dismissing the Action against Palaschuk, to be entered by the

Court substantially in the form attached hereto as Exhibit B.

> (q)   "Lead Counsel" means Kessler Topaz Meltzer & Check, LLP.

> (r)   "Lead Plaintiffs" mean Danske Invest Management A/S and Pension Fund

of Local No. One, I.A.T.S.E.

> (s)   "Liability Verdict" means the November 21, 2014 verdict rendered by the

jury on liability in favor of Lead Plaintiffs and the Trial Class with respect to all eight of

Palaschuk's alleged misstatements between February 10, 2010 and May 17, 2011.

> (t)   "Liaison Counsel" means Grant & Eisenhofer P.A.

> (u)   "Litigation Expenses" means the reasonable costs and expenses incurred

by Plaintiffs' Counsel and Lead Plaintiffs in connection with commencing and prosecuting the

Action, for which Lead Counsel intend to apply to the Court for payment from the Settlement

Fund.

(v)    "Net Settlement Fund" means the Settlement Fund less: (i) any Taxes; (ii) any Notice and Administration Costs; (iii) any Litigation Expenses awarded by the Court; (iv) any attorneys' fees awarded by the Court; and (v) other costs, expenses, or amounts as may be approved by the Court.

(w)    "Non-Settling Defendants" mean, collectively, Longtop Financial Technologies Limited, Wai Chau Lin a/k/a Lian Weizhou, Thomas Gurnee, Hui Kung Ka a/k/a Xiaogong Ka, Deloitte Touche Tohmatsu Limited and Deloitte Touche Tohmatsu CPA Ltd.

(x)    "Notice" means the Notice to Class Members of Proposed $2.3 Million Settlement with Defendant Derek Palaschuk, Settlement Fairness Hearing, and Motion for Reimbursement of Litigation Expenses, which shall be mailed to members of the Class, substantially in the form attached hereto as Exhibit A(1).

(y)    "Notice and Administration Costs" means the costs, fees and expenses that are incurred by the Claims Administrator in connection with: (i) providing notice of this Settlement to the Class; and (ii) administering the claims process, as well as any escrow related fees.

(z)    "Person" means an individual, corporation (including all divisions and subsidiaries), general or limited partnership, association, joint stock company, joint venture, limited liability company, professional corporation, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any other business or legal entity.

(aa)    "Plaintiffs' Counsel" means Lead Counsel and Liaison Counsel.

(bb)    "Plan of Allocation" means the proposed plan of allocation of the Net Settlement Fund set forth in the Notice, or such other plan of allocation as the Court shall

approve.

(cc)   "Preliminary Approval Order" means the order preliminarily approving the Settlement and directing notice thereof to the Class, to be entered by the Court substantially in the form attached hereto as Exhibit A.

(dd)   "Proof of Claim" means the Proof of Claim and Release Form substantially in the form attached hereto as Exhibit A(2).

(ee)   "Released Parties" means the Settling Defendant and all of his past and present agents, associates, attorneys, advisors, spouses, immediate family members, partners, trustees, executors, estates, administrators, subsidiaries, affiliates, predecessors, successors, assigns and insurers.

(ff)   "Released Parties' Claims" means any and all claims and causes of action of every nature and description, whether known or Unknown Claims (as hereinafter defined), whether arising under federal, state or common law, that have been or could have been asserted in the Action or any forum by the Released Parties or any of them or the successors and assigns of any of them against Lead Plaintiffs, any Class Member or their attorneys, which arise out of or relate in any way to the institution, prosecution, or settlement of the Action (except for claims to enforce the Settlement).

(gg)   "Settled Claims" means any and all claims and causes of action of every nature and description, whether known or Unknown Claims (as hereinafter defined), whether arising under federal, state or common law, that Lead Plaintiffs or any other member of the Class: (i) asserted in the Complaints, or (ii) could have asserted in any forum that arise out of or are based upon the allegations, transactions, facts, matters or occurrences, representations, or omissions involved, set forth, or referred to in the Complaints, the Liability Verdict or the

Damages Verdict and that relate to the purchase or other acquisition of Longtop ADS during the Class Period.

    (hh) "Settling Parties" mean Lead Plaintiffs and Derek Palaschuk.

    (ii) "Settling Defendant" means Derek Palaschuk

    (jj) "Settling Defendants' Counsel" means Mintz Levin Cohn Ferris Glovsky and Popeo, P.C.

    (kk) "Settlement" means the settlement contemplated by this Stipulation.

    (ll) "Settlement Amount" means the cash amount of $2,300,000.00.

    (mm) "Settlement Fund" means the Settlement Amount, plus any interest earned on the Settlement Amount.

