# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE LONGTOP FINANCIAL TECHNOLOGIES LIMITED SECURITIES LITIGATION | Civil Action No. 11-cv-3658-SAS |

## MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT

**TABLE OF CONTENTS**

Page

I.      INTRODUCTION ............................................................................................ 1

II.     DESCRIPTION OF THE LITIGATION............................................................ 3

III.    THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL ................ 7

        A.      The Proposed Settlement is Fair, Reasonable and Adequate................................ 10

                1.      The Settlement is the Result of Arms'-Length Negotiations.................... 10

                2.      The Settlement was Reached by Capable Counsel after Meaningful
                        Discovery and at an Advanced Stage in the Litigation............................ 11

                3.      The Proposed Settlement is in the Best Interests of the Class ................. 12

        B.      The Plan of Allocation is Fair and Reasonable...................................... 14

IV.     THE PROPOSED FORM AND METHOD OF CLASS NOTICE ARE
        APPROPRIATE AND ADEQUATE .............................................................. 14

V.      THE PROPOSED CLAIMS ADMINISTRATOR SHOULD BE APPROVED.............. 17

VI.     THE PROPOSED SETTLEMENT SCHEDULE.............................................. 17

VII.    CONCLUSION.............................................................................................. 18

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Authors Guild v. Google, Inc.*,
No. 05 Civ. 8136(DC), 2009 WL 4434586 (S.D.N.Y. Dec. 1, 2009) ......................................9

*Danieli v. IBM Corp.*,
No. 08 CV 3688 (SHS), 2009 WL 6583144 (S.D.N.Y. Nov. 16, 2009) ................................14

*Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974)...................................................................................................9

*In re Am. Bank Note Holographics, Inc.*,
127 F. Supp. 2d 418 (S.D.N.Y. 2001).....................................................................................14

*In re AOL Time Warner, Inc.*,
No. MDL 1500, 02 Civ. 5575(SWK), 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ...............13

*In re Apollo Grp. Inc. Sec. Litig.*,
No. CV 04-2147-PHX-JAT, 2012 WL 1378677 (D. Ariz. Apr. 20, 2012) ......................12, 13

*In re Currency Conversion Fee Antitrust Litig.*,
No. 01 MDL 1409, 2006 WL 3247396 (S.D.N.Y. Nov. 8, 2006) .............................................8

*In re IMAX Sec. Litig.*,
283 F.R.D. 178 (S.D.N.Y. 2012) ............................................................................................14

*In re Initial Pub. Offering*,
226 F.R.D. 186 (S.D.N.Y. 2005) ......................................................................................12, 14

*In re Med. X-ray Film Antitrust Litig.*,
No. CV-93-5904, 1997 WL 33320580 (E.D.N.Y. Dec. 26, 1997)...........................................8

*In re NASDAQ Market-Makers Antitrust Litig.*,
176 F.R.D. 99 (S.D.N.Y. 1997) ...............................................................................................8

*In re PaineWebber Ltd. P'ships Litig.*,
147 F.3d 132 (2d Cir. 1998)....................................................................................................7

*In re Prudential Sec. Inc. P'ships Litig.*,
163 F.R.D. 200 (S.D.N.Y. 1995) .............................................................................................9

*In re Sadia S.A. Sec. Litig.*,
No. 08 CIV. 9528 SAS, 2011 WL 6825235 (S.D.N.Y. Dec. 28, 2011) ...................................9

*In re Stock Exch. Options Trading Antitrust Litig.*,
   No. 99 CIV. 0962(RCC), 2006 WL 3498590 (S.D.N.Y. Dec. 4, 2006)..................................15

*Lomeli v. Sec. & Inv. Co. Bahr.*,
   No. 13-1581, 2013 WL 6170572 (2d Cir. Nov. 26, 2013) .....................................................16

*Mba v. World Airways, Inc.*,
   369 F. App'x 194 (2d Cir. 2010) ...........................................................................................11

*Reed v. Gen. Motors Corp.*,
   703 F.2d 170 (5th Cir. 1983) ...................................................................................................9

*Silberblatt v. Morgan Stanley*,
   524 F. Supp. 2d 425 (S.D.N.Y. 2007).....................................................................................14

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
   396 F.3d 96 (2d Cir. 2005)............................................................................................7, 9, 15

*Yuzary v. HSBC Bank USA, N.A.*,
   No. 12 CIV. 3693(PGG), 2013 WL 1832181 (S.D.N.Y. Apr. 29, 2013) .........................8, 9, 10

STATUTES

§ 10(b) of the Securities Exchange Act of 1934 ..........................................................................4, 5

15 U.S.C. § 78u-4(a)(7) ...................................................................................................................16

17 C.F.R. § 229.404 ...........................................................................................................................1

§ 20(a) of the Securities Exchange Act of 1934 ..........................................................................4, 5

RULES

FED. R. CIV. P. 23 .............................................................................................................................14

