# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

IN RE LONGTOP FINANCIAL
TECHNOLOGIES LIMITED SECURITIES
LITIGATION

Civil Action No. 11-cv-3658-SAS

# MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND <u>APPROVAL OF PLAN OF ALLOCATION</u>

# TABLE OF CONTENTS

**Page**

I.      PRELIMINARY STATEMENT ..................................................................................1

II.     FACTUAL BACKGROUND AND HISTORY OF THE ACTION ....................................4

III.    THE PROPOSED SETTLEMENT WARRANTS FINAL APPROVAL............................8

    A.      The Settlement Negotiations Demonstrate Procedural Fairness ..............................9

    B.      Application of the *Grinnell* Factors Supports Approval  of the Proposed
            Settlement As Fair, Reasonable and Adequate .......................................................11

        1.      The Complexity, Expense and Likely Duration of the Litigation
                Support Approval of the Settlement...........................................................12

        2.      The Stage of the Proceedings and Amount of Discovery Support
                Approval of the Settlement........................................................................14

        3.      The Risks of Appeal and Challenges to     Class Members' Claims...........15

            a.      Risk of an Appeal .........................................................................16

            b.      Risks to the Post-Verdict Claims Administration Process..................16

        4.      Defendant's Inability to Withstand a Substantially Greater
                Judgment ..................................................................................................17

        5.      The Range of Reasonableness of the Settlement Amount  in Light
                of the Best Possible Recovery and All the Attendant Risks of
                Continued Litigation Support Approval of the Settlement .......................18

        6.      The Reaction of the Class to Date Supports    Approval of the
                Proposed Settlement ..................................................................................20

IV.     THE PROPOSED PLAN OF ALLOCATION IS FAIR AND REASONABLE
        AND SHOULD BE APPROVED .......................................................................20

V.      NOTICE TO THE CLASS SATISFIED THE REQUIREMENTS    OF THE
        PSLRA, RULE 23 AND DUE PROCESS .......................................................23

VI.     CONCLUSION ....................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Advanced Battery Tech.*, *Inc. Sec. Litig.*,
   298 F.R.D. 171 (S.D.N.Y. 2014) ................................................................... 14

*Am. Bank Note Holographics*, 127 F. Supp. 2d 418, 429-430 (S.D.N.Y. 2001) ........................... 21

*In re AOL Time Warner*, *Inc. Sec. & "ERISA" Litig.*,
   Nos. MDL 1500, 02 Civ. 5575 (SWK), 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ....... 10, 15

*In re Apollo Grp. Inc. Sec. Litig.*,
   Nos. CV 04-2147-PHX-JAT, CV 02-2204-PHX-JAT, CV 04-2334-PHX-JAT, 2012 WL
   1378677 (D. Ariz. Apr. 20, 2012) ................................................................. 15, 16, 17

*In re AT&T Corp. Sec. Litig.*,
   455 F.3d 160 (3d Cir. 2006) ........................................................................ 19

*In re Bear Stearns Cos.*,
   909 F. Supp. 2d 259 (S.D.N.Y. 2012) ............................................................ 15

*Charron v. Wiener*,
   731 F.3d 241 (2d Cir. 2013) *cert denied, Suarez v. Charron*, 134 S. Ct. 1941 (2014) ........... 11

*In re Citigroup Inc. Bond Litig.*,
   296 F.R.D. 147 (S.D.N.Y. Aug. 20, 2013) ....................................................... 25

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974) ..................................................................*passim*

*City of Providence v. Aeropostale, Inc.*,
   No. 11 Civ. 7132 (CM)(GWG), 2014 WL 1883494 (S.D.N.Y. May 9, 2014) ................ 11, 12

*D'Amato v. Deutsche Bank*,
   236 F.3d 78 (2d Cir. 2001) ......................................................................... 10

*In re Flag Telecom Holdings*, *Ltd. Sec. Litig.*,
   No. 02-CV-3400 (CM)(PED), 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) .................. 12, 25

*In re Giant Interactive Grp.*, *Inc. Sec. Litig.*,
   279 F.R.D. 151 (S.D.N.Y. 2011) ................................................................... 8

*Glickenhaus & Co. v. Household Int'l, Inc.*,
   787 F.3d 408 (7th Cir. 2015), *reh'g denied* (July 1, 2015) ..................................... 13

*In re Global Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004)............................................................................*passim*

*In re IMAX Sec. Litig.*,
  283 F.R.D. 178 (S.D.N.Y. 2012)..................................................................8, 9, 10, 20

*In re Initial Pub. Offerings Sec. Litig.*,
  671 F. Supp. 2d 467 (S.D.N.Y. 2009) ......................................................................21

*Maley v. Del Global Techs. Corp.*,
  186 F. Supp. 2d 358 (S.D.N.Y. 2002) ......................................................................21

*In re Marsh ERISA Litig.*,
  265 F.R.D. 128 (S.D.N.Y. 2010) ..............................................................................21

*Massiah v. Metroplus Health Plan, Inc.*,
  No. 11-cv-05669 (BMC), 2012 WL 5874655 (E.D.N.Y. Nov. 20, 2012) ......................18, 19

*In re Merrill Lynch Tyco Research Sec. Litig.*,
  249 F.R.D. 124 (S.D.N.Y. 2008)..............................................................................23

*In re Paine Webber Ltd. P'ships Litig.*,
  171 F.R.D. 104 (S.D.N.Y. 1997), *aff'd,* 117 F.3d 721 (2d Cir. 1997) ..............................9, 21

*In re Sadia S.A. Sec. Litig.*,
  No. 08 Civ. 9528 (SAS), 2011 WL 6825235 (S.D.N.Y. Dec. 28, 2011) ................................9

*Shapiro v. JPMorgan Chase & Co.*,
  Nos. 11 Civ. 8331 (CM)(MHD), 11 Civ. 7961 (CM), 2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014)........................................................................................................................18

*Silberblatt v. Morgan Stanley*,
  524 F. Supp. 2d 425 (S.D.N.Y. 2007) ......................................................................20

*In re Sony Corp. SXRD*,
  448 Fed. App'x. 85 (2d Cir. 2011) ..............................................................................9

*In re Sony SXRD Rear Projection Television Class Action Litig.*,
  No. 06 Civ. 5173 (RPP), 2008 WL 1956267 (S.D.N.Y. May 1, 2008) ..........................13, 17

*Vargas v. Capital One Fin. Advisors*,
  559 Fed. App'x 22 (2d Cir. 2014) ..............................................................................23

*In re Veeco Instruments Inc. Sec. Litig.*,
  No. 05 MDL 01695 (CM), 2007 WL 4115809, at *5 (S.D.N.Y. Nov. 7, 2007)................9, 10

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
  396 F.3d 96 (2d Cir. 2005) ............................................................................*passim*

*In re Warner Chilcott Ltd. Sec. Litig.*,
   No. 06 Civ. 11515 (WHP), 2008 WL 5110904 (S.D.N.Y. Nov. 20, 2008) ............................ 25

