**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

IN RE LONGTOP FINANCIAL
TECHNOLOGIES LIMITED SECURITIES
LITIGATION

Civil Action No. 11-cv-3658-SAS

---

## MEMORANDUM IN SUPPORT OF CLASS REPRESENTATIVES' MOTION FOR DISTRIBUTION OF NET SETTLEMENT FUND

Court-appointed Class Representatives Danske Invest Management A/S ("Danske") and

Pension Fund of Local No. One, I.A.T.S.E. ("Local One") (together, "Class Representatives"),

by and through their counsel Kessler Topaz Meltzer & Check, LLP ("Class Counsel"), hereby

submit this memorandum in support of their motion for an Order pursuant to Federal Rule of

Civil Procedure 23(e), that would approve the proposed plan for distributing the Net Settlement

Fund (as defined below) to eligible members of the Class, as set forth in the accompanying

Declaration of Stephen J. Cirami in Support of Motion for Distribution of Net Settlement Fund

(the "Cirami Declaration") submitted on behalf of Garden City Group, LLC ("GCG"), the Court-

authorized claims administrator for the settlement obtained with defendant Derek Palaschuk

("Palaschuk" or the "Settling Defendant") in the above-captioned action (the "Action").[1]

### BACKGROUND ON THE SETTLEMENT

Class Representatives, on behalf of themselves and the Class, and the Settling Defendant

(collectively, the "Settling Parties") entered into the Stipulation wherein the Settling Parties

---

[1]  Unless otherwise defined, all capitalized terms used herein shall have the meanings set forth in the Stipulation and Agreement of Settlement (the "Stipulation") (ECF No. 289) previously filed with the Court, and the Cirami Declaration.

agreed, in substance, that in exchange for $2,300,000 in cash (the "Settlement Amount"), there would be a full and complete settlement of all Settled Claims against the Settling Defendant. The Settlement Amount, plus any interest earned thereon, less: (i) any Taxes; (ii) any Notice and Administration Costs; (iii) any Litigation Expenses awarded by the Court; and (iv) other costs, expenses, or amounts as may be approved by the Court, is referred to herein as the "Net Settlement Fund."

By its Order Preliminarily Approving Settlement and Directing Notice to the Class dated June 23, 2015 (ECF No. 293) (the "Preliminary Approval Order"), the Court directed that the Notice to Class Members of Proposed $2.3 Million Settlement with Defendant Derek Palaschuk (the "Notice") be mailed to all members of the Class identified in connection with the Class Notice mailing, and any other members of the Class identified through reasonable effort. The mailing of the Notice was conducted in accordance with the Preliminary Approval Order.

Thereafter, the Court held a hearing on October 13, 2015 to consider, among other things, whether the proposed Settlement should be granted final approval. By its Order and Final Judgment as to Defendant Derek Palaschuk dated October 13, 2015 ("Judgment") (ECF No. 304), the Court: (i) approved the Settlement, in all respects, as fair, reasonable and adequate and in the best interests of the Class; (ii) declared the notice procedures to be proper; and (iii) dismissed the claims against the Settling Defendant with prejudice. In addition, the Court reserved jurisdiction over, among other things, the distribution of the Settlement Fund. *See* Judgment, ¶ 17. By its Order Approving Plan of Allocation for the Net Settlement Fund dated October 13, 2015 (ECF No. 305), the Court approved the proposed plan for allocating the Net Settlement Fund among eligible Class Members.[2]

---

[2]   The Class certified by the Court pursuant to Memorandum Opinion and Order dated July 10, 2013 (ECF No. 157) consisted of all persons and entities who purchased or otherwise acquired Longtop

Moreover, the Court authorized Class Counsel's retention of GCG as the Claims Administrator in connection with the Settlement to supervise and administer the notice procedure, as well as the processing of Proof of Claim and Release Forms ("Claim Forms" or "Claims").   *See* Preliminary Approval Order, ¶ 4.   GCG has consented to this Court's jurisdiction.