    (nn) "Summary Notice" means the Summary Notice to Class Members of Proposed $2.3 Million Settlement with Defendant Derek Palaschuk, Settlement Fairness Hearing, and Motion for Reimbursement of Litigation Expenses to be published substantially in the form attached hereto as Exhibit A(3).

    (oo) "Taxes" means: (i) all federal, state and/or local taxes of any kind on any income earned by the Settlement Fund; and (ii) the reasonable expenses and costs incurred by Lead Counsel in connection with determining the amount of, and paying, any taxes owed by the Settlement Fund (including, without limitation, reasonable expenses of tax attorneys and accountants).

    (pp) "Unknown Claims" means any and all Settled Claims that Lead Plaintiffs and/or any member of the Class does not know or suspect to exist in his, her or its favor as of the Effective Date and any Released Parties' Claims that any Released Party does not know or suspect to exist in his, her or its favor as of the Effective Date, which if known by him, her or it

might have affected his, her or its decision(s) with respect to the Settlement. With respect to any and all Settled Claims and Released Parties' Claims, the Settling Parties stipulate and agree that upon the Effective Date, Lead Plaintiffs and the Settling Defendant shall expressly waive, and each member of the Class and any Released Party shall be deemed to have waived, and by operation of the Judgment shall expressly have waived, any and all provisions, rights and benefits conferred by any law of any state or territory of the United States or of any other country, or principle of common law or otherwise, which is similar, comparable, or equivalent to California Civil Code § 1542, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

The Settling Parties acknowledge, and members of the Class and the Released Parties by operation of law shall be deemed to have acknowledged, that the inclusion of "Unknown Claims" in the definition of Settled Claims and Released Parties' Claims was separately bargained for and was a key element of the Settlement.

## SCOPE AND EFFECT OF SETTLEMENT

2.      The obligations incurred pursuant to this Stipulation shall be in full and final disposition of the Action against Palaschuk and any and all Settled Claims as against all Released Parties and any and all Released Parties' Claims.

3.      Pursuant to the Judgment, upon the Effective Date of this Settlement, each Class member shall be deemed by operation of law to have fully, finally and forever released, relinquished, waived, discharged and dismissed each and every Settled Claim against the Released Parties, regardless of whether or not such Class member executes and delivers a Proof of Claim.

4.      Pursuant to the Judgment, upon the Effective Date of the Settlement, the Released Parties shall be deemed by operation of law to have fully, finally and forever released, relinquished, waived, discharged and dismissed each and every one of the Released Parties' Claims against Lead Plaintiffs, and their respective attorneys, and all other Class members.

5.      The releases set forth in ¶¶ 3 and 4 above shall not apply to: (i) any Person who previously submitted a request for exclusion as set forth on Appendix 1 hereto and who does not opt back into the Class in accordance with the provisions set forth in the Notice; or (ii) if and only if the Court permits a second opportunity for Class members to request exclusion from the Class, any Person who submits a request for exclusion from the Class in connection with the Notice who does not withdraw his, her or its request for exclusion and whose request is accepted by the Court.

6.      This Stipulation and the releases provided for herein do not affect, in any way: (i) the Default Judgment entered by the Court against Longtop and Lin on November 14, 2013 (ECF No. 164); or (ii) any of the claims Lead Plaintiffs and/or the Class have against any Non-Settling Defendants.

7.      The Settling Parties and their respective counsel acknowledge that the aggregate damages arising from the Damages Verdict cannot be assessed with exactitude, necessarily depend on speculative assumptions regarding the amount of eligible shares and rate of claims, and are uncertain.  The Settling Parties and their respective counsel acknowledge that the amount of claims deemed entitled by the Claims Administrator to distribution from the Net Settlement Fund may be higher or lower than the aggregate amount that would have been distributed pursuant to the Damages Verdict (and judgment that would have been entered by the Court in absence of this Settlement).  Accordingly, the Judgment and entry thereof shall forever bar all

Class members from asserting any claim against the Settling Parties, Plaintiffs' Counsel or the Released Parties with respect to, or arising from, the Settlement Amount agreed upon pursuant to this Settlement.

## SETTLEMENT CONSIDERATION

8.      In consideration of the Settlement of the Settled Claims against Palaschuk and the other Released Parties and in resolution of all outstanding issues raised in connection with the Post-Trial Motions and any issues that may be raised on appeal, Palaschuk shall pay or cause to be paid the sum of two million three hundred thousand dollars ($2,300,000.00) in cash within fifteen (15) business days following the Court's entry of the Preliminary Approval Order (the "Deposit Date").  When due to be paid, the Settlement Amount will be deposited into an account held by the Escrow Agent (the "Escrow Account").  If the Settlement Amount is not fully paid into the Escrow Account by the Deposit Date, any unpaid amounts shall bear interest at the rate of 10% per annum until paid into the Escrow Account.