OTHER AUTHORITIES

Alba Conte & Herbert Newberg, NEWBERG ON CLASS ACTIONS § 8.2 (4th ed. 2002).................15

Lead Plaintiffs Danske Invest Management A/S ("Danske") and Pension Fund of Local No. One, I.A.T.S.E. ("Local One" and together with Danske, "Lead Plaintiffs"), on behalf of themselves and the Class,[1] have reached a proposed settlement (the "Settlement")[2] of all claims against Palaschuk in connection with the above-captioned securities class action lawsuit (the "Action") for a total of two million three hundred thousand dollars ($2,300,000.00) in cash (the "Settlement Amount").   If approved, the proposed Settlement will resolve all claims against Palaschuk in connection with the Action.   Lead Plaintiffs respectfully move the Court for an order preliminarily approving the Settlement, approving the form and manner of providing notice of the Settlement to the Class, and setting a hearing date at which the Court will consider final approval of the Settlement, approval of the proposed Plan of Allocation and Lead Counsel's motion for reimbursement of litigation expenses.

## I.   INTRODUCTION

Subject to Court approval, and as described herein, Lead Plaintiffs, on behalf of themselves and the Class, have agreed to settle all claims asserted in the Action against Palaschuk in exchange for payment of $2,300,000.00 in cash to be deposited into an interest-bearing escrow account.

---

[1] The "Class" means the class certified by the Court pursuant to Memorandum Opinion and Order entered July 10, 2013 (ECF No. 157), consisting of all persons and entities who purchased or otherwise acquired the American Depositary Shares ("ADSs") issued by Longtop Financial Technologies Limited ("Longtop" or the "Company") during the period from February 21, 2008 through May 17, 2011, inclusive (the "Class Period"), and were damaged thereby.   Excluded from the Class are Defendants Derek Palaschuk ("Palaschuk"), Longtop and Wai Chau Lin a/k/a Lian Weizhou ("Lin"), present or former executive officers of Longtop, present or former members of Longtop's Board of Directors ("Board"), and their immediate family members (as defined in 17 C.F.R. § 229.404, Instructions).   Also excluded from the Class are any Persons who previously submitted a request for exclusion as set forth in Appendix 1 to the Stipulation and Agreement of Settlement dated June 18, 2015 (the "Stipulation"), which is being filed concurrently herewith.

[2] Unless otherwise defined herein, all capitalized terms shall have the meanings ascribed to them in the Stipulation.

As set forth in the Stipulation, the Settlement, if approved, will resolve all claims against Defendant Palaschuk.  Lead Plaintiffs' principal reason for entering into the Settlement is the definitive cash benefit provided for the Class considered against the risk that a smaller recovery would be achieved following: (i) the post-trial claims administration process and any subsequent challenges by Palaschuk as to the validity of submitted claims, or (ii) extinguished on appeal. The Settlement was reached only after extensive litigation, including a jury verdict on both liability and damages, and significant, arms'-length settlement negotiations.

During the course of the litigation, Lead Plaintiffs, through Lead Counsel, among other things: (i) conducted an extensive investigation into the claims against Palaschuk; (ii) drafted a detailed amended complaint; (iii) successfully opposed Palaschuk's motion to dismiss; (iv) obtained certification of the Class; (v) engaged in discovery and reviewed over 3 million pages of documents produced by Palaschuk, including a large number of Chinese language documents; (vi) successfully opposed Palaschuk's motion for summary judgment; (vii) prepared for trial; (viii) obtained jury verdicts on liability and damages in favor of Lead Plaintiffs and the Trial Class;[3] and (ix) successfully negotiated the Settlement.  As a result, Lead Plaintiffs had a thorough understanding of the relative strengths and weaknesses of the claims asserted at the time the Settlement was reached.

Lead Plaintiffs, who are both sophisticated institutional investors of the type favored by Congress when enacting the PSLRA and who both have closely monitored and participated in this litigation from the outset, recommend that the Settlement be approved.  Further, Lead

---

[3] The "Trial Class" consists of  all persons and entities who purchased or otherwise acquired Longtop ADSs during the period February 10, 2010 through May 17, 2011, inclusive (the "Trial Class Period"), and were damaged thereby.

Counsel, who have extensive experience in prosecuting securities class actions, strongly believe that the Settlement is in the best interests of the Class.

At the final approval hearing (the "Settlement Hearing"), the Court will have before it more extensive motion papers submitted in support of the Settlement, and will be asked to make a determination as to whether the Settlement is fair, reasonable and adequate under all of the circumstances surrounding the Action. At this juncture, Lead Plaintiffs request only that the Court grant preliminary approval of the Settlement so that notice of the Settlement may be disseminated to the Class and the Settlement Hearing may be scheduled. To this end, Lead Plaintiffs respectfully request that this Court enter the proposed Order Preliminarily Approving Proposed Settlement and Providing for Notice ("Preliminary Approval Order"), in substantially the form attached hereto as Exhibit A, which has been agreed upon by the Parties. The Preliminary Approval Order will, among other things: (i) preliminarily approve the Settlement on the terms set forth in the Stipulation; (ii) approve the form and manner of giving notice to the Class; and (iii) set a date for the Settlement Hearing, at which point the Court will consider final approval of the Settlement, approval of the Plan of Allocation for distribution of the Net Settlement Fund, Lead Counsel's and Lead Plaintiffs' application for reimbursement of expenses.