**Statutes**

§ 10(b) of the Securities Exchange Act of 1934 ................................................................ 5, 7

15 U.S.C. § 77z-1(a)(7) .......................................................................................................... 23

15 U.S.C. § 78u-4(a)(7) .......................................................................................................... 23

17 C.F.R. § 229.404 .................................................................................................................. 1

§ 20(a) of the Securities Exchange Act of 1934 ................................................................ 5, 7

**Rules**

Fed. R. Civ. P. 23(c)(2)(B) ............................................................................................... 23, 25

Fed. R. Civ. P. 23(e) ...................................................................................................... 1, 8, 23

Fed. R. Civ. P. 23(e)(2) ............................................................................................................ 8

**Other Authorities**

Laarni T. Bulan, Ellen M. Ryan & Laura E. Simmons, *Securities Class Action
Settlements: 2014 Review and Analysis* ........................................................................ 19

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Court-appointed Lead Plaintiffs Danske Invest Management A/S ("Danske") and Pension Fund of Local No. One, I.A.T.S.E. ("Local One" and together with Danske, "Lead Plaintiffs"), respectfully submit this memorandum of law in support of their Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation.[1]

## I.    PRELIMINARY STATEMENT

Pursuant to the terms of the Stipulation, Lead Plaintiffs, through their counsel, have obtained $2,300,000.00 in cash (the "Settlement Amount") for the benefit of the Class[2] (the "Settlement"), in exchange for the dismissal of all claims brought in the above-captioned action (the "Action") and a full release of claims against Defendant Derek Palaschuk ("Palaschuk"). Subject to Court approval, the Settlement represents a substantial result for the Class and avoids the risk that:   (i) a smaller recovery would be achieved following the post-verdict claims administration process and any subsequent challenges by Palaschuk to the validity of submitted claims; or (ii) the Class's claims would be extinguished on appeal.

---

[1]   Unless otherwise indicated herein, capitalized terms shall have those meanings contained in the Stipulation and Agreement of Settlement dated June 18, 2015 (the "Stipulation") (ECF No. 289).  Unless otherwise noted, all emphasis is added and internal citations and footnotes are omitted.

[2]   The "Class" means the class certified by the Court pursuant to the Memorandum Opinion and Order entered July 10, 2013 (ECF No. 157), consisting of all persons and entities who purchased or otherwise acquired the American Depositary Shares ("ADSs") issued by Longtop Financial Technologies Limited ("Longtop" or the "Company") during the period from February 21, 2008 through May 17, 2011, inclusive (the "Class Period"), and were damaged thereby.  Excluded from the Class are Defendants (i.e., Longtop, Wai Chau Lian, a/k/a Lian Weizhou ("Lian"), Palaschuk, Thomas Gurnee ("Gurnee"), Hui Kung Ka, a/k/a Xiaogong Ka ("Ka"), Deloitte Touche Tohmatsu Limited ("Deloitte") and Deloitte Touche Tohmatsu CPA Ltd. ("DTT")), present or former executive officers of Longtop, present or former members of Longtop's Board of Directors, and their immediate family members (as defined in 17 C.F.R. § 229.404, Instructions).  Also excluded from the Class are any Persons who previously submitted a request for exclusion as set forth in Appendix 1 to the Stipulation.

As detailed in the accompanying Declaration of Gregory M. Castaldo (the "Castaldo Declaration" or "Castaldo Decl."), the Settlement was reached after nearly four years of intense litigation, including a jury verdict against Palaschuk and in favor of Lead Plaintiffs and the Trial Class[3] on both liability and damages.  Moreover, before the Settlement was reached, Lead Plaintiffs, through the efforts of their counsel Kessler Topaz Meltzer & Check, LLP ("Class Counsel") vigorously prosecuted their case through numerous stages of litigation such as, *inter alia*:  (i) conducting an extensive investigation into the claims against Palaschuk; (ii) drafting a detailed amended complaint; (iii) successfully opposing Palaschuk's motion to dismiss; (iv) obtaining certification of the Class; (v) engaging in discovery and reviewing over 3 million pages of documents produced by Palaschuk, including a large number of Chinese language documents; (vi) successfully opposing Palaschuk's motion for summary judgment; (vii) preparing for trial; (viii) obtaining jury verdicts on liability and damages in favor of Lead Plaintiffs and the Trial Class; and (ix) successfully negotiating the Settlement.  Castaldo Decl., ¶¶ 15-41.  It was only after the jury verdicts on liability and damages in favor of Lead Plaintiffs and the Trial Class that the parties reached an agreement in principle to settle the Action for $2,300,000.  *Id.*, ¶¶ 34-39. Indeed, the Settlement is the fruit of well-informed and extensive arms'-length settlement negotiations between experienced and knowledgeable counsel.  *See Wal-Mart Stores*, *Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) ("*Visa*") ("A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.").

---

[3]  The "Trial Class" consists of all persons and entities who purchased or otherwise acquired Longtop ADSs during the period February 10, 2010 through May 17, 2011, inclusive (the "Trial Class Period"), and were damaged thereby.

Lead Plaintiffs, who are both sophisticated institutional investors of the type favored by Congress when it enacted the Private Securities Litigation Reform Act of 1995 ("PSLRA") and who both have closely monitored and participated in this litigation from the outset, recommend that the Settlement be approved. *See* Exs. 2 and 3 to the Castaldo Decl. Further, Class Counsel, a law firm with extensive experience in prosecuting securities class actions, strongly believes that the Settlement is in the best interests of the Class. *See generally* Castaldo Decl.

In accordance with the Court's June 23, 2015 Order Preliminarily Approving Settlement and Directing Notice to the Class (ECF No. 293) (the "Preliminary Approval Order"), the Court-authorized Claims Administrator, Garden City Group, LLC ("GCG"), mailed over 85,000 copies of the Notice and Proof of Claim (together, the "Claim Packet") to potential Class Members and nominees.[4] Castaldo Decl., ¶ 7. As ordered by the Court and as set forth in the Notice, any objections to the Settlement, the Plan of Allocation and/or the requests for reimbursement of litigation expenses and any requests from Class Members who previously sought exclusion from the Class in connection with the notice mailed following certification of the Class (the "Class Notice") to opt-back into the Class are due to be received no later than September 22, 2015. To date, not a single objection to any aspect of the Settlement has been received. Castaldo Decl., ¶ 8. In addition, there have been no requests to opt back into the Class. *Id*.; *see also* GCG Aff., ¶ 14.

Lead Plaintiffs and Class Counsel firmly believe that the Settlement is eminently fair, reasonable, and adequate and provides a substantial recovery for the Class against Defendant Palaschuk. Accordingly, Lead Plaintiffs respectfully request that the Court grant final approval

---

[4] *See* Affidavit of Jose C. Fraga Regarding (A) Mailing of the Notice and Proof of Claim Form; (B) Publication of the Summary Notice; and (C) Requests to Opt-Back Into the Class Received to Date (the "GCG Aff."), at ¶ 10, attached as Exhibit 1 to the Castaldo Declaration.

of this Settlement, and deem the Plan of Allocation a fair and reasonable method for distributing the Net Settlement Fund to eligible Class Members.