## THE SETTLEMENT FUND

Pursuant to the terms of the Stipulation, the Settling Defendant caused the Settlement Amount (i.e., $2,300,000) to be paid into an Escrow Account established by Class Counsel for the benefit of the Trial Class.   In total, $3,069.68 in income has been earned on the settlement proceeds from the date of the initial deposit through February 28, 2017.   In addition, the following amounts have been paid from the Settlement Fund: (i) a total of $295,682.44 in administrative related expenses;[3] (ii) $500,185.99 in Litigation Expenses awarded by the Court; and (iii) $11,673.20 to Class Representatives for their costs and expenses directly related to their representation of the Class as awarded by the Court.[4]   As of February 28, 2017, the balance of the Net Settlement Fund was $1,495,528.05.

---

Financial Technologies, Ltd. ("Longtop") American Depositary Shares ("ADSs") during the period from February 21, 2008 through May 17, 2011, inclusive, and were damaged thereby.   At trial, Class Representatives pursued claims based on Palaschuk's alleged misrepresentations during the period February 10, 2010 through May 17, 2011 (the "Trial Class Period") – a portion of the Certified-Class Period (i.e., February 21, 2008 through May 17, 2011, inclusive).   Accordingly, as set forth in the Notice, only Class Members who purchased or otherwise acquired Longtop ADSs during the Trial Class Period (the "Trial Class") are potentially eligible to receive a distribution from the Net Settlement Fund.

[3]   Under the terms of the Stipulation, Class Counsel was authorized to pay from the Settlement Fund all Notice and Administration Costs without further approval of the Court or approval of the Settling Defendant.   *See* Stipulation, ¶ 18; *see also* Preliminary Approval Order, ¶ 22 ("The Court authorizes payment out of the Settlement Fund of Notice and Administration Costs in accordance with the Stipulation.").

[4]   Pursuant to its Order on Class Counsel's Motion for Reimbursement of Litigation Expenses dated October 13, 2015 (ECF No. 306), the Court awarded $500,000 in reimbursement of Litigation Expenses to Class Counsel, plus interest earned on this amount at the same rate and for the same period as earned

## CLAIMS ADMINISTRATION

In accordance with the Notice, members of the Trial Class wishing to participate in the Settlement were required to complete a Claim Form and to mail the Claim Form, together with supporting documentation, to the post office box maintained by GCG.  Cirami Decl., ¶ 7.  GCG employees have carefully reviewed, processed and analyzed the Claims submitted in connection with the Settlement.  *Id.*, ¶¶ 8-19.  All Claims received by GCG as of December 31, 2016 have been fully processed in accordance with the Stipulation and the Court-approved Plan of Allocation set forth in the Notice.  *Id.*, ¶ 7.[5]  GCG has responded in a prompt manner to all inquiries regarding the Action, the Settlement and the procedures for completing and submitting Claim Forms.  *See generally id.*, ¶¶ 9, 20.

## DEFICIENT AND REJECTED CLAIMS

As set forth in the accompanying Cirami Declaration, many of the Claims submitted in connection with the Settlement were incomplete, not signed, not properly documented, or were otherwise deficient.  Cirami Decl., ¶ 20.  For all submitted Claims that were determined to be partially deficient (e.g., the Claim was missing documentation to support some transactions in Longtop ADSs, or did not supply some transactional information), GCG mailed a "Notice of Conditional Rejection of Part of Your Claim" ("Partial Rejection Letter") to the claimant advising him, her or it of the deficiency with the Claim and requesting submission of the information and/or documentation necessary to complete the Claim.  Cirami Decl., ¶ 22.  For Claims that were determined to be wholly deficient (e.g., the Claim was missing documentation

---

on the Settlement Fund.  By its same Order, the Court awarded reimbursement to Class Representatives in the aggregate amount of $11,673.20 (i.e., $9,100.00 to Danske and $2,573.20 to Local One).