## USE OF THE SETTLEMENT FUND

9.      The Settlement Amount, plus accrued interest, is referred to herein as the Settlement Fund.  The Settlement Fund shall be used to pay any:  (i) Taxes; (ii) Notice and Administration Costs pursuant to ¶ 18 below; (iii) attorneys' fees awarded by the Court; (iv) Litigation Expenses awarded by the Court; and (v) other costs, expenses, or amounts as may be approved by the Court.  The balance remaining in the Settlement Fund after the above payments (the "Net Settlement Fund") shall be distributed to Authorized Claimants at a time following the Effective Date, as provided below.

10.     The Settling Defendant shall have no responsibility or liability for the management, investment, maintenance or distribution of the Net Settlement Fund pursuant to this Settlement.  Except as provided herein or pursuant to orders of the Court, the Net Settlement

Fund shall remain in the Escrow Account prior to the Effective Date. All funds held by the Escrow Agent shall be deemed to be in the custody of the Court and shall remain subject to the jurisdiction of the Court until such time as the funds shall be distributed pursuant to the terms of this Stipulation and/or further order of the Court. The Escrow Agent shall invest the Settlement Fund exclusively in instruments backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof, including U.S. Treasury Bills, U.S. Treasury Money Market Fund or a bank account insured by the Federal Deposit Insurance Corporation ("FDIC") up to the guaranteed FDIC limit. All risks related to the investment of the Settlement Fund shall be borne by the Settlement Fund.

11.    The Settling Parties agree that the Settlement Fund is intended to be a "qualified settlement fund" within the meaning of Treasury Regulation §1.468B-1 and that Lead Counsel, as administrator of the Settlement Fund within the meaning of Treasury Regulation §1.468B-2(k)(3), shall be solely responsible for filing or causing to be filed all informational and other tax returns as may be necessary or appropriate (including, without limitation, the returns described in Treasury Regulation §1.468B-2(k)) for the Settlement Fund. Such returns shall be consistent with this paragraph and in all events shall reflect that all Taxes on the income earned on the Settlement Fund shall be paid out of the Settlement Fund as provided by ¶ 12 below. Lead Counsel shall also be solely responsible for causing payment to be made from the Settlement Fund of any Taxes owed with respect to the Settlement Fund. Upon written request, the Settling Defendant will provide promptly to Lead Counsel the statement described in Treasury Regulation §1.468B-3(e). Lead Counsel, as administrator of the Settlement Fund within the meaning of Treasury Regulation §1.468B-2(k)(3), shall timely make such elections as are necessary or advisable to carry out this paragraph, including, as necessary, making a "relation-

17

back election," as described in Treasury Regulation §1.468B-1(j), to cause the "qualified settlement fund" to come into existence at the earliest allowable date, and shall take or cause to be taken all actions as may be necessary or appropriate in connection therewith.

12.     All Taxes shall be paid out of the Settlement Fund, shall be considered a cost of administration of the Settlement and shall be timely paid out of the Escrow Account without prior order of the Court.  The Released Parties shall have no liability or responsibility for the payment of any Taxes.

13.     The Settlement will be non-recapture, *i.e.*, it is not a claims-made settlement. Following the Effective Date of the Settlement, none of the Settlement Fund shall be returned to the Settling Defendant and/or such other Persons funding the Settlement.

## PRELIMINARY APPROVAL

14.     Promptly upon the execution of this Stipulation, the Settling Parties shall file this Stipulation, together with its exhibits, with the Court and apply for entry of the Preliminary Approval Order, substantially in the form attached hereto as Exhibit A, and for the scheduling of a hearing for consideration of, *inter alia*, final approval of the Settlement and Lead Counsel's application for reimbursement of Litigation Expenses (the "Settlement Fairness Hearing").  The Settling Parties shall use their best efforts to obtain preliminary approval of the Settlement as soon as practicable.

15.     In connection with the motion for preliminary approval of the Settlement, the Settling Parties agree to request that the Court not permit a second opportunity for Class members to request exclusion from the Class.

## SUPPLEMENTAL AGREEMENT

16.     Simultaneously herewith, Lead Counsel and Settling Defendant's Counsel are executing a "Supplemental Agreement" in the event that the Court permits a second opportunity

for Class members to request exclusion from the Class. Unless otherwise directed by the Court, the Supplemental Agreement will not be filed with the Court. The Settling Defendant may, in accordance with the terms set forth in the Supplemental Agreement, elect in writing to terminate the Settlement and this Stipulation if a certain condition (the "Opt-Out Threshold") is met and Lead Counsel and Settling Defendant's Counsel are unable to cure this condition in accordance with the terms of the Supplemental Agreement. If required by the Court, the Supplemental Agreement and/or any of its terms may be disclosed to the Court for purposes of approval of the Settlement, but such disclosure shall be carried out to the fullest extent possible in accordance with the practices of the Court so as to preserve the confidentiality of the Supplemental Agreement, particularly the Opt-Out Threshold. In the event of a termination of this Settlement pursuant to the Supplemental Agreement, this Stipulation and Settlement shall become null and void and of no further force and effect, with the exception of the provisions of ¶ 38 which shall continue to apply.