## II.   DESCRIPTION OF THE LITIGATION

Throughout the Class Period, Longtop held itself out as a "leading provider of software and information technology, or IT, services targeting the financial services industry in China." Beginning in late April 2011, certain investment analysts issued reports questioning the validity of Longtop's financial statements. On May 23, 2011, Longtop announced that the Company's auditor, Deloitte Touche Tomatsu CPA Ltd. ("DTT"), had resigned. In explaining the reasons for its resignations, DTT stated that it had identified a number of very serious defects, including:

(i) significant differences in deposit balances reported by bank staff compared to the amounts indicated in previously received confirmation; (ii) significant bank borrowings reported by bank staff not identified in previously received confirmations and not recorded on Longtop's books; and (iii) falsified bank confirmation replies.  On July 22, 2011, the New York Stock Exchange ("NYSE") began delisting proceedings against Longtop.  The NYSE subsequently delisted Longtop on August 29, 2011, after finding its shares no longer suitable for trading.  On November 10, 2011, the SEC charged Longtop with failing to comply with its reporting requirements because the Company did not file an annual report for the fiscal year ended March 31, 2011 and because DTT stated in May 2011 that its prior audit reports on Longtop's financial statements should no longer be relied upon.

On May 27, 2011, the actions captioned *Faris v. Longtop Financial Technologies Limited, et al.,* Civil Action No. 11-cv-03658-SAS ("*Faris*") and *Kair v. Longtop Financial Technologies Limited, et al.,* Civil Action No. 11-cv-03661-DAB ("*Kair*") were filed in this District.  By Order dated September 21, 2011 (the "Consolidation Order") (ECF No. 40), the Court consolidated the *Faris* and *Kair* actions under the caption *In re Longtop Financial Technologies Limited Securities Litigation*, No. 11-cv-3658-SAS (the "Action").  In the Consolidation Order, the Court also appointed Danske and Local One as Lead Plaintiffs, appointed the law firm of Kessler Topaz Meltzer and Check, LLP ("Kessler Topaz") as Lead Counsel and appointed the law firm of Grant & Eisenhofer P.A. ("G&E") as Liaison Counsel for the Class.

On November 18, 2011, Lead Plaintiffs filed a Consolidated Class Action Complaint (the "Consolidated Complaint") asserting claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") against Longtop, Lin, Palaschuk, Thomas Gurnee

("Gurnee"), Hui Kung Ka a/k/a Xiaogong Ka ("Ka"), Deloitte Touche Tohmatsu Limited ("Deloitte") and DTT.   Lead Plaintiffs' Exchange Act claims were based on alleged misstatements made in Longtop's financial statements and during Longtop conference calls regarding the financial condition of the Company.

Defendant Palaschuk moved to dismiss the Consolidated Complaint on April 23, 2012. Palaschuk's motion was fully briefed and, on June 28, 2012, the Court issued an Order and Opinion denying Palaschuk's motion to dismiss.  On December 14, 2012, Lead Plaintiffs filed an Amended Consolidated Class Action Complaint against DTT, Longtop, Palaschuk and Lin, asserting claims under Sections 10(b) and 20(a) of the Exchange Act (the "Amended Complaint").  Palaschuk filed his Answer to the Amended Complaint on January 22, 2013.

On July 10, 2013 the Court granted Lead Plaintiffs' Motion for Class Certification, certifying the Class, appointing Danske and Local One as class representatives and appointing Kessler Topaz as class counsel and G&E as local counsel for the class.  After reviewing more than 3 million pages of documents produced by Defendant Palaschuk, including a large number of Chinese language documents, Lead Plaintiffs deposed Palaschuk on August 2, 2013. Defendant Palaschuk moved for summary judgment as to all of Lead Plaintiffs' claims on November 18, 2013.  Following full briefing, the Court denied Palaschuk's motion for summary judgment on June 16, 2014.  In parallel with Palaschuk's motion for summary judgment, Lead Plaintiffs moved to exclude the reports and testimony of Palaschuk's experts, Alan D. Bell and Roger D. Siefert on November 20, 2013 and February 26, 2014, respectively.  On July 2, 2014, the Court granted in part and denied in part Lead Plaintiffs' motions to exclude.