## II.   FACTUAL BACKGROUND AND HISTORY OF THE ACTION

Throughout the Class Period, Longtop held itself out as a "leading provider of software and information technology, or IT, services targeting the financial services industry in China." Castaldo Decl., ¶ 11.[5]  Beginning in late April 2011, certain investment analysts issued reports questioning the validity of Longtop's financial statements.  *Id*., ¶ 16.  On May 23, 2011, Longtop announced that the Company's auditor, DTT, had resigned.  *Id*.  In explaining the reasons for its resignation, DTT stated that it had identified a number of very serious defects, including:  (i) significant differences in deposit balances reported by bank staff compared to the amounts identified in previously received confirmations; (ii) significant bank borrowings reported by bank staff not identified in previously received confirmations and not recorded on Longtop's books; and (iii) falsified bank confirmation replies.  *Id*.  On July 22, 2011, the New York Stock Exchange ("NYSE") began delisting proceedings against Longtop.  *Id*.  The NYSE subsequently delisted Longtop on August 29, 2011, after finding its shares no longer suitable for trading.  *Id*. On November 10, 2011, the SEC charged Longtop with failing to comply with its reporting requirements because the Company did not file an annual report for the fiscal year ending March 31, 2011 and because DTT stated in May 2011 that its prior audit reports on Longtop's financial statements should no longer be relied upon.  *Id*.

---

[5]   In addition to the Castaldo Declaration, Lead Plaintiffs are also simultaneously submitting to the Court, on behalf of Class Counsel, the Memorandum of Law in Support of Class Counsel's Motion for Reimbursement of Litigation Expenses (the "Expense Memorandum").  The Castaldo Declaration and Expense Memorandum are incorporated by reference herein.

On May 27, 2011, the actions captioned *Faris v. Longtop Financial Technologies Limited, et al.,* Civil Action No. 11-cv-03658-SAS ("*Faris*") and *Kair v. Longtop Financial Technologies Limited, et al.,* Civil Action No. 11-cv-03661-DAB ("*Kair*") were filed in the Southern District of New York.   By Order dated September 21, 2011 (the "Consolidation Order") (ECF No. 40), the Court consolidated the *Faris* and *Kair* actions under the caption *In re Longtop Financial Technologies Limited Securities Litigation,* No. 11-cv-3658-SAS.   Castaldo Decl., ¶ 18.   In the Consolidation Order, the Court also appointed Danske and Local One as Lead Plaintiffs, appointed the law firm of Kessler Topaz Meltzer and Check, LLP ("Kessler Topaz") as Lead Counsel and appointed the law firm of Grant & Eisenhofer P.A. ("G&E") as Liaison Counsel for the Class.   *Id.*

On November 18, 2011, Lead Plaintiffs filed a Consolidated Class Action Complaint (the "Consolidated Complaint") asserting claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") against Longtop, Lian, Palaschuk, Gurnee, Ka, Deloitte and DTT.   *Id.,* ¶ 19.   Lead Plaintiffs' Exchange Act claims were based on alleged misstatements and omissions made in Longtop's financial statements and during Longtop conference calls regarding the financial condition of the Company.   *Id.*

Defendant Palaschuk moved to dismiss the Consolidated Complaint on April 23, 2012. Palaschuk's motion was fully briefed and, on June 28, 2012, the Court issued an Order and Opinion denying Palaschuk's motion to dismiss.   *Id.,* ¶¶ 20-21.   On December 14, 2012, Lead Plaintiffs filed an Amended Consolidated Class Action Complaint against DTT, Longtop, Palaschuk and Lian, asserting claims under Sections 10(b) and 20(a) of the Exchange Act (the "Amended Complaint").   Palaschuk filed his Answer to the Amended Complaint on January 22, 2013.   *Id.,* ¶ 23.

On July 10, 2013 the Court granted Lead Plaintiffs' Motion for Class Certification, certifying the Class, appointing Danske and Local One as class representatives and appointing Kessler Topaz as class counsel and G&E as local counsel for the class.  Castaldo Decl., ¶¶ 24-25. After reviewing more than 3 million pages of documents produced by Palaschuk, including a large number of Chinese language documents, Lead Plaintiffs deposed Palaschuk on August 2, 2013.  *Id.*, ¶¶ 26-27.  Palaschuk moved for summary judgment as to all of Lead Plaintiffs' claims on November 18, 2013.  *Id.*, ¶¶ 30-31.  Following full briefing, the Court denied Palaschuk's motion for summary judgment on June 16, 2014.  *Id.*, ¶ 32.  In parallel with Palaschuk's motion for summary judgment, Lead Plaintiffs moved to exclude the reports and testimony of Palaschuk's experts, Alan D. Bell and Roger D. Siefert on November 20, 2013 and February 26, 2014, respectively.  *Id.*, ¶ 31.  On July 2, 2014, the Court granted in part and denied in part Lead Plaintiffs' motions to exclude.  *Id.*, ¶ 32.

In accordance with the Court's July 29, 2014 Order Approving Notice and Summary Notice of Pendency of Class Action, the Class Notice was mailed to potential Class Members and nominees to inform them that the Action had been certified by the Court to proceed as a class action on behalf of the Class, and of the right of Class Members to request exclusion from the Class and the procedures for doing so.  *See* Castaldo Decl., ¶ 33.  The Class Notice further informed Class Members of the trial against Palaschuk and that Lead Plaintiffs would pursue at trial only claims on behalf of the Trial Class based on Palaschuk's alleged misrepresentations during the Trial Class Period and that only shareholders who purchased Longtop ADSs during the Trial Class Period would be entitled to share in any recovery Lead Plaintiffs achieved against Palaschuk at trial.  *Id.*

Lead Plaintiffs filed seven motions *in limine* on August 29, 2014 which were fully briefed by the parties.  Castaldo Decl., ¶ 34.  On October 29, 2014, Lead Plaintiffs reopened Defendant Palaschuk's deposition for the limited purpose of inquiring as to his newly-asserted good faith defense with respect to Lead Plaintiffs' claims under Section 20(a) of the Exchange Act.  *Id.*, ¶ 26.