[5]  In anticipation of completing the administration of the Settlement, December 31, 2016 was chosen as the cut-off date, after which no additional Proofs of Claim would be accepted for processing or considered for inclusion in the initial distribution of the Net Settlement Fund.  *Id.*, ¶ 7 n.4.

for all transactions in Longtop ADSs, the Claim was not signed, the Claim did not provide enough information to calculate losses, or the Claim had no losses when calculated under the Court-approved Plan of Allocation), GCG mailed a "Notice of Conditional Rejection of Your Entire Claim" ("Rejection Letter") to the claimant advising him, her or it that the Claim had been rejected and was not eligible to receive a distribution from the Net Settlement Fund. *Id*., ¶ 21.[6] Both the Rejection Letter and Partial Rejection Letter described the deficiency (or, deficiencies) in the Claim and what, if anything could be done to cure the Claim. *Id*., ¶¶ 21-22.  In addition, both letters advised claimants that they had the right to request review of GCG's administrative determination to reject their Claim.  *Id*.  In total, GCG mailed (or e-mailed in the case of electronically filed Claims) Rejection Letters in connection with approximately 5,500 Claims, and Partial Rejection Letters in connection with approximately 70 Claims.  *Id*.

During the course of this administration, GCG spent considerable time addressing deficient Claims and assisting claimants in curing the deficiencies in their Claims in order for their Claims to be eligible to participate in the Settlement.  As a result of GCG's efforts, many claimants with Claims initially determined to be ineligible to participate in the Settlement, were able to properly complete their Claims and are now eligible to receive a payment from the Net Settlement Fund.  Cirami Decl., ¶ 20.

## CLAIMANTS SEEKING JUDICIAL REVIEW OF THEIR CLAIMS

As set forth above, both the Rejection Letters and Partial Rejection Letters advised claimants that they had the right to request review of GCG's administrative determination to reject their Claim.  *Id*., ¶¶ 21-22.  During this administration, GCG received letters from three claimants contesting GCG's administrative determination to reject their Claims and requesting

---

[6]  Samples of the Rejection Letter and Partial Rejection Letter used to notify claimants of the rejection of their Claims in part or in their entirety are attached to the Cirami Declaration as Exhibit B.

judicial review.  *Id.*, ¶ 36.  GCG attempted to contact each of these claimants to explain its administrative determination to them.  *Id.*  As a result, GCG was able to resolve one of these requests for review, and after the submission of additional documentation, that Claim is now being recommended for approval.  *Id.*  Accordingly, there are two claimants with outstanding requests for judicial review (the "Disputed Claims").  *Id.*, ¶¶ 36-37.

As set forth in the Cirami Declaration, Disputed Claim No. 1 did not calculate to a Recognized Claim pursuant to the Court-approved Plan of Allocation and Disputed Claim No. 2 did not provided any transactional information or supporting documentation with their Claim. *Id.*, ¶ 37; *see also* Exhibits D-1 and D-2 to the Cirami Declaration for copies of the correspondence relating to the two Disputed Claims.  Accordingly, GCG recommends (i) the rejection of Disputed Claim No. 1 because the transactions supplied in this Claim do not calculate to a Recognized Claim pursuant to the Court-approved Plan of Allocation and (ii) the rejection of Disputed Claim No. 2 because this Claim does not provide adequate documentation to support the Claim.  Cirami Decl., ¶ 37(a)-(b); *see also* Exhibits D-1 and D-2 to the Cirami Declaration.

Class Counsel has reviewed Disputed Claim Nos. 1 and 2 and concurs with GCG's determination to recommend these Claims for rejection.

## ADMINISTRATIVE DETERMINATIONS FOR SUBMITTED CLAIMS

### I.    Claims Recommended for Acceptance

A total of 7,653 Claims were received by GCG in connection with the Settlement through December 31, 2016.[7]  2,112 of these Claims have been provisionally accepted by GCG.  Cirami

---

[7]  As set forth above, in anticipation of completing the administration for this Settlement, December 31, 2016 was selected as the last day Claims would be accepted for processing in connection with the Initial Distribution.  Cirami Decl., ¶¶ 7 n.4, 31.