## **ADMINISTRATION**

17.     The Claims Administrator shall administer the Settlement under Lead Counsel's supervision and subject to the jurisdiction of the Court for all members of the Class. The Settling Defendant and other Released Parties shall have no responsibility for the selection of the Claims Administrator and shall have no liability, obligation or responsibility for the administration of the Settlement or disbursement of the Net Settlement Fund, except for the obligation to pay the Settlement Amount, as provided herein.

18.     All Notice and Administration Costs shall be paid from the Settlement Fund. Notice and Administration Costs shall include, without limitation, the actual costs of publication, printing and mailing the Notice and Proof of Claim, reimbursements to nominee owners for forwarding the Notice and Proof of Claim to their beneficial owners, the administrative expenses

actually incurred and fees reasonably charged by the Claims Administrator in connection with providing notice and processing submitted Claims, and any escrow related fees.  Lead Counsel may pay Notice and Administration Costs from the Settlement Fund without further order of the Court or approval of the Settling Defendant.  In the event that the Settlement is not consummated, any Notice and Administration Costs paid or incurred shall not be returned or repaid to the Settling Defendant and/or such other Person funding the Settlement.

## REIMBURSEMENT OF LITIGATION EXPENSES

19.     Lead Counsel, on behalf of Plaintiffs' Counsel, will apply to the Court for reimbursement of Litigation Expenses which, subject to Court approval, shall be paid from the Settlement Fund.  Lead Counsel's application for Litigation Expenses may also include a request for reimbursement to the Lead Plaintiffs for costs and expenses incurred in connection with their representation of the Class in the Action in accordance with 15 U.S.C. § 78u-4(a)(4).   The Settling Defendant shall not oppose Lead Counsel's application.   The Settling Defendant does not however, offer any opinion as to the propriety or appropriateness of the amount of Lead Counsel's application.

20.     Any Litigation Expenses awarded by the Court shall be paid from the Escrow Account immediately upon award, notwithstanding the existence of any timely filed objections thereto, or potential for appeal therefrom, or collateral attack on the Settlement or any part thereof, subject to Lead Counsel's obligation to refund all such expenses to the Settling Defendant, plus accrued interest at the same rate as is earned by the Settlement Amount, if the Settlement is terminated pursuant to ¶ 37 hereof; or to make appropriate refunds to the Settlement Fund, if, as a result of any appeal or further proceedings on remand, or successful collateral attack, the award of Litigation Expenses is reduced or reversed by final non-appealable court order.

21.     The procedure for and the allowance or disallowance of any application for attorneys' fees and Litigation Expenses are not part of the Settlement and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness and adequacy of the Settlement.

## CLASS DISTRIBUTION ORDER

22.     Lead Counsel shall apply to the Court for an order (the "Class Distribution Order") approving the Claims Administrator's administrative determinations concerning the acceptance and rejection of submitted Claims, and, upon the Effective Date (as defined in ¶ 36 below), directing payment of the Net Settlement Fund to Authorized Claimants.

## DISTRIBUTION TO AUTHORIZED CLAIMANTS

23.     Allocation of the Net Settlement Fund among eligible members of the Class shall be subject to a plan of allocation to be proposed by Lead Counsel and approved by the Court. The Settling Defendant shall take no position with respect to such proposed plan of allocation or such plan as may be approved by the Court and shall have no responsibility or liability whatsoever with respect to such plan of allocation.  Such plan of allocation is a matter separate and apart from the proposed Settlement between the Settling Parties, and no order or proceedings relating to the Plan of Allocation shall operate to modify, terminate or cancel this Settlement or Stipulation or affect the finality of the Judgment or any other orders entered by the Court giving effect or pursuant to this Settlement.

24.     Class members shall look solely to the Net Settlement Fund for settlement and satisfaction of all Settled Claims and only to the extent expressly provided by this Settlement, the Court-approved Plan of Allocation or an Order of the Court.  None of the Released Parties shall be responsible for the payment of any fees, costs, expenses or other funds associated with or arising out of the Settlement contemplated by this Stipulation, except as expressly provided for

in this Stipulation.   No Authorized Claimant shall have any claim against Lead Plaintiffs, Plaintiffs' Counsel, the Released Parties or Settling Defendant's Counsel based on any distribution made in accordance or as contemplated by this Stipulation.