In accordance with the Court's July 29, 2014 Order Approving Notice and Summary Notice of Pendency of Class Action, the Notice of Pendency of Class Action (the "Class

Notice") was mailed to potential Class members to inform them that the Action had been certified by the Court to proceed as a class action on behalf of the Class, and of the right of Class members to request exclusion from the Class and the procedures for doing so.  The Class Notice further informed Class members that Lead Plaintiffs would pursue at trial only claims on behalf of the Trial Class based on Palaschuk's alleged misrepresentations during the Trial Class Period and that only shareholders who purchased during the Trial Class Period would be entitled to share in any recovery Lead Plaintiffs achieved against Palaschuk at trial.

Lead Plaintiffs filed seven motions *in limine* on August 29, 2014 which were fully briefed by the parties.  On October 29, 2014, Lead Plaintiffs reopened Defendant Palaschuk's deposition for the limited purpose of inquiring as to his asserted good faith defense with respect to Lead Plaintiffs' claims under Section 20(a) of the Exchange Act.

The trial in this Action began on November 18, 2014.  On November 21, 2014, the jury returned a verdict on liability, finding Palaschuk liable to Lead Plaintiffs and the Trial Class for each of the eight challenged misstatements or omissions of material fact (the "Liability Verdict").  Then, on November 24, 2014, the jury returned its damages verdict, ascribing a certain amount of artificial inflation to each day of the Trial Class Period and apportioning the total damages during this period as follows:  50% to Lian, 49% to Longtop and 1% to Palaschuk (the "Damages Verdict" and together with the Liability Verdict, the "Jury Verdict").  During the course of the trial, Palaschuk made an oral motion for judgment as a matter of law, which he renewed at the close of trial.  Palaschuk subsequently withdrew this motion on December 9, 2014.  By March 6, 2015, the parties had fully briefed Lead Plaintiffs' motion to approve the

proposed class notice and claims administration and the allocation of costs thereof, and Lead Plaintiffs' motion for an award of prejudgment interest.[4]

On April 28, 2015, the parties reached an agreement in principle to settle the claims against Palaschuk and informed the Court of their agreement.  On April 29, 2015 Lead Plaintiffs withdrew their pending post-trial motions.

Based on Lead Plaintiffs' direct oversight of the prosecution of this Action and with the advice of Lead Counsel, both of the Lead Plaintiffs have agreed to settle the Class Period claims asserted against Defendant Palaschuk in the Action pursuant to the terms and provisions of the Stipulation, after considering:  (i) the certain financial benefit that Lead Plaintiffs and other members of the Class will receive under the Proposed Settlement; (ii) the delay and uncertainty of the claims administration process; (iii) the risk of post-judgment appeal; and (iv) the desirability of permitting the Settlement to be consummated as provided by the terms of this Stipulation.

## III.   THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL

The settlement of complex class action litigation is favored by public policy and strongly encouraged by the courts.  *See Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005) ("We are mindful of the strong judicial policy in favor of settlements, particularly in the class action context.  The compromise of complex litigation is encouraged by the courts and favored by public policy.") (internal quotation marks and citation omitted); *In re PaineWebber*

---

[4] While moving forward with their claims against Palaschuk, Lead Plaintiffs simultaneously obtained certificates of default as to Longtop and Lin, on July 12, 2012 and October 9, 2013, respectively.  On November 14, 2013, upon Lead Plaintiffs' motion, the Court entered default judgment against Lin and Longtop in the amount of $882.3 million plus 9% interest on such amount from February 21, 2008 to the date of payment.  As stated in the Class Notice, "Lead Plaintiffs have undertaken efforts to collect this judgment, which remain ongoing.  However, given the complexities of the various international laws implicated, Longtop's corporate structure, and its potential lack of financial resources, the likelihood of Lead Plaintiffs being able to collect any or all of this judgment is highly uncertain."

*Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998) (There is a "strong judicial policy in favor of settlements, particularly in the class action context.").

Once a proposed settlement is reached, "a court must determine whether the terms of the proposed settlement warrant preliminary approval.   In other words, the Court must make a 'preliminary evaluation' as to whether the settlement is fair, reasonable and adequate." *In re Currency Conversion Fee Antitrust Litig.*, No. 01 MDL 1409, 2006 WL 3247396, at *5 (S.D.N.Y. Nov. 8, 2006) (internal quotation omitted); *see also In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997) ("Preliminary approval of a proposed settlement is the first in a two-step process required before a class action may be settled.").

Preliminary approval of a proposed settlement is warranted "[w]here the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the reasonable range of approval." *See id.*, at 102 (citing MANUAL FOR COMPLEX LITIGATION (THIRD), at §30.41 (1995).   "Once preliminary approval is bestowed, the second step of the process ensues: notice is given to the class members of a hearing, at which time class members and the settling parties may be heard with respect to final court approval." *Id.*; *see also In re Med. X-ray Film Antitrust Litig.*, No. CV-93-5904, 1997 WL 33320580, at *6 (E.D.N.Y. Dec. 26, 1997) ("preliminary approval should be granted and notice of the proposed settlement given to the class if there are no obvious deficiencies in the proposed settlements").