The trial in this Action began on November 18, 2014.  *Id.*, ¶ 35.  On November 21, 2014, the jury returned a verdict on liability, finding Palaschuk liable under Section 10(b) of the Exchange Act to Lead Plaintiffs and the Trial Class for each of the eight challenged misstatements or omissions of material fact (the "Liability Verdict").  *Id.*  Then, on November 24, 2014, the jury returned its damages verdict, ascribing a certain amount of artificial inflation to each day of the Trial Class Period and apportioning the total damages during this period as follows:  50% to Lian, 49% to Longtop and 1% to Palaschuk (the "Damages Verdict" and together with the Liability Verdict, the "Jury Verdict").  *Id.*  During the course of the trial, Palaschuk made an oral motion for judgment as a matter of law, which he renewed at the close of trial.  Palaschuk subsequently withdrew this motion on December 9, 2014.  *Id.*, ¶ 36.  By March 6, 2015, the parties had fully briefed Lead Plaintiffs' motion to approve the proposed post-verdict class notice and claims administration process and the allocation of costs thereof, and Lead Plaintiffs' motion for an award of prejudgment interest.  *Id.*, ¶ 37.[6]

---

[6]   While moving forward with their claims against Palaschuk, Lead Plaintiffs simultaneously obtained certificates of default as to Longtop and Lian, on July 12, 2012 and October 9, 2013, respectively.  Castaldo Decl., ¶ 29.  On November 14, 2013, upon Lead Plaintiffs' motion, the Court entered default judgment against Lian and Longtop in the amount of $882.3 million plus 9% interest on such amount from February 21, 2008 to the date of payment.  *Id.*  As stated in the Class Notice, "Lead Plaintiffs have undertaken efforts to collect this judgment, which remain ongoing.  However, given the complexities of the various international laws implicated, Longtop's corporate structure, and its potential lack of financial resources, the likelihood of Lead Plaintiffs being able to collect any or all of this judgment is highly uncertain."  *Id.*, ¶ 12, fn 6.

On April 28, 2015, the parties reached an agreement in principle to settle the claims against Palaschuk and informed the Court of their agreement.  Castaldo Decl., ¶ 39.  On April 29, 2015, Lead Plaintiffs withdrew their pending post-trial motions.

Based on Lead Plaintiffs' direct oversight of the prosecution of this Action and with the advice of Class Counsel, both of the Lead Plaintiffs have agreed to settle the Class Period claims asserted against Defendant Palaschuk in the Action pursuant to the terms and provisions of the Stipulation, after considering:  (i) the certain financial benefit that Lead Plaintiffs and other members of the Class will receive under the Settlement; (ii) the delay, cost and uncertainty of the post-verdict claims administration process; (iii) the risk of post-judgment appeal; and (iv) the desirability of permitting the Settlement to be consummated as provided by the terms of this Stipulation.

## III.   THE PROPOSED SETTLEMENT WARRANTS FINAL APPROVAL

A class action settlement must be presented to the Court for approval.  Fed. R. Civ. P. 23(e).  The Settlement should be approved if the Court finds it "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).  As a general matter of public policy, "federal courts favor settlement, especially in complex and large-scale disputes, so as to encourage compromise and conserve judicial and private resources."  *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 455 (S.D.N.Y. 2004).  *See also Visa*, 396 F.3d at 116 ("We are mindful of the 'strong judicial policy in favor of settlements, particularly in the class action context.'").

In ruling on final approval of class settlements, courts examine both the negotiating process leading to the settlement (i.e., procedural fairness) as well as the substantive terms of the settlement.  *See id.*, 396 F.3d at 116; *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 188 (S.D.N.Y. 2012); *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 160 (S.D.N.Y. 2011).  The Court may presume that a settlement negotiated at arms'-length by experienced counsel is fair

and reasonable.[7]  Moreover, recognizing that a settlement represents an exercise of judgment by the negotiating parties, the Second Circuit has cautioned that, while a court should not give "rubber stamp approval" to a proposed settlement, it should "stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case."  *City of Detroit v. Grinnell Corp*., 495 F.2d 448, 462 (2d Cir. 1974); *In re Sony Corp. SXRD*, 448 Fed. App'x. 85, 87 (2d Cir. 2011) ("[W]hen evaluating a settlement agreement, the court is not to substitute its judgment for that of the parties, nor is it to turn consideration of the adequacy of the settlement 'into a trial or a rehearsal of the trial.'").

### A.    The Settlement Negotiations Demonstrate Procedural Fairness

The parties here reached the Settlement only after extensive arms'-length negotiations. *See* Castaldo Decl., ¶¶ 38-39.  As previously noted, a strong presumption of fairness attaches to a class action settlement reached through arms'-length negotiations among able and experienced counsel. *See Visa*, 396 F.3d at 116; *In re Paine Webber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997) ("So long as the integrity of the arm's length negotiation process is preserved . . . . a strong initial presumption of fairness attaches to the proposed settlement . . . ."), *aff'd,* 117 F.3d 721 (2d Cir. 1997).

The extensive negotiation process was hard-fought by both sides and occurred at several stages of the litigation.   Castaldo Decl., ¶¶ 38-39.  Specifically, pursuant to Court order, the

---

[7]  *See IMAX*, 283 F.R.D. at 189; *In re Sadia S.A. Sec. Litig.*, No. 08 Civ. 9528 (SAS), 2011 WL 6825235, at *1 (S.D.N.Y. Dec. 28, 2011) (finding initial presumption of fairness attaches to proposed settlement where it is "reached by experienced counsel after arm's length negotiations"); *In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695 (CM), 2007 WL 4115809, at *5 (S.D.N.Y. Nov. 7, 2007) ("A proposed class action settlement enjoys a strong presumption that it is fair, reasonable and adequate if, as is the case here, it was the product of arm's-length negotiations conducted by capable counsel, well-experienced in class action litigation arising under the federal securities laws.").

parties appeared before Magistrate Judge Ronald L. Ellis on September 16, 2013 for a settlement conference.  *Id*., ¶ 38.  Prior to the settlement conference, Lead Plaintiffs sent Palaschuk and his Directors and Officers Liability insurance carrier a settlement demand letter.  *Id*.  While the settlement conference with Magistrate Judge Ellis was not successful, it allowed the parties to better understand their respective positions.  *Id*.

The parties resumed their settlement negotiations following the Jury Verdict.  *Id*., ¶ 39. Between February 25, 2015 and April 22, 2015 the parties participated in verbal and written settlement negotiations.  *Id*.  On April 22, 2015, the parties reached an agreement in principle to settle the claims asserted against Palaschuk in the Action for $2.3 million.  *Id*.  Throughout this process, both Lead Plaintiffs took an active role in monitoring the settlement negotiations, precisely as the PSLRA intended.  Castaldo Decl., ¶ 40; *See also* Exs. 2 and 3 to the Castaldo Declaration.[8]  Moreover, as set forth above, the parties began their settlement discussions only after completing significant document discovery.  *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (presumption of fairness applies whether "the settlement resulted from 'arm's-length negotiations and . . . plaintiffs' counsel have possessed the experience and ability, and have engaged in the discovery, necessary to effective representation of the class's interest'"); *IMAX*, 283 F.R.D. at 189 (S.D.N.Y. 2012) ("[G]reat weight is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation.").  Lead

---

[8]  *See In re Global Crossing Sec. & ERISA Litig*., 225 F.R.D. at 462; *In re AOL Time Warner, Inc. Sec. & "ERISA" Litig*., Nos. MDL 1500, 02 Civ. 5575 (SWK), 2006 WL 903236, at *7 (S.D.N.Y. Apr. 6, 2006) ("Courts in this District have also commented on the procedural safeguards inherent in cases subject to the PSLRA, wherein the lawyers are not 'mere entrepreneurs acting on behalf of purely nominal plaintiffs'"); *Veeco*, 2007 WL 4115809, at *5 ("Moreover, under the PSLRA, a settlement reached...under the supervision and with the endorsement of a sophisticated institutional investor...is 'entitled to an even greater presumption of reasonableness....Absent fraud or collusion, the court should be hesitant to substitute its judgment for that of the parties who negotiated the settlement.'").