Decl., ¶ 31; *see also* Exhibits C-1 and C-2 to the Cirami Declaration (listing all Claims being recommended for acceptance, in Claim number order).  Of the 2,112 Claims being recommended for acceptance and approval by the Court, 82 Claims were submitted after the claims submission deadline set forth in the Notice and on or before December 31, 2016.  Cirami Decl., ¶ 31.  Class Counsel believes that it would be appropriate to allow these late but otherwise valid Claims to share in the Net Settlement Fund as they were received while the processing of the timely Claims was ongoing.  The Court has discretion to accept Claims submitted after the claims submission deadline.[8]

The total Recognized Claims for the 2,112 Claims being recommended for acceptance calculated pursuant to the Court-approved Plan of Allocation is $544,199,151.08.  *Id.*, ¶ 33.  Class Counsel respectfully requests that this Court approve GCG's administrative determinations with respect to the Claims being recommended for acceptance as listed on Exhibits C-1 and C-2 to the Cirami Declaration.

## II.      Claims Recommended for Rejection

Of the total Claims received by GCG through December 31, 2016, 5,541 Claims were determined to be ineligible and are being recommended for rejection.  Cirami Decl., ¶ 34; *see also* Exhibit C-3 to the Cirami Declaration (listing all Claims being recommended for rejection, in Claim number order).[9]  The 5,541 Claims being recommended for rejection were determined to be ineligible for the following reasons: (i) 4,003 Claims did not calculate to a Recognized Claim pursuant to the Court-approved Plan of Allocation; (ii) 1,188 Claims did not fit the

---

[8]  Pursuant to ¶ 17 of the Preliminary Approval Order:  "Any Class Member who does not timely submit a valid Proof of Claim, shall not be eligible to share in the Settlement Fund, *unless otherwise ordered by the Court*, . . ."  (emphasis added).  *See also* Stipulation, ¶ 28(b) ("All Proofs of Claim must be submitted by the date specified in the Notice unless such period is extended by order of the Court.").

[9]  The Claims being recommended for rejection include the two Disputed Claims addressed above.

definition of the Class; (iii) 295 Claims were deficient and never cured; and (iv) 55 Claims were duplicates of Claims previously submitted.  *Id.*, ¶ 34.  Class Counsel respectfully requests that the Court approve GCG's administrative determinations with respect to the Claims being recommended for rejection as listed on Exhibit C-3 to the Cirami Declaration.

## FEES AND EXPENSES OF CLAIMS ADMINISTRATOR AND TAXES

In accordance with GCG's agreement with Class Counsel to act as the Claims Administrator in connection with the Settlement of the Action, GCG is responsible for, among other things, disseminating notice of the Settlement to the Class, processing Claim Forms, and allocating and distributing the Net Settlement Fund to eligible claimants.  As set forth in the accompanying Cirami Declaration, GCG's outstanding administrative fees and expenses incurred in connection with the administration of the Settlement and expected to be incurred through the initial distribution of the Net Settlement Fund amount to $37,316.21.  Cirami Decl., ¶ 40; *see also* Exhibit E to the Cirami Declaration.

Class Counsel respectfully requests that the Court approve GCG's unreimbursed fees and expenses and direct payment of GCG's unreimbursed fees and expenses, as well as any taxes due, prior to distribution of the Net Settlement Fund to the Trial Class.

## DISTRIBUTION PROCESS

The Net Settlement Fund is ready to be distributed at this time.  Class Counsel, therefore, respectfully requests the Court direct GCG to distribute the Net Settlement Fund to claimants whose Claims GCG has recommended for acceptance, as listed on Exhibits C-1 and C-2 to the Cirami Declaration (i.e., Authorized Claimants) and in accordance with the proposed Distribution Plan set forth in ¶ 39 of the Cirami Declaration.  If GCG's administrative determinations are approved by the Court, each of these claimants will receive their *pro rata* share of the Net Settlement Fund based on his, her, or its Recognized Claim calculated pursuant

8

to the Plan of Allocation compared to the total Recognized Claims of all Authorized Claimants. Cirami Decl., ¶ 39(a).