25.    The Claims Administrator shall determine each Authorized Claimant's *pro rata* share of the Net Settlement Fund based upon each Authorized Claimant's Recognized Claim (as defined in the plan of allocation described in the Notice annexed hereto as Exhibit A(1) (the "Plan of Allocation"), or in such other plan of allocation as the Court approves).   Subject to the terms of the Plan of Allocation, each Authorized Claimant shall be allocated a *pro rata* share of the Net Settlement Fund based on his, her, or its Recognized Claim compared to the total Recognized Claims of all accepted claimants.

26.    The Plan of Allocation proposed in the Notice is not a necessary term of this Stipulation, and this Stipulation is not conditioned on the approval of any particular plan of allocation.

27.    Lead Counsel shall be responsible for supervising the administration of the Settlement and disbursement of the Net Settlement Fund by the Claims Administrator.   Lead Counsel shall have the right, but not the obligation, to waive what it deems to be formal or technical defects in any Proofs of Claim submitted in the interests of achieving substantial justice.

28.    For purposes of determining the extent, if any, to which a Class member shall be entitled to be treated as an "Authorized Claimant," the following conditions shall apply:

(a)    Each Class member shall be required to submit a Proof of Claim (*see* Exhibit A(2) hereto), supported by such documents as are designated therein, including proof of

the claimant's loss, or such other documents or proof as Lead Counsel, in its discretion, may deem appropriate;

(b)     All Proofs of Claim must be submitted by the date specified in the Notice unless such period is extended by order of the Court.  Any Class member who fails to submit a Proof of Claim by such date shall forever be barred from receiving any payment pursuant to this Stipulation (unless, by order of the Court, a later submitted Proof of Claim by such Class member is approved), but shall in all other respects be bound by all of the terms of this Stipulation and the Settlement including the terms of the Judgment to be entered in the Action and the releases provided for herein, and shall be barred from bringing any Settled Claims against the Released Parties under any pending and subsequently initiated litigation, arbitration or other proceeding.  Provided that it is received before the motion for the Class Distribution Order is filed, a Proof of Claim shall be deemed to have been submitted when posted, if received with a postmark indicated on the envelope and if mailed by first-class mail and addressed in accordance with the instructions thereon.  In all other cases, the Proof of Claim shall be deemed to have been submitted when actually received by the Claims Administrator;

(c)     Each Proof of Claim shall be submitted to and reviewed by the Claims Administrator, under the supervision of Lead Counsel, who shall determine in accordance with this Stipulation the extent, if any, to which each Claim shall be allowed, subject to review by the Court pursuant to subparagraph (e) below;

(d)     Proofs of Claim that do not meet the submission requirements may be rejected.  Prior to rejection of a Proof of Claim, the Claims Administrator shall communicate with Claimants in order to remedy the curable deficiencies in the Proofs of Claim submitted. The Claims Administrator, under supervision of Lead Counsel, shall notify, in a timely fashion

and in writing, all Claimants whose Proofs of Claim they propose to reject in whole or in part, setting forth the reasons therefor, and shall indicate in such notice that the Claimant whose Claim is to be rejected has the right to a review by the Court if the Claimant so desires and complies with the requirements of subparagraph (e) below;

(e)    If any Claimant whose Claim has been rejected in whole or in part desires to contest such rejection, the Claimant must, within twenty (20) days after the date of mailing of the notice required in subparagraph (d) above, serve upon the Claims Administrator a notice and statement of reasons indicating the Claimant's grounds for contesting the rejection along with any supporting documentation, and requesting a review thereof by the Court.  If a dispute concerning a Claim cannot otherwise be resolved, Lead Counsel shall thereafter present the request for review to the Court; and

(f)    The administrative determinations of the Claims Administrator accepting and rejecting claims shall be presented to the Court for approval by the Court in the Class Distribution Order.

29.    Each Claimant shall be deemed to have submitted to the jurisdiction of the Court with respect to the Claimant's Claim, and the Claim will be subject to investigation and discovery under the Federal Rules of Civil Procedure, provided that such investigation and discovery shall be limited to that Claimant's status as a Class member and the validity and amount of the Claimant's Claim.  No discovery shall be allowed on the merits of the Action or Settlement in connection with processing of the Proofs of Claim.

30.    Payment pursuant to this Stipulation shall be deemed final and conclusive against all Class members.  All Class members whose Claims are not approved by the Court shall be barred from participating in distributions from the Net Settlement Fund, but otherwise shall be

bound by all of the terms of this Stipulation and the Settlement, including the terms of the Judgment to be entered in the Action and the releases provided for herein, and shall be barred from bringing or maintaining any action against the Released Parties concerning the Settled Claims.

31.    All proceedings with respect to the administration, processing and determination of Claims described in ¶ 28 above and the determination of all controversies relating thereto, including disputed questions of law and fact with respect to the validity of Claims, shall be subject to the jurisdiction of the Court.