At the preliminary approval stage, the Court is not required to make a final determination as to the merits of the proposed settlement. *See Yuzary v. HSBC Bank USA, N.A.*, No. 12 CIV. 3693(PGG), 2013 WL 1832181, at *1 (S.D.N.Y. Apr. 29, 2013) ("To grant preliminary approval,

the court need only find that there is 'probable cause to submit the [settlement] proposal to class members and hold a full-scale hearing as to its fairness.'") (citation omitted).  A full evaluation of the proposed settlement is made at the final approval stage, after notice of a settlement has been given to class members affording them the opportunity to determine whether to voice their views of the settlement or to exclude themselves from the class.[5]

Finally, the opinion of experienced counsel supporting the settlement is entitled to considerable weight in a court's evaluation of a proposed settlement.  *See Yuzary*, 2013 WL 1832181, at *2-3 (in exercising its discretion, "courts should give weight to the parties' consensual decision to settle class action cases because they and their counsel are in unique positions to assess potential risks"); *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 175 (5th Cir. 1983) ("[T]he value of the assessment of able counsel negotiating at arm's length cannot be gainsaid.  Lawyers know their strengths and they know where the bones are buried.").  Moreover, an initial presumption of fairness attaches to a proposed settlement if it is "reached by experienced counsel after arm's length negotiations."  *In re Sadia S.A. Sec. Litig.*, No. 08 CIV. 9528 SAS, 2011 WL 6825235, at *1 (S.D.N.Y. Dec. 28, 2011); *see also Wal-Mart Stores, Inc.*, 396 F.3d at 116 (quoting MANUAL FOR COMPLEX LITIGATION (THIRD), at § 30.42 (where settlement is "reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery," a "presumption of fairness, adequacy, and reasonableness may attach")).

---

[5] The Second Circuit has set forth nine factors for courts to consider when determining whether a class action settlement is fair, reasonable and adequate.  *Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974).  The Court should consider these factors in its final approval of the Settlement, not on the motion for preliminary approval of the Settlement.  *In re Prudential Sec. Inc. P'ships Litig.*, 163 F.R.D. 200, 210 (S.D.N.Y. 1995); *see also Authors Guild v. Google, Inc.*, No. 05 Civ. 8136(DC), 2009 WL 4434586, at *1 (S.D.N.Y. Dec. 1, 2009) ("In evaluating a proposed class action settlement agreement for preliminary approval . . . a full fairness analysis is neither feasible nor appropriate.").

Here, the Settlement was reached only after arms'-length negotiations by experienced, competent counsel who, in light of the advanced stage of the litigation, had ample information regarding the circumstances of the Action and the strengths and weaknesses of their respective positions.

### A.      The Proposed Settlement is Fair, Reasonable and Adequate

#### 1.      The Settlement is the Result of Arms'-Length Negotiations

The proposed Settlement of $2.3 million is the product of extensive, arms'-length negotiations between Lead Plaintiffs and Palaschuk.  The parties began discussing the possibility of settlement well in advance of the trial in this Action.  These discussions continued and intensified following the Jury Verdict.  Specifically, pursuant to Court order, the parties appeared before Magistrate Judge Ronald L. Ellis on September 16, 2013 for a settlement conference. Prior to the settlement conference, Lead Plaintiffs sent Palaschuk and his Directors and Officers Liability insurance carrier a demand letter.  While the settlement conference with Judge Ellis was not successful, it allowed the parties to better understand their respective positions.

The parties resumed their settlement negotiations following the Jury Verdict.  Between February 25, 2015 and April 22, 2015 the parties participated in verbal and written settlement negotiations.  On April 22, 2015, the parties reached an agreement in principle to settle the claims asserted against Palaschuk in the Action for $2.3 million.

Due to the parties' informed, arms'-length settlement negotiations, the Settlement is entitled to a presumption of fairness, reasonableness and adequacy.  *Yuzary*, 2013 WL 1832181, at *2 (preliminary approval warranted where settlement "is the result of extensive, arms' length negotiations by counsel well-versed in the prosecution of [this type of action].").

2.      **The Settlement was Reached by Capable Counsel after Meaningful
        Discovery and at an Advanced Stage in the Litigation**

As mentioned above, "a presumption of fairness, adequacy, and reasonableness may attach as long as there were arm's length negotiations between experienced counsel after meaningful discovery." *Mba v. World Airways, Inc.*, 369 F. App'x 194, 197 (2d Cir. 2010).   As an initial matter, Lead Counsel is capable and experienced in litigating complex securities fraud class actions such as the instant Action.   As the Court recognized in the Class Certification Order, "[Lead] Counsel are highly qualified and capable of prosecuting this Action."   ECF No. 157 at 6.

Moreover, the parties began their settlement discussions only after completing significant document discovery.   Lead Plaintiffs received and analyzed more than 3 million pages of documents, including a large number of Chinese language documents.   Lead Plaintiffs also deposed Palaschuk on August 2, 2013 and again on October 29, 2014.   This discovery helped to inform Lead Plaintiffs' position during and after the September 16, 2013 settlement conference with Magistrate Judge Ellis.   In addition, Lead Plaintiffs used the documentary and testimonial evidence obtained during discovery to evaluate the strengths and weaknesses of their claims against Palaschuk, successfully oppose Palaschuk's motion for summary judgment and, ultimately, to prevail at trial.