Plaintiffs received and analyzed more than 3 million pages of documents, including a large number of Chinese language documents.  Castaldo Decl., ¶¶ 26, 49.  Lead Plaintiffs also deposed Palaschuk on August 2, 2013 and again on October 29, 2014.  *Id.*  This discovery helped to inform Lead Plaintiffs' position during and after the September 16, 2013 settlement conference with Magistrate Judge Ellis.  In addition, Lead Plaintiffs used the documentary and testimonial evidence obtained during discovery to evaluate the strengths and weaknesses of their claims against Palaschuk, successfully oppose Palaschuk's motion for summary judgment and, ultimately, to prevail at trial.  *Id.*, ¶ 50.

### B.   Application of the *Grinnell* Factors Supports Approval of the Proposed Settlement As Fair, Reasonable and Adequate

The Second Circuit has identified nine factors to consider in determining whether a settlement is fair, reasonable and adequate:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Grinnell*, 495 F.2d at 463, *see also Charron v. Wiener*, 731 F.3d 241, 247 (2d Cir. 2013) *cert denied, Suarez v. Charron*, 134 S. Ct. 1941 (2014); *City of Providence v. Aeropostale, Inc.*, No. 11 Civ. 7132 (CM)(GWG), 2014 WL 1883494, at *3 (S.D.N.Y. May 9, 2014).  "In finding that a settlement is fair, not every factor must weigh in favor of settlement, 'rather the court should consider the totality of these factors in light of the particular circumstances.'"  *Global Crossing*, 225 F.R.D. at 456.

As demonstrated herein, and in the accompanying Castaldo Declaration, the proposed Settlement more than satisfies each of the foregoing applicable *Grinnell* factors.  Accordingly, it

is the considered judgment of Lead Plaintiffs and Class Counsel that the Settlement represents a fair, reasonable and adequate resolution of the Action and warrants this Court's final approval.

### 1.     The Complexity, Expense and Likely Duration of the Litigation Support Approval of the Settlement

"[D]istrict courts in this Circuit have 'long recognized' that securities class actions are 'notably difficult and notoriously uncertain' to litigate." *Aeropostale*, 2014 WL 1883494, at *5. "Indeed, the courts recognize that '[s]ecurities class actions are generally complex and expensive to prosecute.'" *In re Flag Telecom Holdings*, *Ltd. Sec. Litig.*, No. 02-CV-3400 (CM)(PED), 2010 WL 4537550, at *15 (S.D.N.Y. Nov. 8, 2010). Accordingly, "[c]lass action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation." *Id.*

This Action was unquestionably complex. It involved statements and representations made by a Chinese company through a variety of different media and over a period of more than three years. Castaldo Decl., ¶ 52. Accordingly, many of the documents obtained in discovery were in Chinese and required review and translations by native Chinese speakers. *Id.* In addition, Lead Plaintiffs were also faced with various impediments to discovery resulting from the default of Longtop and Lian. *Id.* Not only did these Defendants fail to appear and defend the Action, but Lead Plaintiffs were unable to obtain crucial discovery from the Company and its Chief Executive Officer. Developing an adequate factual record to present to the jury was thus extremely difficult and expensive.

Further, even though Lead Plaintiffs prevailed at trial and obtained jury verdicts in their favor on liability and damages, these verdicts would have been subject to attack through an appeal by Palaschuk had the Settlement not been reached. *Id.*, ¶ 53. As demonstrated throughout the course of this Action, Palaschuk and his experienced counsel were committed to

forcefully defending this Action through and beyond trial and would have continued to vigorously contest Lead Plaintiffs' claims. *Id*. Opposing an appeal by Palaschuk promised to be an extensive and time consuming process. Apart from the possibility of appeal, Palaschuk, during the briefing in connection with post-verdict notice and claims administration, had expressed his intent to challenge individual Trial Class Member's' claims based on reliance. *Id*. Litigating such challenges would likely have taken many months and resulted in additional expenses for the Class. As a result of an appeal or challenges to Class Members' claims, many additional years could pass before the Class would receive a recovery, if any. *See In re Sony SXRD Rear Projection Television Class Action Litig*., No. 06 Civ. 5173 (RPP), 2008 WL 1956267, at *6 (S.D.N.Y. May 1, 2008) ("the complexity, expense and likely duration of the litigation going forward weigh in favor of approval of the Settlement. . . . Not only would Plaintiffs spend substantial sums in litigating this case through trial and appeals, it could be years before class members saw any recovery, if at all."). For example, in *Lawrence E. Jaffee Pension Plan v. Household International*, *Inc*., *et al*., Case No. 02-CV-5893 (N.D. Ill.), although the case was originally filed in 2002 and plaintiffs received a favorable jury verdict in 2009, the case has been caught up in protracted post-trial litigation and appeals and the Court of Appeals for the Seventh Circuit only recently issued an order and opinion reversing the prior ruling and remanding certain issues to the trial court for further determination. *See generally Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408 (7th Cir. 2015), *reh'g denied* (July 1, 2015). As a result, the *Household* plaintiffs have yet to recover any of the damages awarded by the jury. In the instant case, this factor was considered as part of the total mix of information in settling the claims now on favorable terms for the Class.

In sum, the complexity, expense and delay of continued litigation would be substantial. Unlike continued litigation with an uncertain outcome, the proposed $2.3 million Settlement provides Class Members with prompt, efficient, and guaranteed relief.  Accordingly, this factor favors approval of the Settlement.

### 2.    The Stage of the Proceedings and Amount of Discovery Support Approval of the Settlement

When courts "look [ ] to the 'stage of the proceedings and the amount of discovery completed,'" they "focus[] on whether the plaintiffs 'obtained sufficient information through discovery to properly evaluate their case and to assess the adequacy of any settlement proposal." *In re Advanced Battery Tech.*, *Inc. Sec. Litig.*, 298 F.R.D. 171, 177 (S.D.N.Y. 2014); *see also Visa*, 396 F.3d at 118.  This requirement "is intended to assure the [c]ourt 'that counsel for plaintiffs have weighed their position based on a full consideration of the possibilities facing them.'"  *Global Crossing*, 225 F.R.D. at 458.