It is expected that not all of the checks sent to the Authorized Claimants will be cashed promptly and some of these checks will remain uncashed.[10]  Pursuant to the Plan of Allocation, if any funds remain in the Net Settlement Fund by reason of uncashed distributions or other reasons following the initial distribution, and after GCG has made reasonable and diligent efforts to have Authorized Claimants who are entitled to participate in the distribution of the Net Settlement Fund cash their distribution checks, any balance remaining in the Net Settlement Fund six months after the initial distribution shall be used (i) first, to pay any amounts mistakenly omitted from the Initial Distribution to Authorized Claimants or to pay any late, but otherwise valid and fully documented claims received after the cut-off used to make the Initial Distribution, provided that such distributions to any late post-distribution claimants meet all of the other criteria for inclusion in the Initial Distribution, including the $10.00 minimum check amount; (ii) second, to pay any additional fees and expenses incurred in administering the Settlement; and (iii) finally, to make a second distribution to Authorized Claimants who cashed their checks from the Initial Distribution and who would receive at least $10.00 from such second distribution, after payment of the estimated costs or fees to be incurred in administering the Net Settlement Fund and in making the second distribution, if such distribution is economically feasible as determined by Class Counsel after consulting with GCG.  *See* Cirami Decl., ¶ 39(g); *see also* Exhibit A to the Cirami Declaration, at p.10.

---

[10]   In order to encourage Authorized Claimants to promptly cash their checks, the proposed Order Authorizing Distribution of Net Settlement Fund sets forth that all distributions will bear a notation "CASH PROMPTLY, VOID AND SUBJECT TO RE-DISTRIBUTION IF NOT CASHED BY [DATE 120 DAYS AFTER ISSUE DATE]."  Cirami Decl., ¶ 39(d).

As further set forth in the Plan of Allocation, if any funds remain in the Net Settlement Fund six months after the second distribution, or if such second distribution is not undertaken, these funds shall be donated to a secular charitable organization(s) selected by Class Counsel and approved by the Court.  Cirami Decl., ¶ 39(h)

## RELEASE OF CLAIMS

Class Counsel respectfully requests this Court release and discharge all Persons who are involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Claims submitted in connection with the Settlement of this Action, or who are otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund from any and all claims arising out of such involvement, and, pursuant to the release terms of the Settlement, bar all Class Members, whether or not they are to receive payment from the Net Settlement Fund, from making any further claim against the Net Settlement Fund or the parties released pursuant to the Settlement beyond the amount allocated to them by the Settlement as approved by the Court.

## RECORD RETENTION AND DESTRUCTION

Class Counsel respectfully requests that the Court authorize GCG to destroy paper copies and all supporting documentation of Claim Forms six months after the final distribution of the Net Settlement Fund and all electronic copies of the same three years after the final distribution of the Net Settlement Fund.

## CONCLUSION

Based on the foregoing, Class Counsel respectfully requests that the Court approve the Motion for Distribution of Net Settlement Fund and enter the [Proposed] Order Authorizing Distribution of Net Settlement Fund submitted herewith.

Dated:  March 7, 2017                          Respectfully submitted,

                                               KESSLER TOPAZ
                                                 MELTZER & CHECK, LLP


                                               */s/Kimberly A. Justice*
                                               GREGORY M. CASTALDO
                                               KIMBERLY A. JUSTICE
                                               MICHELLE M. NEWCOMER
                                               MARGARET E. ONASCH
                                               JENNIFER L. ENCK
                                               280 King of Prussia Road
                                               Radnor, PA 19087
                                               (610) 667-7706
                                               (610) 667-7056 (fax)

                                               ***Class Counsel for Class Representatives
                                               and the Class***

                                               GRANT & EISENHOFER, P.A.
                                               DANIEL L. BERGER
                                               JEFF A. ALMEIDA
                                               485 Lexington Avenue, 29th Floor
                                               New York, NY 10017
                                               (646) 722-8500
                                               (646) 722-8501 (Fax)

                                               ***Local Counsel for Class Representatives
                                               and the Class***