32.    The Net Settlement Fund shall be distributed to Authorized Claimants by the Claims Administrator only after the Effective Date and after: (i) all Claims have been processed, and all Claimants whose Claims have been rejected or disallowed, in whole or in part, have been notified and provided the opportunity to be heard concerning such rejection or disallowance; (ii) all objections with respect to all rejected or disallowed Claims have been resolved by the Court, and all appeals therefrom have been resolved or the time therefor has expired (or appropriate amounts have been placed in reserve); (iii) all matters with respect to attorneys' fees, costs, and disbursements have been resolved by the Court, all appeals therefrom have been resolved or the time therefor has expired; (iv) all costs of administration have been paid; and (v) the Court has entered a Class Distribution Order as described in ¶ 21 above.

33.    If any funds remain in the Net Settlement Fund by reason of uncashed checks, or otherwise, after the Claims Administrator has made reasonable and diligent efforts to have Authorized Claimants who are entitled to participate in the distribution of the Net Settlement Fund cash their distribution checks, then any balance remaining in the Net Settlement Fund six (6) months after the initial distribution of such funds shall be used: (i) first, to pay any amounts

mistakenly omitted from the initial distribution to Authorized Claimants or to pay any late, but otherwise valid and fully documented claims received after the cut-off date used to make the initial distribution, provided that such distributions to any late post-distribution claimants meet all of the other criteria for inclusion in the initial distribution, including the $10.00 minimum check amount set forth in the Notice; (ii) second, to pay any additional fees and expenses incurred in administering the Settlement; and (iii) finally, to make a second distribution to Authorized Claimants who cashed their checks from the initial distribution and who would receive at least $10.00 from such second distribution, after payment of the estimated costs or fees to be incurred in administering the Net Settlement Fund and in making this second distribution, if such second distribution is economically feasible as determined by Lead Counsel after consulting with the Claims Administrator.

34.     If after six (6) months after such second distribution, if undertaken, or if such second distribution is not undertaken, any funds shall remain in the Net Settlement Fund after the Claims Administrator has made reasonable and diligent efforts to have Authorized Claimants who are entitled to participate in this Settlement cash their checks, any funds remaining in the Net Settlement Fund shall be donated to a secular charitable organization(s) selected by Lead Counsel and approved by the Court.

## TERMS OF THE JUDGMENT

35.     If the Settlement contemplated by this Stipulation is approved by the Court, Lead Counsel and Settling Defendant's Counsel jointly shall request that the Court enter a Judgment substantially in the form annexed hereto as Exhibit B, including, among other things, the releases provided for herein.

## EFFECTIVE DATE OF SETTLEMENT, WAIVER OR TERMINATION

36.     The "Effective Date" of the Settlement shall be the date when all the following

conditions of Settlement shall have occurred:

        (a)     payment of the Settlement Amount in conformity with ¶ 8 herein;

        (b)     entry of the Preliminary Approval Order substantially in the form attached hereto as Exhibit A;

        (c)     final approval by the Court of the Settlement, following notice to the Class and a hearing, as prescribed by Rule 23 of the Federal Rules of Civil Procedure; and

        (d)     entry by the Court of a Judgment, substantially in the form attached hereto as Exhibit B, and the expiration of any time for appeal or review of such Judgment or, if any appeal is filed, after such Judgment is upheld on appeal in all material respects and is no longer subject to review upon appeal or review by writ of certiorari, or, in the event that the Court enters a Judgment in a form substantially other than that provided above ("Alternative Judgment") and none of the Settling Parties hereto elect to terminate this Settlement, the date that such Alternative Judgment becomes final and no longer subject to review.

        37.     The Settling Parties shall have the right to terminate the Settlement and thereby this Stipulation by providing written notice of their election to do so ("Termination Notice") to all Settling Parties hereto within thirty (30) calendar days of any of the following: (i) the Court declining to enter the Preliminary Approval Order in any material respect; (ii) the Court refusing to approve the Settlement as set forth in this Stipulation in any material respect; (iii) the Court declining to enter the Judgment in any material respect or entering an Alternative Judgment; (iv) the date upon which the Judgment is modified or reversed in any material respect by any appellate court; or (v) the date upon which an Alternative Judgment is modified or reversed in any material respect by any appellate court. In addition, Lead Counsel shall have the right to terminate the Settlement after thirty (30) calendar days of the Settling Defendant's failure to

deposit timely the Settlement Amount. If a party elects to terminate the Settlement pursuant to this paragraph, termination will become effective within two (2) weeks of service of the Termination Notice. During these two weeks, the Settling Parties shall use their best efforts to resolve any existing conflicts and/or deficiencies and reinstate the Settlement.