In addition to conducting extensive fact discovery, Lead Plaintiffs also retained a financial expert, Dr. Gang Hu, to opine on issues relating to reliance, materiality, loss causation and damages.   *See* Expert Report on Damages, Gang Hu, Ph.D., CFA (ECF Nos. 163-11 – 163-16).[6]   Dr. Hu conducted a series of financial analyses to determine the damages suffered by the

---

[6] On October 9, 2014, the Court permitted Lead Plaintiffs to substitute Dr. Steven Feinstein for Dr. Hu.   *See* ECF No. 229.   This substitution was necessitated when Dr. Hu fell seriously ill, rendering him unable to testify at a deposition or trial.   *Id.*

Class. *Id.* At trial, Dr. Feinstein adopted Dr. Hu's report and testified as to the damages suffered by the Trial Class as a result of Palaschuk's conduct. This testimony, in large part, formed the basis for the inflation amounts determined by the jury in its Damages Verdict.

As a result of the extensive fact discovery and expert analyses, and in light of the advanced stage of the proceedings, Lead Plaintiffs had a clear and detailed view of the factual strengths and weaknesses of their claims against Defendant Palaschuk. *In re Initial Pub. Offering*, 226 F.R.D. 186, 194 (S.D.N.Y. 2005) (preliminarily approving settlement where "[t]he settling parties are represented by experienced and talented counsel that share expertise in this field and an extensive knowledge of the details of this case"); *see also In re Apollo Grp. Inc. Sec. Litig.*, No. CV 04-2147-PHX-JAT, 2012 WL 1378677, at *2 (D. Ariz. Apr. 20, 2012) ("There is no question that the Parties have a full understanding of the legal and factual issues surrounding this case" because, *inter alia*, "[t]he Parties have proceeded through a full jury trial . . . ."). This fact and expert discovery, in addition to the events at trial, has also provided Lead Plaintiffs with insight into any potential weaknesses on appeal, should Palaschuk opt to appeal the final judgment.

### 3. The Proposed Settlement is in the Best Interests of the Class

The proposed Settlement will provide a concrete and immediate benefit to the Class. At trial, the jury determined that Palaschuk was liable for 1% of the total damages amount, which was based on the artificial inflation that it ascribed to each trading day within the Trial Class Period. Lead Plaintiffs believe that the maximum recovery available for the Trial Class pursuant to the Damages Verdict is approximately $6.2 million. However, this estimated recovery assumes *all* Trial Class members will submit valid claims, which is extremely unlikely, given the passage of time, typical failure to retain supporting documentation and the fact that the jury only apportioned one percent of the total damages award to Defendant Palaschuk. Moreover,

Palaschuk has indicated that he intends to challenge the validity of claims submitted on the basis of reliance.   The claims administration process and the resolution of any challenges leveled against the claims of individual claimants could take several months.   In addition, it is possible that Palaschuk would appeal certain issues following the entry of final judgment.   In light of these risks and uncertainties, and the potential for protracted litigation, the concrete and immediate recovery provided by the Settlement is in the best interests of the Class.   *See In re AOL Time Warner, Inc.*, No. MDL 1500, 02 Civ. 5575(SWK), 2006 WL 903236, at *13 (S.D.N.Y. Apr. 6, 2006) (immediate, substantial and concrete benefit of settlement outweighs possibility of higher recovery after trial); *see also In re Apollo Grp. Inc.*, 2012 WL 1378677, at *2 ("[t]he settlement allows the Parties to avoid further delays in a lawsuit that has been pending since 2004.").   As stated in the Class Notice, "Lead Plaintiffs . . . pursue[d] [at trial] claims based on Defendants Palaschuk's alleged misrepresentations during the period February 10, 2010 through May 17, 2011."   Therefore, members of the Class whose claims fall outside of the Trial Class Period have been on notice since the July 29, 2014 Order Approving Notice and Summary Notice of Pendency of Class Action that their claims would not be pursued and, accordingly, these Class members will not be eligible to receive a distribution from the Settlement.

In sum, nothing in the course of the parties' negotiations or the terms of the Settlement discloses any grounds to doubt the fairness of the Settlement.   On the contrary, the sizeable recovery for the Class, the extensive investigation and discovery conducted, the parties' litigation efforts over the course of more than three years and the arms'-length nature of the negotiations amply support a finding that the proposed Settlement is well "within the range of possible approval" so as to justify notice to the Class and scheduling of a hearing for final approval.