Here, the Settlement was reached after nearly four years of intensive litigation and discovery, and only after a jury trial.  During the course of this litigation, Lead Plaintiffs, among other things:  (i) conducted an extensive investigation into the claims against Palaschuk; (ii) drafted a detailed amended complaint; (iii) successfully opposed Palaschuk's motion to dismiss; (iv) obtained certification of the Class; (v) engaged in discovery and reviewed over 3 million pages of documents produced by Palaschuk, including a large number of Chinese language documents; (vi) successfully opposed Palaschuk's motion for summary judgment; (vii) prepared for trial; and (viii) obtained jury verdicts on liability and damages in favor of Lead Plaintiffs and the Trial Class.  Castaldo Decl., ¶¶ 15-37, 49.

In sum, the knowledge and insight gained by Lead Plaintiffs and Class Counsel through years of investigating, developing and fine-tuning their claims, conducting extensive discovery,

reviewing and analyzing millions of pages of evidence, deposing Palaschuk, trying their claims against Palaschuk to a verdict, and engaging in the settlement negotiation process, provided Lead Plaintiffs and Class Counsel with more than sufficient information to make intelligent, informed appraisals of the strengths and weaknesses of the Class's claims, Palaschuk's defenses, and the likelihood of collecting on the Jury Verdict.  *See In re Bear Stearns Cos.*, 909 F. Supp. 2d 259, 267 (S.D.N.Y. 2012) (parties had requisite knowledge to "gauge the strengths and weaknesses of their claims and adequacy of the settlement" where they "conducted extensive investigations, obtained and reviewed millions of pages of documents, and briefed and litigated a number of significant legal issues"); *see also In re Apollo Grp. Inc. Sec. Litig.*, Nos. CV 04-2147-PHX-JAT, CV 02-2204-PHX-JAT, CV 04-2334-PHX-JAT, 2012 WL 1378677, at *2 (D. Ariz. Apr. 20, 2012) (concluding that "[t]here is no question that the Parties have a full understanding of the legal and factual issues surrounding this case" where the parties, *inter alia*, "proceeded through a full jury trial").

Consequently, Lead Plaintiffs and Class Counsel clearly had a "sufficient understanding of the case to gauge the strengths and weaknesses of their claims and the adequacy" of the Settlement.  *AOL*, 2006 WL 903236, at *10.  This factor strongly supports approval of the Settlement.

### 3.   The Risks of Appeal and Challenges to Class Members' Claims

Due to the advanced stage of the litigation, Lead Plaintiffs and the Class were not faced with the risk of establishing liability and damages or maintaining the class action through trial. *See generally Grinnell*, 495 F.2d at 463.  Rather, Lead Plaintiffs were faced with the risk of appeal and the risk that Palaschuk would challenge individual Class Members' claims on the

basis of reliance.[9]  *See In re Apollo Grp.*, 2012 WL 1378677, at *2 ("This case differs from a typical class action settlement because this case has already proceeded through trial . . . and the sole outstanding disputes relate to claims administration procedures.").  While Lead Plaintiffs and Class Counsel believe that the claims asserted against Palaschuk have merit, as shown by the Jury Verdict, they also recognize that there were considerable risks and uncertainties in moving forward with the post-verdict claims administration process and obtaining the entry of final judgment.  The most significant risks and uncertainties, which were extensively considered by Class Counsel and informed its recommendation of the Settlement to Lead Plaintiffs, are discussed below.

### a.     Risk of an Appeal

Lead Plaintiffs faced considerable risks in obtaining and collecting a final judgment against Defendant Palaschuk.  Namely, Lead Plaintiffs faced the risk that Palaschuk would appeal any judgment that was entered against him.  Based on his vigorous defense throughout the litigation, Lead Plaintiffs believed that the possibility of an appeal was quite likely.  *See* Castaldo Decl., ¶¶ 47, 53.

### b.     Risks to the Post-Verdict Claims Administration Process

Lead Plaintiffs also faced the risk that Defendant Palaschuk would challenge any sizeable claims submitted by Class Members.  Castaldo Decl., ¶¶ 46, 53.  Because the amount of the judgment that would ultimately be entered against Palaschuk depended on the number and value of valid claims submitted by Class Members, Palaschuk was incentivized to challenge any significant claims that were submitted.  Indeed, during the parties' briefing in connection with this phase of the litigation, Palaschuk had indicated his intention to challenge the validity of

---

[9]  The following *Grinnell* factors are thus inapplicable: the risks of establishing liability; the risks of establishing damages; and the risks of maintaining the class action through the trial.

claims submitted on the basis of reliance.  *Id.*, ¶ 46.  Such challenges would have resulted in costly and time consuming mini-trials.  As a result, this factor further supports approval of the Settlement.  *See, e.g.*, *In re Apollo Grp.*, 2012 WL 1378677, at *2 (finding that "the terms of the settlement are fair and reasonable and there is substantial uncertainty that future litigation regarding these terms would result in a more favorable settlement for Plaintiffs" and "the terms agreed to by the Parties provide certainty with regard to the relief the Class Members will obtain" and noting that these "considerations therefore favor granting final settlement approval.").

### 4.     Defendant's Inability to Withstand a Substantially Greater Judgment

Lead Plaintiffs believe that Defendant Palaschuk would not have been able to withstand a substantially greater judgment.  Palaschuk had a $10 million Directors and Officers liability insurance policy.  Castaldo Decl., ¶ 56.  However, this policy was significantly depleted through payment of various expenses associated with his defense.  *Id.*  Thus, Palaschuk would have been required to use his personal assets to cover any judgment above the amount remaining on his insurance policy.  *Id.*  Lead Plaintiffs estimate that the maximum recovery available for the Trial Class pursuant to the Damages Verdict would have been approximately $6.2 million.  *Id.*  It remains unclear whether Palaschuk would have been able to personally satisfy the full amount of this judgment and whether his assets are located in the U.S. and accessible.  Moreover, even if Palaschuk had the ability to withstand a greater judgment, "a defendant is not required to 'empty its coffers' before a settlement can be found adequate."  *Sony*, 2008 WL 1956267, at *8.  This factor does not, therefore, alter the conclusion that the Settlement here is reasonable and fair.

> **5.     The Range of Reasonableness of the Settlement Amount in Light**
> **of the Best Possible Recovery and All the Attendant Risks of**
> **Continued Litigation Support Approval of the Settlement**

Courts typically combine their analysis of the final two *Grinnell* factors, "the range of reasonableness of the settlement fund in light of the best possible recovery" and "the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *Grinnell*, 495 F.2d at 463; *accord Global Crossing*, 225 F.R.D. at 460. In analyzing these two factors, a reviewing court "consider[s] and weigh[s] the nature of the claim, the possible defenses, the situation of the parties, and the exercise of business judgment in determining whether the proposed settlement is reasonable." *Grinnell*, 495 F.2d at 462. "The determination of whether a settlement amount is reasonable does not involve the use of a mathematical equation yielding a particularized sum." *Massiah v. Metroplus Health Plan, Inc.*, No. 11-cv-05669 (BMC), 2012 WL 5874655, at *5 (E.D.N.Y. Nov. 20, 2012). Rather, "there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Visa*, 396 F.3d at 119. Moreover, the settlement amount must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *Shapiro v. JPMorgan Chase & Co.*, Nos. 11 Civ. 8331 (CM)(MHD), 11 Civ. 7961 (CM), 2014 WL 1224666, at *11 (S.D.N.Y. Mar. 24, 2014).