38.     Except as otherwise provided herein, in the event of a withdrawal or the termination of the Settlement as set forth in ¶¶ 16 and 37: (i) the Settlement shall be without prejudice, and none of its terms shall be effective or enforceable; (ii) the Settlement Amount (to the extent it has been funded), plus interest, less any Notice and Administration Costs and or Taxes, shall be returned to the Settling Defendant and/or the Person(s) paying it into the Settlement Fund within twenty (20) business days pursuant to their written instructions; (iii) the Settling Parties shall revert to their litigation positions immediately prior to the execution of this Stipulation; and (iv) the fact and terms of the Stipulation and this Settlement shall not be admissible in any trial of the Action.

## NO ADMISSION OF WRONGDOING

39.     The Settling Defendant has denied and continues to deny that he has committed any act or omission giving rise to any liability and/or violation of law, and state that he is entering into this Settlement to eliminate the burden and expense of further litigation proceedings. This Stipulation, whether or not consummated, and any proceedings taken pursuant to it shall not be:

(a)     offered or received against the Settling Defendant or against Lead Plaintiffs or any member of the Class as evidence of or construed as or deemed to be evidence of any presumption, concession, or admission by the Settling Defendant or by any of the Lead Plaintiffs or any member of the Class with respect to the truth of any fact alleged by Lead Plaintiffs or the validity of any claim that had been or could have been asserted in the Action or

in any litigation, or the deficiency of any defense that has been or could have been asserted in the Action or in any litigation, or of any liability, negligence, fault, or wrongdoing of the Settling Defendant;

(b)     offered or received against the Settling Defendant as evidence of a presumption, concession or admission of any fault, misrepresentation or omission with respect to any statement or written document approved or made by the Settling Defendant, or against Lead Plaintiffs or any member of the Class as evidence of any infirmity in the claims of Lead Plaintiffs or any member of the Class;

(c)     offered or received against the Settling Defendant or against Lead Plaintiffs or any member of the Class as evidence of a presumption, concession or admission with respect to any liability, negligence, fault or wrongdoing, or in any way referred to for any other reason as against any of the parties to this Stipulation, in any other civil, criminal or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Stipulation; provided, however, that if this Stipulation is approved by the Court, the Settling Defendant may refer to it to effectuate the liability protection granted him hereunder;

(d)     construed against the Settling Defendant or Lead Plaintiffs or any member of the Class as an admission or concession that the consideration to be given hereunder represents the amount which could be or would have been recovered after trial; and

(e)     construed as or received in evidence as an admission, concession or presumption against Lead Plaintiffs or any member of the Class or any of them that any of their claims are without merit or that damages recoverable under the Complaint would not have exceeded the Settlement Amount.

## CONFIDENTIALITY/RETURN OF DOCUMENTS

40.     Lead Plaintiffs will return to the offices of the Settling Defendant's Counsel or certify that they have destroyed all confidential documents produced by the Settling Defendant during the course of this litigation, including any copies thereof, within thirty (30) business days following the Effective Date, if Lead Plaintiffs receive notice from the Settling Defendant to do so within that thirty (30) day period.

41.     With respect to any work product generated by Lead Counsel that reflects the Settling Defendant's confidential information, Lead Counsel will continue to keep such work product confidential.  Lead Counsel will not make use of such designated confidential portion of the work product for any purpose unrelated to this litigation and will not disclose such work product to anyone other than employees of Lead Counsel who are obligated to maintain such work product in confidence.

## MISCELLANEOUS PROVISIONS

42.     All of the exhibits attached hereto are hereby incorporated by reference as though fully set forth herein.

43.     The Settling Parties intend the Settlement to be a final and complete resolution of all disputes asserted or which could be asserted by the Class members against the Released Parties with respect to the Settled Claims.  Accordingly, Lead Plaintiffs and the Settling Defendant agree not to assert in any forum that the Action was brought by Lead Plaintiffs or defended by the Settling Defendant in bad faith or without a reasonable basis.  The Settling Parties shall assert no claims of any violation of Rule 11 of the Federal Rules of Civil Procedure relating to the prosecution, defense, or settlement of the Action, and the Settling Parties and their respective counsel shall not make any applications for fees, costs or sanctions pursuant to Rule

11, Rule 37, Rule 45, or any other court rule or statute with respect to any claims or defenses in this Action or to any aspect of the institution, prosecution or defense of this Action. The Settling Parties agree that the amount paid and the other terms of the Settlement were negotiated at arm's-length in good faith by the Settling Parties, and reflect a settlement that was reached voluntarily after consultation with experienced legal counsel.

44.     The Settling Defendant warrants as to himself that, as to the payment made by or on behalf of him, at the time such payment was made pursuant to ¶ 8 above, he was not insolvent nor will the payment made by or on behalf of him render him insolvent within the meaning of United States Bankruptcy Code, including §§101 and 547 thereof. This representation is made by the Settling Defendant and not by Settling Defendant's Counsel.