13

### B.   The Plan of Allocation is Fair and Reasonable

"When formulated by competent and experienced counsel, a plan for allocation of net settlement proceeds need have only a reasonable, rational basis." *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 192 (S.D.N.Y. 2012) (internal citations and quotation marks omitted); *Silberblatt v. Morgan Stanley*, 524 F. Supp. 2d 425, 430 (S.D.N.Y. 2007) ("Exactitude is not required in allocating consideration to the class, provided that the overall result is fair, reasonable and adequate."). The court's "principal obligation is simply to ensure that the fund distribution is fair and reasonable." *In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 429-30 (S.D.N.Y. 2001) (quoting *Walsh v. Great Atl. & Pac. Tea Co.*, 726 F.2d 956, 964 (3d Cir. 1983)).

Here, the proposed Plan of Allocation was created by Dr. Feinstein, who has significant experience in drafting plans of allocation, and was carefully reviewed and approved by Lead Counsel.  Dr. Feinstein's Plan of Allocation provides a reasonable, rational basis for Class members who submit Proofs of Claim that are approved for payment to recover their *pro rata* damages based upon the dates of their Longtop ADS transactions.  Thus, the proposed Plan of Allocation is fair and reasonable, and should be approved. *See Danieli v. IBM Corp.*, No. 08 CV 3688 (SHS), 2009 WL 6583144, at *5 (S.D.N.Y. Nov. 16, 2009) (approving plan of allocation where it "is rationally related to the relative strengths and weaknesses of the respective claims asserted" and falls within the range of possible approval).

### IV.   THE PROPOSED FORM AND METHOD OF CLASS NOTICE ARE APPROPRIATE AND ADEQUATE

Once a court preliminarily approves the settlement as fair, adequate and reasonable, then "it must direct the preparation of notice of . . . the proposed settlement and the date of the final fairness hearing." *Initial Pub. Offering*, 226 F.R.D. at 191.  Rule 23 of the Federal Rules of Civil Procedure requires that notice of a settlement be "the best notice that is practicable under the

circumstances, including individual notice to all members who can be identified through reasonable effort." FED. R. CIV. P. 23(c)(2)(B). *See also* Alba Conte & Herbert Newberg, NEWBERG ON CLASS ACTIONS § 8.2, at 162-65 (4th ed. 2002). There are no "rigid rules" to apply when determining the adequacy of notice for a class action settlement; and "the standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness." *Wal-Mart*, 396 F.3d at 113-14. Moreover, the content of a notice is generally found to be reasonable if "the average class member understands the terms of the proposed settlement and the options provided to class members thereunder." *In re Stock Exch. Options Trading Antitrust Litig.*, No. 99 CIV. 0962(RCC), 2006 WL 3498590, at *6 (S.D.N.Y. Dec. 4, 2006).

The proposed Notice (attached as Exhibit A(1) to the Settlement Agreement) advises Class Members of, *inter alia*: (i) the pendency of the class action; (ii) the essential terms of the Settlement; (iii) the proposed Plan of Allocation; and (iv) information regarding Lead Counsel's forthcoming motion for reimbursement of Lead Counsel's and Lead Plaintiffs' expenses.[7] The Notice also provides specific information regarding the date, time and place of the Settlement Hearing, and sets forth the procedures and deadlines for: (i) submitting a Proof of Claim; (ii) requesting exclusion from the Class (should the Court permit so permit); (iii) objecting to any aspect of the Settlement, including the proposed Plan of Allocation; and (iv) objecting to Lead Counsel's request for reimbursement of expenses.

The content of the proposed Notice also meets the requirements of the PSLRA. In addition to the foregoing, the Notice includes: (i) a statement of the amount to be distributed,

---

[7] Lead Counsel intend to seek reimbursement of expenses not to exceed $500,000, plus interest earned on this amount at the same rate earned on the Settlement Fund. Lead Plaintiffs also intend to seek reimbursement of expenses incurred in prosecuting the Action, not to exceed $20,000 in total.

15

determined in the aggregate and on an average per share basis; (ii) a statement of the potential outcome of the case (i.e., whether there was agreement or disagreement on the amount of damages); and (iii) a brief statement that explains the reasons why the parties are proposing the Settlement. *See* 15 U.S.C. § 78u-4(a)(7).

As outlined in the Preliminary Approval Order, the Claims Administrator, under the direction of Lead Counsel, will notify Class members of the proposed Settlement by mailing a Notice and Proof of Claim (together, the "Notice Packet"), substantially in the forms of Exhibits A(1) and A(2) to the Settlement Agreement, to the members of the Class and nominee purchasers ("Nominees") that were identified through the Notice of Pendency of Class Action mailing that took place in August 2014.  Contemporaneously with the mailing of the Notice Packet, the Claims Administrator will cause a copy of the Notice Packet to be posted on its website, www.longtopclassaction.com, from which Class members may download copies of the Notice Packet.