Here, Lead Plaintiffs estimate that the maximum recovery available for the Trial Class pursuant to the Damages Verdict would have been approximately $6.2 million. Castaldo Decl., ¶ 44. This $6.2 million figure assumes, however, that ***all*** Trial Class members would submit valid claims, which is extremely unlikely, given the passage of time, typical failure to retain supporting documentation and the fact that the jury only apportioned one percent of the total

damages award to Palaschuk.  *Id.*  Moreover, the post-verdict claims administration process and the resolution of any challenges leveled against the claims of individual claimants by Palaschuk could take many months.  *Id.*, ¶ 46.  In addition, as discussed above, it is possible that Palaschuk would appeal certain issues following the entry of final judgment.  *Id.*, ¶ 47.  In contrast to the delays, costs and uncertainty of continued litigation, the proposed Settlement confers an immediate and certain payment of $2.3 million in cash for the benefit of the Class.[10]  The Settlement is even more significant given the considerable risks involved in the Action as set forth *supra* Section III.B.3.  Lead Plaintiffs and Class Counsel carefully and thoroughly analyzed these risks when negotiating the present Settlement.  Accordingly, the proposed Settlement−representing approximately 37% of Lead Plaintiffs' estimated maximum damage recovery for the Trial Class from Palaschuk[11]−is a very favorable result for the Class in light of the range of possible recoveries and the risks of continued litigation.  *Massiah*, 2012 WL 5874655, at *5 ("when a settlement assures immediate payment of substantial amounts to class members, even if it means sacrificing 'speculative payment of a hypothetically larger amount years down the road', settlement is reasonable under this factor.").

---

[10] *See In re AT&T Corp. Sec. Litig.*, 455 F.3d 160, 170 (3d Cir. 2006) ("[t]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved . . . [r]ather, the percentage recovery, must represent a material percentage recovery to plaintiff in light of all the risks . . . .").

[11] *See* Laarni T. Bulan, Ellen M. Ryan & Laura E. Simmons, *Securities Class Action Settlements: 2014 Review and Analysis*, Cornerstone Research, http://cornerstone.com, at 9 (The median settlement as a percentage of "estimated damages" in securities cases with estimated damages of less than $50 million is 9.9% (in 2014) and 11.7% (in 2005-2013)).

6.      **The Reaction of the Class to Date Supports**
        **Approval of the Proposed Settlement**

Pursuant to the Preliminary Approval Order, GCG has mailed more than 85,000 copies of the Claim Packet to potential Class Members and nominees.  *See* GCG Aff., ¶10.  In addition, the Summary Notice was published in the national edition of *The Wall Street Journal* and *Investor's Business Daily* and transmitted over *PR Newswire*.  *Id.*, ¶ 11.  The Notice sets out the essential terms of the Settlement and informs potential members of the Class of, among other things, their right to opt-back into the Class if they previously requested exclusion in connection with the Class Notice and their right to object to any aspect of the Settlement, as well as the procedure for submitting a Proof of Claim in order to be potentially eligible to receive a payment from the Settlement.  *Id.*, ¶ 8.

The deadline for objecting to the Settlement, the Plan of Allocation and/or Class Counsel's requests for reimbursement of expenses is September 22, 2015.  To date, Class Counsel has not received any objections to any aspect of the Settlement.  Castaldo Decl., ¶ 8.  Lead Plaintiffs will address any objections received after the date of this submission in their reply briefing to be filed with the Court on or before October 3, 2015.

In sum, the *Grinnell* factors—including the complexity, expense and delay of further litigation, the well-developed stage of the proceedings and the substantial risks of continued litigation—support a finding that the Settlement is fair, reasonable and adequate.

## IV.    THE PROPOSED PLAN OF ALLOCATION IS FAIR AND REASONABLE AND SHOULD BE APPROVED

A plan for allocating settlement proceeds, like the settlement itself, should be approved if it is fair, reasonable and adequate.  *See IMAX*, 283 F.R.D. at 192; *Silberblatt v. Morgan Stanley*, 524 F. Supp. 2d 425, 430 (S.D.N.Y. 2007) ("Exactitude is not required in allocating consideration to the class, provided that the overall result is fair, reasonable and adequate.").

Generally, "[a] plan of allocation that reimburses class members based on the extent of their injuries is [] reasonable." *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 367 (S.D.N.Y. 2002). Plans of allocation, however, need not be tailored to fit each and every class member with "mathematical precision." *In re PaineWebber*, 171 F.R.D. at 133. Rather, broad classifications may be used in order to promote "[e]fficiency, ease of administration and conservation" of the settlement fund. *Id.* at 133-35. A plan of allocation is fair and reasonable as long as it has a "reasonable, rational basis." *Maley*, 186 F. Supp. 2d at 367; *see In re Initial Pub. Offerings Sec. Litig.*, 671 F. Supp. 2d 467, 497 (S.D.N.Y. 2009).

In determining the fairness, reasonableness and adequacy of a proposed allocation plan, Courts give considerable weight to the opinion of experienced class counsel.[12] Here, Class Counsel developed the Plan of Allocation in consultation with Lead Plaintiffs' damages expert and believes that the Plan of Allocation provides a fair and reasonable method to equitably distribute the Net Settlement Fund among eligible Class Members. Castaldo Decl., ¶¶ 58-59.

If approved, the Plan of Allocation will govern how the Net Settlement Fund will be distributed among Trial Class Members who submit timely and valid Proofs of Claim to the Claims Administrator, in accordance with the requirements established by the Court, and who are approved for payment ("Authorized Claimants"). *Id.*, ¶ 59. While the Plan of Allocation is not a formal damages study, it reflects Lead Plaintiffs' damages expert's analysis based on the

---

[12] *See In re Marsh ERISA Litig.*, 265 F.R.D. 128, 145 (S.D.N.Y. 2010) ("In determining whether a plan of allocation is fair, courts give substantial weight to the opinions of experienced counsel."); *Am. Bank Note Holographics*, 127 F. Supp. 2d 418, 429-430 (S.D.N.Y. 2001) ("An allocation formula need only have a reasonable, rational basis, particularly if recommended by 'experienced and competent' class counsel . . . . As with other aspects of settlement, the opinion of experienced and informed counsel is entitled to considerable weight.").

artificial inflation found by the jury in the price of Longtop ADSs during the Trial Class Period, as reflected in the Special Verdict Form 2 dated November 24, 2014.  *Id*.