45.     If a case is commenced with respect to any Person contributing to the Settlement Fund under Title 11 of the United States Code (Bankruptcy), or a trustee, receiver or conservator is appointed under any similar law, and in the event of the entry of a final order of a court of competent jurisdiction determining the transfer of the Settlement Fund, or any portion thereof, by or on behalf of the Settling Defendant to be a preference, voidable transfer, fraudulent conveyance, or similar transaction and any portion thereof is required to be returned, and such amount is not promptly deposited to the Settlement Fund by or on behalf of the Settling Defendant then, at the election of Lead Counsel, the Settling Parties shall jointly move the Court to vacate and set aside the releases given and Judgment entered in favor of the Released Parties pursuant to this Stipulation, which releases and Judgment shall be null and void, and the Settling Parties shall be restored to their respective litigation positions in the Action immediately prior to the execution of this Stipulation and any cash proceeds in the Settlement Fund shall be returned as provided in ¶ 38 above.

46.     This Stipulation may not be modified or amended, nor may any of its provisions be waived, except by a writing signed by all Settling Parties hereto or their successors-in-interest.

47.     The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

48.     The administration and consummation of the Settlement as embodied in this Stipulation shall be under the authority of the Court, and the Court shall retain exclusive jurisdiction for the purpose of entering orders providing for awards of attorneys' fees and Litigation Expenses to Lead Counsel and enforcing the terms of this Stipulation.

49.     The waiver by one party of any breach of this Stipulation by any other party shall not be deemed a waiver of any other prior or subsequent breach of this Stipulation.

50.     This Stipulation and its exhibits and the Supplemental Agreement constitute the entire agreement concerning the Settlement of the Action against Palaschuk, and no representations, warranties, or inducements have been made by or on behalf of any party hereto concerning this Stipulation and its exhibits and the Supplemental Agreement other than those contained and memorialized in such documents.

51.     This Stipulation may be executed in one or more counterparts, including by signature transmitted by facsimile or electronic mail.  Each counterpart when so executed shall be deemed to be an original, and all such counterparts together shall constitute the same instrument.  All counsel and any other Person executing this Stipulation and any of the exhibits hereto, or any related settlement documents, warrant and represent that they have the full authority to do so and that they have the authority to take appropriate action required or permitted to be taken pursuant to the Stipulation to effectuate its terms.

52.     This Stipulation shall be binding upon, and inure to the benefit of, the successors

and assigns of the Settling Parties hereto.

53.     The construction and interpretation of this Stipulation shall be governed and construed in accordance with the laws of the State of New York without regard to conflicts of law principles thereof, to the extent that federal law does not apply.

54.     This Stipulation shall not be construed more strictly against one party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Settling Parties, it being recognized that this Stipulation is the result of arm's-length negotiations between the Settling Parties and all Settling Parties have contributed substantially and materially to the preparation of this Stipulation.

55.     The undersigned signatories represent that they have authority from their respective client(s) to execute this Stipulation and any of the exhibits hereto, or any related settlement documents.

56.     The Settling Parties agree to cooperate fully with one another in seeking Court approval of the Preliminary Approval Order, the Stipulation and the Settlement, and to agree promptly upon and execute all such other documentation as may reasonably be required to obtain final approval by the Court of the Settlement.

57.     The Settling Parties and their counsel agree that they will refrain from disparaging the Settlement or each other with respect to the Action in any press releases or statements to the media, or in any other communications.

Dated:  June 18, 2015

                                    KESSLER TOPAZ MELTZER
                                       & CHECK, LLP


                                    _____
                                    GREGORY M. CASTALDO

KIMBERLY A. JUSTICE
MICHELLE M. NEWCOMER
MARGARET E. ONASCH
280 King of Prussia Road
Radnor, PA 19087
(610) 667-7706
(610) 667-7056 (Fax)

***Lead Counsel on Behalf of Lead Plaintiffs
and the Class***

**GRANT & EISENHOFER, P.A.**
DANIEL L. BERGER
JEFF A. ALMEIDA
485 Lexington Avenue
29th Floor
New York, NY 10017
(646) 722-8500
(646) 722-8501 (Fax)

***Local Counsel on Behalf of Lead Plaintiffs
and the Class***

**MINTZ LEVIN COHN FERRIS
      GLOVSKY AND POPEO, P.C.**

John F. Sylvia
666 Third Avenue
New York, NY 10017
(212) 935-3000
(212) 983-3115 (Fax)

Adam L. Sisitsky (*pro hac vice*)
Matthew D. Levitt (*pro hac vice*)
**MINTZ LEVIN COHN FERRIS
      GLOVSKY AND POPEO, P.C.**
One Financial Center
Boston, MA 02111
(617) 542-6000
(617) 542-2241 (Fax)

***Counsel for Defendant Derek Palaschuk***

34