The Claims Administrator, under the direction of Lead Counsel, will also cause to be published a summary notice (the "Summary Notice"), substantially in the form of Exhibit A(3) to the Settlement Agreement, in the *Investor's Business Daily* and *The Wall Street Journal*, and transmitted over *PR Newswire*.  The Summary Notice provides an abbreviated but informative description of the Action and the proposed Settlement, and also explains how to obtain the more detailed Notice.

In sum, the Notice and Summary Notice "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Lomeli v. Sec. & Inv. Co. Bahr.*, No. 13-1581, 2013 WL 6170572, at *41 (2d Cir. Nov. 26, 2013) (summary order) (citation omitted).  Accordingly, Lead

Counsel respectfully submit that the proposed notice program is adequate and should be approved by the Court.

## V.      THE PROPOSED CLAIMS ADMINISTRATOR SHOULD BE APPROVED

Lead Plaintiffs also respectfully request that the Court authorize retention of the Garden City Group, Inc. ("GCG") to provide notice of the Settlement to Class Members and to administrate the Settlement.  As reflected in GCG's résumé (attached as Ex. 1 to the Declaration of Kimberly A. Justice In Support Of Lead Plaintiffs' Unopposed Motion For Preliminary Approval Of Proposed Settlement), GCG is one of the country's premier claims administrators and has extensive experience in every aspect of class action notice and claims administration and has handled numerous complex administrations, including matters involving foreign companies and purchasers of ADSs.  In addition, and of particular relevance here, GCG is one of the few claims administrators that has experience in post-verdict claims administration in a securities class action.  GCG is currently handling the post-verdict administration for *In re Vivendi Universal, S.A. Sec. Litig.*, Civ. No. 02 Civ. 5571 (S.D.N.Y.), before this Court.

## VI.     THE PROPOSED SETTLEMENT SCHEDULE

In connection with preliminary approval of the Settlement, the Court must set a date for the Settlement Hearing, dates for mailing and publication of the Notice and Summary Notice, and deadlines for submitting claims, requesting exclusion from the Class and objecting to the Settlement.  The parties respectfully propose the following schedule for the Court's consideration, as agreed to by the parties and set forth in the proposed Preliminary Approval Order:

| Event | Time for Compliance |
|---|---|
| Mailing Notice and Proof of Claim to Class Members (the "Notice Date") | 20 calendar days from the date of the Preliminary Approval Order (Preliminary Approval Order ¶ __) |
| Publication of the Summary Notice | 10 calendar days from the Notice Date (Preliminary Approval Order ¶ __) |
| Submission of Proofs of Claim | 90 calendar days from the Notice Date (Preliminary Approval Order ¶ __) |
| Submission of Requests for Exclusion (should the Court so permit) or Objections | 21 calendar days prior to Settlement Hearing (Preliminary Approval Order ¶¶ __) |
| Filing of opening papers in support of the Settlement, Plan of Allocation, and Lead Counsel's application for reimbursement of expenses | 40 calendar days prior to the Settlement Hearing (Preliminary Approval Order ¶ __) |
| Filing of reply papers | 7 calendar days prior to the Settlement Hearing (Preliminary Approval Order ¶ __) |
| Settlement Hearing | 110 days after the date of the Preliminary Approval Order, or at the Court's earliest convenience thereafter (Preliminary Approval Order ¶ __) |

This schedule is similar to those approved by courts in class action settlements and provides due process to Class Members with respect to their rights concerning the Settlement. *See, e.g.*, *In re Citigroup Inc. Bond Litig.*, Master File No. 08 Civ. 9522 (SHS) (S.D.N.Y. Mar. 25, 2013) (ECF No. 155); *In re Sadia S.A. Sec. Litig.*, Case No.1:08 Civ. 9528 (SAS) (S.D.N.Y. Sept. 23, 2011) (ECF. No. 113); *In re L.G. Philips LCD Co., Ltd. Sec. Litig.*, Civil Action No. 1:07-cv-00909-RJS (S.D.N.Y. Dec. 20, 2010) (ECF No. 66).

## VII.   CONCLUSION

For the foregoing reasons, Lead Plaintiffs respectfully request that the Court grant preliminary approval of the proposed Settlement and enter the accompanying Preliminary Approval Order.

Respectfully submitted,

Dated:  June 19, 2015                KESSLER TOPAZ MELTZER & CHECK, LLP

                                     /s/Kimberly A. Justice
                                     GREGORY M. CASTALDO
                                     KIMBERLY A. JUSTICE
                                     MICHELLE M. NEWCOMER
                                     MARGARET E. ONASCH
                                     280 King of Prussia Road
                                     Radnor, PA 19087
                                     (610) 667-7706
                                     (610) 667-7056 (Fax)

                                     *Lead Counsel on Behalf of Lead Plaintiffs and the Class*

                                     GRANT & EISENHOFER, P.A.
                                     DANIEL L. BERGER
                                     485 Lexington Avenue
                                     29th Floor
                                     New York, NY 10017
                                     (646) 722-8500
                                     (646) 722-8501 (Fax)

                                     *Local Counsel on Behalf of Lead Plaintiffs and the Class*