Pursuant to the Plan of Allocation, a "Recognized Loss" amount and "Recognized Gain" amount will be calculated for each Longtop ADS purchased or otherwise acquired during the Trial Class Period (i.e., the period between February 10, 2010 through May 17, 2011, inclusive) that is listed in the Proof of Claim submitted and for which adequate documentation is provided. Castaldo Decl., ¶¶ 60-61.  The sum of an Authorized Claimant's Recognized Loss amounts and Recognized Gain amounts is the claimant's "Recognized Claim."  *See* Ex. A to the GCG Aff., pp. 9-12.  In order to have a Recognized Claim, eligible Longtop ADSs must have been held through at least April 27, 2011.  *Id*.[13]  The Net Settlement Fund will be allocated on a *pro rata* basis to Authorized Claimant's based on each Authorized Claimant's Recognized Claim in comparison to the total Recognized Claims of all Authorized Claimants.  Castaldo Decl., ¶ 61. Under the Plan of Allocation, if a claimant's *pro rata* payment calculates to less than $10.00, no distribution will be made to that claimant.

To date, there have been no objections to the Plan of Allocation.  *Id*., ¶ 58.  Accordingly, for all of the reasons set forth herein and in the Castaldo Declaration, the Plan of Allocation is fair and reasonable, and should be approved.

---

[13]  Recognized Loss Amounts also take into account the PSLRA's statutory limitation on recoverable damages, whereby losses on eligible Longtop ADSs cannot exceed the difference between the purchase price paid for the Longtop ADS and the average price of Longtop ADS during the 90-day period following the final corrective disclosure (the "90-day bounce back period") if the ADS was held through August 20, 2011, the end of the 90-day bounce back period. Losses on Longtop ADS purchased/acquired during the Trial Class Period and sold *during* the 90-day bounce back period cannot exceed the difference between the purchase/acquisition price of the Longtop ADS and the average price of Longtop ADS during the portion of the 90-day bounce back period elapsed as of the date of sale.  Castaldo Decl., ¶ 60, fn 14; *see also* GCG Aff. Ex. A, pp. 9-12.

## V.   NOTICE TO THE CLASS SATISFIED THE REQUIREMENTS OF THE PSLRA, RULE 23 AND DUE PROCESS

Notice to class members of a settlement satisfies Rule 23(e) and due process where it fairly apprises "members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Visa*, 396 F.3d at 114; *Vargas v. Capital One Fin. Advisors*, 559 Fed. App'x 22, 27 (2d Cir. 2014). "Notice need not be perfect" or received by every class member, but instead be reasonable under the circumstances." *In re Merrill Lynch Tyco Research Sec. Litig.*, 249 F.R.D. 124, 133 (S.D.N.Y. 2008); *see* Fed. R. Civ. P. 23(e)(1) ("The court must direct notice in a reasonable manner to all class members who would be bound by the [settlement] proposal."). Notice is adequate "if the average person understands the terms of the proposed settlement and the options provided to class members thereunder." *Id.* (citing *Visa*, 396 F.3d at 114).

Both the substance of the Notice as well as the method through which it was disseminated to potential members of the Class satisfies these standards. The Court-approved Notice includes all of the information required by Rule 23(c)(2)(B) and the PSLRA, 15 U.S.C. §§ 77z-1(a)(7), 78u-4(a)(7), including: (i) an explanation of the nature of the Action and claims asserted against Palaschuk; (ii) a definition of the Class; (iii) the amount of the Settlement; (iv) the proposed Plan of Allocation; (v) an explanation of the reasons why the parties are proposing the Settlement; (vi) a statement indicating the attorneys' expenses that will be sought; (vii) a description of the right to request to opt-back into the Class or object to the Settlement, the Plan of Allocation or the requested expenses; and (viii) notice of the binding effect of a judgment on members of the Class. The Notice also provides recipients with information on how to submit a Proof of Claim in order to be potentially eligible to receive a distribution from the Settlement.

Further, in accordance with the Court's Preliminary Approval Order, as of September 3, 2015, GCG has mailed over 85,000 copies of the Claim Packet by first-class mail to potential Class Members and nominees.  GCG Aff., ¶ 10.  To disseminate the Claim Packets, GCG used data received from Class Counsel containing the name and address records of 67,279 potential Class Members and nominee purchasers that were identified through the mailing of notice in connection with class certification that took place beginning in August 2014.  *Id.*, ¶ 3.  GCG also mailed copies of the Claim Packet to the largest and most common U.S. banks, brokerage firms, and nominees contained in GCG's proprietary mailing database, as well as the names and addresses of additional potential Class Members provided to GCG by nominees.  *Id.*, ¶¶ 8-9.  Further, GCG also notified the security settlement system of the Depository Trust Company ("DTC") of the issuance of the Notice in accordance with GCG's standard practice, and at GCG's request, DTC posted the Notice on its electronic Legal Notice System ("LENS").  *Id.*, ¶ 7.  The LENS system may be accessed by any firm, bank, institution or other nominee which is a participant in DTC's security settlement system.  *Id.*

In addition, GCG caused the Summary Notice to be published in the national edition of *The Wall Street Journal* and *Investor's Business Daily* and transmitted over *PR Newswire* on July 20, 2015.  GCG Aff., ¶ 11.  In addition, GCG established a toll-free informational telephone line and caused information regarding the Settlement to be posted on the website specifically established for the Settlement, http://www.longtopclassaction.com, which provides access to, among other important documents, downloadable copies of the Notice and Proof of Claim.  *Id.*, ¶¶ 12-13.

This combination of individual first-class mail to all Class Members who could be identified with reasonable effort, supplemented by publication of a summary notice in two

widely-circulated publications and an informative website, was "the best notice . . . practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B); *see, e.g.*, *In re Citigroup Inc. Bond Litig.*, 296 F.R.D. 147, 154 (S.D.N.Y. Aug. 20, 2013); *FLAG Telecom*, 2010 WL 4537550, at *13; *In re Warner Chilcott Ltd. Sec. Litig.*, No. 06 Civ. 11515 (WHP), 2008 WL 5110904, at *3 (S.D.N.Y. Nov. 20, 2008).

## VI.   **CONCLUSION**

For the reasons set forth above, Lead Plaintiffs respectfully request that the Court approve the proposed Settlement as fair, reasonable and adequate and approve the Plan of Allocation as fair and reasonable.

Dated:  September 8, 2015                    Respectfully submitted,

KESSLER TOPAZ
  MELTZER & CHECK, LLP


*/s/Kimberly A. Justice*
GREGORY M. CASTALDO
KIMBERLY A. JUSTICE
MICHELLE M. NEWCOMER
MARGARET E. ONASCH
280 King of Prussia Road
Radnor, PA 19087
(610) 667-7706
(610) 667-7056

**Class Counsel on Behalf of Lead Plaintiffs and the Class**

GRANT & EISENHOFER, P.A.
DANIEL L. BERGER
JEFF A. ALMEIDA
485 Lexington Avenue, 29th Floor
New York, NY 10017
(646) 722-8500
(646) 722-8501 (Fax)

**Liaison Counsel on Behalf of Lead Plaintiffs and the Class**